1   TIFFANY CHEUNG (BAR NO. 211497)
    TCheung@mofo.com
2   MARK DAVID MCPHERSON (BAR NO. 307951)
    MMcPherson@mofo.com
3   MICHAEL BURSHTEYN (BAR NO. 295320)
    MBurshteyn@mofo.com
4   THOMAS B. DAVIDSON (BAR NO. 327776)
    TDavidson@mofo.com
5   MORRISON & FOERSTER LLP
    425 Market Street
6   San Francisco, CA 94105-2482
    Telephone:   415.268.7000
7   Facsimile:   415.268.7522

8   Attorneys for Defendants
    ROBINHOOD FINANCIAL LLC AND ROBINHOOD
9   SECURITIES, LLC

10                    UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13

14   SIDDHARTH MEHTA, individually and on behalf    Case No. _____
     of all other similarly situated individuals,
15                                                   **DEFENDANTS ROBINHOOD**
                           Plaintiff,                **FINANCIAL LLC AND**
16                                                   **ROBINHOOD SECURITIES,**
             vs.                                     **LLC'S NOTICE OF REMOVAL**
17
     ROBINHOOD FINANCIAL LLC; ROBINHOOD
18   SECURITIES, LLC; and DOES 1 to 10,

19                         Defendants.

20

21

22

23

24

25

26

27

28

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants Robinhood Financial LLC and Robinhood Securities, LLC (the "Robinhood Defendants") hereby remove this action from the Superior Court of California, County of Santa Clara, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.

## I.     PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1.     On January 8, 2021, Plaintiff Siddharth Mehta ("Plaintiff") filed a civil action in the Superior Court of California, County of Santa Clara, entitled *Mehta v. Robinhood Financial LLC; Robinhood Securities, LLC; and DOES 1-10*, Case No. 21CV375167 (the "Action" or the "State Court Action"). True and accurate copies of all process, pleadings, and orders served on Defendants in the State Court Action are attached as Exhibit A.

2.     In Plaintiff's Complaint, he purports to assert claims against the Robinhood Defendants on behalf of himself and a nationwide class of other Robinhood customers who are allegedly similarly situated to Plaintiff.

3.     Defendants have not pled, answered, or otherwise appeared in the State Court Action.

4.     Plaintiff served the Complaint upon the Robinhood Defendants pursuant to California Code of Civil Procedure § 416.40. Service was complete as to the Robinhood Defendants on January 11, 2021. The Robinhood Defendants' removal notice is timely, having been filed within 30 days after the service of the Summons and Complaint upon them. *See* 28 U.S.C. § 1446(b) (removal is timely if filed within 30 days of defendant's receipt of the pleading).

## II.     PROCEDURAL REQUIREMENTS

5.     Defendants will promptly serve a copy of this Notice on counsel for Plaintiff, and will file a copy of this Notice with the Clerk of the Superior Court of California, County of Santa Clara, pursuant to 28 U.S.C. § 1446(d).

1

6.      Unanimous consent of the defendants to removal is not required where, as here, removal is based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b). 28 U.S.C.A. § 1453 ("A class action may be removed to a district court of the United States in accordance with section 1446 …, without regard to whether any defendant is a citizen of the State in which the action is brought, except that *such action may be removed by any defendant without the consent of all defendants*") (emphasis added).[1]

### III.   INTRADISTRICT ASSIGNMENT

7.      Assignment of this action to the San Jose Division of the United States District Court for the Northern District of California is appropriate because this action was originally filed in the Superior Court of California, County of Santa Clara. *See* 28 U.S.C. § 1446(a) (notice of removal to be filed in "district and division within which such action is pending").

### IV.   BASIS FOR REMOVAL JURISDICTION

8.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005 ("CAFA"). As alleged, (i) this is a putative class action with a potential class of 100 or more members; (ii) the matter in controversy exceeds $5 million, exclusive of interest and costs, under Plaintiff's theory of recovery; and (iii) minimum diversity is satisfied. 28 U.S.C. § 1332(d)(2). Removal is therefore authorized by 28 U.S.C. § 1441.

9.      <u>Covered Class Action</u>. Plaintiff purports to bring a class action on behalf of "[a]ll Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to October 16, 2020," as well as a subclass comprising "[a]ll Class members who suffered direct losses due to unauthorized activity and were not compensated in full by Robinhood for said losses." (Ex. A, Compl. ¶ 33.) This action meets the CAFA definition of a class action, which is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State

---

[1] Nevertheless, all defendants properly named and served in this Action do consent to removal. By signing this removal together, the Robinhood Defendants consent to removal. Because the other defendants, named as Does 1 through 10, are unknown and sued under fictitious names, their consent would not be required even if unanimous consent were required. *Baker v. Wells Fargo Bank, N.A.*, No. 116CV01943LJOEPG, 2017 WL 931879, at *3 (E.D. Cal. Mar. 9, 2017) ("The consent of the remaining defendants, all of whom are unknown or fictitious, was not required for removal, under the plain language of the removal statute.").

statute or rule of judicial procedure[.]" 28 U.S.C. §§ 1332(d)(1)(B), 1453(a) & (b). Moreover, Plaintiff alleges that "approximately 2,000 Robinhood customers were subject to unauthorized use of their accounts." (Ex. A, Compl. ¶ 36.) Accordingly, based on Plaintiff's allegations, the aggregate number of class members is greater than 100 persons for purposes of 28 U.S.C. § 1332(d)(5)(B).

    10.    Diversity. The minimal diversity standard of CAFA is met if any defendant is a citizen of a state different from any member of the putative class of plaintiffs. 28 U.S.C. § 1332(d)(2)(A). As of the date the Complaint was filed in Santa Clara County Superior Court and as of the date of this removal, the Robinhood Defendants are LLCs organized in Delaware. The Robinhood Defendants' principal places of business are in California. For purposes of determining diversity in this CAFA-based removal, therefore, the Robinhood Defendants are considered citizens of Delaware and California. 28 U.S.C. § 1332(d)(10) ("For purposes of this subsection [subsection (d), diversity jurisdiction under CAFA] and section 1453 [removal under CAFA], an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010) (holding that an LLC is an "unincorporated association" within the meaning of § 1332(d)(10) "and therefore is a citizen of the State under whose laws it is organized and the State where it has its principal place of business."); *Ramirez v. Carefusion Res., LLC*, No. 18-CV-2852-BEN-MSB, 2019 WL 2897902, at *1–2 (S.D. Cal. July 5, 2019) (holding, based on § 1332(d)(10), that "for purposes of CAFA," an LLC is a "citizen of the State where it has its principal place of business and the State under whose laws it is organized," and noting that *Ferrell* is consistent with guidance from and within the Ninth Circuit). The putative class here purports to cover citizens anywhere, including states other than California and Delaware. (Compl. ¶ 33.) Because Robinhood has customers in all 50 states, and because the Robinhood Defendants are citizens of only Delaware and California (for diversity purposes), this action satisfies the diversity requirements of CAFA, 28 U.S.C. § 1332(d)(2)(A).

11.     <u>Amount in Controversy—General Standard</u>. Pursuant to 28 U.S.C. § 1332, this Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action" meeting minimal diversity requirements. 28 U.S.C. § 1332(d)(2). As provided in 28 U.S.C. § 1332(d)(6), "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

12.     A defendant's "notice of removal need not contain evidentiary submissions[,] but only plausible allegations" based on "reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (vacating district court order remanding a case where defendant's allegations that the $5,000,000 jurisdictional threshold had been met were based on "reasonable assumptions[,]" even without "evidence") (quotations omitted). A defendant "may simply allege or assert that the jurisdictional threshold has been met" in its removal notice to satisfy the amount in controversy jurisdictional threshold. *Id.* at 964 (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89 (2014)).

13.     <u>Amount in Controversy—Restitution and Damages</u>. Here, the matter in controversy exceeds $5,000,000, based on Plaintiff's allegations. The Complaint seeks to hold the Robinhood Defendants, which Plaintiff describes as providing "a securities trading platform" (Compl. ¶ 3), liable for losses that Robinhood customers allegedly sustained when their accounts were allegedly accessed by unauthorized actors—not by anyone at Robinhood, but by unnamed third parties. (*Id.* ¶ 4.) Plaintiff seeks remedies for eight causes of action in connection with the Robinhood Defendants' alleged conduct: (1) negligence; (2) breach of contract; (3) violation of the California Consumer Privacy Act ("CCPA"); (4) violation of the Customer Records Act ("CRA"); (5) violation of California's Consumer Legal Remedies Act ("CLRA"); (6) violation of the California Constitution's Right to Privacy; (7) violation of the Unfair Competition Law ("UCL"); and (8) violation of the False Advertising Law ("FAL"). (Compl. ¶¶ 42-100.)

14.     While the Robinhood Defendants do not concede that they are liable to Plaintiff or the purported class in any amount, or at all,[2] a reasonable reading of the relief sought in connection with these claims demonstrates that the matter in controversy exceeds the sum or value of $5,000,000 for purposes of removal. Plaintiff alleges that the Robinhood Defendants allegedly "cost Robinhood's customers millions of dollars," and that customers "[a]s a consequence . . . collectively lost millions of dollars." (Compl. ¶¶ 4, 18.) Beyond these allegations of direct costs, Plaintiff also alleges that putative class members suffered "harms and losses" including "the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time . . ., the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed." (Compl. ¶¶ 46, 52.) The Complaint seeks restitution and damages redressing these alleged losses. (Compl. Prayer for Relief ¶¶ 4-5.)

15.     Amount in Controversy—Statutory Damages. In addition to restitution and damages, Plaintiff seeks statutory damages under the CCPA. (Compl. ¶ 58 & Prayer for Relief ¶ 6.) Where alleged violations of the CCPA have been proven and have not been cured, the CCPA authorizes statutory damages between $100 and $750 "per consumer per incident or actual damages, whichever is greater." Cal. Civ. Code § 1798.150(a)(1)(A). Thus, Plaintiff's request for such statutory damages could potentially add hundreds of thousands of dollars to the amount in controversy.

16.     Amount in Controversy—Attorneys' Fees. Plaintiff also seeks an award of attorneys' fees in an unspecified amount. (Compl. ¶¶ 78, 92, 100 & Prayer for Relief ¶ 8.) This request should also be included in determining the amount in controversy. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (reversing remand and holding that "attorneys' fees are at stake in the litigation, and must be included in the amount in controversy").

---

[2] This Notice of Removal is based on the allegations in the Complaint, and is filed subject to and with full reservation of rights. No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, motions, and pleas are expressly reserved.

5

17. <u>Amount in Controversy—Injunctive Relief</u>. Plaintiff also seeks wide-ranging injunctive relief. While Plaintiff does not specify exactly what he requests, the Complaint's description of the injunctive relief sought includes an injunction against the Robinhood Defendants "continuing the unlawful practices as set forth herein, including but not limited to making ongoing false representations regarding the nature and quality of their data security" and requiring the Robinhood Defendants to "fully compensate customer losses due to unauthorized use." (Compl. Prayer for Relief ¶ 3.) The "value of the requested injunctive relief" to the Robinhood Defendants or the putative class should also be considered in evaluating the amount in controversy. *See*, *e.g.*, *Platt v. Moore*, No. CV-16-08262-PCT-BSB, 2019 WL 10248681, at *12 (D. Ariz. Feb. 26, 2019) (citing *Int'l Padi, Inc. v. Diverlink*, Nos. 03-56478, 03-56788, 2005 WL 1635347, at *1 (9th Cir. July 13, 2005) (denying motion for remand)); *Lokey v. CVS Pharmacy, Inc.*, No. 20-CV-04782-LB, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) (noting that "[i]t is proper under CAFA to consider the defendant's cost of compliance with an injunction just as it is proper to consider the plaintiff's benefit from the injunction"). The significant costs of the wide-ranging injunctive relief Plaintiff seeks in the Complaint must also be considered in evaluating the amount in controversy.

18. Regardless of whether Plaintiff is entitled to any of the requested relief—which the Robinhood Defendants dispute—Plaintiff's requests for relief consisting of compensatory damages and restitution, statutory damages, attorneys' fees, and injunctive relief, taken together, satisfy the amount in controversy requirement for removal. *See*, *e.g.*, *Rahmatullah v. Charter Commc'ns, LLC*, No. EDCV20354PSGSPX, 2020 WL 4014746, at *5 (C.D. Cal. July 15, 2020) (denying motion to remand) (noting that the amount in controversy "reflects the maximum recovery [a] plaintiff could reasonably recover" inclusive of "all amounts at stake" regardless of "whatever the likelihood that [the plaintiff] will actually recover them" (citation omitted and emphasis amended)). All of the forms of relief Plaintiff seeks, taken together, satisfy the $5 million amount in controversy requirement under 28 U.S.C. § 1332(d).

19. <u>No CAFA Exclusions</u>. Defendants are not aware of any exclusion to removal jurisdiction recognized by 28 U.S.C. § 1332(d) that applies in this action.

6

1    Accordingly, the Robinhood Defendants respectfully submit that this action is properly

2 removed pursuant to the Class Action Fairness Act.

3

4 Dated:        February 9, 2021                    TIFFANY CHEUNG
                                                    MORRISON & FOERSTER LLP
5

6                                                   By: */s/ Tiffany Cheung*
                                                        Tiffany Cheung
7

8                                                   Attorneys for Defendants
                                                    ROBINHOOD FINANCIAL LLC
9                                                   ROBINHOOD SECURITIES, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT A

SUM-100

## SUMMONS
### *(CITACION JUDICIAL)*

E-FILED FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
1/8/2021 2:47 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV375167
Reviewed By: R. Walker
Envelope: 5606498

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Robinhood Financial LLC; Robinhood Securities, LLC; and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Siddharth Mehta, individually and on behalf of other similarly situated individuals

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
191 North First Street, San Jose, California 95113

*(Número del Caso):*
21CV375167

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kevin Osborne, Erickson Kramer Osborne LLP, 182 Howard St. #736, San Francisco, California 94105

| DATE:<br>*(Fecha)* 1/8/2021 2:47 PM | Clerk of Court | Clerk, by<br>*(Secretario)* R. Walker | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: Robinhood Securities, LLC

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☒ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

[ Print this form ]    [ Save this form ]    [ Clear this form ]

## CIVIL LAWSUIT NOTICE

**ATTACHMENT CV-5012**
# 21CV375167

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: _____

<div style="border:1px solid;">PLEASE READ THIS ENTIRE FORM</div>

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   **Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

*RULES AND FORMS:*   You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):*   You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

   *You or your attorney must appear at the CMC.*  You may ask to appear by telephone – see Local Civil Rule 8.

---

Your Case Management Judge is:  **Hon. Sunil R. Kulkarni**   Department:  **1**

The 1st CMC is scheduled for:  (Completed by Clerk of Court)

   Date: **5/6/21**   Time: **2:30 pm**   in Department: **1**

The next CMC is scheduled for:  (Completed by party if the 1st CMC was continued or has passed)

   Date: _____   Time: _____   in Department: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*   If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kevin Osborne, State Bar No. 261367<br>Erickson Kramer Osborne LLP<br>182 Howard St. #736<br>San Francisco CA 94105<br>   TELEPHONE NO.: 415-635-0631    FAX NO. *(Optional)*: 415-559-8088<br>ATTORNEY FOR *(Name)*: Plaintiff Siddharth Mehta | **Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 1/8/2021 2:47 PM<br>Reviewed By: R. Walker<br>Case #21CV375167<br>Envelope: 5606498** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Downtown Superior Courthouse

CASE NAME:
Mehta v. Robinhood Financial LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000) | [ ] Counter   [x] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | **21CV375167** |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: Eight
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: January 8, 2021

Kevin Osborne
_____
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1.  This information will be used to compile statistics about the types and numbers of cases filed.  You must complete items 1 through 6 on the sheet.  In item 1, you must check **one** box for the case type that best describes the case.  If the case fits both a general and a more specific type of case listed in item 1, check the more specific one.  If the case has multiple causes of action, check the box that best indicates the **primary** cause of action.  To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below.  A cover sheet must be filed only with your initial paper.  Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit.  A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading.  A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |

E-FILED
1/8/2021 2:47 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
21CV375167
Reviewed By: R. Walker

Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
**Erickson Kramer Osborne LLP**
182 Howard Street # 736
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiff*

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SANTA CLARA
CIVIL UNLIMITED

| | |
|---|---|
| SIDDHARTH MEHTA, individually and on behalf of other similarly situated individuals,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ROBINHOOD FINANCIAL LLC; ROBINHOOD SECURITIES, LLC; and DOES 1-10<br><br>　　　　Defendants. | Case No. **21CV375167**<br><br>CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL<br><br>COMPLAINT FOR<br>1.　Negligence;<br>2.　Breach of Contract;<br>3.　Violation of the California Consumer Privacy Act (Civ. Code, § 1798.150);<br>4.　Violation of the Customer Records Act (Civ. Code, § 1798.82);<br>5.　Violation of the Consumers Legal Remedies Act (Civ. Code, §§ 1750, *et seq.*);<br>6.　Violation of the Right to Privacy (Cal. Const., art. I, § 1); and<br>7.　Violation of the Unfair Competition Law (Bus. & Prof. Code, §§ 17200, *et seq.*)<br>8.　Violation of the False Advertising Law (Bus. & Prof. Code, §§ 17500, *et seq.*) |

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

1

Plaintiff SIDDHARTH MEHTA, on behalf of himself and others similarly situated ("the Class"), bring this action against Defendants ROBINHOOD FINANCIAL LLC ("Robinhood Financial") and ROBINHOOD SECURITIES, LLC ("Robinhood Securities") (collectively, "Robinhood" or "Defendants") for actual damages suffered by Plaintiff and the Class, statutory damages, penalties, restitution, injunctive relief, and for other recovery specified herein for harm caused by Robinhood's negligent conduct, breach of contract, and violations of the California Consumer Privacy Act, Customer Records Act, Consumers Legal Remedies Act, the California Constitution's right to privacy, the Unfair Competition Law, and the False Advertising Law. Plaintiff alleges upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record, as follows:

## I.  INTRODUCTION

1.      Data security has taken center stage as global losses from cybercrime approach $1 trillion. The global pandemic of 2020 has only made consumers and organizations more vulnerable to cyber attacks and increased the importance of strong safeguards against cybercriminals.

2.      Financial institutions are leading targets for cyber attacks. The explosion of "FinTech," digital financial services, and mobile banking has created new pressure points for criminals to exploit. Responsible financial institutions have reacted by implementing better training practices, increasing their security workforces, and increasing investment in new and more secure technologies.

3.      Robinhood brands itself as a securities trading platform designed for millennial users. In just over five years, it has attracted more than thirteen million customers through youth-focused marketing, a video game-like interface, and claims it enables "investing for everyone." While the company has narrowly focused on break-neck growth, it has neglected to build out its security infrastructure to adequately protect its customers' sensitive information.

4.      In the summer and fall of 2020, and perhaps even earlier, unauthorized users accessed approximately 2,000 Robinhood customers' accounts. Upon accessing the accounts, these users obtained Robinhood's customers' sensitive personal and financial information and looted funds.

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

Panicked customers who saw their accounts draining attempted to contact Robinhood by email, as Robinhood offers no phone number for customer service, and were left waiting for days or weeks while more funds were depleted from their accounts. The breach cost Robinhood's customers millions of dollars.

5.     Rather than freezing the accounts and alerting its customers of the breach right away as required under California law, Robinhood said and did nothing. Only when news outlets reported on the breach did Robinhood acknowledge it had occurred.

6.     Customers have since asked Robinhood to make good on the promise it makes to cover 100 percent of any losses caused by unauthorized activity. While the company has compensated some individuals, it has refused others' requests without explanation.

## II.  FACTUAL ALLEGATIONS

### Robinhood's Reckless and Unsupportable Growth Model

7.     Robinhood was founded in 2013 as a self-directed online securities trading platform. In 2015, it launched its retail brokerage business, positioning itself as a millennial-friendly broker-dealer with products designed to "democratize" trading. By 2018, it was one of the largest retail broker-dealers in the United States. As of May 2020, Robinhood serviced the accounts of approximately 13 million investors.



8.     The marketing that allowed Robinhood's exponential growth involved targeting younger individuals with little, if any, investing experience. The platform relentlessly encourages users to engage constantly, utilizing a strategy referred to as "gamification." For example, in 2019, the company used a promotion where customers who engaged the platform daily were rewarded

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

3

with a position at the front of the line when a new product was released. While claiming it does not make trading recommendations, Robinhood sends customers push notifications listing the most "popular" securities traded on its platform. When customers execute trades, the interface rewards them with a shower of colorful confetti. The median age of its investors has been reported to be as low as 31 years old and many, if not most, report having limited or no prior investing experience. In December 2020, the Massachusetts Securities Division Enforcement Section charged Robinhood with violations of state securities laws for these marketing strategies.

9.      Robinhood exploits its customers' naivete. The company offers its investors what it calls "commission-free" trading, allowing customers to place unlimited orders to buy and sell securities without paying trading commissions. The company fails to disclose, however, that it generates most of its revenue from direct payments it receives from third-party firms in so-called "dark pools." Unbeknownst to Robinhood's unsuspecting and often unsophisticated customers, these third-party firms execute customers' trades at inferior prices, costing customers substantial sums. When the practice was discovered, the United States Securities and Exchange Commission charged Robinhood with failure to disclose the revenue source to its customers and a breach of the duty of best execution required under United States securities laws and regulations.

10.     Robinhood's growth-at-all-costs model recklessly fails to serve its customers' interests. At multiple points in 2020, as the market soared, the number of Robinhood's customers increased by an estimated 30 percent. During this period, Robinhood's online interface became unstable and incapable of handling the rapid numbers of customers' demand for activity, suffering more than 70 outages. Its customers were unable to benefit from the market's historic gains. The company admitted these outages were the result of insufficient infrastructure.

**Robinhood Violates Its Promise and Its Duty to Safeguard Customer Data and Assets**

11.     When customers open investment accounts with Robinhood, they authorize Robinhood access to one or more bank accounts and deposit funds directly into a Robinhood investment account of which Robinhood is the custodian.

12.     Customers additionally grant Robinhood access to sensitive personal and financial information, including but not limited to their names, social security numbers, dates of birth,

1  mailing addresses, telephone numbers, bank account numbers, details of their income, bank

2  account balances, financial transaction histories, credit histories, tax information, and credit

3  scores.

4  13.    Customers also permit Robinhood access to information regarding their whereabouts

5  through the devices they use to access the Robinhood platform, including but not limited to cell

6  phone and mobile computing device location data, IP addresses, and Wi-Fi network data.

7  14.    Robinhood's United States Privacy Policy claims, "we take privacy and security

8  seriously," and the company advertises itself as highly diligent in safeguarding its customers'

9  accounts. In fact, the company guarantees full reimbursement for losses caused by unauthorized

10 account activity. According to claims on the company's website,

11        We're committed to keeping your account safe, so we offer robust security tools
          and a promise to fully reimburse direct losses that happen due to unauthorized
12        activity that is not your fault.

13

14        # Dedicated to maintaining

15        # the highest security

16        # standards.

17

18        **We will cover 100% of direct losses due to unauthorized activity in your accounts.**

19

20 This is one of the "6 Commitments" Robinhood lists on its website, claiming, "these are the

21 commitments you can always expect from us."

22 15.    Robinhood does not keep its promise to maintain the highest security standards. Its

23 system lacks simple and almost universal security measures used by other broker-dealer online

24 systems, such as verifying changes in bank account links. Such systems prevent unauthorized

25 users from transferring customer funds from an account without substantial verification.

26 16.    On July 20, 2019, Robinhood admitted to customers it had been storing their user

27 credentials in what is known as "cleartext," an unencrypted form readable to anyone with access

28

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

1   to the data. Storing this sensitive information in an encrypted form has been the industry standard

2   for broker-dealers for more than ten years.

3   17.   Robinhood's failure to use these and other industry-standard security measures needlessly

4   exposes customers to the risk of data and identity theft and is the result of Robinhood's growth-

5   before-security model.

**Unauthorized Users Hacked and Looted Robinhood Customer Accounts**

7   18.   From on or before July 22, 2020 until on or about October 5, 2020, Robinhood

8   negligently and illegally allowed unauthorized third-party access to approximately 2,000

9   customers' personal and financial information, access to the funds customers had deposited into

10   their Robinhood accounts, and control over securities positions customers purchased through

11   Robinhood. These unauthorized users viewed, used, manipulated, exfiltrated, and stole this

12   personal and financial information and took control over customers' accounts so as to rob them

13   of money and valuable securities and harm their privacy. As a consequence of this negligent and

14   illegal conduct, Robinhood's customers collectively lost millions of dollars.

15   19.   Robinhood neglected to inform customers of the unauthorized activity for months. Only

16   after reports were leaked by anonymous sources to news outlets did Robinhood disclose that a

17   widespread breach had occurred.

18   20.   On October 16, 2020, after the breaches had been widely reported by news outlets,

19   Robinhood sent push notifications to customers encouraging them to enable two-factor

20   authentication, which is a security setting requiring the use of a password combined with a

21   temporary passcode sent to a mobile device to log on. This was the first clear communication

22   about the breach Robinhood made to affected customers. Many of those who were affected by

23   the breach, however, already had two-factor identification enabled when the unauthorized access

24   occurred.

25   21.   In its statements to the media, Robinhood refused to accept fault for the breach, insisting

26   that any customer losses were caused by identity theft originating outside the Robinhood system,

27   maintaining, "[t]his was not stemming from a breach of Robinhood's systems."

28

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

1    22.    When customers realized their accounts had been breached, many immediately attempted
2    to contact Robinhood to determine the source of the breach or request recovery of their funds.
3    They found Robinhood was not designed to receive their communications. There was no phone
4    number to contact a Robinhood representative listed in any materials Robinhood provided or
5    made available to its customers. Instead, customers were directed to email Robinhood with the
6    caveat that a response could take up to three business days. In many cases, customers waited
7    weeks for a response. When Robinhood finally responded to customer emails, they received
8    boilerplate responses claiming:

9    > We always respond to customers reporting fraudulent or suspicious activity and
10   > work as quickly as possible to complete investigations. The security of Robinhood
     > customer accounts is a top priority and something we take very seriously.

11   While customers waited for Robinhood to respond, the unauthorized users to whom Robinhood
12   allowed access continued to loot their accounts.

13   23.    Contrary to Robinhood's "commitment" to cover losses caused by unauthorized use,
14   Robinhood has failed to compensate millions of dollars of losses claimed by those affected by
15   the breach. Without explanation, Robinhood emailed customers who lost thousands of dollars in
16   the breach informing them they would not be compensated for their losses.

17   24.    In addition to the futile attempts to remedy the issue with Robinhood directly, customers
18   have spent substantial amounts of their time attempting to remedy the losses and securing other
19   assets and information from further losses consequent to the breach.

20   ## III. JURISDICTION AND VENUE

21   25.    This action is brought as a class action for common law negligence and breach of
22   contract and under the California Consumer Privacy Act ("CCPA") (Civ. Code, § 1798.150),
23   Customer Records Act ("CRA") (Civ. Code, § 1798.82), Consumers Legal Remedies Act
24   ("CLRA") (Civ. Code, §§ 1750, *et seq.*), the California Constitution's right to privacy (Cal.
25   Const., art. I, § 1), the Unfair Competition Law ("UCL") (Bus. & Prof. Code, §§ 17200, *et seq.*),
26   and the False Advertising Law ("FAL") (Bus. & Prof. Code, §§ 17500, *et seq.*) for monetary and
27   equitable relief due to Robinhood's negligent, unlawful, and unfair conduct.
28

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

26.     This Court has personal jurisdiction over Robinhood because Robinhood does business in the state of California and the claims asserted herein arise from conduct occurring in California.

27.     Venue is proper in this Court because, *inter alia*, Robinhood engages and performs business activities in and throughout Santa Clara County. By its own terms of services, Robinhood identifies Santa Clara County as the venue for all legal actions against it. Many of the acts committed by Robinhood complained of herein occurred in this judicial district.

## IV.  **THE PARTIES**

28.     Plaintiff Siddharth Mehta is, and at all relevant times was, a resident of the state of California. In 2020, Mehta held an investment account with Robinhood and was a purchaser of its services, engaging in securities investment through the Robinhood platform. Mehta relied on and expected Robinhood to take reasonable care with the information he provided Robinhood so that he could use the platform and, based on this reliance and expectation, allowed Robinhood direct access to funds in his bank account and sensitive personal and financial information. Specifically, he provided Robinhood with information including, but not limited to, his name, social security number, date of birth, mailing address, telephone number, savings account number, details of his income, bank account balances, credit history, tax information, and credit score. In addition, Mehta permitted Robinhood access to his location data, IP addresses, Wi-Fi data, and other information from his devices used to determine Mehta's location. Mehta deposited funds directly into an investment account of which Robinhood was custodian. As early as July 22, 2020, and possibly sooner, Robinhood negligently and illegally allowed a third-party access to Mehta's personal and financial information, access to the funds Mehta had deposited into a Robinhood account, and control of securities positions Mehta purchased through Robinhood. As a consequence of this negligent and illegal conduct, Mehta lost tens of thousands of dollars. Robinhood neglected to inform Mehta of this breach and only acknowledged the breach occurred after Mehta confronted Robinhood about the loss of funds 85 days after the initial breach occurred. Mehta has since spent hours of his own time attempting to research and remedy the loss and securing his other assets and information from further breach.

29.     Defendant Robinhood Financial is a corporation engaged in financial services for retail customers, organized and existing under the laws of the State of Delaware, with its principal place of business located at 85 Willow Road in Menlo Park, California. It is a wholly owned subsidiary of Robinhood Markets, Inc. and an affiliate of Defendant Robinhood Securities. It is an "introducing" broker-dealer, offering brokerage services to retail investors and allowing customers to open online accounts and electronically deposit funds.

30.     Defendant Robinhood Securities is a corporation engaged in providing financial services, organized and existing under the laws of the State of Delaware, with its principal place of business located at 85 Willow Road in Menlo Park, California. It is a wholly owned subsidiary of Robinhood Markets, Inc. and an affiliate of Defendant Robinhood Financial. Once a customer creates an account with Robinhood Financial, Robinhood Securities is the custodian of customers' funds and the securities customers purchase. It services customer accounts; executes, clears, and settles customer trades; prepares and distributes customer account statements and trade confirmations; and extends credit to customer margin accounts.

31.     The true names and capacities of Defendants sued in the Complaint under the fictitious names of Does 1 through 10, inclusive, are unknown to Plaintiff who therefore sues such Defendants by such fictitious names.

32.     All the Defendants described above shall collectively be referred to as "Defendants." Whenever reference is made in this complaint to any act of Defendants, such allegation shall mean that each Defendant acted individually and jointly with the other Defendants named in that cause of action. Whenever reference is made in this complaint to any act of any corporate or other business Defendant, such allegation shall mean that such corporation or other business did the acts alleged in the complaint through its officers, directors, employees, agents, and representatives while they were acting within the actual or ostensible scope of their authority. At all relevant times, each of the Defendants has acted as an agent, representative, or employee of each of the other Defendants and has acted within the course and scope of said agency, representation, or employment with respect to the causes of action in this complaint. At all

relevant times, each Defendant has committed the acts, caused others to commit the acts, or permitted others to commit the acts referred to in this complaint.

## V.  CLASS ALLEGATIONS

33.   Plaintiff brings this action to seek monetary and equitable relief as a class action pursuant to Code of Civil Procedure section 382, on behalf of himself and the following Class:

> All Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to October 16, 2020.

34.   Plaintiff further brings this action on behalf of himself and the following Subclass:

> All Class members who suffered direct losses due to unauthorized activity and were not compensated in full by Robinhood for said losses.

35.   Plaintiff reserves the right to amend the Class or Subclass definitions if discovery or further investigation demonstrate that they should be expanded or otherwise modified.

36.   The members of the Class are so numerous that joinder of all members would be impracticable. On information and belief, approximately 2,000 Robinhood customers were subject to unauthorized use of their accounts.

37.   There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

  a.   Whether Robinhood's sub-standard security protocols resulted in a breach of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of its customers' sensitive personal and financial information so as to protect that information;

  b.   Whether Robinhood's sub-standard security protocols resulted in a violation of a contractual obligation to its customers to safeguard their sensitive personal and financial information;

  c.   Whether Robinhood represented to its customers that it maintained the highest level of security and guaranteed 100 percent coverage of losses caused by unauthorized activity when it did not;

  d.   Whether Robinhood's conduct violated California's consumer protection and privacy laws; and

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

e.   Whether, as a result of Robinhood's misconduct, Plaintiff and the Class are entitled to compensatory damages, restitution, penalties, and equitable relief, and, if so, the amount and nature of such relief.

38.    Plaintiff's claims are typical of the claims of the Class. Plaintiff has no interests antagonistic to those of the Class and is not subject to any unique defenses.

39.    Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys experienced in class action and complex litigation.

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

a.   It is economically impractical for members of the Class to prosecute individual actions;

b.   The Class is readily ascertainable and definable;

c.   Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d.   A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

41.    Plaintiff does not anticipate any difficulty in the management of this litigation.

## VI.   CAUSES OF ACTION

### First Cause of Action

### Negligence

42.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

43.    That at said time and place, as aforesaid, the Defendants owed a duty of reasonable care toward Plaintiff and the Class based upon Defendants' relationship to them. Said duty is based upon Defendants' contractual obligations, custom and practice, right to control information and funds in its possession, exercise of control over the information and funds in its possession, authority to control the information and funds in its possession, and the commission of affirmative acts that resulted in said harms and losses. Additionally, said duty is based on the requirements of Civil Code section 1714 requiring all "persons," including Defendants, to act in

a reasonable manner toward others. Additionally, said duty is based on the specific statutory duties imposed on Defendants under Civil Code sections 1798.80, *et seq.*, as financial institutions and businesses operating in the State of California that own or license computerized data and maintain their customers' personal information. Said duty is further based on the specific statutory duties imposed on Defendants under Civil Code sections 1798.100, *et seq.*, as businesses operating in the State of California that either have annual operating revenue above $25 million, collect the personal information of 50,000 or more California residents annually, or derive at least 50 percent of their annual revenue from the sale of personal information of California residents.

44.     Defendants breached said duty by negligently, carelessly, and recklessly collecting, maintaining, and controlling their customers' sensitive personal and financial information and engineering, designing, maintaining, and controlling systems that exposed their customers' sensitive personal and financial information and access to the funds and securities of which Defendants had control and possession to the risk of exposure to unauthorized persons.

45.     Defendants further committed *per se* breaches of said duty by negligently violating the dictates of Civil Code sections 1798.82, *et seq.*, and 1798.100, *et seq.*, and the provisions of the California Constitution enshrining the right to privacy, by failing to inform Plaintiff and the Class of the access to their sensitive personal and financial information by unauthorized persons expeditiously and without delay and failing to adequately safeguard this information from unauthorized access. The provisions of the Civil Code and the California Constitution that Defendants violated were enacted to protect the class of Plaintiff here involved from the type of injury here incurred, namely their right to privacy and the protection of their personal data. At said time and place, Plaintiff and the Class were within the class of persons and consumers who were intended to be protected by Civil Code sections 1798.82, *et seq.*, and 1798.100, *et seq.*

46.     As a direct consequence of the actions as identified above, and the breaches of duties indicated thereby, unauthorized users gained access to, exfiltrated, stole, and gained disclosure of the sensitive personal and financial information of Plaintiff and the Class, access to the funds customers had deposited into their accounts, and control over securities positions customers

1  purchased, causing them harms and losses including but not limited to economic loss, the loss of

2  control over the use of their identity, harm to their constitutional right to privacy, lost time

3  dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their

4  privacy, the need for future expenses and time dedicated to the recovery and protection of further

5  loss, and privacy injuries associated with having their sensitive personal and financial

6  information disclosed.

7  <div align="center">**Second Cause of Action**</div>

8  <div align="center">**Breach of Contract**</div>

9  47.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

10  herein.

11  48.    At all relevant times a contract existed and was in force between Defendants on one hand

12  and Plaintiff and the Class on the other. This contract was written and was supplemented by

13  implied and written terms that existed and were maintained online. Any implied contracts or

14  supplemental terms or conditions of the contract were written by Defendants and published

15  electronically to Plaintiff and the Class online in such a manner and through such conduct so as

16  to create promises on the part of Defendants. These written documents include but are not

17  limited to the "Robinhood Terms & Conditions" (attached hereto as Exhibit 1), the "Robinhood

18  Financial LLC and Robinhood Securities, LLC Customer Agreement" (attached hereto as

19  Exhibit 2), the "Robinhood United States Privacy Policy" (attached hereto as Exhibit 3), and

20  "Our 6 Commitments to You" (attached as Exhibit 4) (all attachments are presented as their most

21  current version and in the form currently available).

22  49.    The contract included written promises and commitments made by Defendants, including

23  but not limited to:

24    "I agree and understand that all disclosures of My non-public personal information
       shall be made in accordance with the terms of the [sic.] this Agreement or the
25    Robinhood    Privacy    Policy    (available    on    the    Website    at
       https://about.robinhood.com/legal/, as applicable. I agree that My consent to
26    sharing non-public personal information will remain in effect until I revoke such
       consent by updating My settings and visibility, which I may do at any time through
27    the App." (Exhibit 1, p. 21.)

28

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL
<div align="center">13</div>

"[T]hese are the commitments you can always expect from [Robinhood]. [...] Dedicated to maintaining the highest security standards. We will cover 100% of direct losses due to unauthorized activity in your accounts. We're committed to keeping your account safe, so we offer robust security tools and a promise to fully reimburse direct losses that happen due to unauthorized activity that is not your fault." (Exhibit 4, p. 3.)

50.     Defendants breached these duties and violated these promises by failing to properly safeguard the sensitive personal and financial information of Plaintiff and the Class; by negligently, carelessly, and recklessly collecting, maintaining, and controlling, this information; by engineering, designing, maintaining, and controlling systems that exposed their customers' sensitive personal and financial information and access to the funds and securities of which Defendants had control and possession to the risk of exposure to unauthorized persons; and by failing to perform on their promise to cover losses due to unauthorized use of and activity in customers' accounts.

51.     At all relevant times and in all relevant ways, Plaintiff and the Class performed their obligations under the contract in question or were excused from performance of such obligations through the unknown and unforeseen conduct of others.

52.     As a direct consequence of the breaches of contract and violations of promises described above, unauthorized users gained access to, exfiltrated, stole, and gained disclosure of the sensitive personal and financial information of Plaintiff and the Class, access to the funds customers had deposited into their accounts, and control over securities positions customers purchased, causing them harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

**Third Cause of Action**

**Violation of the California Consumer Privacy Act**

**(Civ. Code, § 1798.150 ("CCPA"))**

53.     Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

54.     At all relevant times, Defendants were "businesses" under the terms of the CCPA as sole proprietorships, partnerships, limited liability companies, corporations, associations, or other legal entities operating in the State of California that collect consumers' personal information, and that either have annual operating revenue above $25 million, collect the personal information of 50,000 or more California residents annually, or derive at least 50 percent of their annual revenue from the sale of personal information of California residents.

55.     At all relevant times, Plaintiff and the Class were "consumers" under the terms of the CCPA as natural persons as defined in Section 17014 of Title 18 of the California Code of Regulations.

56.     By the acts described above, Defendants violated the CCPA by negligently, carelessly, and recklessly collecting, maintaining, and controlling their customers' sensitive personal and financial information and by engineering, designing, maintaining, and controlling systems that exposed their customers' sensitive personal and financial information of which Defendants had control and possession to the risk of exposure to unauthorized persons, thereby violating their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information. Defendants allowed unauthorized users to view, use, manipulate, exfiltrate, and steal the nonencrypted and nonredacted personal information of Plaintiff and other customers, including their personal and financial information.

57.     Plaintiff has complied with the requirements of Civil Code section 1798.150(b)[1] and attach herewith as Exhibit 5 a true and correct copy of their letter of January 8, 2021, providing

---

[1] Plaintiff presently seeks only individual relief under the CCPA and, upon the expiration of time prescribed by Civil Code section 1798.150(b), will amend this complaint to confirm the Defendants have declined or failed to cure the noticed violations.

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

15

Defendants with written notice of the specific provisions of the CCPA Plaintiff alleges have been violated via certified mail.

58.     As a result of Defendants' violations, Plaintiff and the Class are entitled to all actual and compensatory damages according to proof or statutory damages allowable under the CCPA, whichever are higher, and to such other and further relief as this Court may deem just and proper.

<div align="center">

**Fourth Cause of Action**

**Violation of the Customer Records Act**

**(Civ. Code, § 1798.82 ("CRA"))**

</div>

59.     Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

60.     At all relevant times, Defendants were "businesses" under the terms of the CRA as sole proprietorships, partnerships, corporations, associations, financial institutions, or other groups, operating in the State of California that owned or licensed computerized data that included the personal information of Plaintiff and the Class.

61.     At all relevant times, Plaintiff and the Class were "customers" under the terms of the CRA as natural persons who provided personal information to Defendants for the purpose of purchasing or leasing a product or obtaining a service from Defendants.

62.     By the acts described above, Defendants violated the CRA by allowing unauthorized access to customers' personal and financial information and then failing to inform them when the unauthorized use occurred for weeks or months, and in the case of Plaintiff, for 85 days, thereby failing in their duty to inform their customers of unauthorized access expeditiously and without delay.

63.     As a direct consequence of the actions as identified above, Plaintiff and the Class incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and

1  protection of further loss, and privacy injuries associated with having their sensitive personal and

2  financial information disclosed, that they would not have otherwise lost had Defendants

3  immediately informed them of the unauthorized use.

4  64.    As a result of Defendants' violations, Plaintiff and the Class are entitled to all actual and

5  compensatory damages according to proof, to non-economic injunctive relief allowable under the

6  CRA, and to such other and further relief as this Court may deem just and proper.

7                                  **Fifth Cause of Action**

8                    **Violation of the Consumers Legal Remedies Act**

9                         **(Civ. Code, §§ 1750, *et seq.* ("CLRA"))**

10  65.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

11  herein.

12  66.    At all relevant times, Plaintiff and the Class were "consumers" as under the terms of the

13  CLRA as individuals seeking or acquiring, by purchase or lease, goods or services for personal,

14  family, or household purposes.

15  67.    At all relevant times, Defendants' actions and conduct constituted transactions for the

16  sale or lease of goods or services to consumers under the terms of the CLRA. The securities

17  involved in the unauthorized transactions are "goods" and Defendants' financial and online

18  platform services are "services" under the CLRA.

19  68.    By the acts described above, Defendants violated Civil Code section 1770(a)(5), by the

20  use of untrue or misleading statements and omissions and representing that goods and services

21  had characteristics or benefits they do not have.

22  69.    By the acts described above, Defendants violated Civil Code section 1770(a)(9), by the

23  advertisement of goods and services with the intent not to sell them as advertised.

24  70.    By the acts described above, Defendants violated Civil Code section 1770(a)(14), by

25  representing that engaging on the Robinhood platform conferred the rights of the highest level of

26  data security and a promise of full reimbursement of funds lost due to unauthorized use when

27  Defendants knew such rights were not conferred.

28

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

1   71.     By the acts described above, Defendants violated Civil Code, § 1770(a)(16), by

2   representing that the subject of a transaction had been supplied in accordance with previous

3   representations that engaging on the Robinhood platform conferred the rights of the highest level

4   of data security and a promise of full reimbursement of funds lost due to unauthorized use, when

5   Defendants knew they were not.

6   72.     Defendants knew, or should have known, that their representations and advertisements

7   about the nature of their data security and promise to fully reimburse funds lost due to

8   unauthorized use were false or misleading and were likely to deceive a reasonable consumer. No

9   reasonable consumer would use Defendants' products or engage Defendants' services if they

10  knew Defendants were not taking reasonable measures to safeguard their personal and financial

11  information or if they knew Defendants would not make good on their promise to fully

12  reimburse funds lost due to unauthorized use.

13  73.     Plaintiff has complied with the requirements of Civil Code section 1782[2] and attaches

14  herewith as Exhibit 6 a true and correct copy of his letter of January 8, 2021, providing

15  Defendants with written notice of the specific provisions of the CLRA Plaintiff alleges have been

16  violated via certified mail.

17  74.     Pursuant to Civil Code section 1780(d), attached hereto as Exhibit 7 is a declaration on

18  behalf of Plaintiff showing that this action has been commenced in the proper forum.

19  75.     Defendants generated revenue by way of third-party market makers paying Defendants

20  directly when Defendants' customers executed trades or purchased positions on the Robinhood

21  platform. Plaintiff and the Class paid above-market rates for these third-party market makers'

22  transactions and Defendants were the direct beneficiaries of these payments. Defendants'

23  services were of lesser quality and value than Defendants advertised in that Defendant did not

24  take reasonable measures to safeguard customers' personal and financial information and

25  _____

26  [2] Pursuant to Civil Code section 1782(d), Plaintiff presently seeks only injunctive relief under the

27  CLRA and, upon the expiration of time prescribed by Civil Code section 1782, will amend this
    complaint to confirm the Defendants have declined or failed to correct, repair, replace, or

28  otherwise rectify the good or services in violation and to add claims for actual, punitive, and
    statutory damages, as appropriate.

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL
18

1   Defendants would not make good on their promise to fully reimburse funds lost due to

2   unauthorized use. In reliance on Defendants' misrepresentations about its products and services,

3   Plaintiff and the Class made these above-market rate payments that they would not have made,

4   or would have paid less, but for Defendants' representations.

5   76.   As a direct and proximate consequence of the actions as identified above, Plaintiff and

6   the Class suffered injury in fact, harms, and losses including but not limited to economic loss, the

7   loss of control over the use of their identity, harm to their constitutional right to privacy, lost

8   time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to

9   their privacy, the need for future expenses and time dedicated to the recovery and protection of

10  further loss, and privacy injuries associated with having their sensitive personal and financial

11  information disclosed.

12  77.   Defendants' conduct described herein was malicious, fraudulent, and wanton in that

13  Defendants intentionally and knowingly provided misleading information to Plaintiff and the

14  Class and refused to remedy the breach of their system long after learning of the inadequacy of

15  their data protection measures and the unauthorized use of customers' accounts.

16  78.   As a result of Defendants' violations, Plaintiff and the Class seek a court order enjoining

17  the above-described wrongful acts and practices of Defendants and for restitution and

18  disgorgement. Plaintiff also seeks public injunctive relief as provided for under Civil Code

19  section 1750, in addition to reasonable attorneys' fees and costs pursuant to Civil Code section

20  1780(e), and such other and further relief as this Court may deem just and proper.

21  <center>**Sixth Cause of Action**</center>

22  <center>**Violation of the California Constitution's Right to Privacy**</center>

23  <center>**(Cal. Const., art I, § 1)**</center>

24  79.   Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

25  herein.

26  80.   The California Constitution provides:

27        "All people are by nature free and independent and have inalienable rights. Among
          these are enjoying and defending life and liberty, acquiring, possessing, and
28

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

<center>19</center>

protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.)

81.     Plaintiff and the Class had a legally recognized and protected privacy interest in the personal and financial information provided to and obtained by Defendants, including but not limited to an interest in precluding the dissemination or misuse of this sensitive and confidential information and the misuse of this information for malicious purposes such as the theft of funds and property.

82.     Plaintiff and the Class reasonably expected Defendants would prevent the unauthorized viewing, use, manipulation, exfiltration, theft, and disclosure of their personal and financial information and the unauthorized use of their accounts.

83.     Defendants' conduct described herein resulted in a serious invasion of the privacy of Plaintiff and the Class, as the release of personal and financial information, including but not limited to names, social security numbers, dates of birth, mailing addresses, telephone numbers, bank account numbers, details of income, bank account balances, financial transaction histories, credit histories, tax information, credit scores, cell phone and mobile computing device location data, IP addresses, and Wi-Fi network location data, could highly offend a reasonable individual.

84.     As a direct consequence of the actions as identified above, Plaintiff and the Class suffered harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

### Seventh Cause of Action

### Violation of the Unfair Competition Law

### (Bus. & Prof. Code, §§ 17200, *et seq.* ("UCL"))

85.     Plaintiff realleges and incorporates the above allegations by reference as if set forth fully herein.

86.     By engaging in the above-described unfair business acts and practices, Defendants committed and continue to commit one or more acts of unlawful, unfair, and fraudulent conduct

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

1   within the meaning of the UCL.  These acts and practices constitute a continuing and ongoing

2   unlawful business activity defined by the UCL, and justify the issuance of an injunction,

3   restitution, and other equitable relief pursuant to the UCL.

4   87.    Defendants' acts and practices constitute a continuing and ongoing unlawful business

5   activity defined by the UCL. Defendants failed and continue to fail to implement and maintain

6   reasonable security procedures and practices appropriate to protect the personal information;

7   failed and continue to fail to inform their customers of unauthorized access expeditiously and

8   without delay; and made and continue to make misrepresentations to customers regarding the

9   nature and quality of their data protection and their promise to fully reimburse losses due to

10   unauthorized activity, all in violation of, *inter alia*, the following California laws:

11          a.   Civil Code section 1798.150(a);

12          b.   Civil Code section 1798.82(a);

13          c.   Civil Code section 1770(a)(5);

14          d.   Civil Code section 1770(a)(9);

15          e.   Civil Code section 1770(a)(14);

16          f.   Civil Code section 1770(a)(16); and

17          g.   California Constitution, article I, section 1.

18   88.    Defendants' acts and practices constitute a continuing and ongoing unfair business

19   activity defined by the UCL. Defendants' conduct is contrary to the public welfare as it

20   transgresses civil statutes of the State of California designed to protect individuals' constitutional

21   and statutory right to privacy, violates established public policy, and has been pursued to attain

22   an unjustified monetary advantage for Defendants by creating personal disadvantage and

23   hardship to their customers.  As such, Defendants' business practices and acts have been

24   immoral, unethical, oppressive and unscrupulous and has caused injury to customers far greater

25   than any alleged countervailing benefit.

26   89.    Defendants' acts and practices constitute a continuing and ongoing fraudulent business

27   activity defined by the UCL. Defendants made and continue to make the representations set forth

28   above, including but not limited to specific representations regarding the nature and quality of

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL
21

their data security and their promise to fully reimburse losses due to unauthorized use. These representations, which were and continue to be made on an ongoing basis from at least January 2020 to the present time, were, in fact, false. These false representations were, and continue to be, likely to deceive the public and reasonable consumers. Defendants, at all times when they made these representations, knew them to be false and intended to, and did, induce reliance upon these false representations by Plaintiff and the Class, who reasonably relied upon the aforementioned statements and representations and, as a consequence, suffered economic harms and losses.

90.     Defendants generated revenue by way of third-party market makers paying Defendants directly when Defendants' customers executed trades or purchased positions on the Robinhood platform. Plaintiff and the Class paid above-market rates for these third-party market makers' transactions and Defendants were the direct beneficiaries of these payments. Defendants' services were of lesser quality and value than Defendants advertised in that Defendant did not take reasonable measures to safeguard customers' personal and financial information and Defendants would not make good on their promise to fully reimburse funds lost due to unauthorized use. In reliance on Defendants' misrepresentations about its products and services, Plaintiff and the Class made these above-market rate payments that they would not have made, or would have paid less, but for Defendants' representations.

91.     As a direct and proximate consequence of the actions as identified above, Plaintiff and the Class suffered and continue to suffer harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

92.     Plaintiff seeks an order of this Court awarding restitution and injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*,

1  Code of Civil Procedure section 1021.5, and to such other and further relief as this Court may

2  deem just and proper.

**Eighth Cause of Action**

**Violation of the False Advertising Law**

**(Bus. & Prof. Code, §§ 17500, *et seq.* ("FAL"))**

6  93.    Plaintiff realleges and incorporates the above allegations by reference as if set forth fully

7  herein.

8  94.    The FAL bars advertising which is untrue or misleading.

9  95.    Defendants, with the intent to directly or indirectly perform services, or to induce

10  members of the public to enter into obligations relating thereto, made or disseminated or caused

11  to be made or disseminated before the public, Plaintiff, and the putative class, statements

12  concerning such services, or matters of fact connected with the performance thereof, which were

13  untrue or misleading, and which Defendants knew or in the exercise of reasonable care should

14  have known were untrue or misleading, in violation of Business and Professions Code section

15  17500, *et seq.*

16  96.    Defendants' advertising and marketing asserts facts about their products and services that

17  are untrue and likely to deceive and mislead the public and reasonable consumers. A reasonable

18  person would (a) believe that Defendants' promises concerning the nature and quality of their

19  data security and their promise to reimburse losses due to unauthorized activity are true and

20  accurate; and (b) not be able to uncover on their own that Defendants' assertions are false and

21  misleading.

22  97.    Relying on Defendants' misrepresentations about its products and services, specifically

23  about the quality of their data security protocols and promise to fully reimburse losses due to

24  unauthorized activity, Plaintiff used Defendants' products and engaged Defendants' services. But

25  for Defendants' misrepresentations and omissions, Plaintiff would not have used Defendants'

26  products or engaged Defendants' services.

27  98.    Defendants generated revenue by way of third-party market makers paying Defendants

28  directly when Defendants' customers executed trades or purchased positions on the Robinhood

platform. Plaintiff and the Class paid above-market rates for these third-party market makers' transactions and Defendants were the direct beneficiaries of these payments. Defendants' services were of lesser quality and value than Defendants advertised in that Defendant did not take reasonable measures to safeguard customers' personal and financial information and Defendants would not make good on their promise to fully reimburse funds lost due to unauthorized use. In reliance on Defendants' misrepresentations about its products and services, Plaintiff and the Class made these above-market rate payments that they would not have made, or would have paid less, but for Defendants' representations.

99.    As a direct and proximate result of Defendants' false advertising, Plaintiff suffered injury in fact, and lost money or property including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

100.    Plaintiff seeks an order of this Court awarding restitution and injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure section 1021.5, and to such other and further relief as this Court may deem just and proper.

## VII.  **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class, prays for relief and judgment against Defendants as follows:

1.    For an order certifying the proposed Class and Subclass pursuant to Code of Civil Procedure section 382;

2.    For an order appointing Plaintiff Siddharth Mehta and his counsel to represent the Class and Subclass;

3.    For an order enjoining Robinhood, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL
24

1   claiming to act on their behalf or in concert with them, from continuing the unlawful practices as

2   set forth herein, including but not limited to making ongoing false representations regarding the

3   nature and quality of their data security and from promising to fully compensate customer losses

4   due to unauthorized use;

5   4.      For actual and compensatory damages according to proof pursuant to the Civil Code and

6   all other applicable laws and regulations;

7   5.      For restitution to the extent permitted by applicable law;

8   6.      For civil and statutory penalties available under applicable law;

9   7.      For pre-judgment and post-judgment interest;

10  8.      For an award of attorneys' fees, costs, and expenses as authorized by applicable law; and

11  9.      For such other and further relief as this Court may deem just and proper.

12                    **VIII.   DEMAND FOR JURY TRIAL**

13          Plaintiff, on behalf of himself and the Class, demand a trial by jury on all issues so

14  triable.

15

16  Dated this 8th day of January, 2021.              Erickson Kramer Osborne, LLP

17

18                                                    Kevin Osborne
                                                      Julie Erickson
19                                                    Elizabeth Kramer
                                                      Attorneys for Siddharth Mehta
20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL
                                    25

# Exhibit 1

# Robinhood
# Terms & Conditions

Robinhood Financial LLC ("Robinhood Financial"), a wholly-owned subsidiary of Robinhood Markets, Inc. ("Robinhood Markets"), is a registered broker-dealer and member of FINRA and SIPC that provides online and mobile application-based discount stock brokerage services to self-directed investors.

These Terms and Conditions are in addition to any other agreements between you and Robinhood Financial and Robinhood Markets (collectively, "Robinhood"), including any customer or account agreements and any other agreements that govern your use of software, products, goods, services, content, tools, and information provided by Robinhood.

## General

The Robinhood website and mobile application (collectively, the "Service") may include or make available certain content (the "Content"). Content includes, without limitation: (1) account positions, balances, transactions, confirmations, and order history; (2) general news and information, commentary, research reports, educational material and information and data concerning the financial markets, securities and other subjects; (3) market data[1] such as quotations for securities transactions and/or last sale information for completed securities transactions reported in accordance with federal securities regulations; (4) financial and investment interactive tools, such as alerts or calculators; (5) tax preparation, bill payment and account management tools; (6) company names, logos, product and service names, trade names, trademarks and services marks (collectively, "Marks") owned by Robinhood, and Marks owned by Third Party Providers (defined below); and (7) any other information, content, services, or software. Certain Content is furnished by third parties (each, a "Third-Party Provider" and collectively, the "Third-Party Providers"). Such Content ("Third Party Content") includes, without limitation, any information, content, service or software made available by or through social media websites, blogs, wikis, online conferences, telecasts, podcasts, and other forums (collectively, the "Forums"). Third Party Content may be available through framed areas or through hyperlinks to the Third-Party Providers' websites.

## Acceptance of Terms and Conditions

By using the Service and the Content, you agree to follow and be bound by these Terms and Conditions, including the policies referenced herein. Customers of Robinhood are granted additional levels of access to the website and their relationship with Robinhood is governed by additional agreements and terms of use, such as the Customer Agreement.

## Disclaimer and Limitations of Liability

**The Content and the Service are provided on an "as is" and "as available" basis. To the fullest extent permitted under applicable law, Robinhood and the Third Party Providers expressly disclaim all warranties of any kind with respect to the Content and the Service, whether express or implied, including, but not limited to, the implied warranties of merchantability, fitness for a particular purpose and non-infringement. Neither Robinhood nor Third Party Providers guarantee the accuracy, timeliness, completeness or usefulness of any Content. You agree to use the Content and the Service only at your own risk.**

**Neither Robinhood nor the Third Party Providers explicitly or implicitly endorse or approve any Third Party Content. Third Party Content is provided for informational purposes only.**

---

[1] Market Data by Xignite provides market data to Robinhood customers.

Rhfv1.420160108

**The Content is not intended to provide financial, legal, tax or investment advice or recommendations. You are solely responsible for determining whether any investment, investment strategy or related transaction is appropriate for you based on your personal investment objectives, financial circumstances and risk tolerance. You should consult your legal or tax professional regarding your specific situation.**

**ROBINHOOD AND THE THIRD PARTY PROVIDERS WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR LOSS OF PROFITS, REVENUE, INCOME, GOODWILL, USE, DATA OR OTHER INTANGIBLE LOSSES (EVEN IF ROBINHOOD OR ANY THIRD PARTY PROVIDER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), RESULTING FROM: (1) THE USE OF OR THE INABILITY TO USE THE CONTENT OR THE SERVICE; (2) THE COST OF PROCUREMENT OF SUBSTITUTE GOODS AND SERVICES RESULTING FROM ANY GOODS, DATA, INFORMATION OR SERVICES PURCHASED OR OBTAINED OR MESSAGES RECEIVED OR TRANSACTIONS ENTERED INTO, THROUGH OR FROM THE SERVICE; (3) ACCESS TO OR ALTERATION OF YOUR ACCOUNT, TRANSMISSIONS OR DATA DUE TO YOUR CONDUCT, INACTION OR NEGLIGENCE; OR (4) ANY OTHER MATTER RELATING TO THE CONTENT OR THE SERVICE.**

### No Recommendations or Investment Advice

Robinhood Financial provides self-directed investors with discount brokerage services, and does not make recommendations or offer investment advice of any kind. You are solely responsible for evaluating the merits and risks associated with the use of any Content provided through the Service before making any decisions based on such Content. You agree not to hold Robinhood or any Third-Party Provider liable for any possible claim for damages arising from any decision you make based on the Content or other information made available to you through the Service or any Third-Party Provider websites. Past performance data should not be construed as indicative of future results.

### U.S. Residents Only

The Content and the Service are intended for United States residents only. They shall not be considered a solicitation to any person in any jurisdiction where such solicitation would be illegal.

### Content

Content posted on the Service is published as of its stated date or, if no date is stated, the date of first posting. Neither Robinhood nor the Third-Party Providers have undertaken any duty to update any such information.

Robinhood does not prepare, edit, or endorse Third Party Content. Robinhood does not guarantee the accuracy, timeliness, completeness or usefulness of Third Party Content, and is not responsible or liable for any content, advertising, products, or other materials on or available from third party sites.

You will not hold Robinhood and/or any Third-Party Provider liable in any way for (a) any inaccuracy of, error or delay in, or omission of the Content; or (b) any loss or damage arising from or occasioned by i) any error or delay in the transmission of such Content; ii) interruption in any such Content due either to any negligent act or omission by any party to any "force majeure" (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction), or iii) to any other cause beyond the reasonable control of Robinhood and/or Third-Party Provider, or iv) non-performance.

Any price quotes may be delayed 20 minutes or longer, according to the rules and regulations applicable to exchanges and Third Party Providers. Neither Robinhood nor the Third-Party Providers make any representations, warranties or other guarantees as to the accuracy or timeliness of any price quotes. Neither Robinhood nor the Third-Party Providers make any representations, warranties or other guarantees as to the present or future value or suitability of any sale, trade or other transaction involving any particular security or any other investment.

Content is provided exclusively for personal and noncommercial access and use. No part of the Service or Content may be copied, reproduced, republished, uploaded, posted, publicly displayed, encoded, translated, transmitted or distributed in any way (including "mirroring") to any other computer, server, web site or other medium for publication or distribution or for any commercial enterprise, without Robinhood's express prior written consent.

You acknowledge that Robinhood is the sole owner of Robinhood Marks and that other Marks are the property of their respective owners. You agree that you will not use any Marks for any purpose without the prior express written consent of the respective owners.

### Termination; Modification

You agree that, without notice, Robinhood may terminate these Terms and Conditions, or suspend your access to the Service or the Content, with or without cause at any time and effective immediately. These Terms and Conditions will terminate immediately without notice from Robinhood if you, in Robinhood's sole discretion, fail to comply with any provision of these Terms and Conditions. Robinhood shall not be liable to you or any third party for the termination or suspension of the Service or the Content, or any claims related to such termination or suspension.

Robinhood and/or the Third-Party Providers may discontinue or modify the Content, or any portion thereof, at any time. You release and agree to indemnify and hold harmless Robinhood, and the Third-Party Providers, for any loss or damages arising from or relating to such discontinuation or modification.

### Communications

By using the Service or the Content, you consent to any form of recording and retention of any communication, information and data exchanged between you and Robinhood or its representatives or agents.

All communications made at or through the Forums are public. Neither Robinhood nor the Third-Party Providers screen, review, approve or endorse any Third Party Content available on or through the Forums. Reliance on any Third Party Content available on or through the Forums is at your own risk. When discussing a particular company, stock or security in the Forums, you agree to reveal any ownership interest in such company, stock or security. Without limitation, you agree not to do any of the following:

a) upload, post, transmit or otherwise make available any Content that is unlawful, harmful, threatening, abusive, harassing, tortuous, defamatory, vulgar, obscene, libelous, invasive of another's privacy (including, but not limited to, any address, email, phone number, or any other contact information without the written consent of the owner of such information), hateful, or racially, ethnically or otherwise objectionable;

b) harm minors in any way;

c) impersonate any person or entity, including, but not limited to, (i) a Robinhood or Third-Party Provider manager, employee, agent, or representative or (ii) forum leader, guide or host;

d) falsely state or otherwise misrepresent your affiliation with any person or entity;

e) forge headers or otherwise manipulate identifiers in order to disguise the origin of any material;

f) upload, post or otherwise transmit any material that you do not have a right to transmit under any law or under contractual or fiduciary relationships (such as inside information, proprietary and

Rhfv1.420160108

confidential information learned or disclosed as part of employment relationships or under nondisclosure agreements);

g)  upload, post or otherwise transmit any material that infringes any patent, trademark, trade secret, copyright, rights of privacy or publicity, or other proprietary rights of any party;

h)  upload, post, or transmit unsolicited commercial email or "SPAM," including, but not limited to, unethical marketing, advertising, or any other practice that is in any way connected with SPAM, such as:  (1) sending mass email to recipients who haven't requested email from you or with a fake return address; (2) promoting a site with inappropriate links, titles, or descriptions; or (3) promoting any site by posting multiple submissions in forums that are identical;

i)  upload, post or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment;

j)  interfere with or disrupt the Service or servers or networks connected to the Service, or disobey any requirements, procedures, policies or regulations of networks connected to the Service;

k)  intentionally or unintentionally violate any applicable local, state, national or international law, including, but not limited to, regulations promulgated by the U.S. Securities and Exchange Commission, any rules of any national or other securities exchange, and any regulations having the force of law;

l)  "stalk" or otherwise harass another;

m)  collect or store personal data about other users of the Service;

n)  promote or provide instructional information about illegal activities, promote physical harm or injury against any group or individual, or promote any act of cruelty;

o)  promote, offer for sale or sell any security or item, good or service that i) violates any applicable federal, state, or local law or regulation, ii) you do not have full power and authority under all relevant laws and regulations to offer and sell, including all necessary licenses and authorizations, or iii) Robinhood or the Third-Party Providers determine, in their sole discretion, is inappropriate for sale;

p)  use the Forums as a forwarding service to another website; or

q)  access or otherwise use the Forums in any unlawful manner, for any unlawful purpose or in violation of these Terms and Conditions.

## External Links

Robinhood and/or the Third-Party Providers may provide links to other websites or resources.  Because neither Robinhood or the Third-Party Providers have any control over such sites and resources, you acknowledge and agree that neither Robinhood nor the Third Party Providers are responsible for the availability of such external sites or resources.  Robinhood and the Third Party Providers do not endorse and are not liable for any content, advertising, products, or other materials on or available through such sites or resources.  You further acknowledge and agree that neither Robinhood nor the Third Party Providers shall be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with use of or reliance on any such content, goods or services available on or through any such site or resource.

## Applicable Policies

In addition to these Terms and Conditions, your access to and use of the Content and the Service is subject to Robinhood's then-current policies relating to the Content and the Service, including, without limitation, the Robinhood Privacy Policy available on the Service.  You agree to be bound by these policies and all other Robinhood policies applicable to the access and use of the Content and the Service.

By using the Service, you are consenting to have your personal data transferred to and processed by Robinhood and its affiliates. As part of providing you the Service, Robinhood may need to provide you with certain communications, such as service announcements and administrative messages.  These communications are considered part of the Service, which you may not be able to opt-out from receiving.

Rhfv1.420160108

## Indemnification

You will indemnify and hold harmless Robinhood and the Third Party Providers, and the officers, directors, agents, partners, employees, licensors, distributors, and representatives of Robinhood and the Third Party Providers, from and against any and all claims, demands, actions, causes of action, suits, proceedings, losses, damages, costs, and expenses, including reasonable attorneys' fees, arising from or relating to your access and/or use of, or interaction with the Content (including, without limitation, Third Party Content), or any act, error, or omission of your use of your account or any user of your account, in connection therewith, including, but not limited to, matters relating to incorrect, incomplete, or misleading information; libel; invasion of privacy; infringement of a copyright, trade name, trademark, service mark, or other intellectual property; any defective product or any injury or damage to person or property caused by any products sold or otherwise distributed through or in connection with the Service; or violation of any applicable law.

## Revisions

Robinhood may at any time revise these Terms and Conditions by updating this document. You agree to be bound by subsequent revisions and agree to review these Terms and Conditions periodically for changes. The most updated version of this document will be available for your review under the "Robinhood Terms and Conditions" link that appears on the Robinhood website and mobile application.

## Applicable Law and Venue; Severability

You agree that these Terms and Conditions shall be governed by and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law. Any legal action or proceeding arising under these Terms and Conditions will be brought exclusively in courts located in Santa Clara County, California, and you hereby irrevocably consent to the personal jurisdiction and venue therein. If any provision of these Terms and Conditions is deemed unlawful, void or for any reason unenforceable, then that provision will be deemed severable from these Terms and Conditions and will not affect the validity and enforceability of the remaining provisions.

Rhfv1.420160108

# Exhibit 2

Revised December 30, 2020

**Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement**

In consideration of Robinhood Financial LLC, Robinhood Securities, LLC, and their agents and assigns (collectively, "Robinhood") opening one or more accounts on my behalf ("My Account(s)" or the "Account(s)") for the purchase, sale or carrying of securities or contracts relating thereto and/or the borrowing of funds, which transactions are cleared through Robinhood Securities, I represent and agree with respect to all Accounts, whether margin or cash, to the terms set forth below (the "Agreement"). When used in this Agreement, the words "I", "Me", "My", "We", or "Us" mean the owner(s) of the Account. For purposes of this Agreement, Business Days are Monday through Friday, excluding federal holidays. Any references to "days" found in this Agreement are calendar days unless indicated otherwise.

**I UNDERSTAND THAT THE TERMS AND CONDITIONS OF THIS AGREEMENT GOVERN ALL ASPECTS OF MY RELATIONSHIP WITH ROBINHOOD REGARDING MY ACCOUNTS. I WILL CAREFULLY READ, UNDERSTAND AND ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT BEFORE I CLICK "SUBMIT APPLICATION" OR OTHER SIMILARLY WORDED BUTTON. IF I HAVE ANY QUESTIONS ABOUT ANY OF THE PROVISIONS IN THIS AGREEMENT, I WILL EMAIL HELP@ROBINHOOD.COM. I UNDERSTAND THAT CLICKING "SUBMIT APPLICATION" IS THE LEGAL EQUIVALENT OF MY MANUALLY SIGNING THIS AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. BY ENTERING INTO THIS AGREEMENT, I ACKNOWLEDGE RECEIPT OF THE ROBINHOOD PRIVACY POLICY AND PRIVACY AND SECURITY STATEMENT. I UNDERSTAND THAT THIS AGREEMENT MAY BE AMENDED FROM TIME TO TIME BY ROBINHOOD, WITH REVISED TERMS POSTED ON THE ROBINHOOD WEBSITE. I AGREE TO CHECK FOR UPDATES TO THIS AGREEMENT. I UNDERSTAND THAT BY CONTINUING TO MAINTAIN MY SECURITIES BROKERAGE ACCOUNT WITHOUT OBJECTING TO ANY REVISED TERMS OF THIS AGREEMENT, I AM ACCEPTING THE TERMS OF THE REVISED AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. IF I REQUEST OTHER SERVICES PROVIDED BY ROBINHOOD THAT REQUIRE ME TO AGREE TO SPECIFIC TERMS AND CONDITIONS ELECTRONICALLY (THROUGH CLICKS OR OTHER ACTIONS) OR OTHERWISE, SUCH TERMS AND CONDITIONS WILL BE DEEMED AN AMENDMENT AND WILL BE INCORPORATED INTO AND MADE PART OF THIS AGREEMENT. I ALSO UNDERSTAND THAT BY CLICKING "SUBMIT APPLICATION" I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 38 HEREIN.**

## 1. Capacity and Status.

If an individual, I am of legal age under the laws of the state where I reside and authorized to enter into this Agreement. If an entity, I am duly formed, validly existing and in good standing in My state of organization, have full power and authority to enter and perform this Agreement, and the persons signing the account application are fully authorized to act on My behalf. No person, except Myself, has any interest in the Account opened pursuant to this Agreement. I acknowledge that unless Robinhood receives written objection from Me, Robinhood may provide My name, address, and securities positions to requesting companies in which I hold securities. Except as otherwise disclosed to Robinhood in writing, neither I nor any member of My immediate family is an employee of any exchange, any corporation of which any exchange owns a majority of the capital stock, a member of any exchange or self-regulatory organization, a member of any firm or member corporation registered on any exchange, a bank, trust company, insurance company or any corporation, firm or individual engaged in the business of dealing either as a broker-dealer or as principal in securities. I understand and agree that I am obligated to promptly notify Robinhood in writing if I or a member of My immediate family becomes registered or employed in any of the above-described capacities. Except as otherwise disclosed to Robinhood in writing, I am not a Professional (as defined below). I further agree to promptly notify Robinhood in writing if I am now or if I become a Professional or an officer, director or 10% stockholder of any publicly traded company.

## 2. Market Data.

Robinhood may choose to make certain market data available to Me pursuant to the terms and conditions set forth in this Agreement. By executing this Agreement, I agree to comply with those terms and conditions.

## A. Definitions.

1. "Market Data" means (a) last sale information and quotation information relating to securities that are admitted to dealings on the New York Stock Exchange ("NYSE"), (b) such bond and other equity last sale and quotation information, and such index and other market information, as United States-registered national securities exchanges and national securities associations (each, an "Authorizing SRO") may make available and as the NYSE may from time to time designate as "Market Data"; and (c) all information that derives from any such information.

2. "Nonprofessional" means any natural person who receives market data solely for his/her personal, non- business use and who is not a "Professional." A "Professional" includes an individual who, if working in the United States, is: (i) registered or qualified with the Securities and Exchange Commission (the "SEC"), the Commodity Futures Trading Commission (the "CFTC"), any state securities agency, any securities exchange or association, or any commodities or futures contract market or association; (ii) engaged as an "investment advisor" as that term is defined in Section 202 (a) (11) of the Investment Advisers Act of 1940 (whether or not registered or qualified under that Act), or (iii) employed by a bank or other organization exempt from registration under federal and/or state securities laws to perform functions that would require him or her to be so registered or qualified if he or she were to perform such functions for an organization not so exempt. A person who works outside of the United States will be considered a "Professional" if he or she performs the same functions as someone who would be considered a "Professional" in the United States.

## B. Provisions Applicable to All Users.

1. Proprietary Nature of Data. I understand and acknowledge that each Authorizing SRO and Other Data Disseminator (as defined below) has a proprietary interest in the Market Data that originates on or derives from it or its market(s). I agree not to reproduce, distribute, sell or commercially exploit the Market Data in any manner.

2. Enforcement. I understand and acknowledge that (a) the Authorizing SROs are third-party beneficiaries under this Agreement and (b) the Authorizing SROs or their authorized representative(s) may enforce this Agreement, by legal proceedings or otherwise, against Me or any person that obtains Market Data that is made available pursuant to this Agreement other than as this Agreement contemplates.

3. Data Not Guaranteed. I understand that neither Robinhood nor any Authorizing SRO, other entity whose information is made available over the Authorizing SROs' facilities (an "Other Data Disseminator"), or information processor that assists any Authorizing SRO or Other Data Disseminator in making Market Data available (collectively, the "Disseminating Parties") guarantees the timeliness, sequence, accuracy, completeness, reliability, or content of Market Data or of other market information or messages disseminated to or by any Disseminating Party. I understand that neither Robinhood Financial nor any Disseminating Party guarantees the timeliness, sequence, accuracy, completeness, reliability or content of market information, or messages disseminated to or by any party. I understand that neither Robinhood Financial nor any Disseminating Party warrants that the service provided by any such entity will be uninterrupted or error-free. I further understand that Market Data by Xignite provides market data to Robinhood Financial customers. NEITHER ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, NOR ANY DISSEMINATING PARTY SHALL BE LIABLE IN ANY WAY FOR (A) ANY INACCURACY, ERROR OR DELAY IN, OR OMISSION OF, (I) ANY MARKET DATA, INFORMATION OR MESSAGE, OR (II) THE TRANSMISSION OR DELIVERY OF ANY SUCH DATA, INFORMATION OR MESSAGE; OR (B) ANY LOSS (AS DEFINED IN THIS AGREEMENT) OR DAMAGE ARISING FROM OR OCCASIONED BY (I) ANY SUCH INACCURACY, ERROR, DELAY OR OMISSION, (II) NON-PERFORMANCE OR III) INTERRUPTION IN ANY SUCH MARKET DATA, INFORMATION, OR MESSAGE, WHETHER DUE TO ANY ACT OR OMISSION BY ROBINHOOD FINANCIAL, ANY OF ITS AFFILIATES, THEIR RESPECTIVE OFFICERS OR EMPLOYEES, OR ANY DISSEMINATING PARTY, OR TO ANY "FORCE MAJEURE" (E.G., FLOOD, EXTRAORDINARY WEATHER CONDITIONS, EARTHQUAKE OR OTHER ACT OF GOD, FIRE, WAR, INSURRECTION, RIOT, LABOR DISPUTE, ACCIDENT, ACTION OF GOVERNMENT, OR COMMUNICATIONS OR POWER FAILURE, EQUIPMENT OR SOFTWARE MALFUNCTION) OR ANY OTHER

2020.12

CAUSE BEYOND THE REASONABLE CONTROL OF ROBINHOOD FINANCIAL, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS AND EMPLOYEES, OR ANY DISSEMINATING PARTY.

4. Permitted Use. I shall not furnish Market Data to any other person or entity. If I receive Market Data other than as a Nonprofessional, I shall use Market Data only for My individual use.

5. Dissemination, Discontinuance, or Modification. I understand and acknowledge that, at any time, the Authorizing SROs may discontinue disseminating any category of Market Data, may change or eliminate any transmission method and may change transmission speeds or other signal characteristics. The Authorizing SROs shall not be liable for any resulting liability, loss or damages that may arise therefrom.

6. Duration; Survival. This Section 2 of this Agreement remains in effect for so long as I have the ability to receive Market Data as contemplated by this Section 2. In addition, Sections 2(B)(1)-(3) and the first two sentences of Section 2(B)(7), survive any termination of this Agreement.

7. Miscellaneous. The laws of the State of New York shall govern this Section 2 and it shall be interpreted in accordance with those laws. This Subsection is subject to the Securities Exchange Act of 1934, the rules promulgated under that act, and the joint-industry plans entered into pursuant to that act.

## C. Provisions Applicable to Nonprofessionals.

1. Permitted Receipt. I understand that I may not receive Market Data from Robinhood as a Nonprofessional, and Robinhood may not provide Market Data to Me as a Nonprofessional, unless Robinhood first properly determines that I qualify as a Nonprofessional as defined above and I in fact qualify as a Nonprofessional. I agree that, as a prerequisite to Robinhood Financial qualifying Me as a Nonprofessional, I will provide to Robinhood truthful and accurate information about Me, such as: my occupation, employer, employment position and functions; my use of Market Data; my registration status with any securities agency, exchange, association, or regulatory body, or any commodities or future contract market, association, or regulatory body, whether in the United States or elsewhere; and any compensation of any kind I may receive from any individual or entity for my trading activities, asset management, or investment advice. Except as otherwise declared to Robinhood in writing, by executing this Agreement, I certify that I meet the definition of Nonprofessional as set forth in this Agreement.

2. Permitted Use. If I am a Nonprofessional, I agree to receive Market Data solely for my personal, non-business use.

3. Notification. I shall notify Robinhood promptly in writing of any change in my circumstances that may cause Me to cease to qualify as a Nonprofessional.

## 3. NASDAQ OMX Information.

## A. Definitions.

1. "Information" means certain market data and other data disseminated that has been collected, validated, processed, and recorded by any system NASDAQ OMX has developed for the creation or dissemination of Information or other sources made available for transmission to and receipt from either a distributor such as RHF or from NASDAQ OMX relating to: a) eligible securities or other financial instruments, markets, products, vehicles, indicators, or devices; b) activities of a NASDAQ OMX company; c) other information and data from a NASDAQ OMX company. "Information" also includes any element of Information as used or processed in such a way that the Information can be identified, recalculated or re-engineered from the processed Information or that the processed Information can be used as a substitute for Information.

2. "NASDAQ OMX" means The NASDAQ OMX Group, Inc., a Delaware limited liability company and its subsidiaries and Affiliates (collectively, "NASDAQ OMX").

2020.12

## B. Use of Data.

I understand that I may use the Information only for personal use and not for any business purpose. I may not sell, lease, furnish or otherwise permit or provide access to the Information to any other natural person or entity ("Person") or to any other office or place. I will not engage in the operation of any illegal business use or permit anyone else to use the Information, or any part thereof, for any illegal purpose or violate any NASDAQ OMX or SEC Rule or any FSA rule or other applicable law, rule or regulation. I may not present the Information rendered in any unfair, misleading or discriminatory format. I shall take reasonable security precautions to prevent any Person other than Myself from gaining access to the Information.

## C. Proprietary Data.

I acknowledge and agree that NASDAQ OMX has proprietary rights to the Information that originates on or derives from markets regulated or operated by NASDAQ OMX, and compilation or other rights to Information gathered from other sources. I further acknowledge and agree that NASDAQ OMX's third-party information providers have exclusive proprietary rights to their respective Information. In the event of any misappropriation or misuse by Me or anyone who accesses the Information through Me, NASDAQ OMX or its third-party information providers shall have the right to obtain injunctive relief for its respective materials.

## D. System.

I acknowledge that NASDAQ OMX, in its sole discretion, may from time-to-time make modifications to its system or the Information. Such modifications may require corresponding changes to be made in Robinhood Financial's service. Changes or the failure to make timely changes by Me may sever or affect My access to or use of the Information. I understand that neither NASDAQ OMX nor Robinhood shall be responsible for such effects.

## E. NASDAQ OMX Limitation of Liability.

Except as may otherwise be set forth herein, NASDAQ OMX shall not be liable to Me for indirect, special, punitive, consequential or incidental loss or damage (including, but not limited to, trading losses, lost profits, or other indirect loss or damage) of any nature arising from any cause whatsoever, even if NASDAQ OMX has been advised of the possibility of such damages. NASDAQ OMX shall not be liable to Me for any unavailability, interruption, delay, incompleteness or inaccuracy of the Information. This Section shall not relieve NASDAQ OMX or Me from liability for damages that result from their own gross negligence or willful tortious misconduct or from personal injury or wrongful death claims. I agree that the terms of this Section reflect a reasonable allocation of risk and limitation of liability.

## F. Disclaimers of Warranties.

NASDAQ OMX and its third-party information providers make no warranties of any kind with respect to the Information---express, implied or statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), any implied warranties arising from trade usage, course of dealing, course of performance or the implied warranties of merchantability or fitness for a particular use or purpose or noninfringement.

## G. Termination by NASDAQ OMX.

I acknowledge that NASDAQ OMX, when required to do so in fulfillment of statutory obligations, may by notice to Robinhood unilaterally limit or terminate the right of any or all Persons to receive or use the

2020.12

Information and that Robinhood will comply with any such notice and will terminate or limit the furnishing of the Information.

## 4. Authorization.

I understand that My Account is self-directed. Accordingly, I appoint Robinhood Financial as My agent for the purpose of carrying out My directions to Robinhood Financial in accordance with the terms and conditions of this Agreement and any attendant risks with respect to the purchase or sale of securities. Robinhood Financial is authorized to open or close My Account(s), place and withdraw orders and take such other steps as are reasonable to carry out My directions. All transactions will be effected only on My order or the order of My authorized delegate, except as described in Section 10. I understand Robinhood Financial provides trading and brokerage services through the Robinhood website (the "Website") and the Robinhood mobile application (the "App"). I agree to receive and transmit financial information through such electronic means. My use or My grant of access to My Account to any third party to access information or place transactions in My Account is solely at My risk.

## 5. Customer Representations and Responsibilities.

### A. Self-directed Account.

I understand that My Account is self-directed, and so that I am solely responsible for any and all orders placed in My Account and that all orders entered by Me or on My behalf are unsolicited and based on My own investment decisions or the investment decision of My duly authorized representative or agent. Accordingly, I agree that neither Robinhood nor any of its employees, agents, principals, or representatives:

  1. provide investment advice in connection with this Account;

  2. recommend any security, transaction or order;

  3. solicit orders;

  4. act as a market maker in any security;

  5. make discretionary trades; and

  6. produce or provide first-party research providing a specific investment strategies such as buy, sell or hold recommendations, first-party ratings and/or price targets. To the extent research materials or similar information are available through the App or the Website or the websites of any entity controlled by, controlling, or under common control with Robinhood (such entity, an "Affiliate"), I understand that these materials are intended for informational and educational purposes only and they do not constitute a recommendation to enter into any securities transactions or to engage in any investment strategies.

### B. Information Accuracy.

I: (i) certify that the information contained in this Agreement, the account application, and any other document that I furnish to Robinhood Financial in connection with My Account(s) is complete, true and correct, and acknowledge that knowingly giving false information for the purpose of inducing Robinhood Financial to extend credit is a federal crime; (ii) authorize Robinhood Financial to contact any individual or firm noted herein or on the documents referred to in subsection (i) of this Section and any other normal sources of debit or credit information; (iii) authorize anyone so contacted to furnish such information to Robinhood Financial as Robinhood may request; and (iv) agree that this Agreement, the account application and any other document I furnish in connection with My Account is Robinhood's property, as the case may be. I shall promptly advise Robinhood Financial of any changes to the information in such agreements and documents in writing within ten (10) calendar days. I authorize Robinhood Financial to obtain reports and provide information to others concerning My creditworthiness and business conduct. Upon My request, Robinhood agrees to provide Me a copy of any report so obtained. Robinhood may

retain this Agreement, the Account application, and all other such documents and their respective records at Its sole discretion, whether or not credit is extended.

## C. Risks.

I understand that all investments involve risk, that losses may exceed the principal invested, and that the past performance of a security, industry, sector, market, or financial product does not guarantee future results or returns.

## D. Account Defaults.

I understand that My Account comes with many defaulted service instruction features and preferences. I further understand that I am not required to use these defaulted options or preferences and that once My Account is approved and opened I have the sole discretion to control and adjust such defaulted service preferences that relate to My account.

## E. Knowledge of Account.

I understand that I am solely responsible for knowing the rights and terms for all securities purchased, sold and maintained in My Account including mergers, reorganizations, stock splits, name changes or symbol changes, dividends, option symbols, and option deliverables. I further understand that certain securities may grant Me valuable rights that may expire unless I take specific action. These securities include bonds, convertible securities, warrants, stock rights and securities subject to exchange offers or tenders. I am responsible for knowing all expiration dates, redemption dates, and the circumstances under which rights associated with My securities may be called, cancelled, or modified. Robinhood may, but are not obligated to, notify Me of any upcoming expiration or redemption dates, or take any action on My behalf without My specific instructions except as required by law and the rules of regulatory authorities. I acknowledge that Robinhood may adjust My Account to correct any error. If My Account has an option position on the last trading day prior to expiration, which is one cent or more in the money, Robinhood Financial will generally exercise the option, on My behalf. However, Robinhood Financial reserves the right at Its discretion to close any option position prior to expiration date or any position resulting from the exercising/assignment after option expiration. I will be charged a commission for any such transaction. Robinhood Financial is not obligated to take any of these actions and Robinhood Financial is not liable for Losses should it not take them.

## F. Purchases.

All orders for the purchase of securities given for My Account will be authorized by Me and executed in reliance on My promise that an actual purchase is intended. It is My obligation to pay for purchases immediately or on Robinhood's demand. I understand Robinhood may at any time, in its sole discretion and without prior notice to Me, prohibit or restrict My ability to trade securities. I further agree not to allow any person to trade for My Account unless a trading authorization for that person has been received and approved by Robinhood. Robinhood reserve the right to require full payment in cleared funds prior to the acceptance of any order. In the event that I fail to provide sufficient funds, Robinhood may, at its option and without notice to Me, i) charge a reasonable rate of interest, ii) liquidate the Property subject of the buy order, or iii) sell other Property owned by Me and held in any of My Accounts. Robinhood may also charge any consequential Loss to My Account. For purposes of this Agreement, "Property" shall mean all monies, contracts, investments and options, whether for present or future delivery, and all related distributions, proceeds, products and accessions.

2020.12

## G. Sales/Short Sales.

I promise to deliver all securities sold in My Account and to provide collateral of a type and amount acceptable to Robinhood Financial for all short sales in My Account. Robinhood Financial requires that a security be held in My Account prior to the acceptance of a sell order with respect to such security unless the order is specifically designated as a "short sale." If a security is not held in My Account and a sell order is processed, I must promptly deliver such security to Robinhood Financial for receipt in good deliverable form on or before the settlement date. Any order accepted without negotiable certificates or positions in My Account will be subject, at Robinhood Financial's sole discretion, to cancellation or buy-in. To ensure this will not occur, I agree to only place sell orders for securities owned by Me and held in My Account at the time My order is placed.

Proceeds of a sale will not be paid to Me or released into My Account until Robinhood Financial has received the security in good deliverable form, whether from a transfer agent or from Me and the settlement of the security is complete. If the security is not received on or before settlement date, or as market conditions warrant, Robinhood Financial may in its sole discretion purchase the security on the open market for My Account and may liquidate and close out any and all securities in My Account in order to pay for such purchase. In the event a security is bought in, I will be responsible for all resulting Losses incurred by Robinhood Financial.

I understand that I may execute short sales only in a margin Account and that such execution must comply with applicable short sales rules.

## H. Assistance by Robinhood.

I understand that when I request assistance from Robinhood or its employees in using the investment tools available on the Website or the App, it will be limited to an explanation of the tool's functionality and, if requested by Me, to the entry by Robinhood or its employees of variables provided by Me, and that such assistance does not constitute investment advice, an opinion with respect to the suitability of any transaction, or solicitation of any orders.

## I. No Tax or Legal Advice.

I understand that Robinhood does not provide tax or legal advice.

## J. Discontinuation of Services.

I understand that Robinhood may discontinue My Account and any services related to My Account immediately by providing written notice to Me

## K. Electronic Access.

1. I am solely responsible for keeping My Account numbers and PINs confidential and will not share them with third parties. "PINs" shall mean My username and password.

2. I agree and accept full responsibility for monitoring and safeguarding My Accounts and access to My Accounts.

3. I agree to immediately notify Robinhood in writing, delivered via e-mail and a recognized international delivery service, if I become aware of: (i) any loss, theft, or unauthorized use of My PINs or Account numbers; (ii) any failure by Me to receive any communication from Robinhood indicating that an order was received, executed or cancelled, as applicable; (iii) any failure by Me to receive an accurate written confirmation of an order, execution, or cancellation; (iv) any receipt by Me of confirmation of an order, execution or cancellation, which I did not place; (v) any

inaccurate information in or relating to My orders, trades, margin status, Account balances, deposits, withdrawals, securities positions or transaction history; or (vi) any other unauthorized use or access of My Account.

4. Each of the events described in subsections (K)(3)(i)-(vi) shall be deemed a "Potential Fraudulent Event". The use and storage of any information including My Account numbers, PINs, portfolio information, transaction activity, account balances and any other information or orders available on My wireless, web-enabled cellular telephone or similar wireless communications device (collectively, "Mobile Device") or My personal computer is at My own risk and is My sole responsibility. I represent that I am solely responsible for and have authorized any orders or instructions appearing in, originating from, or associated with My Account, My Account number, My username and password, or PINs. I agree to notify Robinhood immediately after I discover any Potential Fraudulent Event, but in no event more than twenty-four (24) hours following discovery. Upon request by Robinhood, I agree to report any Potential Fraudulent Event promptly to legal authorities and provide Robinhood a copy of any report prepared by such legal authorities. I agree to cooperate fully with the legal authorities and Robinhood in any investigation of any Potential Fraudulent Event and I will complete any required affidavits promptly, accurately and thoroughly. I also agree to allow Robinhood access to My Mobile Device, My computer, and My network in connection with Robinhood's investigation of any Potential Fraudulent Event. I understand that if I fail to do any of these things I may encounter delays in regaining access to the funds in My Account. I agree to indemnify and hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers, directors, and employees harmless from and against any Losses arising out of or relating to any Potential Fraudulent Event. I acknowledge that Robinhood does not know when a person entering orders with My username and password is Me.

5. Trusted Contact Person. I understand that, pursuant to FINRA regulations, Robinhood is authorized to contact the Trusted Contact Person (as defined by FINRA Rule 4512) designated for My Account and to disclose information about My account to address possible financial exploitation, to confirm the specifics of My current contact information, health status, or the identity of any legal guardian, executor, trustee or holder of a power of attorney, or as otherwise permitted by Rule 2165.

## 6. Clearance of Trades.

I understand that Robinhood Financial has entered into a clearing agreement with Robinhood Securities whereby Robinhood Financial will introduce My Account to Robinhood Securities, and Robinhood Securities will clear all transactions, on a fully-disclosed basis. I understand that Robinhood Securities carries My Account(s) and is responsible for the clearing and bookkeeping of transactions, but is not otherwise responsible for the conduct of Robinhood Financial.

Until receipt from Me of written notice to the contrary, Robinhood Securities may accept from Robinhood Financial, without inquiry or investigation, (i) orders for the purchase or sale of securities and other property on margin, if I have elected to have a margin account, or otherwise, and (ii) any other instructions concerning my Accounts. Robinhood Securities shall look solely to Robinhood Financial unless otherwise directed by Robinhood Financial, and not to Me, with respect to any such orders or instructions; except that I understand that Robinhood Securities will deliver confirmations, statements, and all written or other notices with respect to My Account directly to Me with copies to Robinhood Financial, and that Robinhood Securities will look directly to Me or Robinhood Financial for delivery of margin, payment, or securities. I agree to hold Robinhood Securities harmless from and against any Losses arising in connection with the delivery or receipt of any such communication(s), provided Robinhood Securities has acted in accordance with the above. The foregoing shall be effective as to My Account(s) until written notice to the contrary is received from Me by Robinhood Securities or Robinhood Financial.

## 7. Review of Confirmations and Statements.

I agree that it is My responsibility to review order execution confirmations and statements of My Account(s) promptly upon receipt. I agree to receive all confirmations and account statements, as well as all tax related documents, in electronic format. I understand that account statements will evidence all activity in My Account for the stated period, including securities transactions, cash balances, credits to My Account and all fees paid from My Account. Notwithstanding Section 36.B, confirmations will be considered binding on Me unless I notify Robinhood of any objections within two (2) calendar days from the date confirmations are sent. Account statements will be considered binding on Me unless I notify you

of any objections within ten (10) calendar days after My Account statements are posted online. Such objection may be oral or in writing, but any oral objection must be immediately confirmed in writing. In all cases, Robinhood reserves the right to determine the validity of My objection. If I object to a transaction for any reason, I understand and agree that I am obligated to take action to limit any losses that may result from such transaction or I will bear sole responsibility for any losses relating to the transaction, even if My objection to the transaction is ultimately determined to be valid. Nothing in this Section 7 shall limit My responsibilities as described in Section 5 of this Agreement.

## 8. Important Information Needed to Open a New Account.

To help the government better detect the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. Therefore, I understand that when I open My Account Robinhood will ask for My name, address, date of birth and other identifying information. Robinhood may also ask copies of My driver's license, passport or other identifying documents. I understand that Robinhood may take steps to verify the accuracy of the information I provide to Robinhood in My Account application or otherwise, and that Robinhood may restrict My access to My Account pending such verification. I will provide prompt notification to Robinhood of any changes in the information including My name, address, e-mail address and telephone number.

I further understand that if I attempt to access My Account from a jurisdiction subject to certain U.S. sanctions or I am ordinarily resident in such a jurisdiction, or if you reasonably believe that I am attempting such access or have become a resident in such a jurisdiction, you may restrict My Account, and any pending orders may be cancelled. If this happens, I understand that I should contact help@robinhood.com, and that I may be asked to provide supplemental information as part of this process. I further understand that I must close My Account before establishing residency in any jurisdiction subject to U.S. sanctions.

## 9. Telephone Conversations and Electronic Communications.

I understand and agree that Robinhood may record and monitor any telephone or electronic communications with Me. Unless otherwise agreed in writing in advance, Robinhood does not consent to the recording of telephone conversations by any third party or Me. I acknowledge and understand that not all telephone or electronic communications are recorded by Robinhood, and Robinhood does not guarantee that recordings of any particular telephone or electronic communications will be retained or capable of being retrieved.

## 10. Oral Authorization.

I agree that Robinhood shall be entitled to act upon any oral instructions given by Me so long as Robinhood reasonably believes such instruction was actually given by Me or My authorized agent.

## 11. Applicable Laws and Regulations.

All transactions in My Account will be subject to federal securities laws and regulations, the applicable laws and regulations of any state or jurisdiction in which Robinhood Financial is registered, the rules of any applicable self-regulatory organization of which Robinhood Financial is a member and the rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed. In no event will Robinhood Financial be obligated to effect any transaction it believes would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory organization.

## 12. Erroneous Distributions.

I agree to promptly return to Robinhood any assets erroneously distributed to Me. In the event that I sell a security prior to its ex-dividend/distribution date, and I receive the related cash/stock dividend or distribution in error, I direct Robinhood on My behalf to pay such dividend/distribution to the entitled purchaser of the securities I sold, and I guarantee to promptly reimburse Robinhood for, or deliver to Robinhood, said dividend or distribution.

2020.12

## 13. Market Volatility; Market Orders; Limit Orders; and Queued Orders.

I understand that, whether I place a market or limit order, I will receive the price at which My order is executed in the marketplace, subject to any clarification stated below. Particularly during periods of high volume, illiquidity, fast movement or volatility in the marketplace, the execution price received may differ from the quote provided on entry of an order, and I may receive partial executions of an order at different prices. I understand that Robinhood Financial is not liable for any price fluctuations. I also understand that price quotes generally are for only a small number of shares as specified by the marketplace, and larger orders are relatively more likely to receive executions at prices that vary from the quotes or in multiple lots at different prices.

I understand that Robinhood Financial does not currently support sending traditional market buy orders and that Robinhood Financial collars all market buy orders (other than dollar-based buy orders executed during market hours) by using limit orders priced up to 5% above the last trade price. This is not the case for market sell orders. I further understand that when I send a market buy order through Robinhood Financial's trading system, the trading system generates a limit order up to 5% above the last trade price, and then Robinhood Financial sends the order to an executing broker. I understand that Robinhood Financial's implementation of market buy orders may vary depending on prices of instruments, market conditions, and other factors. I further understand that Robinhood Financial uses the following rounding mechanics with respect to buy orders: the last trade price is (i) multiplied by 1.05; (ii) rounded down to two decimal places if the last trade price is over $1.00; otherwise, rounded down to four decimal places; and (iii) for securities included in the SEC's Tick Size Pilot Program, rounded down to the nearest $.05 increment. I understand that securities may open for trading at prices substantially higher or lower than the previous closing price or the anticipated price. If I place a market order (whether during normal market hours or when the market is closed), I agree to pay or receive the prevailing market price at the time My market order is executed, subject to the specific clarification above relating to buy orders. I understand that the price I pay may be significantly higher or lower than anticipated at the time I placed the order. To avoid buying a security at a higher price and possibly exceeding My purchasing power, I understand My option to enter a limit order. I also understand that limit orders may not be executed at any particular time, or at all, if there is not sufficient trading at or better than the limit price I specify, and are only good until the end of the trading day in which they are entered. The Website contains further information regarding order types and limitations, which I agree to read and understand before placing such orders.

As a customer of Robinhood Financial, I understand that after the market has closed for the day, I have the ability to place in a queue order requests to be executed the following day upon the opening of the market ("Queued Order"). I understand that My Queued Order request is prioritized based on the order in which it is received by Robinhood Financial, and that the Queued Order requests are sent out for execution shortly after the market opens on the next day of trading. I further understand that each Queued Order request is sent out per customer and per security as Robinhood Financial market orders (described above), and that they are not aggregated.

A limit order may be "good till cancelled" which means the order remains valid until (A) it is executed; (B) I cancel the order; (C) approximately 90 days from when the order is placed; or (D) the contract to which it relates is closed. I understand that Robinhood will cancel a "good till cancelled" order at the end of every trading day (on the exchange on which the instrument to which the contract relates is traded) and place such order again at the start of the following trading day. This process will be repeated every day for as long as the "good till cancelled" order remains valid. I further agree that any "good till cancelled" orders I place should be treated as "do not reduce" orders.

## 14. Bulletin Board/Pink Sheet Stocks.

Bulletin board, pink sheet and other thinly-traded securities (collectively "bulletin board stocks") present particular trading risks, in part because they are relatively less liquid and more volatile than actively traded securities listed on a major exchange. I understand that bulletin board stocks may be subject to different trading rules and systems than other securities and that I may encounter significant delays in executions, reports of executions, and updating of quotations in trading bulletin board stocks. Robinhood Financial in its sole discretion may require limit orders on certain bulletin board stock transactions.

## 15. Research and Internet Links.

News, research, links to outside websites, and other information accessible through the App or Website ("Content") may be prepared by independent external providers not affiliated with Robinhood Financial,

including Morningstar, Inc. (all such providers, the "Providers"). I agree not to distribute, reproduce, sell, or otherwise commercially use the Content in any manner. I understand that Robinhood may terminate My access to the Content. I understand that none of the Content is a recommendation by Robinhood to buy or sell any securities or to engage in any investment strategy.

## 16. Restrictions on Trading.

I understand that Robinhood may, in its discretion, prohibit or restrict the trading of securities, or the substitution of securities, in any of My Accounts. I understand that Robinhood may execute all orders by Me on any exchange or market, unless I specifically instruct Robinhood to the contrary. In the event of a breach or default by Me under this Agreement, Robinhood shall have all rights and remedies available to a secured creditor under all applicable laws and in addition to the rights and remedies provided herein. I understand that Robinhood may at any time, at its sole discretion and without prior notice to Me: (i) prohibit or restrict My access to the use of the App or the Website or related services and My ability to trade, (ii) refuse to accept any of My transactions, (iii) refuse to execute any of My transactions, or (iv) terminate My Account. The closing of My Account will not affect the rights or obligations of either party incurred prior to the date My Account is closed.

Further, Robinhood will not tolerate any foul or abusive language, physical violence, threatening behavior, or other inappropriate conduct directed toward Robinhood, its Affiliates' officers, employees, contractors or customers. If I engage in any such behavior, as determined by Robinhood in its sole discretion, I agree that Robinhood is authorized to: (i) liquidate any securities, instruments or other property in My Account, (ii) send Me the proceeds, and (iii) close My account. Robinhood will not be responsible for any Losses caused by the liquidation of securities, instruments or other property pursuant to this paragraph, including any tax liabilities.

## 17. Waiver; Limitation of Liability; Indemnification.

I agree that My use of the App or the Website or any other service provided by Robinhood Financial or its Affiliates is at My sole risk. The Robinhood Financial service (including the App, the Website, the provision of Market Data, Information, Content, or any other information provided by Robinhood Financial, any of its Affiliates, or any third-party content provider or market data provider) is provided on an "as is," "as available" basis without warranties of any kind, either express or implied, statutory (including without limitation, timeliness, truthfulness, sequence, completeness, accuracy, freedom from interruption), implied warranties arising from trade usage, course of dealing, course of performance, or the implied warranties of merchantability or fitness for a particular purpose or application, other than those warranties which are implied by and incapable of exclusion, restriction or modification under the laws applicable to this Agreement.

Although considerable effort is expended to make the Website, App and other operational and communications channels available around the clock, Robinhood does not warrant that these channels will be available and error free every minute of the day. I agree that Robinhood will not be responsible for temporary interruptions in service due to maintenance, Website or App changes, or failures, nor shall Robinhood be liable for extended interruptions due to failures beyond our control, including but not limited to the failure of interconnecting and operating systems, computer viruses, forces of nature, labor disputes and armed conflicts.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, I UNDERSTAND AND AGREE THAT ROBINHOOD, ITS AFFILIATES, THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS, AND THE PROVIDERS (COLLECTIVELY THE "ROBINHOOD PARTIES") WILL NOT BE LIABLE TO ME OR TO THIRD PARTIES UNDER ANY CIRCUMSTANCES, OR HAVE ANY RESPONSIBILITY WHATSOEVER, FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (INCLUDING TRADING LOSSES, DAMAGES, LOSS OF PROFITS, REVENUE, OR GOODWILL) THAT I MAY INCUR IN CONNECTION WITH MY USE OF THE SERVICE PROVIDED BY ROBINHOOD OR ANY OF ITS AFFILIATES UNDER THIS AGREEMENT (INCLUDING MY USE OF THE APP, THE WEBSITE, THE MARKET DATA, THE INFORMATION, OR THE CONTENT), BREACH OF THIS AGREEMENT, OR ANY TERMINATION OF THIS AGREEMENT, WHETHER SUCH LIABILITY IS ASSERTED ON THE BASIS OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT FORESEEABLE, EVEN IF ANY ROBINHOOD PARTY HAS BEEN ADVISED OR WAS AWARE OF THE POSSIBILITY OF SUCH LOSS OR DAMAGES. THE ROBINHOOD PARTIES SHALL NOT BE LIABLE BY REASON OF DELAYS OR INTERRUPTIONS OF THE SERVICE OR TRANSMISSIONS, OR FAILURES OF PERFORMANCE OF THEIR RESPECTIVE SYSTEMS,

REGARDLESS OF CAUSE, INCLUDING THOSE CAUSED BY GOVERNMENTAL OR REGULATORY ACTION, THE ACTION OF ANY EXCHANGE OR OTHER SELF REGULATORY ORGANIZATION, OR THOSE CAUSED BY SOFTWARE OR HARDWARE MALFUNCTIONS.

Except as otherwise provided by law, Robinhood or any of its affiliates or respective partners, officers, directors, employees or agents (collectively, "Indemnified Parties") shall not be liable for any expenses, losses, costs, damages, liabilities, demands, debts, obligations, penalties, charges, claims, causes of action, penalties, fines and taxes of any kind or nature (including legal expenses and attorneys' fees) (whether known or unknown, absolute or contingent, liquidated or unliquidated, direct or indirect, due or to become due, accrued or not accrued, asserted or unasserted, related or not related to a third party claim, or otherwise) (collectively, "Losses") by or with respect to any matters pertaining to My Account, except to the extent that such Losses are actual Losses and are determined by a court of competent jurisdiction or an arbitration panel in a final non-appealable judgment or order to have resulted solely from Robinhood's or any of its affiliates' gross negligence or intentional misconduct. In addition, I agree that the Indemnified Parties shall have no liability for, and I agree to indemnify, defend and hold harmless the Indemnified Parties from all Losses that result from: (i) any noncompliance by Me with any of the terms and conditions of this Agreement; (ii) any third-party actions related to My receipt and use of any Information, Market Data, Content, market analysis, other third-party content, or other such information obtained on the App or Website, whether authorized or unauthorized under this Agreement; (iii) any third-party actions related to My use of the App or the Website; (iv) My or My agent's misrepresentation or alleged misrepresentation, or act or omission; (v) Indemnified Parties following My or My agent's directions or instructions, or failing to follow My or My agent's unlawful or unreasonable directions or instructions; (vi) any activities or services of the Indemnified Parties in connection with My Account (including any technology services, reporting, trading, research or capital introduction services); or (vii) the failure by any person not controlled by the Indemnified Parties and their affiliates to perform any obligations to Me. Further, if I authorize or allow third parties to gain access to Robinhood's services, including My Accounts, I will indemnify, defend and hold harmless the Indemnified Parties against any Losses arising out of claims or suits by such third parties based upon or relating to such access and use. Robinhood does not warrant against loss of use or any direct, indirect or consequential damages or Losses to Me caused by My assent, expressed or implied, to a third party accessing My Account or information, including access provided through any other third party systems or sites.

I consent to the use of automated systems or service bureaus by Robinhood and its respective affiliates in conjunction with My Account, including automated order entry and execution, record keeping, reporting and account reconciliation and risk management systems (collectively "Automated Systems"). I understand that the use of Automated Systems entails risks, such as interruption or delays of service, errors or omissions in the information provided, system failure and errors in the design or functioning of such Automated Systems (collectively, a "System Failure") that could cause substantial damage, expense, or liability to Me. I understand and agree that Indemnified Parties will have no liability whatsoever for any of my Losses arising out of or relating to a System Failure.

I also agree that Indemnified Parties will have no responsibility or liability to Me in connection with the performance or non-performance by any exchange, clearing organization, market data provider, or other third party (including other broker-dealers and clearing firms, and banks) or any of their respective agents or affiliates, of its or their obligations relative to any securities. I agree that Indemnified Parties will have no liability, to Me or to third parties, or responsibility whatsoever for: (i) any Losses resulting from a cause over which Indemnified Parties do not have direct control, including the failure of mechanical equipment, unauthorized access, theft, operator errors, government restrictions, force majeure (as defined in this Agreement), market data availability or quality, exchange rulings or suspension of trading; and (ii) any special, indirect, incidental, consequential, punitive or exemplary damages (including lost profits, trading losses and damages) that I may incur in connection with My use of the App, the Website, Robinhood's brokerage, and other services provided by Indemnified Parties under this Agreement.

## 18. Mutual Fund Transactions.

In the event that I purchase or hold a mutual fund, I agree to read and understand the terms of its prospectus. I understand that certain mutual funds reserve the right to change their purchasing, switching or redemption procedures or suspend or postpone redemptions under certain market conditions. I further understand that any mutual fund order entered with Robinhood is placed by Robinhood on a best efforts basis as prescribed and recognized by the individual fund, and that Robinhood is not responsible for unexecuted orders due to the failure of any communication system. I agree to be fully responsible for the information contained within the mutual fund prospectus and to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless

for any deficiencies contained therein. I authorize Robinhood to act as My agent in the purchase and redemption of fund shares.

## 19. Exchange Traded Funds.

I understand that I should consider the investment objectives and unique risk profile of Exchange Traded Funds ("ETFs") carefully before investing, and that ETFs are subject to risks similar to those of other diversified portfolios. I further understand that leveraged and inverse ETFs may not be suitable for all investors and may increase exposure to volatility through the use of leverage, short sales of securities, derivatives, and other complex investment strategies, and that although ETFs are designed to provide investment results that generally correspond to the performance of their respective underlying indices, they may not be able to exactly replicate the performance of the indices because of expenses and other factors. I further understand that ETFs are required to distribute portfolio gains to shareholders at year end, which may be generated by portfolio rebalancing or the need to meet diversification requirements, and that ETF trading will also generate tax consequences. I understand that I can obtain prospectuses from issuers or their third party agents who distribute and make prospectuses available for review. Additional regulatory guidance on ETFs can be found here.

## 20. Effect of Attachment or Sequestration of Accounts.

Robinhood shall not be liable for refusing to obey any orders given by or for Me with respect to any of My Accounts that has or have been subject to an attachment or sequestration in any legal proceeding against Me, and Robinhood shall be under no obligation to contest the validity of any such attachment or sequestration.

## 21. Event of Death.

It is agreed that in the event of My death, the representative of My estate or the survivor or survivors shall immediately give Robinhood written notice thereof, and Robinhood may, before or after receiving such notice, take such proceedings, require such papers and inheritance or estate tax waivers, retain such portion of, or restrict transactions in the Account as Robinhood may deem advisable to protect Robinhood against any tax, liability, penalty or loss under any present or future laws or otherwise. Notwithstanding the above, in the event of My death, all open orders shall be canceled, but Robinhood shall not be responsible for any action taken on such orders prior to the actual receipt of notice of death. Further, Robinhood may in Its discretion close out any or all of the Accounts without awaiting the appointment of a personal representative for My estate and without demand upon or notice to any such personal representative. The estate of any of the Account holders who have died shall be liable and each survivor shall continue to be liable, jointly and severally, to Robinhood for any net debit balance or loss in said account in any way resulting from the completion of transactions initiated prior to the receipt by Robinhood of the written notice of the death of the decedent or incurred in the liquidation of the Account or the adjustment of the interests of the respective parties, and for all other obligations pursuant to this Agreement. Such notice shall not affect Robinhood's rights under this Agreement to take any action that Robinhood could have taken if I had not died.

## 22. Tax Reporting; Tax Withholding.

The proceeds of sale transactions and dividends paid will be reported to the Internal Revenue Service ("IRS") in accordance with applicable law.

## A. U.S. Persons.

This subsection is applicable if I am a U.S. person. Under penalties of perjury, I certify that the taxpayer identification number that I have provided or will provide to Robinhood (including any taxpayer identification number on any Form W-9 that I have provided or will provide to Robinhood) is My correct taxpayer identification number. I certify that I am not subject to backup withholding and I am a United States Person (including a U.S. resident alien) as such term is defined in section 7701(a)(30) of the Internal Revenue Code of 1986, as amended ("U.S. Person"). If a correct Taxpayer Identification Number is not provided Robinhood Financial, I understand I may be subject to backup withholding tax at the appropriate rate on all dividends, interest and gross proceeds paid to me. Backup withholding taxes

are sent to the IRS and cannot be refunded by Robinhood Financial. I further understand that if I waive tax withholding and fail to pay sufficient estimated taxes to the IRS, I may be subject to tax penalties.

## B. Non-U.S. Persons.

This subsection is applicable if I am not a U.S. Person. I certify that I fully understand all the information on any Form W-8BEN that I have submitted or will submit to Robinhood. Under penalties of perjury, I declare that (i) I have examined all the information (including all the information in the English language) on any Form W-8BEN that I have submitted or will submit to Robinhood and (ii) to the best of My knowledge and belief all such information is true, correct, and complete. I authorize Robinhood to provide any such Form W-8BEN to Robinhood Securities or any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner. I agree that I will submit a new Form W-8BEN to Robinhood within 30 calendar days if any certification made on any previously submitted Form W-8BEN becomes incorrect. I understand that the IRS does not require My consent to any provisions of such Form W-8BEN other than the certifications required to establish My status as a non-U.S. Person and, if applicable, obtain a reduced rate of withholding.

## 23. Equity Orders and Payment For Order Flow.

SEC rules require all registered broker-dealers to disclose their policies regarding any "payment for order flow" arrangement in connection with the routing of customer orders. "Payment for order flow" includes, among other things, any monetary payment, service, property, or other benefit that results in remuneration, compensation, or consideration to a broker-dealer from any broker-dealer in return for directing orders. I understand that Robinhood transmits customer orders for execution to various exchanges or market centers based on a number of factors. These include: size of order, trading characteristics of the security, favorable execution prices (including the opportunity for price improvement), access to reliable market data, availability of efficient automated transaction processing and reduced execution costs through price concessions from the market centers. I further understand that certain of the exchanges or market centers may execute orders at prices superior to the publicly quoted market in accordance with their rules or practices and that while a customer may specify that an order be directed to a particular market center for execution, the order-routing policies, taking into consideration all of the factors listed above, are designed to result in favorable transaction processing for customers. The nature and source of any payments or credits received by Robinhood in connection with any specific transactions will be furnished upon written request.

## 24. Free Credit Balances and Sweep Service.

If I enroll in Robinhood Financial Cash Management ("Cash Management"), I understand that I am electing to participate in the Insured Network Deposit ("IND") sweep service (the "Sweep Service"). Under the Sweep Service, free credit balances in My Account will be deposited into interest-bearing accounts at one or more banks ("Participating Depository Institutions"), in accordance with the Insured Network Deposit Sweep Program Disclosures ("IND Disclosures") available on the Website and in the App. By enrolling in Cash Management, I represent and warrant that I have reviewed the IND Disclosures and agree to the terms set forth in the IND Disclosures. If I am not enrolled in Cash Management, free credit balances in My Account will remain in My Account, will not earn interest and will not be eligible for FDIC insurance, but will be eligible for SIPC protection as described in the IND Disclosures.

## 25. Fees and Charges.

I understand that Robinhood does not charge fees or commissions for executing buy and sell orders. However, I understand that other fees may apply. The current fees are included in the fee schedule available in the App and on the Website. I agree to pay any such fees at the then-prevailing rate. I acknowledge that the prevailing fees may change and that change may occur without notice. I agree to be bound by such changes once they are posted in the fee schedule available in the App and on the Website. I also agree to pay all applicable federal, state, local, and foreign taxes. I authorize Robinhood Financial to automatically debit My Account for any such fees and taxes. I also agree to pay such expenses incurred by Robinhood in connection with collection of any unpaid balance due on My Accounts including attorney's fees allowed by law.

2020.12

## 26. ACH Transactions.

## A. Debit Transactions.

Robinhood will initiate an ACH debit at My request to debit funds from an account that I own at another financial institution ("External Account") for deposit into My Account. I understand that in order for Robinhood to initiate an ACH debit, the financial institution holding my External Account must participate in the ACH system. I understand that for the ACH transfers to be established, at least one common name must match exactly between My Account and My External Account. I authorize Robinhood to take such steps as it deems appropriate to verify my ownership of External Account, including by telling the bank at which such External Account is held that I have authorized and consented to such bank disclosing to Robinhood any information that Robinhood may request about Me or My External Account. I also agree to cooperate with Robinhood's verification of my ownership of such External Account by promptly providing any identification and/or other documentation that Robinhood may request regarding such External Account. I represent and warrant that there are sufficient funds in My External Account to cover the amount of the deposit to My Account. Robinhood will initiate the ACH debit to My External Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood by 7:00 p.m. (Eastern Time) on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

Within 60 days of the date of My ACH deposit, My funds may only be withdrawn to the External Account from which such funds were debited.

I understand that an ACH debit transfer may be reversed or rejected if: (A) there are insufficient funds in My External Account; (B) there is a duplicate transaction; (C) the transaction is denied by the bank holding My External Account; or (D) My External Account does not support ACH transfers. I acknowledge that in the event of an ACH reversal, I will incur a fee. Before initiating making an ACH debit transfer, I agree to check Robinhood Financial's most recent <u>Commissions and Fees Schedule</u>. I agree that I am solely liable and responsible for any ACH reversal fees that I incur.

## B. Credit Transactions.

Robinhood will initiate an ACH credit at My request to transfer funds from My Account to a recipient that I designate. I agree that I will have sufficient Available Funds in My Account to cover the amount of any ACH credit that I ask Robinhood to initiate. Robinhood will debit the amount of such request from My Account on the Business Day or next Business Day after I request the transfer. A transfer request will be deemed to have been made on a Business Day if it is received by Robinhood on such Business Day; if received after that time, the transfer request will be deemed to have been made on the next Business Day.

I agree that Robinhood may use any means which Robinhood, in its sole discretion, considers suitable to execute my ACH credit transfers.

## 27. Fractional Shares.

I acknowledge and understand that Robinhood rounds all holdings of fractional shares to the sixth decimal place, the value of fractional shares to the nearest cent, and any dividends paid on fractional shares to the nearest cent. I further understand that Robinhood will not accept dollar-based purchases or sales of less than $1.00 and that I will receive proceeds from the sale of any whole or fractional shares rounded to the nearest cent.

I understand that if I enter repeated fractional orders with individual notional values of less than $0.01, my account may be restricted.

I understand that a vendor employed by Robinhood will aggregate any proxy votes for fractional shares of Robinhood's customers with all votes reported to the issuer or issuer's designated vote tabulator and that, while Robinhood's vendor will report such proxy votes on fractional shares, the issuer or tabulator may not fully count such votes.

2020.12

I understand that Robinhood will execute all orders that include fractional shares ("Fractional Orders") on a principal basis. To the extent that Robinhood must purchase or sell shares in the market to fulfill any part of my Fractional Order, the fractional component of that order will be fulfilled at the execution price Robinhood received for the corresponding whole shares. To the extent that Robinhood fulfills my Fractional Order for national exchange-listed securities ("NMS Securities") entirely out of its inventory and without purchasing or selling shares in the market ("Inventory Fulfillment"), Robinhood will endeavor to price such shares or fractional shares at a price between the National Best Bid and Offer ("NBBO") at the time of the order for orders made during market hours, or, for such orders made during extended hours trading (9:00-9:30 a.m. and 4:00-6:00 p.m. Eastern), Robinhood will endeavor to price such orders between the best bid and offer at the time of the order, as reported by an external vendor ("Vendor BBO"). For Inventory Fulfillment of Fractional Orders for securities not listed on a national exchange ("Non-NMS Securities") made during market hours as well as extended hours trading, Robinhood will endeavor to price such orders between Vendor BBO.

All non-market orders placed outside market hours and extended hours trading are queued and fulfilled either at or near the beginning of extended hours trading (9:00 a.m. Eastern) or at or near market open (9:30 a.m. Eastern), according to my instructions. All market orders placed outside market hours and extended hours trading are queued and fulfilled at or near market open. To the extent that I trade outside of market hours, these trades are subject to Robinhood's Extended Hours Trading Disclosure.

I understand Robinhood only accepts market orders for fractional shares at this time and does not permit limit orders for fractional shares. I understand that fractional shares within My Account (i) are unrecognized, unmarketable, and illiquid outside the Robinhood platform, (ii) are not transferrable in-kind, and (iii) may only be liquidated and the proceeds transferred out via a wire transfer. I acknowledge that, subject to applicable requirements, Robinhood may report holdings and transactions in My Account in terms of either U.S. Dollars, shares, or both.

I agree that my fractional share holdings shall be treated as a "financial asset" under Article 8 of the Uniform Commercial Code.

## 28. Phone Calls.

You agree that, by providing information Robinhood requests, Robinhood and its third party services providers may contact you via mail, phone or email.

Specifically, if you provide us with a phone number: (a) you represent and warrant that the number you provide is your phone number, and you will promptly notify us if that changes, and (b) you consent to receive calls (including text messages) made to that phone number that may be prerecroded and/or completed with an automatic telephone dialing system (automated calls) for purposes including but not limited to providing account-related communications (including security alerts), investigating or preventing fraud, and/or collecting amounts owed to Robinhood. We may share your number with third parties that provide services to us in connection with any of the foregoing purposes, including but not limited to debt collectors. You understand that message, telephone minute and data rates may apply for calls made to a mobile phone number. You may opt out at any time from receiving these types of calls orally or in writing to limitsharing@robinhood.com. Please note, even if you opt out, we may still make other calls as permitted by law.

You consent to our recording of phone calls, including calls we make to you or that we receive from you.

## 29. Dividend Reinvestment Program.

Except as expressly stated otherwise, the provisions of this Section 29 will only apply if I am enrolled in Robinhood's Dividend Reinvestment Program ("DRIP"). My enrollment in the DRIP will be activated within three business days after I notify Robinhood of my intention to enroll an eligible security through the App. "Eligible security" means all shares available for fractional investing through Robinhood. I understand that in order to be eligible for dividend reinvestment, the securities must be held in My Account.

I may specify individual securities or have all Eligible securities in My Account enrolled for dividend reinvestment. If I choose to reinvest dividends from all Eligible securities, I understand that individual securities could subsequently no longer be Eligible securities at Robinhood's discretion or under applicable law. In those cases, only those securities will be discontinued from the DRIP. If I specify individual securities, I may add additional Eligible securities to the DRIP at any time if I hold a position

in those securities. Enrollment with respect to these additional Eligible securities will be effective within three business days after Robinhood receives notification from me through the App. If I maintain open orders for securities I do not already hold, I may not enroll those securities for dividend reinvestment until my open orders are executed. If my entire Account is set up for dividend reinvestment, any eligible securities I purchase in the future will automatically participate in the DRIP.

All eligible cash distributions will be reinvested on all securities I have selected in the DRIP, provided that I owned the securities on the record date for determining shareholders eligible to receive dividends, and continue to hold the securities through payable date. "Eligible cash distributions" means most cash distributions, including regular and optional dividends, cash-in-lieu payments, and capital gains distributions. Special dividends, late ex-date, liquidation, and miscellaneous payments may not be eligible distributions. Optional dividends will be processed in accordance with dividend reinvestment instructions. If I have a margin account, Robinhood is permitted to borrow a dividend paying stock in the normal course of business and, as a result, in such situations instead of a dividend payment I may receive a cash in lieu payment. If I receive a cash in lieu payment, I authorize Robinhood to treat such payment as if it was not "in lieu" and reinvest it accordingly.

Robinhood will credit My Account upon completion of the dividend reinvestment. Robinhood will reinvest dividends on the business day following receipt of funds. In the rare instance in which Robinhood is unable to reinvest all dividends on the business day following receipt, it will reinvest the remaining funds as soon as reasonably possible thereafter, which may take up to five business days. I will not have use of the funds prior to reinvestment.

I understand that my participation in the DRIP is voluntary and that Robinhood has not made any recommendation that I should participate. I further understand that Robinhood is not recommending or offering any advice regarding the purchase of any security included as an Eligible security in the DRIP. I further understand that dividend reinvestment does not assure profits on my investments, nor does it protect against losses in declining markets.

I may terminate my participation in the DRIP, or the enrollment of individual securities in the DRIP, at any time by giving notice through the App. Termination will take effect prior to the next Eligible cash distribution provided my notice to terminate was received at least three business days prior to the record date of that distribution. I understand that my notice to terminate my participation in the DRIP will not affect any obligations that may result from transactions initiated prior to Robinhood's receipt and processing of my notice.

If I participate in the DRIP, I understand Robinhood will reinvest the dividends of a particular stock at or near the opening price on the trading day following receipt of the dividend. Robinhood will combine Eligible cash distributions from My Account with those from other Robinhood clients requesting dividend reinvestment in the same security and use these combined funds to purchase securities on my behalf and on behalf of these other clients. If the combined reinvested funds do not total the purchase price of at least one share, the distribution will be invested in fractional shares. On that same day, Robinhood will credit My Account with that number of shares, including fractional shares, equal to my Eligible cash distribution divided by the purchase price per share. Robinhood does not intend to charge a fee for transactions executed pursuant to the DRIP.

Dividend reinvestment may result in my owning interests in fractional shares of a security. I will be entitled to receive future dividend payments on my fractional shares, although other corporate actions may result in allocation of only whole shares and cash in lieu of fractions as determined by the issuer. In mandatory corporate reorganizations, my partial interest will be handled according to the specific terms of the reorganization. In voluntary corporate reorganizations, Robinhood will act on my instructions with respect only to my whole shares.

Because fractional share positions cannot be transferred, reorganized, or issued in certificate form, my partial interest will be liquidated, without commission charges to me, at prevailing market prices in the event My Account is transferred or closed, the stock is reorganized, or stock certificates are ordered out of My Account. The timing of such liquidations will be at the discretion of Robinhood.

Reinvestment of dividends may result in my owning a fractional share position in securities that are callable in part. In the event of a call, fractional shares to be called will be determined through a random selection process. The probability of my fractional share holdings being called will be proportional to the holdings of all Robinhood clients who own a fractional share position in that security. Prior to the publication date of such a call, I have the right to withdraw from My Account cash in lieu of my uncalled, fully paid partial holdings. Once a call is announced, however, all shares, whether registered or held in

street name, participate in the random selection process. If my fractional shares are selected and I no longer hold the shares that I held on the publication date of the call, I will be responsible for covering those shares.

## 30. Cash Management Services.

Except as expressly stated otherwise, the provisions of this Section 30 will only apply if I am enrolled in Cash Management.

### A. General.

I understand and agree that by enrolling in Cash Management, I may apply for a Robinhood-branded debit card issued by the bank identified in My Robinhood Debit Card Agreement ("Card"). I further understand and agree that by using My Card, exercising My electronic fund transfer ("EFT") privileges offered in connection with My Account, and/or by successfully completing a request using Pay by Check, I authorize Robinhood to debit My Account immediately whenever an electronic draft or Card transaction is presented for payment on My behalf, when an EFT transaction is effected, when a Pay by Check request is successfully completed on My Account and/or when any fee or charge is due (collectively "Payment" or "Payments"). I further understand and agree that when I request a Payment or withdrawal or instruct Robinhood to make a purchase of securities from My Account, Robinhood is authorized to place a block on the amount of the transaction ("Blocked Amounts") prior to the settlement date of the Payment, withdrawal or trade, and that the Blocked Amounts will not be available for use for additional Payments or the purchase of securities. I agree to maintain Available Funds sufficient to pay for Payments made by Me or any Authorized Card User (as defined below) and to pay for any securities trades and for interest on any margin loans and other transaction fees. For this purpose, "Available Funds" in My Account will fluctuate daily and means the sum of (i) free credit balances, (ii) deposits to Participating Depository Institutions through the Sweep Service, and (iii) available margin loan value if My Account has margin privileges, minus (x) uncleared funds, (y) Blocked Amounts, and (z) deposits subject to a hold. The loan value of eligible securities for the purpose of margin is subject to regulatory requirements and Robinhood credit policies then in effect.

### B. Payments and Withdrawals.

I agree that any Payments that I make from My Account will be lawful. I agree that Payments will be deducted from the Available Funds in My Account in the following order: first, from free credit balances; second, by withdrawal of funds deposited to Participating Depository Institutions as part of the Sweep Service; and third, if My Account has margin privileges, from margin loans on the eligible securities in My margin Account. Robinhood will debit My Account only up to an amount equal to the Available Funds. I understand and agree that (i) if there are insufficient Available Funds in My Account to cover Payments when they become due, Robinhood has no obligation to make such Payments, and (ii) Robinhood has no obligation to make partial Payments. Robinhood will not charge a fee with respect to any declined Payment for which there were insufficient Available Funds. I acknowledge and agree, however, that Robinhood will not be responsible for any costs or losses that I may incur (including fees, costs, charges, attorneys' fees, investment losses, claims, demands, or liability resulting from any litigation or other actions) as a result of Robinhood's decision to decline any Payment or withdrawal or other transaction because My Account has insufficient Available Funds.

I understand that if a Payment is funded by a margin loan, I will incur interest until the margin loan is repaid.

I agree that if my Available Funds at any time falls below zero, Robinhood may suspend my ability to make Payments and terminate My Card. If this occurs, I agree to immediately pay all amounts owed to Robinhood, including any purchases on My Card which will be immediately charged to My Account.

I acknowledge and agree that Robinhood reserves the right to decline any Payments at any time for any reason with or without notice to Me. If Robinhood decides to take such action, I understand and agree that I am responsible for any pending debits, which will be processed and deducted from My Account.

2020.12

I understand that transactions will post to My Account in any order determined by Robinhood and that Robinhood may change that order without prior notice to Me. Robinhood will comply with requirements of applicable law regarding the order of posting transactions.

## C. Limitation of Liability.

I agree that, subject to any limitations imposed by applicable law, and except as otherwise set forth in this Agreement or in the disclosures contained in the Robinhood Debit Card Agreement, which has been provided to Me or made available to me in connection with the opening of My Account, Robinhood, Robinhood's agents, any processing bank, and the Card issuer will not be liable for any loss I incur in connection with My Account and any Payments or other features of My Account unless Robinhood is grossly negligent in fulfilling this Agreement. In no event will Robinhood, Robinhood's agents, any processing bank, and the Card issuer shall be liable for consequential, special or indirect damages or losses unless applicable law requires otherwise. I also agree that liability regarding online services or use of the App is further limited by the Robinhood Terms and Conditions, available at https://about.robinhood.com/legal/. To the extent I utilize online services or the App I acknowledge that I am bound by such Robinhood Terms and Conditions.

## D. Debit Cards.

I understand and agree that My use of the Card is subject to the terms, conditions and disclosures set forth in the Robinhood Debit Card Agreement, which has been provided to Me in connection with the opening of My Account and which I may access on the Website.

I understand and agree that I cannot request a Card for another person to use. I agree, however, that if I permit another person to have access to use My Card or Card number (an "Authorized Card User"), I am authorizing all Card transactions by such person and I agree that there are no limits to my authorization. I accept all liability with respect to the Card transactions effected by Me and any Authorized Card Users. I further agree that I may terminate the authority of an Authorized Card User only by contacting help@robinhood.com, to cancel my Card. I agree that the cancellation of My Card is effective only after Robinhood has a reasonable period to act on My notice.

If My Card is cancelled, I agree to destroy, or if requested by Robinhood, return the Card to Robinhood. I acknowledge that I will be responsible for any Card transactions that are processed because of My failure to destroy or return the Card following cancellation.

If My Account includes margin privileges, I agree that transactions that exceed My free credit balances and deposits in the Sweep Service may result in margin credit being extended to My Account, for which I will be charged interest. I agree to review the Margin Disclosure Statement, which is available at https://about.robinhood.com/legal/.

## E. Deposits.

The provisions in this Section 30.E shall apply to My Account whether or not I am enrolled in Cash Management.

*General; Holds.* I acknowledge and agree that funds that I deposit to My Account may be subject to one or more hold periods, which are described in the RHF Funds Availability schedule available at https://about.robinhood.com/legal/. I understand and agree that Robinhood reserves the right to modify the RHF Funds Availability schedule at any time by posting an updated schedule at https://about.robinhood.com/legal/, or otherwise providing notice to me. During the applicable hold period, My funds will not be available for Payments, withdrawal, or the settling of securities transactions, in each case as described in the RHF Funds Availability schedule. I further understand and agree that Robinhood reserves the right to further delay making deposited funds available for periods longer than the hold periods specified in the RHF Funds Availability schedule to the extent Robinhood determines that additional time is needed to verify information about the item deposited or the sender or if Robinhood otherwise believes there is a risk of fraud or other unlawful activity with respect to My Account.

2020.12

*Mistaken Deposits.* If funds are deposited or transferred into My Account by mistake or otherwise, I agree that Robinhood may correct the situation and deduct any interest paid by Participating Depository Institutions, if applicable, without prior notice to Me.

*Returned Funds.* I acknowledge and agree that I am responsible for returned transactions. If I have funds transferred into My Account and that transfer is returned for any reason, Robinhood may charge the transfer and interest paid by Participating Depository Institutions, if applicable, against My Account, without prior notice to Me.

## F. Electronic Fund Transfers.

The provisions in this Section 30.F relating to EFTs other than Card transactions shall apply to My Account whether or not I am enrolled in Cash Management.

I understand that My Account may be eligible for a variety of EFTs, which may be subject to separate agreements, terms and conditions. These services may include use of the Card, and the "Move Money" functionality of the App. I understand that I may be required to agree to separate terms and conditions governing the particular service I use to initiate EFTs. In addition, I understand and agree that my use of EFT services are subject to the disclosures set forth in Appendix A (Electronic Fund Transfer Disclosures), and acknowledge that I have received and reviewed such disclosures.

## G. Security.

I agree to protect My Card, and My PINs, from access by anyone not authorized by Me to use them. I acknowledge that I will be liable for all Card and online transactions conducted by anyone to whom I have given access or who has obtained access even if not authorized by Me, up to applicable legal limits. I understand that I am responsible for reviewing My Account statement promptly to discover and report unauthorized activity, including use of My Card, Card number or PIN. I agree to notify Robinhood as provided in Appendix A (Electronic Fund Transfer Disclosures) if I believe or have reason to believe that there has been unauthorized activity in My Account or that My Card, Card number or PIN has been lost, stolen or may be used by an unauthorized person. Unless limited by law or as otherwise set forth in this Agreement or in the disclosures contained in Robinhood Debit Card Agreement, which is provided to Me as part of the Account opening process and is available on the Website, I agree that I will be responsible for losses that arise from My failure to (i) safeguard My Card and PINs, (ii) review My monthly statement for possible unauthorized activity and (iii) report any unauthorized activity to Robinhood as provided herein or in the Robinhood Debit Card Agreement.

## H. No Illegal Purpose.

I agree and understand that I may not use my debit card or any Payments on My Account for any illegal purpose. I agree and understand that Robinhood may, in its discretion, deny any transactions that appear to be made for an illegal purpose.

## I. Pay by Check.

I agree and understand that if I try to stop payment on a check after it has been mailed to the payee, Robinhood will attempt to but cannot guarantee that payment on the check will be stopped. I understand that a stop payment order on a check is valid for six months. I understand that if I wish to renew a stop payment on a check after the six month period, I must contact Robinhood to request another stop payment. I agree and understand that I may still be liable to the holder of the check even if I have requested a stop payment for the amount of the check. I agree and understand that Robinhood may deduct My Account for the amount on the check if the stop payment request is unsuccessful.

2020.12

## J. Disclosure of Information.

I agree and understand that all disclosures of My non-public personal information shall be made in accordance with the terms of the this Agreement or the Robinhood Privacy Policy (available on the Website at https://about.robinhood.com/legal/, as applicable. I agree that My consent to sharing non-public personal information will remain in effect until I revoke such consent by updating My settings and visibility, which I may do at any time through the App.

In addition, I understand and agree that Robinhood may disclose information about My Account and My related activities to third parties under the following circumstances: - As necessary to complete My Payment transactions; - To investigate any complaint, disputed transaction, transaction inquiry or request I make or as necessary to investigate potential fraud or misuse related to My Account; - To respond to requests from credit bureaus, creditors or other third parties for account-related information, to the extent such inquiries are necessary for processing My transactions or are usual and customary in the course of servicing similar products or accounts; - As necessary to comply with any applicable law, government or court order or subpoena; or - In accordance with My written permission or as otherwise permitted under the Robinhood Privacy Policy.

## I. Termination.

I understand that Robinhood may terminate my participation in Cash Management or in specific features of Cash Management for any reason, upon notice to me.

## 31. Consent to Redeem Shares.

I understand and agree that whenever it is necessary for Robinhood's protection or to satisfy a margin call, deficiency, debit or other obligation owed to Robinhood, Robinhood may (but is not required to) sell, assign and deliver all or any part of the securities in My Account, or close any or all transactions in My Account. I understand that Robinhood may, but is not obligated to, attempt to contact Me before taking any such action. I understand and agree that Robinhood reserves the right to take any such action without prior notice or demand for additional collateral, and free of any right of redemption, and that any prior demand, call or notice will not be considered a waiver of our right to sell or buy without demand, call or notice.

I further understand that Robinhood may choose which securities to buy or sell, which transactions to close, and the sequence and timing of liquidation, and may take such actions on whatever exchange or market and in whatever manner (including public auction or private sale) that Robinhood chooses in the exercise of its business judgment. I agree not to hold Robinhood liable for the choice of which securities to buy or sell or of which transactions to close or for the timing or manner of the liquidation. I also agree not to hold Robinhood liable for taking such action.

I understand and agree that Robinhood is entitled to exercise the rights described in this section in its sole discretion, including, but not limited to, whenever any of the following occurs:

- The equity level in My Account falls below required minimums;
- Sufficient funds or securities are not deposited to pay for transactions in My Account;
- I reverse any ACH debit transfer to My Account;
- A petition of bankruptcy or for the appointment of a receiver is filed by or against Me;
- An attachment is levied against My Account;
- I die or become incapacitated or incompetent; or
- My Account is closed.

## 32. Electronic Delivery of Trade and Account Information; Notice.

All communications, notices, legal disclosures, and other materials related to My Account or this Agreement, including account statements, trade confirmations, margin calls, notices, disclosures, regulatory communications and other information, documents, data and records regarding My Account (the "Communications"), or an alert that any such Communication has been posted to the secure section of the Website or the App, and is available for viewing, may be sent to Me at the mailing address for My Account or the e-mail address that I have given to Robinhood in My account application or at such other

address as I may hereafter give Robinhood in writing or by e-mail at least ten (10) calendar days prior to delivery, and all communications so sent, whether in writing or otherwise, shall be deemed given to Me personally, whether actually received or not.

## 33. API.

### A. Overview; Definitions.

Robinhood may, in Robinhood's sole discretion, provide third parties with an application programming interface and other materials in accordance with any accompanying documentation (collectively, the "API Package") (such third parties, "API Licensees"), to make available certain features and functionality of Robinhood's mobile applications, websites, or technology platform via the API Licensees' products (such products, the "Licensee Products"). The API Package and the Licensee Products are collectively referred to as the "API Products". "Personal Information" means My personally identifiable information (including username, logon password, financial information, trade data, and other financial information) and all data exchanged between Robinhood and the API Products.

### B. Access to My Personal Information.

Through My use of any API Products, I may be providing API Licensees with access to My Account and Personal Information. By using any API Products, I acknowledge that such API Products may employ security, policies, procedures and systems of API Licensees which may or may not be less stringent and secure than Robinhood's policies, procedures and systems. I agree that My use of any API Products shall be subject to the terms and conditions of this Agreement, in addition to any other agreements which I executed with respect to any such API Products. I understand and agree that any end user agreement that I executed with any API Licensee is concluded between Me and such API Licensee only, and not with Robinhood; and such API Licensee, not Robinhood, is solely responsible for such Licensee Product and the content thereof. I understand and agree that the API Products may deliver Personal Information to Robinhood, and that Robinhood is authorized to receive and store such Personal Information consistent with Robinhood's then-in-effect policies and procedures. Further, I agree that the API Products may request Personal Information stored by Robinhood, and I consent to Robinhood's disclosure of such Personal Information to the API Products.

### C. No Recommendations.

To the extent the Licensee Products or API Licensees express opinions or make recommendations, I understand that such opinions and recommendations are expressed solely by API Licensees and are not the opinions or recommendations of Robinhood. The existence of the API Products and Robinhood's consent to any connectivity between any Licensee Products and Robinhood's technology, the App, the Website, or trading platform(s) does not constitute (i) any recommendation by Robinhood to invest in any security or utilize any investment strategy; or (ii) any representation, warranty, or other guarantee by Robinhood as to the present or future value or suitability of any sale, trade, or other transaction involving any particular security or any other investments. The existence of any and all information, tools and services provided by API Licensees or by the Licensee Products shall not constitute Robinhood's endorsement of API Licensees or the Licensee Products.

### D. Data Provided by Robinhood to API.

From time to time, and subject to then-in-effect agreements between Robinhood and API Licensees, Robinhood may, in its own discretion, make market data feeds received from third parties available via the API Products. Robinhood does not make any guarantees in regard to such market data feeds. Furthermore, API Licensees or Licensee Products may make available to Me market data feeds independent of Robinhood. I am aware that from time to time that there may be discrepancy between the market data presented on the App or Website and information provided by any API Products due to a variety of reasons, including the time to update and transmit such data to a mobile application or website

2020.12

and latency caused by such API Product's or My local environment (such as computer set up, connection speed, etc.). Robinhood is not responsible for the accuracy of any market data displayed on any API Products or otherwise made available by API Licensees.

## E. Risks; No Liability.

I acknowledge that there may be latency between the time an order (or other Personal Information) is submitted from the API Products and the time such order or Personal Information is received by Robinhood. Latency may also affect order modification and order cancellation requests. The time an order or a request is actually received by Robinhood (including for execution) will be the official time, including for the purposes of routing the order to the market for execution. In addition, all orders submitted to Robinhood are subject to order vetting by Robinhood. Orders created and submitted through any API Products are not vetted until they are received by Robinhood. It is possible that Robinhood may reject an order placed through any API Products. Robinhood cannot guarantee that any order will be accepted when such order is routed to the market for execution, and Robinhood cannot guarantee that notifications and Personal Information provided to Me by Robinhood will be successfully delivered to or displayed by any API Products.

Without limiting the generality of any other terms in this Agreement, I agree that:

1. Robinhood or its Affiliates shall not be liable for any Losses as a result of any issues addressed in this Section 33 of this Agreement, nor shall Robinhood or its Affiliates be liable for any Losses realized for technical issues involving any API Products or API Licensee technology or product offerings (including system outages or downtime).

2. Robinhood or its Affiliates shall not be responsible for any investment research provided by any API Licensee or any Licensee Products.

3. Robinhood or its Affiliates makes no representations, warranties or other guarantees as to the accuracy, timeliness or efficacy of any market data, information, or other functionality made available by any API Licensee or any API Products.

## F. Intellectual Property.

My use of any API Products will not confer to Me any title, ownership interest or intellectual property rights that otherwise belongs to Robinhood or any of its affiliates. The API Package, including content, is protected under U.S. patent, copyright laws, international treaties or conventions, and other laws and will remain Robinhood's exclusive property, as applicable. Names, logos, and all related product and service names, design marks, and slogans displayed by or relating to Robinhood or any of its Affiliates or API Licensees in the context of the API Products shall remain the property of the respective owner, and use of such property by Robinhood or any API Licensee in marketing or provision of any API Products does not grant ownership of or entitle Me to use any such name or mark in any manner.

## G. User's Representations and Warranties.

I represent and warrant that:

1. By virtue of utilizing any API Products, I consent to and accept any risk associated with Robinhood's sharing of Personal Information with any API Licensee and shall not hold Robinhood, its Affiliates, or their respective officers, directors, or employees responsible for any Losses resulting from the sharing of such Personal Information.

2. I agree that My use of any API Products or API Licensee's content, information, technology, or functionality is at My own risk.

3. I agree that Robinhood may revoke any API Licensee or API Products' authorization at any time, for any reason, with or without cause and without prior notice to Me.

### 34. Electronic Signatures; Modifications to the Agreement.

I agree to transact business with Robinhood electronically. By electronically signing an application for an Account, I acknowledge and agree that such electronic signature is valid evidence of My consent to be legally bound by this Agreement and such subsequent terms as may govern the use of Robinhood's services. The use of an electronic version of any document fully satisfies any requirement that the document be provided to Me in writing. I accept notice by electronic means as reasonable and proper notice, for the purpose of any and all laws, rules and regulations. I acknowledge and agree that Robinhood Financial may modify this Agreement from time to time and I agree to consult the Website from time to time for the most up-to-date Agreement. The electronically stored copy of this Agreement is considered to be the true, complete, valid, authentic and enforceable record of the Agreement, admissible in judicial or administrative proceedings to the same extent as if the documents and records were originally generated and maintained in printed form. I agree to not contest the admissibility or enforceability of Robinhood Financial's electronically stored copy of the Agreement.

### 35. Margin Accounts.

#### A. Election.

This numbered section applies to my account to the extent I elect and am approved for a Robinhood Gold margin account.

#### B. Margin Trading.

I understand that margin trading involves interest charges and risks, including the potential to lose more than deposited or the need to deposit additional collateral in a falling market. Before using margin, customers must determine whether this type of trading strategy is right for them given their specific investment objectives, experience, risk tolerance, and financial situation. If I have elected to have a margin Account, I represent that I have read the Margin Disclosure Statement, Day Trading Risk Disclosure, and FINRA Investor Information. These disclosures contain information on Robinhood's lending policies, interest charges, and the risks associated with margin accounts.

#### C. Hypothecation.

Within the limitations imposed by applicable laws, rules and regulations, all securities now or hereafter held by Robinhood, or carried by Robinhood in any account for Me (either individually or jointly with others), or deposited to secure same, may from time to time, without any notice, be carried in your general loans and may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities for the sum due to you thereon or for a greater sum and without retaining in your possession or control for delivery a like amount of similar securities. The IRS requires Broker Dealers to treat dividend payments on loaned securities positions as payments received in lieu of dividends for 1099 tax reporting purposes. Taxation of substitute dividend payments may be greater than ordinary on qualified dividends. It is understood, however, that you agree to deliver to Me upon My demand and upon payment of the full amount due thereon, all securities in such accounts, but without obligation to deliver the same certificates or securities deposited by Me originally. Any securities in My margin or short account may be borrowed by you, or lent to others.

#### D. Interest.

Debit balances in My Accounts shall be charged with interest in accordance with your established custom, as disclosed to Me in the Customer Information Brochure pursuant to the provisions of the Securities Exchange Act.

2020.12

### E. Margin.

I agree to maintain in all accounts with Robinhood such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable. I agree to promptly satisfy all margin and maintenance calls.

### F. Sales.

I agree to specifically designate any order to sell a security, which I do not own as a short sale, and understands that Robinhood will mark such order as a short sale. I agree that any order which is not specifically designated as a short sale is a sale of securities owned by me, and that I will deliver the securities on or before settlement date, if not already in the account. If I should fail to make such delivery in the time required, Robinhood is authorized to borrow such securities as necessary to make delivery for the sale, and I agree to be responsible for any loss you may thereby sustain, or which you may sustain as a result of your inability to borrow such securities.

## 36. Consent to Electronic Delivery of Documents.

### A. Consent.

**By agreeing to electronic delivery, I am giving My informed consent to electronic delivery of all Account Documents, as defined below, other than those I have specifically requested to be delivered in paper form.** "Account Documents" include notices, disclosures, current and future account statements, regulatory communications (such as prospectuses, proxy solicitations, and privacy notices), trade confirmations, tax-related documents, and any other information, documents, data, and records regarding My Account, this Agreement (including amendments to this Agreement), and the agreements and disclosures governing the services delivered or provided to Me by Robinhood Financial, the issuers of the securities or other property in which I invest, and any other parties. I agree that I can access, view, download, save, and print any Account Documents I receive via electronic delivery for My records.

### B. Electronic Delivery System.

I acknowledge that Robinhood's primary methods of communication with Me include (A) posting information on the Website, (B) providing information via the App, (C) sending email(s) to My email address of record, and, to the extent required by law, (D) providing Me with notice(s) that will direct Me to the App or the Website where I can read and print such information. Unless otherwise required by law, Robinhood reserves the right to post Account Documents on the Website without providing notice to Me. Further, Robinhood reserves the right to send Account Documents to My postal or email address of record, or via the App or Website. I agree that all Account Documents provided to Me in any of the foregoing manner is considered delivered to Me personally when sent or posted by Robinhood, whether I receive it or not.

All e-mail notifications regarding Account Documents will be sent to My e-mail address of record. I agree to maintain the e-mail address that I have provided Robinhood until I provide Robinhood with a new one. I understand that e-mail messages may fail to transmit promptly or properly, including being delivered to SPAM folders. I further understand that it is My sole responsibility to ensure that any emails from Robinhood or its Affiliates are not marked as SPAM. Regardless of whether or not I receive an e-mail notification, I agree to check the Website regularly to avoid missing any information, including time-sensitive or otherwise important communication. If I authorize someone else to access the e-mail account I have provided Robinhood, I agree to tell them to share the Account Documents with Me promptly, and I accept the risk that they will see My sensitive information. I understand that if I use a work e-mail address or computing or communications device, My employer or other employees may have access to the Account Documents.

Additionally, I acknowledge that the Internet is not a secure network and agree that I will not send any confidential information, including Account numbers or passwords, in any unencrypted e-mails. I also

2020.12

understand that communications transmitted over the Internet may be accessed by unauthorized or unintended third parties and agree to hold Robinhood, its Affiliates, and Robinhood and its Affiliates' respective officers and employees harmless for any such access regardless of the cause.

I agree to promptly and carefully review all Account Documents when they are delivered and notify Robinhood Financial in writing within five (5) calendar days of delivery if I object to the information provided (or other such time specified herein). If I fail to object in writing within such time, Robinhood Financial is entitled to treat such information as accurate and conclusive. I will contact Robinhood to report any problems with accessing the Account Documents.

## C. Costs.

Potential costs associated with electronic delivery of Account Documents may include charges from Internet access providers and telephone companies, and I agree to bear these costs. Robinhood Financial will not charge Me additional online access fees for receiving electronic delivery of Account Documents.

## D. Archival.

Upon My request, I may obtain copies of up to six (6) prior years of account statements, and three (3) prior years of trade confirmations.

## E. Revocation of Consent.

Subject to the terms of this Agreement, I may revoke or restrict My consent to electronic delivery of Account Documents at any time by notifying Robinhood Financial in writing of My intention to do so. I also understand that I have the right to request paper delivery of any Account Document that the law requires Robinhood Financial to provide Me in paper form. Robinhood Financial will not treat My request for paper copies as a withdrawal of My consent to electronic delivery of Account Documents. I understand that if I revoke or restrict My consent to electronic delivery of Account Documents or request paper delivery of same, Robinhood Financial, in its sole discretion, may charge Me a reasonable service fee for the delivery of any Account Document that would otherwise be delivered to Me electronically, restrict or close My account, or terminate My access to Robinhood Financial's services. I understand that neither My revocation or restriction of consent, My request for paper delivery, nor Robinhood Financial's delivery of paper copies of Account Documents will affect the legal effectiveness or validity of any electronic communication provided while My consent was in effect.

## F. Duration of Consent.

My consent to receive electronic delivery of Account Documents will be effective immediately and will remain in effect unless and until either I or Robinhood Financial revokes it. I understand that it may take up to three (3) Business Days to process a revocation of consent to electronic delivery, and that I may receive electronic notifications until such consent is processed.

## G. Hardware and Software Requirements.

I understand that in order to receive electronic deliveries, I must have access to a computer or Mobile Device with Internet access, a valid e-mail address, and the ability to download such applications as Robinhood Financial may specify and to which I have access. I also understand that if I wish to download, print, or save any information I wish to retain, I must have access to a printer or other device in order to do so.

2020.12

## H. Consent and Representations.

I hereby agree that I have carefully read the above information regarding informed consent to electronic delivery and fully understand the implications thereof. Additionally, I hereby agree to all conditions outlined above with respect to electronic delivery of any Account Document. I will maintain a valid e-mail address and continue to have access to the Internet. If My e-mail address changes, I agree to immediately notify Robinhood Financial of My new e-mail address in writing.

## 37. Miscellaneous Provisions.

The following provisions shall also govern this Agreement:

## A. Contact Information.

Robinhood Customer Service may be contacted by visiting support.robinhood.com or by email at help@robinhood.com.

## B. Interpretation.

The heading of each provision hereof is for descriptive purposes only and shall not be (1) deemed to modify or qualify any of the rights or obligations set forth herein or (2) used to construe or interpret any of the provisions hereunder. When a reference is made in this Agreement to a Section, such reference shall be to a Section of this Agreement unless otherwise indicated. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The word "or," when used in this Agreement, has the inclusive meaning represented by the phrase "and/or." Unless the context of this Agreement otherwise requires: (i) words using the singular or plural number also include the plural or singular number, respectively; and (ii) the terms "hereof," "herein," "hereunder" and derivative or similar words refer to this entire Agreement. References to any law shall be deemed to refer to such law as amended from time to time and to any rules or regulations promulgated thereunder.

## C. Binding Effect; Assignment.

This Agreement shall bind My heirs, assigns, executors, successors, conservators and administrators. I may not assign this Agreement or any rights or obligations under this Agreement without first obtaining Robinhood's prior written consent. Robinhood may assign, sell, or transfer My Account and this Agreement, or any portion thereof, at any time, without My prior consent.

## D. Severability.

If any provisions or conditions of this Agreement are or become inconsistent with any present or future law, rule, or regulation of any applicable government, regulatory or self-regulatory agency or body, or are deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Agreement shall continue in full force and effect.

## E. Website Postings.

I agree and understand that Robinhood Financial may post other specific agreements, disclosures, policies, procedures, terms, and conditions that apply to My use of the App, the Website, or My Account

on the Website ("Website Postings"). I understand that it is My continuing obligation to understand the terms of the Website Postings, and I agree to be bound by the Web Postings as are in effect at the time of My use.

## F. Entirety of Agreement.

This Agreement, any attachments hereto, other agreements and policies referred to in this Agreement (including the Website Postings), and the terms and conditions contained in My Account statements and confirmations, contain the entire agreement between Robinhood and Me and supersede all prior or contemporaneous communications and proposals, whether electronic, oral, or written, between Robinhood and Me, provided, however, that any and all other agreements between Robinhood and Me, not inconsistent with this Agreement, will remain in full force and effect.

## G. Amendment.

Robinhood may at any time amend this Agreement without prior notice to Me. The current version of the Agreement will be posted on the Website and My continued Account activity after such amendment constitutes My agreement to be bound by all then-in-effect amendments to the Agreement, regardless of whether I have actually reviewed them. Continued use of the App, the Website or any other Robinhood Financial services after such posting will constitute My acknowledgment and acceptance of such amendment. I agree to regularly consult the Website for up-to-date information about Robinhood Financial services and any modifications to this Agreement. Robinhood is not bound by any verbal statements that seek to amend the Agreement.

## H. Termination.

Robinhood may terminate this Agreement, or close, deactivate, or block access to My Account at any time in its sole discretion. I will remain liable to Robinhood for all obligations incurred in My Account, pursuant to this Agreement, or otherwise, whether arising before or after termination. I may terminate this Agreement after paying any obligations owed upon written notice. This Agreement survives termination of My Account.

## I. No Waiver; Cumulative Nature of Rights and Remedies.

I understand that Robinhood's failure to insist at any time upon strict compliance with any term contained in this Agreement, or any delay or failure on Robinhood's part to exercise any power or right given to Robinhood in this Agreement, or a continued course of such conduct on Robinhood's part, shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise. All rights and remedies given to Robinhood in this Agreement are cumulative and not exclusive of any other rights or remedies to which Robinhood is entitled.

## J. International Customers.

The products and services described on the Website are offered only in jurisdictions where they may be legally offered. Neither the Website nor the App shall be considered a solicitation for or offering of any investment product or service to any person in any jurisdiction where such solicitation or offering would be illegal. I understand that Robinhood, in its sole discretion, may accept unsolicited accounts from non-U.S. residents, depending on the country of residence and other factors. I understand that Robinhood is based in the United States and that Robinhood accepts only U.S. currency in Robinhood's customer accounts.

2020.12

## K. Governing Law.

This Agreement and all transactions made in My Account shall be governed by the laws of the State of California (regardless of the choice of law rules thereof), except to the extent governed by the federal securities laws, FINRA Rules, and the regulations, customs and usage of the exchanges or market (and its clearing house) on which transactions are executed.

## 38. Arbitration.

**A. This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows: (1) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed. (2) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited. (3) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings. (4) The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date. (5) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry. (6) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court. (7) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement. B. Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood, any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate any controversy or claim before FINRA DR in the State of California. C. This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws. If I am a foreign national, non-resident alien, or if I do not reside in the United States, I agree to waive My right to file an action against Robinhood in any foreign venue. D. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.**

ACCEPTED AND AGREED: I acknowledge that I have read the preceding terms and conditions of this Agreement, that I understand them and that I hereby manifest my assent to, and my agreement to comply with, those terms and conditions by accepting this agreement. **I ALSO UNDERSTAND THAT BY ACCEPTING THIS AGREEMENT I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 38 HEREIN. I ALSO AGREE (1) THAT ANY OF MY MARGIN ACCOUNT SECURITIES MAY BE BORROWED BY ROBINHOOD OR LOANED TO OTHERS; (2) I HAVE RECEIVED OF A COPY OF THIS AGREEMENT AND (3) I HAVE REVIEWED A COPY OF THE MARGIN DISCLOSURE STATEMENT.**

## Appendix A

## Electronic Fund Transfer Services Disclosures

The following disclosures apply to the use of any EFT services offered by Robinhood, including the Card, ACH transactions and the Move Money functionality of the App.

Solely for purposes of these disclosures: (i) references to the Bank shall include any financial institution that issues the Card or provides services in connection with ACH, Move Money or other EFT transactions; (ii) "you" and "your" mean the owner of the Account; and (iii) "we" and "us" means Robinhood and the Bank collectively.

2020.12

## 1. Your Liability.

Contact Robinhood Customer Service AT ONCE if you believe your Card or PIN has been lost or stolen or if you believe that an electronic fund transfer has been made without your permission. Telephoning is the best way of keeping your losses down. You could lose all the Available Funds in your Account (plus your maximum overdraft line of credit). If you tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, you can lose no more than $50 if someone used your Card or PIN without your permission.

If you do NOT tell Robinhood within 2 business days after you learn of the loss or theft of your Card or PIN, and Robinhood can prove that it could have stopped someone from using your Card or PIN without your permission if you had told Robinhood, you could lose as much as $500.

Also, if your statement shows transfers that you did not make, including those made by Card or using your PIN, tell Robinhood at once. If you do not tell Robinhood within sixty (60) days after the statement was mailed to you, or otherwise made available to you, you may not get back any money you lost after the sixty (60) days if Robinhood can prove that Robinhood could have stopped someone from taking the money if you had told Robinhood in time. If a good reason (such as a long trip or a hospital stay) kept you from telling Robinhood, Robinhood will extend the time periods.

## 2. Contact in event of unauthorized transfer.

If you believe your Card or PIN has been lost or stolen, contact Robinhood by emailing help@robinhood.com,.

## 3. Business Days.

Business Days are Monday through Friday, excluding federal holidays.

## 4. Transfer Types and Limitations.

You may use your Card to make purchases at any merchant that accepts Mastercard debit cards or debit cards of other networks in which the Bank participates, and to make ATM withdrawals, in each case subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement. You acknowledge and agree that the value available to you for use with the Card is limited to the Available Funds in your Account. So long as you do not exceed the Available Funds in your Account, you may use the Card to purchase goods or services wherever the Card is honored, and to obtain cash by initiating cash withdrawal transactions through the Card from any financial institution or ATM that accepts the Card. Each time you use the Card, you authorize Robinhood to reduce the Available Funds in your Account by the amount of the purchase or withdrawal and any applicable fees, costs, or holdings. Nevertheless, if you exceed the Available Funds in your Account you shall remain fully liable to Robinhood for the amount of the transactions and any applicable fees and charges.

You may also make ACH withdrawals from your Account, either originated through Robinhood or originated by a third party (a "non-originated" withdrawal), subject to the Available Funds in your Account, the transaction limits described below, and the other terms and conditions of this Agreement. You also may make ACH deposits to your Account, either originated through Robinhood or originated by a third party (a "non-originated" deposit), subject to the transaction limits described below.

There are limits on the dollar amount of transactions you can make with your Card each day and each month, and limits on the amount of ACH withdrawals and deposits you can make each day. The following lists the limits for each type of transaction:

**Originated ACH Withdrawals*** Daily Limit: $50,000.00
Weekly Limit: N/A Monthly Limit: N/A

**Originated ACH Deposits\*** Daily Limit: $50,000.00
Weekly Limit: N/A Monthly Limit: N/A

**Non-Originated ACH Withdrawals\*** Daily Limit: $250,000.00
Weekly Limit: N/A Monthly Limit: N/A

**Non-Originated ACH Deposits\*** Daily Limit: $250,000.00
Weekly Limit: N/A Monthly Limit: N/A

**Point of Sale Purchases with the Card\*** Daily Limit: $5,000.00 Weekly Limit: N/A Monthly Limit: $15,000.00

**ATM Withdrawals\*** Daily Limit: $510.00 Weekly Limit: N/A Monthly Limit: $5,000.00

**Originated ACH\*** Daily Limit: N/A, subject to the Weekly Limit Weekly Limit: $2,999 Monthly Limit: N/A

## 5. Fees.

We will not charge you any fees for use of ATMs that are part of the AllPoint or MoneyPass ATM networks, or for point of sale transactions using the Card, or for initiating other EFTs on your behalf. If you withdraw funds from ATMs outside of the AllPoint or MoneyPass ATM networks, you may be separately assessed fees by those ATM owners or operators.

## 6. Confidentiality.

We may disclose information to third parties about you, your Card, or the transactions you make using any of the EFT services we provide:

1. Where it is necessary or helpful for completing or correcting transactions and resolving claims regarding transactions;
2. In order to verify the existence and condition of your Card or your Account for a third party, such as a merchant;
3. In order to comply with a valid request by a government agency, a court order, or other legal or administrative reporting requirements;
4. If you consent by giving us your written permission;
5. To our employees, auditors, affiliates, service providers, or attorneys as needed;
6. In order to prevent, investigate or report possible illegal activity;
7. In order to issue authorizations for transactions on the Card;
8. As permitted by applicable law; or
9. Otherwise as necessary to fulfill our obligations under this Agreement and the terms applicable to the EFT service you are using.

Please see Robinhood's privacy policy, available at about.robinhood.com/legal, and the applicable Bank's privacy policy, available at https://www.suttonbank.com/_/kcms-doc/85/49033/WK-Privacy-Disclosure-1218.pdf, for further details. (The Robinhood privacy policy and the applicable Bank's privacy policy are referred to collectively as the "Privacy Policies"). You hereby agree to Robinhood's and the Bank's collection, use and sharing of information about you and the Card as provided in the Privacy Policies, which are made a part of this Agreement. The Privacy Policies also tell you how you can (i) limit the ways in which Bank and Robinhood share information about you, or (ii) request corrections to the information that Bank or Robinhood maintain about you. You agree that information you provide in connection with your Card or other EFT services you use is being provided directly to both Robinhood as the holder of the Account associated with the service and the Bank as the Card issuer or provider of the EFT service, as applicable.

## 7. Documentation.

*Terminal Transfers.* You can get a receipt at the time you make any transfer to or from your Account using an ATM from the AllPoint or MoneyPass ATM networks or at the point of sale.

2020.12

*Preauthorized Credits.* If you have arranged to have direct deposits made to your Account at least once every 60 days from the same person or company, the person or company making the deposit will tell you every time they send us the money. You can also check your Account online to see if a deposit has been received.

*Periodic Statements.* You will get a monthly Account statement, unless there are no transfers in a particular month. In any case you will get the statement at least quarterly. You may obtain information about the Available Funds in your Account and a history of your Cash Management transactions on the App.

## 8. Preauthorized Payments/Stop Payment Procedure and Notice of Varying Amounts.

You do not have the right to request that Robinhood in advance make regular payments out of your Account, although you may ask third parties to initiate regular payments out of your Account.

*Right to stop payment:* If you have automatic recurring payments taken out of your Account, you can stop any of these payments by contacting us at help@robinhood.com,. You must contact us in time for us to receive your request at least three business days before the payment is scheduled to be made.

*Notice of varying amounts:* If these regular payments vary in amount, the party you are going to pay will tell you, 10 days before each payment, when the payment will be made and how much it will be. (The party you are going to pay may allow you to choose to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)

*Liability for failure to stop payment of a preauthorized transfer:* If you order us to stop a payment at least three business days before the transfer is scheduled and we do not do so, we will be liable for your losses or damages.

## 9. Our Liability.

If we do not complete a transaction to or from your Account on time or in the correct amount according to our Agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance:

1. If through no fault of Robinhood or the Bank, you do not have enough Available Funds in your Account to complete the transaction;

2. If a merchant refuses to accept your Card;

3. If an electronic terminal where you are making a transaction does not operate properly, and you knew about the problem when you initiated the transaction;

4. If access to your Card has been blocked after you reported your Card lost or stolen;

5. If there is a hold or your funds are subject to legal or administrative process or other encumbrance restricting their use;

6. If Robinhood or the Bank have reason to believe the requested transaction is unauthorized;

7. If circumstances beyond the control of Robinhood or the Bank (such as fire, flood, or computer or communication failure) prevent the completion of the transaction, despite reasonable precautions that Robinhood or the Bank have taken; or

8. For any other exception stated in this Agreement with you or by applicable law.

2020.12

## 10. Errors or Questions About Electronic Transfers.

In case of errors or questions about your electronic transfers, including your Card transactions, or if you think your statement or receipt is wrong or if you need more information about a transaction listed on the statement or receipt, contact Robinhood by emailing help@robinhood.com. Robinhood must hear from you no later than sixty (60) days after you were sent the FIRST statement on which the problem or error appeared.

1. Tell Robinhood your name and account number.

2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

3. Tell Robinhood the dollar amount of the suspected error.

Robinhood will determine whether an error occurred within ten (10) business days after Robinhood hears from you and will correct any error promptly. If Robinhood needs more time, however, it may take up to forty-five (45) days to investigate your complaint or question. If Robinhood decides to do this, Robinhood will credit your Account within ten (10) business days for the amount you think is in error, so that you will have the use of the money during the time it takes Robinhood to complete our investigation.

For errors involving new accounts, point of sale, or foreign initiated transactions, Robinhood may take up to ninety (90) days to investigate your complaint or question. For new accounts, Robinhood may take up to twenty (20) business days to credit your Account for the amount you think is in error.

Robinhood will tell you the results of our investigation within three (3) business days after completing the investigation. If Robinhood decides that there was no error, Robinhood will send you a written explanation. You may ask for copies of the documents that Robinhood used in our investigation.

2020.12

# Exhibit 3

# Robinhood United States Privacy Policy



At Robinhood, we take privacy and security seriously. This United States Privacy Policy outlines how Robinhood Financial LLC and its affiliates (collectively, the "Company," "Robinhood," "we," "our," or "us") process the information we collect about you through our websites, mobile apps, and other online services (collectively, the "Services") and when you otherwise interact with us, such as through our customer service channels.

If you are a California resident, please also see the "Notice to California Residents" section below. If you have a Robinhood account, or have taken steps to register for an account, you can also review our Consumer Privacy Notice for a summary of our practices regarding the information we collect about you.

Click on the links below to jump to specific sections:

1. TYPES OF INFORMATION COLLECTED AND HOW WE COLLECT THEM
2. HOW WE USE YOUR INFORMATION
3. DISCLOSURES OF PERSONAL INFORMATION
4. THIRD-PARTY LINKS
5. THIRD-PARTY TRACKING AND ONLINE ADVERTISING
6. CONTROL OVER YOUR INFORMATION
7. NOTICE TO CALIFORNIA RESIDENTS
8. TRANSFER OF PERSONAL INFORMATION
9. CHILDREN'S PRIVACY
10. CHANGES TO THIS POLICY
11. HOW TO CONTACT US

## 1. TYPES OF INFORMATION COLLECTED AND HOW WE COLLECT THEM.

**Personal Information You Provide:**

We collect the following personal information you provide when you use our Services, like when you sign up for an account, request a transaction, enroll in a promotion or program, or otherwise engage or communicate with us:

ROBINHOOD: ROBINHOOD UNITED STATES PRIVACY POLICY 

1. **Identity Data** includes your full name, date of birth, gender, social security numbers, and other data on government–issued identification documents.

2. **Contact Data** includes your email address, mailing address, and telephone numbers.

3. **Financial Data** includes your bank account and payment card details, suitability information, and information about your income, account balances, financial transaction history, credit history, tax information, and credit scores.

4. **Profile Data** includes your username and password, purchases or orders made by you, your knowledge assessment results, and your interests, preferences, feedback, and survey responses.

5. **Usage Information** includes information about how you access and use our Services, such as your actions on the Services, including your interactions with others on the Services, photos or media you upload to the Services, your username, and other content you provide ("Usage Information"). We only access your device camera roll and camera with your permission. If you need to update your permissions, you can do so in your device's settings. Please remember that Robinhood may, but has no obligation to, monitor, record, and store Usage Information in order to protect your safety or the safety of other users, to assist with regulatory or law enforcement efforts, to protect and defend our rights and property, or for other reasons relating to our provision of the Services. By using the Services, you consent to the recording, storage, and disclosure of such information you send or receive for these purposes.

6. **Contact List Information** With your permission, we may access your contact list on your mobile device or in your email accounts so that you can identify your contacts on the Services and direct the invitation of your contacts. We store and use this information to suggest referrals or connections and for other reasons related to our provision of the Services. We make these recommendations based on your contact list information as well as, with their consent, your contacts' information if they are also a Robinhood customer. We only access your contact list information with your explicit permission. If you provide us with personal data from your third–party contacts, it is your responsibility to ensure that the communication of such data to, and further processing by, Robinhood is lawful. For example, when you provide us with information about your contacts, we may use it to let you know which of your contacts have also signed up for our Services or, at your exclusive direction, send messages to your contacts regarding our Services. We will not send messages to your contacts that are not explicitly directed by you.

7. **Additional Information** includes information that you submit via focus groups, contests/sweepstakes, job applications, customer support, or other similar means. We may also collect any communications between Robinhood and you (including recording calls made to or by Robinhood) and any other information you provide to Robinhood.

**Personal Information Collected Automatically:**

As is true of many digital platforms, we collect certain personal information automatically when you visit our online services, including:

- **Location Data.**

  To help us protect against fraud, provide our services to you, and improve our services, we collect location data, including current and historical information concerning a user's geographic location, GPS location, transaction location, and IP addresses that they use in conjunction with our Services. We collect your precise location data with your permission, and use that information, for example, to help protect against fraud by detecting and declining debit card transactions that may occur far away from your device's location. We collect information about your location through GPS, Wi–Fi, wireless network triangulation, or other methods in order to obtain your location. We may also approximate your location by your IP Address. We also use the Google Maps API to gather information about your location. Google uses various technologies to determine your location, including IP address, GPS, and other sensors that may, for example, provide Google with information on nearby devices, Wi–Fi access points, and cell towers (see Google's Privacy Policy to learn more).

- **Usage and Device Data Collected Automatically Through Tracking Technologies.**

  To provide a personalized and enhanced user experience, we, and our third–party partners, automatically collect certain types of usage information when you visit or use our Services, read our emails, or otherwise engage with us. We typically collect this information through a variety of tracking technologies, including cookies, Flash objects, web beacons, embedded scripts, location identifying technologies, file information, and similar technology (collectively, "Tracking Technologies"). For example, we collect information about your device and its software, such as your IP address, browser type, Internet service provider, platform type, device type, operating system, date and time stamp, a unique ID (that allows us to uniquely identify your browser, mobile device, or your account), and other similar information. We use Tracking Technologies to help ensure that you have a high–quality experience on our Services. We also use Tracking Technologies to aid in the targeted advertising of our services on other platforms. From your device manufacturer, we also may collect the names of other third–party applications that you have downloaded on your device.

If you prefer, you can change your cookie settings. Some browsers have options that allow the user to control whether the browser will accept cookies, reject cookies, or notify the user each time a cookie is sent. You may elect to reject cookies by adjusting your settings, but doing so will limit the range of features available to you on our Services and other websites. Be sure to read any information provided by your browser developer to understand the limitations of these settings, as they may differ from browser to browser and may not apply to all technologies. You



may also set your email options to prevent the automatic downloading of images that may contain technologies that would allow us to know whether you have accessed our email, used our Services, or performed certain functions with it.

Our Services also occasionally use "local shared objects" (also known as "Flash cookies"). Like browser cookies, Flash cookies may be used for coordinating content delivery, website functionality, maintaining preferences, advertising, or analytics. Unlike browser cookies, "Flash cookies" are not stored in the browser. You may be able to manage these Flash cookies by visiting the Adobe website here.

*Do-Not-Track Signals and Similar Mechanisms.* Some web browsers transmit "do-not-track" signals to websites. We currently don't take action in response to these signals.

### Personal Information from Other Sources and Third Parties:

We also obtain personal information from other sources, which we often combine with personal information we collect either automatically or directly from you.

- **Third-party Data** includes data that we collect from business partners, marketing, and vendor partners.

- **Account Linking.** Robinhood offers account linking and aggregation services ("Linking Services") through Plaid Inc. ("Plaid"). By utilizing these Linking Services, you acknowledge and agree that the terms of Plaid's Privacy Policy (currently located at https://plaid.com/legal/#end-user-privacy-policy) will govern Plaid's use of such information, and you expressly agree to the terms and conditions of Plaid's Privacy Policy. Further, you expressly grant Plaid the right, power, and authority to access and transmit your information as reasonably necessary for Plaid to provide the Linking Services to you. To the extent you previously utilized account linking and aggregation services through Robinhood's previous service provider, Quovo, Inc., you expressly authorize Quovo, Inc. to transmit any information or data arising out of those services to Plaid so that Plaid can offer you its Linking Services.

- **Third Party Services.** If you link, connect, or log in to your Robinhood Account with a third-party service (e.g. Google, Apple), the third-party service may send us information such as your profile information from that service. This information varies and is controlled by that service or as authorized by you via your privacy settings at that service.

- **Publicly Available Data** includes contact information, employment-related information, and other information from publicly available sources. We may combine this information with the information we collect from you directly. We use this information to contact you,

ROBINHOOD: ROBINHOOD UNITED STATES PRIVACY POLICY

to send you advertising or promotional materials, to personalize our Services, and to better understand the demographics of our users.

## 2. HOW WE USE YOUR INFORMATION.

We use and process the information we collect for purposes described in this United States Privacy Policy or as otherwise described to you on our Services or in connection with our Services. For example, we use your information to:

- **Create and process your account and deliver the Services to you,** including to allow you to register for the Services and participate in interactive features and for Robinhood to authenticate your identity, handle billing and account management, fulfill our legal and regulatory obligations such as obligations that apply to being a regulated broker–dealer, and complete other administrative matters;

- **Send you transactional information,** including confirmations, invoices, technical notices, product and services information and announcements, software updates, security alerts, support and administrative messages, and information about your transactions with us;

- **Communicate with you** such as to respond to your comments and questions, deliver newsletters or other content we believe you will be interested in, provide customer service or feedback, contact you about amounts owed, conduct surveys, respond to employment opportunities for which you've applied, notify you about upcoming events, or for any other purposes in connection with the Services;

- **Conduct research and analytics** to understand our visitors and customers and tailor our product offerings;

- **Provide you with updates about products and services** offered by us and selected partners, as well as facilitate new contests, sweepstakes, promotions, and rewards;

- **Make suggestions and recommendations to you** about things that are similar to those about which you have inquired or that may otherwise be of interest to you, such as providing you with advertisements based on your interests and activity on the Services;

- **Monitor, administer, and enhance our Services, including troubleshooting, data analysis, testing, research, statistical, and survey purposes;**

- **Enhance the safety and security of our Services, business, and users,** and investigate or provide notice of fraud or unlawful or criminal activity;

- **Perform audits and protect or exercise our legal rights or defend against legal claims,** including to enforce and carry out contracts and agreements; and

- **Comply with applicable laws and legal obligations.**

ROBINHOOD: **ROBINHOOD UNITED STATES PRIVACY POLICY** 

## 3. DISCLOSURES OF PERSONAL INFORMATION.

We are committed to maintaining your trust, and we want you to understand when and with whom we may share the personal information we collect. We may share your personal information in the instances described below. For further information on your choices regarding your personal information, see the "Control Over Your Information" section below. We do not sell or rent your personal information to third parties, aside from substantial corporate transactions (described below).

- *Authorized third-party vendors and service providers*. We share personal data with certain authorized and vetted contractors, subcontractors, third-party vendors, and service providers who help us run and protect our business. This includes sending emails, conducting business analytics, marketing, and data processing. For example, we may share personal data with service providers that identify and serve targeted advertisements or provide mailing services, tax and accounting services, contest fulfillment, web hosting, or analytics services.

- *Companies in which you hold securities*. Robinhood may provide your name, address, and securities positions to requesting companies in which you hold securities.

- *Robinhood affiliates*. We share personal data with other companies owned or controlled by Robinhood Markets, Inc. For example, Robinhood Securities, LLC receives information to provide you with custody and other related services as described in your customer agreement. These companies will use your personal information in the same way that we do under this United States Privacy Policy.

- *Substantial corporate transactions*. We may share personal data in connection with a substantial corporate transaction, such as the sale of a website, a merger, consolidation, reorganization, financing, change or control or acquisition of all or a portion of our business by another company or third party, asset sale, initial public offering, or in the unlikely event of bankruptcy or similar proceeding.

- *Legal purposes*. We disclose personal data to respond to subpoenas, court orders, legal process, law-enforcement requests, legal claims, or government inquiries and to protect and defend the rights, interests, safety, and security of Robinhood, our affiliates, users, or the public.

- *With your consent*. We share personal data for any other purposes disclosed to you with your consent. We may also share information with others in an aggregated or otherwise anonymized form that does not reasonably identify you directly as an individual.

## 4. THIRD-PARTY LINKS.

Some of the Services may contain links to content maintained by third parties that we don't control. We're not responsible for the privacy practices of these third parties or the content on the third-party services, and the information practices of these third parties are not covered by this Policy. Please note that these third-party services have their own privacy policies, and we

ROBINHOOD: **ROBINHOOD UNITED STATES PRIVACY POLICY**

strongly recommend that you read their privacy policies as well as terms and conditions of use to understand how they collect, use, and share your information.

## 5. THIRD-PARTY TRACKING AND ONLINE ADVERTISING.

We participate in interest-based advertising and use third-party advertising companies to serve you targeted advertisements based on your online browsing history and your interests. As a self-directed broker-dealer, we do not advertise on behalf of specific securities or investment options on our Services. We permit third-party online advertising networks, social media companies, and other third-party services to collect information about your use of our Services over time so that they may play or display ads on other websites, apps, or services you may use, and on other devices you may use. Typically, though not always, the information used for interest-based advertising is collected through cookies or similar tracking technologies. For advertising, we may share a common account identifier (such as an email address or user ID) or hashed data with our third-party advertising partners to help identify you across devices. We and our third-party partners use this information to make the advertisements you see online on other platforms more relevant to your interests, as well as to provide advertising-related services such as reporting, attribution, analytics, and market research.

We're not responsible for the privacy practices of these third parties, and the information practices of these third parties are not covered by this Policy. Some of these companies are members of the Network Advertising Initiative, which offers a single location to opt out of ad targeting from member companies. To learn more, please visit http://www.networkadvertising.org/choices or the DAA's resources, available at http://www.aboutads.info/choices. You may also be able to set your browser to delete or notify you of cookies by actively managing the settings on your browser or mobile device. Please note that some advertising opt-outs may not be effective unless your browser is set to accept cookies. Furthermore, if you use a different device, change browsers, or delete the opt-out cookies, you may need to perform the opt-out task again. You may also be able to limit certain interest-based mobile advertising through the settings on your mobile device by selecting "limit ad tracking" (iOS) or "opt out of interest based ads" (Android).

*Google Analytics and Advertising.* We use Google Analytics to recognize you and link your devices and when you use our Services on your browser or mobile device, log in to your account on our Services, or otherwise engage with us. We share a unique identifier, like a user ID or hashed email address, with Google to facilitate the Services. Google Analytics allows us to better understand how our users interact with our Services and to tailor our advertisements and content to you. For information on how Google Analytics collects and processes data, as well as how you can control information sent to Google, see "How Google uses data when you use our partners' sites or apps" linked here: http://www.google.com/policies/privacy/partners/. You can learn about Google Analytics' currently available opt-outs, including the Google Analytics Browser Ad-On, here: https://tools.google.com/dlpage/gaoptout/. We may also use certain forms of display advertising and other advanced features through Google Analytics, such as Remarketing with Google

Analytics, Google Display Network Impression Reporting, the DoubleClick Campaign Manager Integration, and Google Analytics Demographics and Interest Reporting. These features let us use first-party cookies (such as the Google Analytics cookie) and third-party cookies (such as the DoubleClick advertising cookie) or other third-party cookies together to inform, optimize, and display ads based on your use of our Services. You may control your advertising preferences or opt-out of certain Google advertising products by visiting the Google Ads Preferences Manager, currently available at https://google.com/ads/preferences, or by visiting NAI's online resources at http://www.networkadvertising.org/choices.

## 6. CONTROL OVER YOUR INFORMATION.

**Account profile.** You may update certain of your account profile information by logging into your account.

**Access to your device data.** You may control the mobile app's access to your device information in your device's settings. For instance, you can withdraw permission for the app to access your contact list or photo gallery.

**How to control your communications preferences.** You can stop receiving promotional emails from us by clicking on the provided "unsubscribe" link. You may not opt out of service-related or other non-promotional communications (e.g., account verification, transactional communications, changes/updates to features of the Services, and technical and security notices).

**Affiliate Sharing Opt Out.** In some cases, you can limit sharing between Robinhood affiliates. Please see our Consumer Privacy Notice for more details. If you want to exercise this right, please contact at glba-request@robinhood.com.

## 7. NOTICE TO CALIFORNIA RESIDENTS.

This section provides additional details about the personal information we collect about California residents and the rights afforded to them under the California Consumer Privacy Act ("CCPA"). Please note that the CCPA does not apply to what is referred to as nonpublic personal information collected by financial institutions (like Robinhood), as that information is subject instead to other financial privacy laws. As a result, the CCPA does not apply to most of the information that Robinhood collects.

Subject to certain limitations and exceptions, the CCPA provides California residents the right to request more details about the categories and specific elements of personal information we collect, to delete their personal information, to opt out of any "sales" that may be occurring, and to not be discriminated against for exercising these rights. We do not sell information about you to third parties. In order to help Robinhood deliver advertising and marketing on other platforms, we do allow third parties to collect information through our Services. Please see the "Third-Party

ROBINHOOD: **ROBINHOOD UNITED STATES PRIVACY POLICY**

Tracking and Online Advertising" section above for more details, including choices available to you.

In the last 12 months, we collected the following categories of personal information subject to the CCPA: identifiers (such as email address and IP address), approximate geolocation information, and Internet or other electronic network activity information (such as browsing history and related usage data). For more details about the information we collect and the categories of sources of this information, please see the "Types of Information Collected and How We Collect Them" section above. We share this information with the categories of third parties described in the "Disclosure of Personal Information" section above.

California residents may make a consumer rights request for access to certain personal information subject to the CCPA, not otherwise exempted as nonpublic personal information collected by financial institutions, by sending an email to ccpa-request@robinhood.com. We may verify the request by asking you to provide information that matches information we have on file about you. You can also designate an authorized agent to exercise these rights on your behalf, but we will require proof that the person is authorized to act on your behalf and may also still ask you to verify your identity with us directly.

## 8. TRANSFER OF PERSONAL INFORMATION.

Our Services are currently designed for use only in certain select markets. If you are using our Services from another jurisdiction, your information collected through our Services may be stored and processed in the United States or any other country in which Robinhood or its parent, subsidiaries, affiliates, or service providers maintain facilities or conduct business activities. If you are located in other regions with laws governing data collection and use that may differ from U.S. law, please note that we may transfer information, including personal information, to a country and jurisdiction that does not have the same data-protection laws as your jurisdiction.

## 9. CHILDREN'S PRIVACY

We do not knowingly collect or solicit any information from anyone under the age of 13 on these Services. In the event that we learn that we have inadvertently collected personal information from a child under age 13, we will take reasonable steps to delete that information. If you believe that we might have any information from a child under 13, please contact us at privacy@robinhood.com.

ROBINHOOD: **ROBINHOOD UNITED STATES PRIVACY POLICY** 

## 10. CHANGES TO THIS POLICY

This United States Privacy Policy will evolve with time, and when we update it, we will revise the "Effective Date" above and post the new Policy. To stay informed of our privacy practices, we recommend you review the Policy on a regular basis as you continue to use our Services.

## 11. HOW TO CONTACT US

If you have any questions about this United States Privacy Policy or the Services, please contact us at privacy@robinhood.com.

# Exhibit 4

Robinhood

Products ∨   Learn ∨   Support   Who we are ∨

Log In   Sign Up

No Commission Fees   Extra Protection   High Security Standards   Dedicated Support   Transparency   Quality Execution

# Our 6 commitments to you

We want you to feel confident and secure on Robinhood, so these are the commitments you can always expect from us.



No Commission Fees   Extra Protection   High Security Standards   Dedicated Support   Transparency   Quality Execution



# No account minimums or commissions.

We pioneered, and will continue to offer, commission-free trading to enable access for everyone.

We believe that everyone should have equal access to financial tools. Regardless of how much money you intend to invest, you will not be charged account minimums or commissions to buy or sell stocks, ETFs, or options on Robinhood.

*Other fees still apply. For more information refer to the Robinhood Financial Fee Schedule and the Robinhood Financial Customer Relationship Summary.*



# Your money is protected.

We provide protection for your holdings.

Robinhood Financial and Robinhood Securities are members of SIPC, which protects securities customers of its members up to $500,000 (including $250,000 for claims for cash). Explanatory brochure available upon request or at www.sipc.org.

In addition to SIPC protection, Robinhood provides its brokerage customers with additional "excess of SIPC" coverage through certain underwriters at Lloyd's of London, which provides an aggregate of $100 million of coverage—up to $1.5 million for cash and $10 million for securities per customer. The excess coverage would only be triggered when SIPC coverage is exhausted.

*Note: Like SIPC coverage, this "excess of SIPC" policy does not protect against a loss in the market value of securities.*

*If you are enrolled in Cash Management, please note that your cash is covered by SIPC until it is swept to a program bank. Your cash is not covered by SIPC when on deposit at a program bank, but is instead protected by FDIC insurance up to a total of $1.25 million—or up to $250,000 per bank, subject to FDIC rules.*

*Cryptocurrency investments through Robinhood Crypto are not protected by SIPC or FDIC. We carry crime insurance that covers a portion of the cryptocurrency held across our storage systems against losses from theft, including cybersecurity breaches. The policy is underwritten by certain underwriters at Lloyd's of London, the world's leading insurance marketplace.*



# Dedicated to maintaining the highest security standards.

**We will cover 100% of direct losses due to unauthorized activity in your accounts.**

We're committed to keeping your account safe, so we offer robust security tools and a promise to fully reimburse direct losses that happen due to unauthorized activity that is not your fault. That includes cash, securities held through Robinhood Financial, and cryptocurrencies held through Robinhood Crypto.

In order for Robinhood to cover 100% of the direct losses due to unauthorized activity on your accounts, we require you to:

- Keep account log-in credentials, such as your password, private. If you provide someone else with your account log-in credentials, or give someone else the authority to execute transactions on your account, any resulting activity on your account may be considered authorized.

- Report any unauthorized activity to us as soon as possible after the information is posted to your account, and actively cooperate with Robinhood during its review.

- Keep your account information up to date.

Robinhood also highly encourages you to practice safe cybersecurity habits. For example, you should enable 2-Factor Authentication in the app and use a unique password different from your other online accounts. You can read more about how we help protect your account and security best practices here.

"Unauthorized activity" does not include activity (e.g., trades, deposits, withdrawals, or changes in personal information) undertaken by you or at your request or by anyone else to whom you have provided access to your account or your account information. Robinhood is not liable for actions taken by third parties if you are grossly negligent in handling your personal information or account access credentials. Coverage does not include losses due to market activity or your own trading, lost opportunity costs, lost profits, indirect losses, legal fees, taxes, or non-monetary losses.



# Here to help.

**Our dedicated team of customer support professionals are available to answer your questions.**

We aim to respond to you as quickly as possible to resolve issues fast. We have a growing team of hundreds of registered financial representatives across the US who are focused on one thing: you.



# A transparent business model.

**We primarily make money from rebates from market makers, Robinhood Gold, stock loan, income from cash, and our Cash Management brokerage feature.**

Earning revenue allows us to offer you a range of financial products and services at low cost, including commission-free trading.

You can learn more about how we make money here.

Other fees may apply. For more information refer to the Robinhood Financial Fee Schedule and the Robinhood Financial Customer Relationship Summary.

Quarterly reports that disclose where we route securities orders and the nature of our routing relationships with securities market makers, including any payment for order flow arrangements, are publicly available here.



# Execution quality.

**We're committed to seeking a quality execution for every securities order.**

We perform regular and rigorous reviews of the execution quality you receive from our securities market makers, including the execution price, speed, and price improvement.

While there is no specific formula to determine execution quality, we don't consider our own revenue when selecting which of our partners will execute your orders. The execution quality of your securities orders is regularly reviewed and analyzed by our Best Execution Committee, and we use a widely-used independent provider of best execution analytics software to review our execution quality. To ensure we have a fair system, all market makers we partner with pay us rebates at the same rate. Learn more

Quarterly reports that disclose where we route orders and the nature of our routing relationships, including any payment for order flow arrangements, are publicly available here.

# ROBINHOOD
# Snacks

The 3-minute newsletter with fresh takes on the financial news you need to start your day.

name@email.com

Subscribe

**Check the background of the firm on FINRA's BrokerCheck**

**Brokerage Customer Relationship Summary**

**Robinhood Terms & Conditions**

**Disclosure Library**

**Privacy**

| Stocks & Funds | Learn | About Us |
| Options | Support | Careers |
| Gold | Snacks | Company News |
| Cash Management | | |
| Crypto | | |

Robinhood means Robinhood Markets and its in-application and web experiences with its family of wholly owned subsidiaries which includes Robinhood Financial, Robinhood Securities, and Robinhood Crypto.

All investments involve risks, including the possible loss of capital.

Securities trading is offered to self-directed customers by Robinhood Financial. Robinhood Financial is a member of the Financial Industry Regulatory Authority (FINRA).

View Important Disclosures

# Exhibit 5

# ERICKSON KRAMER+ OSBORNE

Mailing address: 182 Howard St # 736
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

January 8, 2021

*CERTIFIED MAIL*
*RETURN RECIEPT REQUIRED*

Robinhood Financial LLC
85 Willow Road
Menlo Park, California 94025

     *RE: Siddharth Mehta Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

     This letter shall constitute notice under California Civil Code section 1798.150 of the California Consumer Privacy Act ("CCPA") that Siddharth Mehta, individually and on behalf of all others similarly situated, demands that you remedy your violations of the CCPA within thirty (30) days from your receipt of this letter.

     "All others similarly situated" is defined as follows:

     All Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to October 16, 2020.

     It is the contention of Mr. Mehta and all others similarly situated that you violated subsection (a) Civil Code section 1798.150, which reads as follows:

     (a)(1) Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

     (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

     (B) Injunctive or declaratory relief.

     (C) Any other relief the court deems proper.

CCPA Notice Letter, Civil Code section 1798.150
January 8, 2021

Mr. Mehta, who lost funds consequent to unauthorized use of his account, individually and on behalf of all other similarly situated, hereby requests full compensation of all lost funds related to breaches of your platform in 2020, for lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, and for the need for future expenses and time dedicated to the recovery and protection of further loss. These sums must be paid in full within thirty (30) days from the date of this correspondence.

Pursuant to the CCPA, if, within thirty (30) days from your receipt of the date of this correspondence, you actually cure the violation noticed herein and provide the Mr. Mehta, through my firm, with an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be initiated against you.

We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Sincerely,

Kevin M. Osborne



U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Menlo Park, CA 94025

Certified Mail Fee
$3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)     $ _____
☐ Return Receipt (electronic)   $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required      $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00

Postage
$0.70

Total Postage and Fees
$7.10

Sent To Robinhood Financial LLC
Street and Apt. No., or PO Box No. 85 Willow Rd
City, State, ZIP+4® Menlo Park, CA 94025

7020 0090 0001 1180 9581

# ERICKSON KRAMER+ OSBORNE

Mailing address: 182 Howard St # 736
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

January 8, 2021

***CERTIFIED MAIL***
***RETURN RECIEPT REQUIRED***

Robinhood Securities, LLC
85 Willow Road
Menlo Park, California 94025

RE: *Siddharth Mehta Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

This letter shall constitute notice under California Civil Code section 1798.150 of the California Consumer Privacy Act ("CCPA") that Siddharth Mehta, individually and on behalf of all others similarly situated, demands that you remedy your violations of the CCPA within thirty (30) days from your receipt of this letter.

"All others similarly situated" is defined as follows:

All Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to October 16, 2020.

It is the contention of Mr. Mehta and all others similarly situated that you violated subsection (a) Civil Code section 1798.150, which reads as follows:

(a)(1) Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

(A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

(B) Injunctive or declaratory relief.

(C) Any other relief the court deems proper.

CCPA Notice Letter, Civil Code section 1798.150
January 8, 2021

Mr. Mehta, who lost funds consequent to unauthorized use of his account, individually and on behalf of all other similarly situated, hereby requests full compensation of all lost funds related to breaches of your platform in 2020, for lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, and for the need for future expenses and time dedicated to the recovery and protection of further loss. These sums must be paid in full within thirty (30) days from the date of this correspondence.

Pursuant to the CCPA, if, within thirty (30) days from your receipt of the date of this correspondence, you actually cure the violation noticed herein and provide the Mr. Mehta, through my firm, with an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory damages or class-wide statutory damages may be initiated against you.

We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Sincerely,

Kevin M. Osborne



U.S. Postal Service
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

FOR DELIVERY INFORMATION, VISIT OUR WEBSITE AT WWW.USPS.COM®

Menlo Park, CA 94025   OFFICIAL USE

Certified Mail Fee   $3.55

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00

Postage   $0.70

Total Postage and Fees   $7.10

01/08/2021

Sent To  Robinhood Securities, LLC
Street and Apt. No., or PO Box No.  85 Willow Rd
City, State, ZIP+4  Menlo Park, CA 94025

# Exhibit 6

# ERICKSON KRAMER+ OSBORNE

Mailing address: 182 Howard St # 736
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

January 8, 2021

***CERTIFIED MAIL***
***RETURN RECIEPT REQUIRED***

Robinhood Financial LLC
85 Willow Road
Menlo Park, California 94025

    *RE: Siddharth Mehta Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

    This letter shall constitute notice under California Civil Code section 1782 of the Consumers Legal Remedies Act ("CLRA") that Siddharth Mehta, individually and on behalf of all others similarly situated, demands that you remedy your violations of the CLRA within thirty (30) days from your receipt of this letter.

    "All others similarly situated" is defined as follows:

    All Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to October 16, 2020.

    It is the contention of Mr. Mehta and all others similarly situated that you violated certain applicable rules, laws and regulations in Civil Code section 1770. As the direct result of your unfair, unlawful and fraudulent business practices, Mr. Mehta and all others similarly situated suffered actual pecuniary harm in the form of out-of-pocket expenses, including but not limited to the loss of funds from their accounts, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, and the need for future expenses and time dedicated to the recovery and protection of further loss. Your fraudulent representations, concealments, and failures to disclose concerning the nature and quality of your data protection services and your policy of compensating losses due to unauthorized access constitute violations of the CLRA, which states in pertinent part that it is a deceptive act or practice to engage in the following:

    (a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;
    (a)(9) Advertising goods or services with intent not to sell them as advertised;
    (a)(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and
    (a)(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

CLRA Demand Letter, Civil Code section 1782
January 8, 2021

Cal. Civ. Code, § 1770.

The specific misrepresentations at issue are as follows:

We will cover 100% of direct losses due to unauthorized activity in your accounts.

We're committed to keeping your account safe, so we offer robust security tools and a promise to fully reimburse direct losses that happen due to unauthorized activity that is not your fault.

Mr. Mehta, who lost funds consequent to unauthorized use of his account, individually and on behalf of all other similarly situated, hereby requests full compensation of all lost funds related to breaches of your platform in 2020. Further, he demands that you cease making fraudulent representations regarding your data security policies. Based on the above, demand is hereby made that you refund all the entirety of all sums illegally taken from Mr. Mehta and all others similarly situated, as well as payment for lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy and the need for future expenses and time dedicated to the recovery and protection of further loss. These sums must be paid in full within thirty (30) days from your receipt of this correspondence.

Please be advised that your failure to comply with this request within thirty (30) days from the writing of this correspondence may subject you to the following remedies, which are available, for violation of the Consumers Legal Remedies Act:

1. The actual damages suffered;
2. An order enjoining you from such methods, acts or practices;
3. Restitution to Mr. Mehta and all others similarly situated;
4. Any other relief the Court deems proper; and
5. Attorney fees.

We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Sincerely,

Kevin M. Osborne



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

Menlo Park, CA 94025

OFFICIAL USE

| Certified Mail Fee | $3.55 |
| Extra Services & Fees (check box, add fee as appropriate) | $2.85 |
| ☐ Return Receipt (hardcopy) | $0.00 |
| ☐ Return Receipt (electronic) | $0.00 |
| ☐ Certified Mail Restricted Delivery | $0.00 |
| ☐ Adult Signature Required | $0.00 |
| ☐ Adult Signature Restricted Delivery | $0.00 |
| Postage | $0.70 |
| Total Postage and Fees | $7.10 |

0251
4

Postmark
Here

01/08/2021

7020 0090 0001 1180 9581

Sent To Robinhood Financial LLC
Street and Apt. No., or PO Box No. 85 Willow Rd
City, State, ZIP+4® Menlo Park, CA 94025

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

# ERICKSON KRAMER+ OSBORNE

Mailing address: 182 Howard St # 736
San Francisco, California 94105
Email: kevin@eko.law
Phone: 415-635-0631
Fax: 415-599-8088

January 8, 2021

***CERTIFIED MAIL***
***RETURN RECIEPT REQUIRED***

Robinhood Securities, LLC
85 Willow Road
Menlo Park, California 94025

    *RE: Siddharth Mehta Individually and on Behalf of all Others Similarly Situated*

To the above-listed recipient:

    This letter shall constitute notice under California Civil Code section 1782 of the Consumers Legal Remedies Act ("CLRA") that Siddharth Mehta, individually and on behalf of all others similarly situated, demands that you remedy your violations of the CLRA within thirty (30) days from your receipt of this letter.

    "All others similarly situated" is defined as follows:

    All Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to October 16, 2020.

    It is the contention of Mr. Mehta and all others similarly situated that you violated certain applicable rules, laws and regulations in Civil Code section 1770. As the direct result of your unfair, unlawful and fraudulent business practices, Mr. Mehta and all others similarly situated suffered actual pecuniary harm in the form of out-of-pocket expenses, including but not limited to the loss of funds from their accounts, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, and the need for future expenses and time dedicated to the recovery and protection of further loss. Your fraudulent representations, concealments, and failures to disclose concerning the nature and quality of your data protection services and your policy of compensating losses due to unauthorized access constitute violations of the CLRA, which states in pertinent part that it is a deceptive act or practice to engage in the following:

    (a)(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;
    (a)(9) Advertising goods or services with intent not to sell them as advertised;
    (a)(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and
    (a)(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

CLRA Demand Letter, Civil Code section 1782
January 8, 2021

Cal. Civ. Code, § 1770.

The specific misrepresentations at issue are as follows:

We will cover 100% of direct losses due to unauthorized activity in your accounts.

We're committed to keeping your account safe, so we offer robust security tools and a promise to fully reimburse direct losses that happen due to unauthorized activity that is not your fault.

Mr. Mehta, who lost funds consequent to unauthorized use of his account, individually and on behalf of all other similarly situated, hereby requests full compensation of all lost funds related to breaches of your platform in 2020. Further, he demands that you cease making fraudulent representations regarding your data security policies. Based on the above, demand is hereby made that you refund all the entirety of all sums illegally taken from Mr. Mehta and all others similarly situated, as well as payment for lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy and the need for future expenses and time dedicated to the recovery and protection of further loss. These sums must be paid in full within thirty (30) days from your receipt of this correspondence.

Please be advised that your failure to comply with this request within thirty (30) days from the writing of this correspondence may subject you to the following remedies, which are available, for violation of the Consumers Legal Remedies Act:

1. The actual damages suffered;
2. An order enjoining you from such methods, acts or practices;
3. Restitution to Mr. Mehta and all others similarly situated;
4. Any other relief the Court deems proper; and
5. Attorney fees.

We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Sincerely,

Kevin M. Osborne

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Menlo Park, CA 94025

Certified Mail Fee     $3.55

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00

Postmark
Here

0251
JAN - 8

01/08/2021

Postage     $0.70

Total Postage and Fees     $7.10

Sent To  Robinhood Securities, LLC
Street and Apt. No., or PO Box No.  85 Willow Rd
City, State, ZIP+4  Menlo Park, CA 94025

7020 0090 0001 1180 9574

# Exhibit 7

Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
**Erickson Kramer Osborne LLP**
182 Howard Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiff*

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SANTA CLARA
CIVIL UNLIMITED

| | |
|---|---|
| SIDDHARTH MEHTA,<br><br>       Plaintiff,<br><br>vs.<br><br>ROBINHOOD FINANCIAL LLC;<br>ROBINHOOD SECURITIES, LLC; and<br>DOES 1-10,<br>          Defendants. | Case No.<br><br>**CLRA VENUE DECLARATION OF PLAINTIFF SIDDHARTH MEHTA PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

I, SIDDHARTH MEHTA, hereby declare the following:

1.      I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.      I am a Plaintiff in the above-captioned action.

3.      I make this declaration in support of the filing of the Complaint in this action, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code, section 1750, *et seq*.

4.      The Complaint has been filed in the proper place for trial of this action.

5.      I am a resident of Fremont, California, which is located in Alameda County, California.

6.      While residing in Fremont, California, I purchased products and services from Defendants ROBINHOOD FINANCIAL LLC and ROBINHOOD SECURITIES, LLC. On information and belief, these entities conduct substantial business, including the acts and practices at issue in this action, within Alameda County.

        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and based upon personal knowledge, except to the extent stated as being made on information and belief, and that if called upon to testify, I could verify the accuracy of the same.  This document was executed on January 6, 2021 in Fremont, California.

*Sid Mehta*
_____
SIDDHARTH MEHTA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
191 N. FIRST STREET
SAN JOSE, CA  95113-1090

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 1/11/2021 2:27 PM
Reviewed By: R. Walker
Case #21CV375167
Envelope: 5615921

TO:    FILE COPY

RE:              **Mehta v. Robinhood Financial LLC, et al.**
CASE NUMBER:   **21CV375167**


ORDER DEEMING CASE COMPLEX AND STAYING DISCOVERY
AND RESPONSIVE PLEADING DEADLINE


        WHEREAS, the Complaint was filed by Plaintiff **SIDDHARTH MEHTA** ("Plaintiff") in the Superior Court of California, County of Santa Clara, on **January 8, 2021** and assigned to Department **1** (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni**  presiding, pending a ruling on the complexity issue;

        IT IS HEREBY ORDERED that:
        The Court determines that the above-referenced case is **COMPLEX** within the meaning of California Rules of Court 3.400.  The matter remains assigned, for all purposes, including discovery and trial, to Department  1 (Complex Civil Litigation), the **Honorable Sunil R. Kulkarni** presiding.
        The parties are directed to the Court's local rules and guidelines regarding electronic filing and to the Complex Civil Guidelines, which are available on the Court's website.
        Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the Master Service List shall be under the auspices of (1) Plaintiff **SIDDHARTH MEHTA**, as the first-named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.
        Pursuant to Government Code section 70616(c), each party's complex case fee is due within ten (10) calendar days of this date.
        Plaintiff shall serve a copy of this Order on all parties forthwith and file a proof of service within seven (7) days of service.
        Any party objecting to the complex designation must file an objection and proof of service within ten (10) days of service of this Order.  Any response to the objection must be filed within seven (7) days of service of the objection. The Court will make its ruling on the submitted pleadings.
        The Case Management Conference remains set for **May 6, 2021 at 2:30 p.m. in Department 1** and all counsel are ordered to attend by **CourtCall**.
        Counsel for all parties are ordered to meet and confer in person at least 15 days prior to the First Case Management Conference and discuss the following issues:
        1.  Issues related to recusal or disqualification;
        2.  Issues of law that, if considered by the Court, may simplify or further resolution of the case, including issues regarding choice of law;

-----
Updated on 7/30/20.

1

3. Appropriate alternative dispute resolution (ADR), for example, mediation, mandatory settlement conference, arbitration, mini-trial;
4. A plan for preservation of evidence and a uniform system for identification of documents throughout the course of this litigation;
5. A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;
6. Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case (counsel should consider whether they will stipulated to limited merits discovery in advance of certification proceedings), allowing the option to complete discovery if ADR efforts are unsuccessful;
7. Any issues involving the protection of evidence and confidentiality;
8. The handling of any potential publicity issues;

Counsel for Plaintiff is to take the lead in preparing a Joint Case Management Conference Statement to be filed 5 calendar days prior to the First Case Management Conference, and include the following:
1. A Statement as to whether additional parties are likely to be added and a proposed date by which all parties must be served;
2. Service lists identifying all primary and secondary counsel, firm names, addresses, telephone numbers, email addresses and fax numbers for all counsel;
3. A description of all discovery completed to date and any outstanding discovery as of the date of the conference;
4. Applicability and enforceability of arbitration clauses, if any;
5. A list of all related litigation pending in other courts, including Federal Court, and a brief description of any such litigation, and a statement as to whether any additional related litigation is anticipated (CRC 3.300);
6. A description of factual and legal issues – the parties should address any specific contract provisions the interpretation of which may assist in resolution of significant issues in the case;
7. The parties' tentative views on an ADR mechanism and how such mechanism might be integrated into the course of the litigation;
8. Whether discovery should be conducted in phases or limited; and if so, the order of phasing or types of limitations of discovery.  If this is a class action lawsuit, the parties should address the issue of limited merits discovery in advance of class certification motions.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Case Management Conference Statement, the positions of each party or of various parties should be set forth separately and attached to this report as addenda.  The parties are encouraged to propose, either jointly or separately, any approaches to case management they believe will promote the fair and efficient handling of this case.  The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

**STAY ON DISCOVERY AND RESPONSIVE PLEADING DEADLINE**  Pending further order of this Court, the service of discovery and the obligation to respond to any outstanding discovery is stayed. However, Defendant(s) shall file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance shall be without prejudice to the later filing of a motion to quash to contest jurisdiction.  Parties shall not file or serve responsive pleadings, including answers to the complaint, motions to strike, demurrers, motions for

change of venue and cross-complaints until a date is set at the First Case Management Conference for such filings and hearings.

This Order is issued to assist the Court and the parties in the management of this "Complex" case through the development of an orderly schedule for briefing and hearings. This Order shall not preclude the parties from continuing to informally exchange documents that may assist in their initial evaluation of the issues presented in this Case.

Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

SO ORDERED.

Date: January 11, 2021

_____
Hon. **Sunil R. Kulkarni**
Judge of the Superior Court

---

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line, (408) 882-2690 or the Voice/TDD California Relay Service, (800) 735-2922.

FILED

MAY 0 6 2020

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY
David K. Walker

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

**GENERAL ORDER RE: COVID-19 EMERGENCY ORDER REGARDING COMPLEX
CIVIL ACTIONS**

On March 30, 2020 the Chief Justice of California issued an order, which states in
pertinent part:

"I find good cause to…support courts in making use of available technology, when
possible, to conduct judicial proceedings and court operations remotely, suspend any rule in the
California Rules of Court to the extent such rule would prevent a court from using technology to
conduct judicial proceedings and court operations remotely, in order to protect the health and
safety of the public, court personnel, judicial officers, litigants, and witnesses. This is consistent
with the Governor's order, which also provides for the suspension of related statutes that impose
limitations on the subject of these emergency orders."

Emergency rule 3, adopted by the Judicial Council of California effective April 6, 2020,
states in pertinent part:

"Notwithstanding any other law, in order to protect the health and safety of the public,
including court users, both in custody and out of custody defendants, witnesses, court personnel,
judicial officers, and others, courts must conduct judicial proceedings and court operations as
follows:

(1) Courts may require that judicial proceedings and court operations be conducted remotely.

(2) * * *

(3) Conducting proceedings remotely includes, but is not limited to, the use of video, audio, and telephonic means for remote appearances; the electronic exchange and authentication of documentary evidence; e-filing and e-service; the use of remote interpreting; and the use of remote reporting and electronic recording to make the official record of an action or proceeding."

Given that County health officials have deemed professional legal services "essential businesses" and the operation of the court an "essential service" to be conducted consistent with "social distancing protocols";

IT IS HEREBY ORDERED that the following applies to all complex civil actions:

1.     **Sunset of Order and Procedures.**  This Order and the procedures set forth herein shall apply and be followed until ten (10) calendar days after the Governor declares that the state of emergency related to the COVID-19 pandemic is lifted, or until amended or lifted by further order of this Court.

2.     **Electronic Service.**  Pursuant to Code of Civil Procedure Section 1010.6(c), California Rules of Court, rule 2.253(c) and rule 2.251(c), and Emergency rule 12, all parties represented by counsel  and all self-represented parties who have consented in writing to electronic service shall serve all documents electronically and shall accept service of documents electronically, in conformity with Code of Civil Procedure Section 1010.6 and the California Rules of Court, except when personal service is required by statute.  Counsel for the parties shall meet and confer, agree upon, and keep updated, an e-service list for each civil action.  The parties are reminded that electronic service of documents may extend time periods for response by two (2) court days, pursuant to Code of Civil Procedure Section 1010.6(a)(4)(B).

3.     **Electronic Filing.**  As previously established by Local Rules, pursuant to California Rules of Court, rule 2.253(b), all parties shall file all documents electronically.

4.     **Judicial Holiday Extensions Only For Filings**.  Pursuant to authority granted by the Chief Justice, the Presiding Judge of this Court has issued orders providing that the dates

from March 17, 2020 to May 29, 2020, are "holidays" for "purposes of computing time for filing papers with the Court under Code of Civil Procedure Sections 12 and 12a . . . ." As specifically stated in the Order, such emergency "holidays" only pertain to the deadlines for *filing* papers with the Court, and do not pertain to dates and deadlines regarding service of papers between the parties, such as discovery requests and discovery responses.

5.     **Discovery.**  All discovery requests and responses (C.C.P. § 2019.010), including but not limited to notice of deposition, special interrogatories, form interrogatories, requests for production of documents, and requests for admissions, shall be served electronically by all represented by counsel and all self-represented parties who have consented in writing to electronic service.  Production of documents shall be provided in electronic form unless the parties agree otherwise in writing.  If not previously established, counsel for the parties shall meet and confer regarding possible establishment of a joint electronic document depository for the uploading and downloading of electronic document productions.

6.     **Depositions.**  Code of Civil Procedure Section 2025.310 provides that all persons, except the deponent and the court reporter, may attend a deposition remotely. Emergency rule 11 (a) states: "Notwithstanding any other law, including Code of Civil Procedure section 2025.310(a) and (b), and rule 3.1010(c) and (d), a party or non-party deponent, at their election or the election of the deposing party, is not required to be present with the deposition officer at the time of the deposition."

**a.**  All notices of deposition, including by subpoena duces tecum, of any party or non-party, shall be served upon all parties electronically.

**b.**  Unless otherwise stipulated in writing by the parties, or unless technologically infeasible, any or all of an oral deposition may be conducted remotely, in that the deponent, the court reporter, any interpreter, the video operator, the attorney for any party, or any party, may "attend" the deposition remotely by appropriate audio-video conference method – which method shall be selected and identified by the noticing party. The deponent and his/her attorney may choose to be in the same location for the deposition, if they conduct themselves consistent with "social distancing protocols", but the deponent is not required to wear any face covering while

giving deposition testimony. As professional legal services have been deemed "essential businesses" and the operation of the court an "essential service", it is the Court's expectation that the deponent and his/her attorney can prepare for the deposition consistent with "social distancing protocols".

     **c.** All communications with the deponent during the deposition shall be on the record, other than communications between the deponent and his/her attorney of record during breaks.  During the deposition there shall not be direct or indirect electronic communications with the deponent, including but not limited to text, email, chat, instant message, etc.

     **d.** If the notice of deposition or subpoena includes a request for production of documents at any oral deposition, such documents shall be produced electronically by the deponent to counsel for all parties at least three (3) business days before the deposition date, unless otherwise agreed by counsel for the parties and for the deponent in writing.

     **7.**     **Remote Appearances.** All appearances for informal discovery conferences, case management conferences, law and motion and other hearings shall be conducted remotely on a media platform the Court will designate when it schedules a hearing.

     **8.**     **Informal Discovery Conferences.**

     **a.** Pursuant to Code of Civil Procedure Section 2016.080 and the Court's Complex Guidelines, no party may move to compel discovery, or file any other discovery motion, including any motion for non-remote deposition, until the parties have had an informal discovery conference with the Court.  Counsel must have exhausted all meet and confer obligations before the informal discovery conference.  To request an informal discovery conference, counsel should contact the Complex Coordinator by email, which must be contemporaneously copied to counsel for all parties to the action.  Pursuant to Code of Civil Procedure Section 2016.080(c)(2), the time for bringing any motion to compel is tolled starting on the date a party makes the email request for an informal discovery conference to the Court.

     **b.** If the discovery dispute is not resolved following the discovery conference, any party may proceed to file a motion.  Any such motion must be filed within ten (10) court days of the conference, or within the 45-day statutory time, whichever date is later, unless otherwise

1   specifically ordered by the Court.

2        **c.**   The procedures outlined above apply to parties.  With regard to discovery

3   disputes with non-parties, the non-parties may elect to participate in this procedure, but are not

4   required to do so.

5        **9.**     **Case Management Conferences.**  Any party who believes their case warrants a

6   case management conference earlier than currently set is encouraged to contact the Complex

7   Coordinator by email to secure an earlier case management conference, including any disputes

8   regarding briefing schedules or deadlines due to emergency court "holidays."

9        **10.**    **Law and Motion in Complex Civil Cases.**  No supplemental briefing will be

10   allowed, except as specifically ordered by the Court, on motions originally set for hearing

11   between March 17, 2020 and May 29, 2020, which have been fully briefed and continued to a

12   new date. In all other matters previously filed but not fully briefed, counsel shall meet and confer

13   and agree on a stipulation and proposed order for a new briefing schedule that provides that all

14   papers on the motion are filed at least 14 calendar days in advance of the continued hearing date.

15        **11.**    **Trials.**  All trials, and related Mandatory Settlement Conferences and Pre-trial

16   Conferences, originally scheduled between March 17, 2020 and July 30, 2020 are hereby vacated

17   and will be re-scheduled to a Trial Setting Conference.

18        **12.**    **Pre-trial Deadlines.**  In any case in which the trial originally scheduled between

19   March 17, 2020 and July 30, 2020 was continued or vacated, all pre-trial deadlines will track the

20   new trial date, absent a showing of good cause.

21        **13.**    **Five-Year Dismissal (C.C.P. § 583.310).**  In any case in which the initial

22   complaint was filed on or before May 1, 2016, the parties are ordered to meet and confer on the

23   subject of the date on which the five-year period in Code of Civil Procedure Section 583.310

24   ends, including consideration of any stays, whether directly ordered or automatic.  If the parties

25   agree on that date, they shall submit a stipulation and proposed order setting forth the agreed-

26   upon date.  If the parties cannot agree on that date, they shall file within thirty (30) days of the

27   date of this order a joint statement of no greater than five (5) pages setting forth each party's

28   position as to the relevant date and the reasons therefor.

**14.     Three-Year Limitation for New Trial (C.C.P. § 583.320).**  In any case where a mistrial was granted or new trial granted prior to May 1, 2018, and no new trial date is presently set, the parties are ordered to meet and confer on the subject of the date on which the three-year period in Code of Civil Procedure Section 583.320 ends, including consideration of any stays, whether directly ordered or automatic.  If the parties agree on that date, they shall submit a stipulation and proposed order setting forth the agreed-upon date.  If the parties cannot agree on that date, they shall file within thirty (30) days of the date of this order a joint statement of no greater than five (5) pages setting forth each party's position as to the relevant date and the reasons therefor.


THIS ORDER IS EFFECTIVE IMMEDIATELY.


Dated: May 6, 2020

Presiding Judge Deborah A. Ryan
Santa Clara County Superior Court

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

**Complex Civil Guidelines**

### GUIDELINES AND PROTOCOLS

### COMPLEX CIVIL LITIGATION DEPARTMENT

Welcome to the Complex Civil Litigation Departments of the Superior Court of California, County of Santa Clara. We apply case management principles designed to reduce the time and expense normally associated with complex civil litigation cases.

Counsel are expected to be familiar with the applicable *California Rules of Court*, *Local Rules – Superior Court of California, County of Santa Clara*, *The Santa Clara County Bar Association Code of Professionalism*, and the *Deskbook on the Management of Complex Civil Litigation*. Counsel should also be familiar with the complex litigation portion of the Santa Clara County Superior Court website: *https://www.scscourt.org/court_divisions/civil/complex/civil_complex.shtml*.

Familiarity with these guidelines and protocols will answer common procedural questions and should assist you in your appearances in these Departments. *Note: These Guidelines and Protocols are revised from previous versions. Your thoughts and suggestions are always welcome. Significant practice highlights include:*

*The website for the Complex Departments is now integrated into the Court's site, www.scscourt.org. Please go to the following portion of the Court's website: https://www.scscourt.org/court_divisions/civil/complex/civil_complex.shtml.*

*Tentative rulings on motions of all types are posted online by 2:00 p.m. the day before the hearing, and, unless an objection is properly raised by 4:00 p.m. the day before the hearing, the ruling will automatically become the Court's order the next day. For specific information, go to: http://www.scscourt.org/online_services/tentatives/tentative_rulings.shtml and select the appropriate department.*

*Ex parte hearings require advance reservation with the Coordinator. Letter briefs are not acceptable.*

*Case management conference statements are to be in a combined format; see VII. 3 below.*

*No discovery motions may be filed until the parties have meaningfully met and conferred AND met with the Court for a face-to-face Informal Discovery Conference.*

*The Court requires detailed JOINT pre-trial statements in advance of a pre-trial conference where counsel are expected to make concrete suggestions as to efficient trial management; see XI below.*

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

*Counsel should NOT use a Form CIV-110 in a case involving class or PAGA claims, as resolution of such claims requires court approval.*

*For class actions, counsel should be familiar with the Court's Guidelines for Motions Relating to Class Certification and Guidelines for Motions Relating to Preliminary Approval and Final Fairness Hearings. Both sets of Guidelines are on the complex litigation portion of the Court's website.*

> **PLAINTIFF MUST SERVE A COPY OF THESE GUIDELINES WITH THE SUMMONS AND COMPLAINT.**

## TABLE OF CONTENTS

I. CONTACT INFORMATION .................................................................................. 3
II. INTRODUCTION .............................................................................................. 3
III. COURTROOM DEMEANOR, CONDUCT AND ETIQUETTE ................................. 4
IV. GENERAL MATTERS........................................................................................ 4
V. EX PARTE APPLICATIONS .............................................................................. 6
VI. DISCOVERY ................................................................................................... 6
VII. LAW AND MOTION ........................................................................................ 7
VIII. CASE MANAGEMENT CONFERENCE............................................................... 8
IX. CASE MANAGEMENT AND REFERENCE ORDERS ............................................ 9
X. MANDATORY SETTLEMENT CONFERENCES (MSC)......................................... 10
XI. MINI-TRIALS ................................................................................................ 10
XII. PRE-TRIAL CONFERENCE ............................................................................ 11
XIII. TRIALS - GENERALLY.................................................................................... 13
XIV. TRIAL EXHIBITS ........................................................................................... 19
CURRICULUM VITAE FOR JUDGE SUNIL R. KULKARNI ........................................... 21
CURRICULUM VITAE FOR JUDGE PATRICIA M. LUCAS............................................ 23

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

I.    CONTACT INFORMATION

Departments 1 and 3:  Physical Address:

Downtown Superior Courthouse, 191 North First Street, San Jose, CA 95113.

| Department 1: | The Honorable Sunil R. Kulkarni | 408-882-2110 |
| | Courtroom Clerk:  Mark Rosales/JeeJee Vizconde | 408-882-2110 |
| | | |
| Department 3: | The Honorable Patricia M. Lucas | 408-882-2130 |
| | Courtroom Clerk:  JeeJee Vizconde | 408-882-2130 |

Complex Litigation Coordinator (for both Departments 1 and 3):
Rowena Walker           rwalker@scscourt.org                                408-882-2286

E-Filing Web Site:           http://www.scscourt.org/forms_and_filing/efiling.shtml

II.    INTRODUCTION

Complex cases suitable for assignment to the Complex Civil Litigation Department are defined in
Rule 3.400, California Rules of Court ("CRC Rules").  Cases will be assigned to the Complex
Civil Litigation Department, **for all purposes, including discovery and trial,** by the Court's own
motion, or on motion of any of the parties, pursuant to the procedures specified in Rule 3.400.
Motions for complexity determination shall be heard in the Complex Civil Litigation Department.
It is within the Court's discretion to accept or reject a case for complex designation.

In general, cases assigned to the Complex Civil Litigation Department will be managed in
accordance with the principles set forth in the *Deskbook on the Management of Complex Civil
Litigation* ("Deskbook").

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

III. COURTROOM DEMEANOR, CONDUCT AND ETIQUETTE

1.  The Court expects formality, civility and proper decorum at all times.  Witnesses and parties are to be addressed and referred to by their surnames.  COURTESY AND RESPECT TOWARDS EVERYONE IN THE COURTROOM IS REQUIRED.  Advise all witnesses and parties to observe appropriate courtroom demeanor and punctuality.  The civil and courteous treatment of courtroom staff and opposing counsel is a paramount professional obligation of counsel.

The Santa Clara County Superior Court, by standing order, has adopted the Code of Professionalism of the Santa Clara County Bar Association. Counsel are expected to be familiar with the Code and use it as a guide for appropriate attorney behavior.

2.  All pagers, cell phones and other audible electronic devices must be TURNED OFF while in the courtroom whether or not court is in session, unless specific permission is obtained from the Court.

3.  Do not approach the clerk or reporter while court is in session for any reason.

4.  Objections, statements and arguments must be addressed to the Court rather than opposing counsel.  Counsel may speak from the lectern (if present) or the counsel table.  Counsel must stand when objecting or addressing the Court.  Counsel may approach any witnesses as necessary only with leave of Court.

5.  At the end of each day, counsel must clear work areas including the area in the rear of the courtroom.

6.  Use of the department's copier or telephone requires the Court's permission.

7.  It is counsel's responsibility to note the date and time set for any future hearing.  Hearing dates are set by contacting the Coordinator.

8.  Courtroom staff will not make copies at counsel's request unless directed to do so by the Court.  Copy work completed by courtroom staff is subject to the current per-page copy fee.

9.  If a peremptory challenge or challenge for cause is upheld, the case will be referred to the Civil Supervising Judge for reassignment.

IV. GENERAL MATTERS

1. The Court expects all counsel to maintain regular communication with each other regarding hearing dates, progress of the case, and settlement possibilities.  A condition of

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

### Complex Civil Guidelines

remaining in a complex department is that counsel will behave toward all counsel and other participants with civility, courtesy and professionalism, both in and out of court. Meeting and conferring with opposing counsel on both procedural issues as well as substantive issues is mandated.

2. Continuances of hearing or trial dates are discouraged but may be necessary from time to time. Continuances of hearings and trial dates by stipulation are not permitted without prior approval of the Court, and only to a date pre-approved by the Court. Please call the Coordinator for available dates before contacting other counsel. If preliminary approval is given, a written stipulation must be provided before the hearing or trial date. Faxed signatures on stipulations are permitted.

3. In the event a case settles before a court hearing or trial date, parties must telephonically notify the Court as soon as the disposition is agreed upon and must file with the Complex Litigation Department either a Notice of Settlement, Request for Dismissal, a Stipulation for Entry of Judgment or a Judgment on Stipulation that is ready for the Court's signature. If the applicable document is not ready, counsel must appear at the time scheduled for hearing and recite the settlement for the record.

4. Cross-complainants must serve a copy of these guidelines upon any new parties and give notice of any scheduled hearings and depositions at the time the cross-complaint is served.

5. All actions classified as complex or provisionally complex are subject to the Court's Electronic Filing and Service Standing Order, unless exempted by order of the Court for good cause. Further information is posted on the Court's website at *http://www.scscourt.org/forms_and_filing/efiling.shtml*.

6. For class actions, counsel should be familiar with the Court's Guidelines for Motions Relating to Class Certification and Guidelines for Motions Relating to Preliminary Approval and Final Fairness Hearings. Both sets of Guidelines are on the complex litigation portion of the Court's website.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

**Complex Civil Guidelines**

V.   <u>EX PARTE APPLICATIONS</u>

1. Ex parte appearances are discouraged except in unusual situations. Hearing dates must be coordinated with the Coordinator. Strict compliance with CRC Rules 3.1200-3.1207 is required. In addition, the ex parte application and all supporting papers, including any proposed pleading, motion or order shall be electronically submitted to the Court's website by noon the Court day before the scheduled ex parte hearing date.

2. The Court is eager to assist counsel when specific problems arise that may not require a formal motion. To arrange a conference with the Court when all counsel agree to the advisability of such a discussion, please contact the Coordinator to reserve a time for the conference. In these instances "letter briefs" are not acceptable, but briefs on court pleading paper not exceeding 3 pages may be submitted.

3. During the COVID-19 pandemic, the Court requires telephone or videoconference appearances (both through CourtCall), unless specific permission is given by the Court for counsel to appear in person.


VI.   <u>DISCOVERY</u>

1. The Court believes in open discovery in accordance with the law, but expects counsel to refrain from engaging in excessive and abusive discovery.

2. Discovery meet and confer obligations require an actual conference (in-person, telephonic, or videoconference) between counsel. If a resolution is not reached, parties are required to have an informal discovery conference (IDC) with the Court **before filing any discovery motion, unless otherwise authorized by the Court**. Each side must serve and lodge a short brief, <u>**limited to no more than 3 pages**</u>, two court days in advance of the IDC. To schedule an IDC with the Court, please contact the Coordinator.

3. **Any dates given by the Court relating to this IDC process have no impact on statutory deadlines for filing motions or any other papers, including, but not limited to, the 45-day deadline for filing a motion to compel further responses. The party who files a discovery motion must address the motion's timeliness in its moving papers.**

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

4. Counsel and/or parties with full authority to resolve the discovery issue(s) must personally attend the IDC unless excused by the Court.

5. During the COVID-19 pandemic, the Court requires telephone or videoconference appearances (both through CourtCall) for IDCs, unless specific permission is given by the Court for counsel to appear in person.

VII. LAW AND MOTION

1. Law and Motion matters are generally heard at 1:30 p.m. on Wednesday for Department 3 and at 1:30 p.m. on Thursday for Department 1.

2. Counsel must first clear the hearing date with the other parties before contacting the Coordinator. You must provide the Court with the name of the case, the case number, type of hearing, hearing date requested, and name and telephone number of the filing attorney.

3. Before the hearing of **any** motion, petition or application, all counsel and parties representing themselves shall meet and confer in a good faith effort to eliminate the necessity of the hearing.

4. **The Court values the importance of the training of the next generation of trial lawyers, which must include substantive speaking opportunities in court. The Court strongly encourages the parties and senior attorneys to allow the participation of junior lawyers in all court proceedings, particularly in arguing motions where the junior lawyer drafted or contributed significantly to the motion or opposition.**

5. Motions or applications to seal must be heard no later than any motion relying on the materials for which sealing is sought. Upon denial of a motion or application to seal, the moving party must notify the Court that the materials are to be filed unsealed (CRC Rule 2.551(b)(b)) or refrain from relying on the materials, which will not be part of the record.

6. When the Court sustains a demurrer or grants a motion to strike with leave to amend and an amended pleading is filed, the plaintiff or cross-complainant shall file with its opposition to any successive demurrer or motion to strike a redline comparing the amended pleading to the previous version of the pleading.

7. Counsel for moving parties must notify the Court as soon as possible regarding any matter to be taken off calendar or continued. Notice of continuances of hearings must be provided by the moving party.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

8. During the COVID-19 pandemic, counsel are required to appear for hearings through telephone or videoconference (through CourtCall), unless specific permission is obtained from the Court to appear in person. There will be a public access line so members of the public can virtually attend.

VIII.   CASE MANAGEMENT CONFERENCE

1. The first case management conference is generally scheduled one hundred twenty (120) days after the action is filed. Plaintiff is required to give notice of this conference date to all other parties.

2. Case Management Conferences are generally heard at 2:30 p.m. on Wednesday for Department 3 and at 2:30 p.m. on Thursday for Department 1. Such conferences are scheduled as necessary to monitor the progress of the case and to assist counsel and the parties as the matter progresses. The parties should expect the Court to schedule a status conference approximately every 120 days.

3. Judicial Council Form CM-110, Civil Case Management Statement (required by CRC 3.725(c)), is not well-suited for complex cases. Instead, the parties shall file a **joint** case management statement no later than five calendar days before the hearing for each conference addressing the following subjects:

   (a) a brief objective summary of the case,
   (b) a summary of any orders from prior case management conferences and the progress of the parties' compliance with said orders,
   (c) significant procedural and practical problems that may likely be encountered,
   (d) suggestions for efficient management, including a proposed timeline of key events, and
   (e) any other special consideration to assist the Court in determining an effective case management plan.

A status conference statement may be filed as an alternative to the case management statement when appropriate. A status conference statement is generally less detailed than a case management statement and is to be used to advise the Court of progress or developments in the case which have occurred since the last review hearing.

4. During the COVID-19 pandemic, counsel are required to appear for hearings through telephone or videoconference (through CourtCall), unless permission is obtained from the Court to appear in person. There will be a public access line so members of the public can virtually attend.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

### IX. CASE MANAGEMENT AND REFERENCE ORDERS

1. Case Management Orders are not required in all cases, but may be helpful in cases where the sequencing and timing of key events are necessary in the management of the litigation and preparation of the case for trial.  However, even if a case management order is not necessary in a particular case, all complex cases must be managed by counsel, or the Court, or both.

2. Mediation and Reference matters should not commence until all parties are before the Court but not later than six months after the original complaint was filed, except for good cause.

3. Mediation and Reference matters should be concluded 12 months after their initiation (approximately 18 months after the original complaint was filed), except for good cause.

4. Brevity in drafting the Order may help focus your case and assist in reaching the desired goal (i.e., early informed resolution of your case in a cost-effective manner).

5. After a date is scheduled with the Court, it may not be continued by stipulation of the parties without the Court's consent.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

X.  MANDATORY SETTLEMENT CONFERENCES (MSC)

1.  If there is an objection to the trial judge's participation in the mandatory settlement conference, counsel must advise the Court as soon as possible, and in no event, later than the date the MSC is set. No case will be tried before a good faith effort is made to settle. Mandatory settlement conferences set on the Court's calendar are typically set at the time the trial is set, and generally, the final mandatory settlement conference takes place a week to two weeks before the first day of trial, typically on a Wednesday.

2.  Trial counsel, parties, and persons with full authority to settle the case must personally attend unless excused by the Court. If insurance coverage is available to satisfy the plaintiff's settlement demand and a representative of defendant's insurer with full settlement authority attends the mandatory settlement conference with defendant's trial counsel, named defendants need not attend unless their personal consent is necessary to settle the case. Named defendants must also personally attend the mandatory settlement conference when (a) there is an insurance coverage dispute; (b) plaintiff seeks to recover damages not covered by insurance; or (c) plaintiff's demand exceeds insurance policy limits. Failure to appear will result in the imposition of sanctions. Settlement Conference Statements must be filed at least five (5) court days before the scheduled conference (Rule 3.1380).

3.  Any request for a waiver of the requirement to personally appear at the MSC, whether conducted by the Court or a special master, must be made by written application to the Court.

XI.  MINI-TRIALS

There may be a pivotal issue, such as a special defense or evidentiary ruling, upon which the rest of the case depends. If counsel agree, the Court will set aside time before or during the trial to hear mini-trials on such issues. Time will be appropriately limited. Briefs and factual stipulations must be submitted in advance. Limited testimony may be taken, for example, as in an Evidence Code § 402 situation. Contact the Coordinator to schedule a date and submit a stipulation signed by all counsel.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

**Complex Civil Guidelines**

XII. PRE-TRIAL CONFERENCE

There will be a detailed pre-trial conference 10-15 days before trial to discuss procedural issues and preliminary matters in order to make the trial process as predictable and smooth as possible.

The conference may be a time for the Court to discuss trial evidence presentation and use of audio-visual equipment. The conference is not for the purpose of hearing motions in limine. An example of an issue for the conference: Product liability case in which the manner of presenting the underlying case is of concern. Will the Court allow counsel to read the transcript into the record? Live testimony? A combination of transcript and live testimony? Is a trial by jury requested? During the COVID-19 pandemic, will witnesses be appearing telephonically or by videoconference?

At least 10 days before the pretrial conference, counsel shall meet and confer and execute necessary documents listed below. Counsel shall meet in person at a mutually agreeable time and location.

At the meet and confer, the parties shall:

1. Prepare a **Joint Statement of the Case.**

2. Prepare a **Joint Witness List**, excluding impeachment or rebuttal witnesses, with accurate time estimates.

Witness lists should not be exaggerated. Only witnesses that a party expects to actually call should be listed, with a brief synopsis of the proposed testimony. In addition to the list contained in the statements, each list should also be prepared in the form attached as follows. Witnesses should be listed last name first. Titles (e.g. Dr., Officer) should be placed after the comma following the last name. This is so that lists can be sorted correctly.

As noted above, counsel should include in their witness list the amount of time they expect to spend on direct examination of each witness. The amount of time should be stated in minutes (*not* days or hours). Counsel must also be prepared to state at the conference how much time they will require for cross-examination of each witness identified on the other party's list.

At the conference the Court will make separate arrangements for the preparation of a joint list, for jury selection purposes, of possible witnesses and persons or entities that might otherwise be mentioned at trial.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

Format for Witness Lists

*Plaintiffs' List*

| Witness | Party (P or D) | Direct (min.) | Cross (min.) | Redirect (min.) | Total | Subject |
|---|---|---|---|---|---|---|
| Smith, John | P | 20 | 30 | 5 | 55 | Formation of contract |
| Brown, Nancy | P | 15 | 20 | 5 | 40 | Breach of contract |
| White, Ron | P | 70 | 10 | 15 | 95 | Damages |
| Black, Peter | P | 60 | 30 | 15 | 105 | Formation of contract |
| Garcia, Dr. Ruth | P | 120 | 100 | 30 | 250 | Damages |
| Rogers, Officer Ted | P | 60 | 30 | 10 | 100 | Arrest of Susan Petersen |

*Defendant's List*

| Witness | Party (P or D) | Direct (min.) | Cross (min.) | Redirect (min.) | Total | Subject |
|---|---|---|---|---|---|---|
| Doe, Edward | D | 20 | 10 | 5 | 35 | Formation of contract |
| Chang, Sam | D | 75 | 30 | 15 | 120 | Damages |

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

### Complex Civil Guidelines

| Martin, Dr. Eric | D | 120 | 60 | 30 | 210 | Damages |
|---|---|---|---|---|---|---|

3.  Exchange **exhibits** and inspect photos and diagrams (to be submitted on the date of trial), excluding those contemplated to be used for impeachment or rebuttal. **Stipulate to all facts amenable to stipulation.**

4.  Prepare a **Joint List of Controverted Issues.** If all the parties fail to agree to an issue as controverted or uncontroverted, then the issue is controverted. (Required for both jury and non-jury trials).

5.  Exchange all **motions** in limine.

6.  Prepare **voir dire questions** for the Court to include when examining the panel.

7.  Execute the **Statement of Compliance** indicating counsel has complied with the Local Rules and these Guidelines.

8.  Prepare joint proposed **jury instructions** (CACI only) and verdict forms, and exchange disputed instructions.

The above items, including opposition to motions in limine, trial briefs and the Statement of Compliance signed by all counsel, shall be submitted to the Complex Civil Litigation Coordinator **no later than noon on the 1st court day before the date set for trial, or such other time and date set by the Court.**

XIII.  <u>TRIALS - GENERALLY</u>

**1. General Matters – the following applies to all trials (jury and non-jury):**

a.  Except for the afternoon devoted to motions and case management conferences, jury trials generally will proceed four days a week as follows: Monday through Thursday (9:00 a.m. to 4:30 p.m.), Court trials may also proceed on Friday, and counsel in jury trials may be required to appear on Friday for proceedings that do not require the jury. The Court will provide the parties, generally at the conclusion of the Mandatory Settlement Conference, a proposed trial schedule.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

b.   Jury deliberations will proceed five days a week, from 9:00 a.m. to 4:30 p.m., unless otherwise specified by the Court.

c.   Trial attorneys must be in the courtroom 30 minutes before the start of each morning session, unless another time is agreed upon by the Court.  Counsel should expect that the court will take appropriate action if counsel is late for any appearance and does not have a justification for a late appearance.

d.   Before rearranging tables or other courtroom furniture, or installing equipment such as projectors or screens, permission must first be obtained from the bailiff or the Court.

e.   Unless the Court expressly advises otherwise, counsel may not approach a witness who is testifying to hand the witness exhibits, or to help the witness locate portions thereof, without first obtaining the Court's permission.

f.   Counsel must advise opposing counsel and the Court of the identity of each witness intended to be called no later than 4:30 p.m. on the court day preceding the time for the witness or witnesses to testify.

g.   Counsel presenting their case shall be expected to have witnesses ready to call through at least 4:30 p.m., and may be deemed to have rested their case if they are not prepared to proceed.  Counsel shall advise the Court immediately of any circumstances that may prompt a request for a modification of the established trial schedule.

h.   Counsel should advise the Court at the outset of the proceedings, or as soon as the issue becomes apparent, of any legal issues or evidentiary matters that counsel anticipate will require extended time for consideration or hearing outside the presence of the jury.

i.   If during the course of trial, counsel wish to discuss a matter with the Court and opposing counsel outside of the presence of the jury, counsel MUST advise the Court of this request at the conclusion of the preceding court session and NOT immediately before proceedings are scheduled to resume.

j.   The amount of jury fees required to be posted in advance of a jury trial is $150.00. (See Code Civ. Proc., § 631, subd. (b).) If a case settles after jury fees have been deposited, the jury fees will not be returned unless the Court is notified of the settlement by 2:00 p.m. on the court day preceding the trial date for which the deposit was made.

k.   The Court does not provide court reporters in complex civil cases.) See General Local Rule 7.) If one or more parties privately arrange for court reporter services, the failure

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

of such court reporter to appear will not be grounds for continuing or delaying a trial or other proceedings.

l.  Counsel must confer in advance of the trial, attempt to stipulate on as many issues and facts as possible, and reduce all stipulations to writing. The written stipulation is filed and during jury trials is read aloud into the record.

m.  **The Court strongly encourages the parties and senior attorneys to permit junior lawyers to have an important role at trial, including the examination of witnesses.**

2. **Documents**

Unless the case was settled at the Mandatory Settlement Conference or dismissed in full prior thereto, or unless otherwise ordered by the Court, the following items must be lodged in the department of the trial judge or, if none, with the Complex Civil Coordinator, and served on all other parties by noon on the last court day before the date set for trial:

   a.  all in limine motions and a list of the in limine motions;

   (2) exhibit lists/indices, except impeachment exhibits;

   (3) witness lists, except impeachment witnesses, and unusual scheduling problems; each witness listed shall include a succinct (no more than one or two sentences) statement of the general subject matter of the witness' testimony and an estimate of the time that will be required for the direct examination of each such witness;

   (4) jury instruction requests, except for instructions that cannot reasonably be anticipated prior to trial;

   (5) proposed special verdicts;

   (6) any stipulations on factual or legal issues;

   (7) a concise, non-argumentative statement of the case to be read to the jury in jury trials;

   (8) trial briefs;

   (9) the original of all deposition transcripts to be used during the course of the trial. If counsel anticipates reading from the deposition transcript for any purpose other

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

than impeachment, counsel must deliver to opposing counsel a written specification of the pages and lines proposed to be read.

An extra copy of all the above documents (except deposition transcripts) shall be delivered to the courtroom clerk on the morning of the trial for use by the clerk.

Counsel seeking to display to the jury any exhibit which required time and equipment to observe, such as slides, transparencies, movies, videotapes and audiotapes, MUST make such exhibit available to opposing counsel for review prior to commencement of the session of court at which the exhibit will be used.  Proceedings will not be delayed to permit such a review if the review has not occurred by the time court is scheduled to begin.

### 3. Technology

Counsel must meet and confer regarding the use of computers, projectors, screens and other forms of equipment for showing evidence to the jury or Court. Counsel must confer with court staff regarding the placement and use of any such equipment.

### 4. Stipulations

Before the commencement of trial, all counsel will be requested to stipulate:

1.  At the commencement of each session of the Court, all parties, attorneys and jurors are present unless otherwise indicated.

2.  After the first occasion on which the jury has been admonished not to discuss or prejudge the case in conformity with CCP § 611, the jury will be deemed to have been so admonished at every subsequent recess or separation without the need for further admonition; and

3.  Reporting of juror voir dire and jury instructions are waived.

### 5. Opening and Closing Arguments

a.  Counsel should avoid discussing routine matters of court procedure, such as the sequence of trial, in opening statements and closing arguments.  These matters will be covered by the Court and need not be repeated by counsel.

b.  Do not display charts, diagrams or proposed exhibits to the jury until they have been shown to opposing counsel outside of the presence of the jury.  If opposing counsel indicates no objection, the exhibits or other object may be displayed to the

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

### Complex Civil Guidelines

jury without first requesting Court approval.  If opposing counsel objects, the exhibit or object may not be displayed without Court approval, which must be requested outside the presence of the jury.

**6. Examination of Witnesses**

    i. <u>Objections:</u>  Counsel should only state the legal ground(s) of objection and, unless the Court specifically requests explanation or argument, should refrain from argument, elaboration, or any other form of extended objection-making.  Counsel may request permission to approach the side bar to present argument, but should not approach unless and until the Court grants the request.

    ii. When calling a witness to testify under Evidence Code section 776, do <u>not</u> announce in the presence of the jury that the witness being called under this provision or as a "hostile" or "adverse" witness.  Simply proceed with the examination of the witness; the Court will rule upon the applicability of section 776 only if such a ruling is required by an objection asserted by opposing counsel.

    iii. Do <u>not</u> propose a stipulation to opposing counsel in the hearing of the jury unless there is prior agreement of counsel.

**7. Transcripts**

    i. If counsel anticipates requesting a transcript of the testimony of any witness or other proceedings during the course of trial, arrangements should be made with the court reporter <u>in advance</u> so that arrangements can be made to obtain a second court reporter if necessary.

    ii. If counsel requests any court reporter to prepare a transcript of any portion of the proceedings, counsel MUST contemporaneously advise opposing counsel of the request and of the precise portions that will be transcribed.

**8. Jury Trials**

    i. Motions in limine and other trial-related preliminary motions (such as Evidence Code § 402) must be submitted in writing before answering ready.  Motions in limine may be ruled on by the Court without hearing.  Such motions should be brief and should address specific subject matter.  (See *Amtower v. Photon Dynamics, Inc.*, (2008) 158 Cal.App.4th 1582.)

    ii. CACI instructions are to be used whenever feasible. Submit proposed instructions in Word format. When reasonably possible, mark up the official version rather than retyping so the changes are apparent to the Court and other counsel.  The Court

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

may send at least 4 "clean" sets of instructions provided by counsel into the jury room. "Clean" means just the text of the instruction, as corrected. Plaintiff has the primary, but not exclusive, responsibility to provide the "clean" sets, in binders.

iii.   Counsel should consider stipulating that the determination as to which members of the trial jury shall be alternates will be determined by random draw of names immediately before deliberations commence. If counsel so stipulate, the size of the panel selected at the outset of trial will be 12 plus the number of alternates expected to be needed, with the peremptory challenges allotted to each side increased by the number of jurors in excess of 12.

iv.    Hardship Requests - Requests by members of the panel to be excused on the ground of undue hardship will be considered by the court prior to beginning voir dire examination.

v.     Jury selection proceeds generally under the "6 pack" method, modified to fit the case. Court and counsel will work out the management of voir dire in accordance with Code of Civil Procedure section 225.5 to fit the circumstances of the case. Counsel may submit specific juror questions for the Court to consider asking during voir dire.

vi.    Voir dire examination will initially be directed to 18 or more members of the jury panel seated in the jury box. Any of these 18 or more panel members excused for cause will be replaced by additional panel members before peremptory challenges begin. Peremptory challenges will then proceed, directed to the first 12 panel members, who will be replaced by the next six panel members in order as any of the 12 are peremptorily challenged. The peremptory challenges will continue until the panel seated in the jury box is reduced to 11 members, at which time additional panel members (normally an additional seven) will be selected and examined prior to resuming peremptory challenges. Whenever there are successive passes from all parties who have not exhausted their challenges, or all parties exhaust their challenges, the jury has been selected and will be sworn. The same process will then continue for the selection of alternate jurors.

vii.   All challenges for cause will be heard out of the hearing of the jury panel.

viii.  The Court will initiate voir dire examination. Upon completion of the judge's examination, counsel will have the right to examine the jurors within reasonable time limits prescribed by the trial judge.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

ix.  The Court preinstructs the jury once it is empaneled.  CACI Instructions relating to the basic responsibilities of the jurors, management of evidence and the like will be given and, in most cases, repeated at the close of trial.

x.  Objections of any kind are to be addressed to the Court (not to other counsel) with a concise statement of the legal grounds.  Argument on the objection without invitation by the Court is not permitted.  Advise the Court if argument is necessary for the record.

xi.  Make no references to charts, models, blowups or other demonstrative evidence in front of the jury unless:  (a) it is in evidence; (b) counsel have previously stipulated the item is in evidence; or (c) you have leave of Court to make that reference.

xii.  <u>TRIAL EXHIBITS</u>

    **a.**  **Introduction**

        i.  The electronic representations of such exhibits may be presented to the jury/Court as substitutes for the exhibits themselves.  Counsel should keep in mind that one of the purposed of the complex project is to enhance the orderly presentation of evidence to the fact finder, and to maintain the record for potential post trial proceedings.

        ii.  Exhibits may be in either electronic or physical form.  Physical exhibits are not required to be presented in a digitized format.  However, at the conclusion of trial the court may order that a photo be substituted and stored electronically in lieu of the physical evidence.

        iii.  Parties must exchange exhibits excluding documents for bona fide impeachment at the Pre-Trial Meet and Confer.  Each counsel must provide the Court with an EXHIBIT LIST describing each exhibit, indicating whether the exhibit is to be admitted into evidence by stipulation.

        iv.  Counsel must submit to the Clerk original negotiable instruments for cancellation pursuant to Rule 3.1806, unless otherwise ordered by the Court.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

**b. Submission of Exhibits**

    i. Counsel must provide the Court with the exhibits, plus one copy. Exhibits will be marked by the Clerk, as they are identified, in chronological order.  Exhibits shall not be pre-marked by counsel.

    ii. Enlargements and transparencies normally will not be admitted into evidence.  Any large exhibit or transparency should be accompanied by an 8½ x 11 version to which the exhibit tag is attached.  Models, etc. should be photographed if proposed as exhibits.  Be sure to discuss evidentiary issues of this nature with opposing counsel.

    iii. Responses to interrogatories and requests for admission that are expected to be used at trial must be extracted and lodged with the Court, and a copy given to counsel, at the appropriate time.  In jury trials, questions and answers must be read into the record, subject to proper objections.  The extracts may be submitted as exhibits in a Court trial.   In no case will entire sets of written discovery documents be lodged or received.

    iv. Before trial commences, counsel will be asked to sign a stipulation for the return and maintenance of exhibits when the trial is completed.  Plaintiff will maintain joint exhibits, unless otherwise stipulated.

**c. Use of Deposition Transcripts**

    i. Deposition transcripts that are expected to be used at trial must be lodged with the Court on the first day of trial.  Pertinent provisions must be read into the record in jury trials, subject to proper objections.  In Court trials, extracts may be submitted and marked as exhibits.  In no case will an entire transcript be received.

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

## CURRICULUM VITAE FOR JUDGE SUNIL R. KULKARNI

**Judge Sunil R. Kulkarni**
**Superior Court of California**
**County of Santa Clara**
**191 North First Street**
**San Jose, California 95113**
**Department 1**
**408-882-2110**

**JUDICIAL CAREER:**
Tenure
Appointed to the Superior Court on October 4, 2013
Elected to 6-year terms (unopposed): 2016

Assignments
Complex Civil Litigation:  November 2020 - present
Assistant Supervising Judge (civil):  January 2021 - present
Civil Case Manager (pretrial case management):  2019-20
Civil Trials:  2018
Appellate Division:  2017-18
Criminal Calendars/Trials:  2013-2017

External Committee Roles:
Member, CJER Qualifying Ethics 8 Workgroup:  2021 (upcoming)
Member, CJER Ethics and Fairness Curriculum Committee:  2015-2020
Member, Santa Clara County Bar Association Fairness/Equity Committee:  2018

Teaching:
Faculty Member, CJER New Judge Orientation:  2021 (upcoming)
Faculty Member, CJER Qualifying Ethics:  2019-21
Trial Advocacy, Stanford Law School:  2014-20
Appellate Advocacy, Stanford Law School:  2020-21
Appellate Advocacy, Giles R. Rich Moot Court (patent law):  2014-20

Publications:
Editor, CEB (various publications):  2017, 2019-20
Editor, CJER (various publications):  2017, 2019-20
Numerous articles, San Francisco Daily Journal:  2014-16
Article regarding tentative rulings, California Litigation:  2019

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

Awards:
Trailblazer Award, South Asian Bar Association of Northern California:  2014
Champion of Diversity, Minority Bar Coalition:  2016

**PAST EXPERIENCE:**
Senior In-House Litigation Counsel, University of California Office of the President:  2011-2013

Morrison & Foerster LLP (specializing in complex intellectual property, securities, and business litigation):
- Partner:  2005-2010
- Associate:  1998-2004
- Seconded to Apple Inc.'s in-house patent litigation group for five months (September 2009 – January 2010) to supervise patent cases.

Judicial Law Clerk, Eastern District of California (Judge Oliver W. Wanger):  1996-97

**EDUCATION:**
University of California, Hastings College of the Law:  J.D., 1996
University of California, Berkeley:  B.S. (mechanical engineering), 1993

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

## Complex Civil Guidelines

## CURRICULUM VITAE FOR JUDGE PATRICIA M. LUCAS

**Judge Patricia M. Lucas**
**Superior Court of California**
**County of Santa Clara**
**191 North First Street**
**San Jose, California 95113**
**Department 3**
**408-882-2130**

**JUDICIAL CAREER:**

Appointed to the Superior Court December 20, 2002
Elected to 6-year terms (unopposed): 2004, 2010, 2016
Complex Civil Litigation, 2020-
Presiding Judge, 2017-18
Assistant Presiding Judge, 2015-16
Civil Trials, 2013, 2016
Civil Pretrial Case Management, 2011-12, 2014-15
Civil Discovery/Trials, 2004
Supervising Judge, Civil Division, 2014-15
Family Law, 2005-08
Supervising Judge, Family Division, 2006-08
Appellate Division, 2004, 2013
Presiding Judge, Appellate Division, 2013
Criminal Trials, 2003, 2009-10
Temporary assignment on the Sixth District Court of Appeal, 2011

Chair, Trial Court Presiding Judges Advisory Committee, 2017-18
Member, Judicial Council of California, 2017-18
B. E. Witkin Judicial College of California: Dean, 2017-18
    Associate dean, 2015-16
    Faculty, 2004 to present
    Seminar leader, 2005-06 and 2009-2014
Faculty/Seminar Leader, New Judge Orientation, 2005 to present
Faculty, CJER Civil Law Institute, 2006 to present
Member, CJER New Judge Educ./Judicial College Steering Committee;
    New Judge Orientation Working Group;
    Experienced Judge Working Group (chair)
Member, CJER Governing Committee, 2005, advisory member, 2015-18
Member, Judicial Council Civil & Small Claims Advisory Committee,

Superior Court of California,
County of Santa Clara
191 North First Street
San Jose, CA 95113

Revised December 28, 2020

**Complex Civil Guidelines**

2006-2015 (chair, 2013-15)
Member and vice-chair, Judicial Council Court Facilities Advisory
Committee, 2011 to present
Member, Elkins Family Law Task Force and Implementation Task Force,
2008-12
Instructor, National Institute for Trial Advocacy, 1990 to present

Private practice, complex civil litigation, 1979-2003
University of California, Berkeley, J.D.
Rice University, B.A.

21CV375167
Santa Clara – Civil

| | | | | |
|---|---|---|---|---|
| Attorney or Party without Attorney:<br>Kevin Osborne, Esq., Bar #261367<br>Erickson Kramer Osborne<br>185 Howard Street<br>San Francisco, CA 94105<br>*Telephone No:* 415-635-0631     *FAX No:* 415-599-8088 | | | | *For Court Use Only* System System<br><br>**Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 1/22/2021 1:12 PM<br>Reviewed By: System System<br>Case #21CV375167<br>Envelope: 5694760** |
| *Attorney for:* Plaintiff | | *Ref. No. or File No.:* | | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>Santa Clara County Superior Court | | | | |
| *Plaintiff:* Siddharth Mehta | | | | |
| *Defendant:* Robinhood Financial LLC, et al. | | | | |

| **PROOF OF SERVICE**<br>**Summons & Complaint** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>21CV375167 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons & Complaint; Civil Lawsuit Notice; Civil Case Cover Sheet.

*3. a. Party served:*                 Robinhood Securities, LLC
    *b. Person served:*              Jennifer Lee, Person Authorized to Accept

*4. Address where the party was served:*     URS Agents Inc.
                                        7801 Folsom Blvd, Suite 202
                                        Sacramento, CA 95826

*5. I served the party:*
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
    process for the party (1) on: Mon., Jan. 11, 2021 (2) at: 2:10PM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
    *on behalf of:* Robinhood Securities, LLC
    Under CCP 416.40 (association or partnership)

**7. *Person Who Served Papers:***                          Recoverable Cost Per CCP 1033.5(a)(4)(B)
    a. John M. Adams                      d. *The Fee for Service was:*     $61.00

**1500 W. El Camino Avenue, #510**
**Sacramento, CA 95833**
**855-5VALPRO, Fax (866) 900-4665**
Valpro **www.ValproAttorneyServices.com**

e. I am: (3) registered California process server
       *(i)*   Independent Contractor
       *(ii)*   *Registration No.:*     2014-45
       *(iii)*   *County:*           Sacramento

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

    *Date: Mon, Jan. 11, 2021*

Judicial Council Form POS-010           **PROOF OF SERVICE**            (John M. Adams)
Rule 2.150.(a)&(b) Rev January 1, 2007     Summons & Complaint                                              *keosb.33521*

21CV375167
Santa Clara – Civil

| Attorney or Party without Attorney: | | For Court Use Only: System System |
|---|---|---|
| Kevin Osborne, Esq., Bar #261367<br>Erickson Kramer Osborne<br>185 Howard Street<br>San Francisco, CA 94105<br>*Telephone No:* 415-635-0631   *FAX No:* 415-599-8088 | | **Electronically Filed**<br>**by Superior Court of CA,**<br>**County of Santa Clara,**<br>**on 1/22/2021 1:12 PM** |
| *Attorney for:* Plaintiff | *Ref. No. or File No.:* | **Reviewed By: System System** |
| *Insert name of Court, and Judicial District and Branch Court:* | | **Case #21CV375167** |
| Santa Clara County Superior Court | | **Envelope: 5694760** |

*Plaintiff:* Siddharth Mehta

*Defendant:* Robinhood Financial LLC, et al.

| PROOF OF SERVICE<br>Summons & Complaint | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>21CV375167 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons & Complaint; Civil Lawsuit Notice; Civil Case Cover Sheet.

*3.  a. Party served:*           Robinhood Financial LLC
     *b. Person served:*          Jennifer Lee, Person Authorized to Accept

*4. Address where the party was served:*      URS Agents Inc.
                                              7801 Folsom Blvd, Suite 202
                                              Sacramento, CA 95826

*5. I served the party:*
     a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive
     process for the party (1) on: Mon., Jan. 11, 2021 (2) at: 2:10PM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
     *on behalf of:*  Robinhood Financial LLC
     Under CCP 416.40 (association or partnership)

*7. Person Who Served Papers:*                      Recoverable Cost Per CCP 1033.5(a)(4)(B)
     a. John M. Adams                      d.  **The Fee** *for Service was:*    $101.00

**1500 W. El Camino Avenue, #510**          e.  I am: (3) registered California process server
**Sacramento, CA 95833**                         *(i)*   Independent Contractor
**855-5VALPRO, Fax (866) 900-4665**              *(ii)   Registration No.:*     2014-45
**www.ValproAttorneyServices.com**              *(iii)  County:*             Sacramento

Valpro
ATTORNEY SERVICES

*8.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

     *Date: Mon, Jan. 11, 2021*

Judicial Council Form POS-010                PROOF OF SERVICE                (John M. Adams)              keosb.33520
Rule 2.150.(a)&(b) Rev January 1, 2007       Summons & Complaint

| Attorney or Party without Attorney:<br>Kevin Osborne, Esq., Bar #261367<br>Erickson Kramer Osborne<br>185 Howard Street<br>San Francisco, CA 94105<br>Telephone No: 415-635-0631    FAX No: 415-599-8088 | For Court Use Only |
|---|---|
| | **Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 1/22/2021 1:12 PM<br>Reviewed By: R. Walker<br>Case #21CV375167<br>Envelope: 5694760** |

Attorney for: Plaintiff — Ref. No. or File No.:

Insert name of Court, and Judicial District and Branch Court:
Santa Clara County Superior Court

Plaintiff: Siddharth Mehta

Defendant: Robinhood Financial LLC, et al.

| PROOF OF SERVICE<br>Summons | Hearing Date: | Time: | Dept/Div: | Case Number:<br>21CV375167 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the Summons; Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline; General Order Re: Covid-19; Complex Civil Guidelines

3. a. Party served:  Robinhood Financial, LLC
   b. Person served:  Jennifer Lee, Person Authorized to Accept

4. Address where the party was served:  URS Agents Inc.
   7801 Folsom Blvd, Suite 202
   Sacramento, CA 95826

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jan. 21, 2021 (2) at: 2:10PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of:  Robinhood Financial, LLC
   Under CCP 416.40 (association or partnership)

7. *Person Who Served Papers:*
   a. John M. Adams

   1500 W. El Camino Avenue, #510
   Sacramento, CA 95833
   855-5VALPRO, Fax (866) 900-4665
   www.ValproAttorneyServices.com

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. *The Fee for Service was:*

   e. I am: (3) registered California process server
      (i) Independent Contractor
      (ii) Registration No.:  2014-45
      (iii) County:  Sacramento

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date: Thu, Jan. 21, 2021*

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
Summons

(John M. Adams)

keosb.33821

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| Kevin Osborne, Esq., Bar #261367<br>Erickson Kramer Osborne<br>185 Howard Street<br>San Francisco, CA 94105<br>Telephone No: 415-635-0631     FAX No: 415-599-8088 | | **Electronically Filed**<br>**by Superior Court of CA,**<br>**County of Santa Clara,**<br>**on 1/22/2021 1:12 PM** |
| Attorney for: Plaintiff | Ref. No. or File No.: | **Reviewed By: R. Walker**<br>**Case #21CV375167**<br>**Envelope: 5694760** |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| Santa Clara County Superior Court |
| Plaintiff: Siddharth Mehta |
| Defendant: Robinhood Financial LLC, et al. |

| PROOF OF SERVICE<br>Summons | Hearing Date: | Time: | Dept/Div: | Case Number:<br>21CV375167 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the Summons; Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline; General Order Re: Covid-19; Complex Civil Guidelines

3. a. Party served:                               Robinhood Securities, LLC
   b. Person served:                            Jennifer Lee, Person Authorized to Accept

4. Address where the party was served:     URS Agents Inc.
                                            7801 Folsom Blvd, Suite 202
                                            Sacramento, CA 95826

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu., Jan. 21, 2021 (2) at: 2:10PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of:  Robinhood Securities, LLC
   Under CCP 416.40 (association or partnership)

7. **Person Who Served Papers:**                          Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. John M. Adams
                                            d.  **The Fee** for Service was:

   **1500 W. El Camino Avenue, #510**        e.  I am: (3) registered California process server
   **Sacramento, CA 95833**                       (i)   Independent Contractor
   **855-5VALPRO, Fax (866) 900-4665**            (ii)  Registration No.:     2014-45
   **www.ValproAttorneyServices.com**             (iii) County:              Sacramento
   Valpro
   ATTORNEY SERVICES

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date: Thu, Jan. 21, 2021*

Judicial Council Form POS-010                    PROOF OF SERVICE                    (John M. Adams)          keosb.33822
Rule 2.150.(a)&(b) Rev January 1, 2007                   Summons