Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
**Erickson Kramer Osborne LLP**
182 Howard Street # 736
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDDHARTH MEHTA, KEVIN QIAN, and MICHAEL FURTADO, individually and on behalf of other similarly situated individuals, | Case No.: 21-CV-01013-SVK |
|     Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL** |
| vs. | |
| ROBINHOOD FINANCIAL LLC; ROBINHOOD SECURITIES, LLC; and DOES 1-10 | **COMPLAINT FOR** 1.  Negligence; 2.  Breach of Contract; 3.  Violation of the California Consumer Privacy Act (Cal. Civ. Code § 1798.150); |
|     Defendants. | 4.  Violation of the Customer Records Act (Cal. Civ. Code § 1798.82); 5.  Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*); 6.  Violation of the Right to Privacy (Cal. Const., art. I, § 1); 7.  Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); and 8.  Violation of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) |

Plaintiffs SIDDHARTH MEHTA, KEVIN QIAN, and MICHAEL FURTADO, on behalf of themselves and others similarly situated ("the Class"), bring this action against Defendants ROBINHOOD FINANCIAL LLC ("Robinhood Financial") and ROBINHOOD SECURITIES, LLC ("Robinhood Securities") (collectively, "Robinhood" or "Defendants") for actual damages suffered by Plaintiffs and the Class, statutory damages, penalties, restitution, injunctive relief, and for other recovery specified herein for harm caused by Robinhood's negligent conduct, breach of contract, and violations of the California Consumer Privacy Act, California Customer Records Act, California Consumers Legal Remedies Act, the California Constitution's right to privacy, the California Unfair Competition Law, and the California False Advertising Law. Plaintiffs allege upon information and belief, except as to their own actions, the investigation of their counsel, and the facts that are a matter of public record, as follows:

## I. <u>INTRODUCTION</u>

1.      Data security has taken center stage as global losses from cybercrime exceed $1 trillion annually. The global pandemic of 2020 has only made consumers and organizations more vulnerable to cyber attacks and increased the importance of strong safeguards against cybercriminals.

2.      Financial institutions are leading targets for cyber attacks. The explosion of "FinTech," digital financial services, and mobile banking has created new pressure points for criminals to exploit. Responsible financial institutions have reacted by implementing better training practices, increasing their security workforces, and increasing investment in new and more secure technologies.

3.      Robinhood brands itself as a securities trading platform designed for millennial users. In just over five years, it has attracted more than thirteen million customers through youth-focused marketing, a video game-like interface, and claims it enables "investing for everyone." While the company has narrowly focused on break-neck growth, it has neglected to build out its security infrastructure to adequately protect its customers' sensitive information.

4.      In the summer and fall of 2020, and perhaps even earlier, unauthorized users accessed approximately 2,000 Robinhood customers' accounts. Upon accessing the accounts, these

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

unauthorized users obtained Robinhood's customers' sensitive personal and financial information and looted funds. Panicked customers who saw their accounts draining attempted to contact Robinhood by email, as Robinhood offers no phone number for customer service, and were left waiting for days or weeks while more funds were depleted from their accounts. The breach cost Robinhood's customers millions of dollars.

5. Rather than freezing the accounts and alerting its customers of the breach right away as required under California law, Robinhood said and did nothing. Only when news outlets reported on the breach did Robinhood acknowledge it had occurred.

6. Customers have since asked Robinhood to make good on the promise it makes to cover 100 percent of any losses caused by unauthorized activity. While the company has compensated some individuals, it has refused others' requests without explanation.

## II.  FACTUAL ALLEGATIONS

### Robinhood's Reckless and Unsupportable Growth Model

7. Robinhood was founded in 2013 as a self-directed online securities trading platform. In 2015, it launched its retail brokerage business, positioning itself as a millennial-friendly broker-dealer with products designed to "democratize" trading. By 2018, it was one of the largest retail broker-dealers in the United States. As of May 2020, Robinhood serviced the accounts of approximately 13 million investors.



8. The marketing that allowed Robinhood's exponential growth involved targeting younger individuals with little, if any, investing experience. The platform relentlessly encourages users to engage constantly, utilizing a strategy referred to as "gamification." For example, in 2019, the

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

company used a promotion where customers who engaged the platform daily were rewarded with a position at the front of the line when a new product was released. While claiming it does not make trading recommendations, Robinhood sends customers push notifications listing the most "popular" securities traded on its platform. When customers execute trades, the interface rewards them with a shower of colorful confetti. The median age of its investors has been reported to be as low as 31 years old and many, if not most, report having limited or no prior investing experience. In December 2020, the Massachusetts Securities Division Enforcement Section charged Robinhood with violations of state securities laws for these marketing strategies.

9.      Robinhood exploits its customers' naivete. The company offers its investors what it calls "commission-free" trading, allowing customers to place unlimited orders to buy and sell securities without paying trading commissions. Until recently, however, the company failed to disclose that it generates most of its revenue from direct payments it receives from third-party firms in so-called "dark pools." Unbeknownst to Robinhood's unsuspecting and often unsophisticated customers, these third-party firms execute customers' trades at inferior prices, costing customers substantial sums. When the practice was discovered, the United States Securities and Exchange Commission charged Robinhood with failure to disclose the revenue source to its customers and a breach of the duty of best execution required under United States securities laws and regulations.

10.      Robinhood's growth-at-all-costs model recklessly fails to serve its customers' interests. At multiple points in 2020, as the market soared, the number of Robinhood's customers increased by an estimated 30 percent. During this period, Robinhood's online interface became unstable and incapable of handling the rapid numbers of customers' demand for activity, suffering more than 70 outages. Its customers were unable to benefit from the market's historic gains. The company admitted these outages were the result of insufficient infrastructure.

**Robinhood Violates Its Promise and Its Duty to Safeguard Customer Data and Assets**

11.      When customers open investment accounts with Robinhood, they authorize Robinhood access to one or more bank accounts and deposit funds directly into a Robinhood investment account of which Robinhood is the custodian.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

12.     Customers additionally grant Robinhood access to sensitive personal and financial information, including but not limited to their names, social security numbers, dates of birth, mailing addresses, telephone numbers, bank account numbers, details of their income, bank account balances, financial transaction histories, credit histories, tax information, and credit scores.

13.     Customers also permit Robinhood access to information regarding their whereabouts through the devices they use to access the Robinhood platform, including but not limited to cell phone and mobile computing device location data, IP addresses, and Wi-Fi network data.

14.     Robinhood's United States Privacy Policy claims, "we take privacy and security seriously," and the company advertises itself as highly diligent in safeguarding its customers' accounts. In fact, the company guarantees full reimbursement for losses caused by unauthorized account activity. According to claims on the company's website,

> We're committed to keeping your account safe, so we offer robust security tools and a promise to fully reimburse direct losses that happen due to unauthorized activity that is not your fault.

## Dedicated to maintaining the highest security standards.

**We will cover 100% of direct losses due to unauthorized activity in your accounts.**

This is one of the "6 Commitments" Robinhood lists on its website, claiming, "these are the commitments you can always expect from us."

15.     Robinhood does not keep its promise to maintain the highest security standards. Its system lacks simple and almost universal security measures used by other broker-dealer online systems, such as verifying changes in bank account links. Such systems prevent unauthorized users from transferring customer funds from an account without substantial verification.

16.  In July 2019, Robinhood admitted to customers it had been storing their user credentials in what is known as "cleartext," an unencrypted form readable to anyone with access to the data. Storing this sensitive information in an encrypted form has been the industry standard for broker-dealers for more than ten years.

17.  Robinhood's failure to use these and other industry-standard security measures needlessly exposes customers to the risk of data and identity theft and is the result of Robinhood's growth-before-security model.

**Unauthorized Users Hacked and Looted Robinhood Customer Accounts**

18.  From on or before July 22, 2020 until on or about October 5, 2020, Robinhood negligently and illegally allowed unauthorized third-party access to approximately 2,000 customers' personal and financial information, access to the funds customers had deposited into their Robinhood accounts, and control over securities positions customers purchased through Robinhood. These unauthorized users viewed, used, manipulated, exfiltrated, and stole this personal and financial information and took control over customers' accounts so as to rob them of money and valuable securities and harm their privacy. As a consequence of this negligent and illegal conduct, Robinhood's customers collectively lost millions of dollars.

19.  Unauthorized user access has been an ongoing dilemma for Robinhood users since the 2020 breaches and, due to Robinhood's substandard security and response practices, will continue into the future. Cyber security analysts estimate more than 10,000 Robinhood users' account security may be compromised, which is approximately five times the rate of other brokerage services.

20.  Robinhood has repeatedly neglected to fully inform customers regarding the nature and scope of security failures and unauthorized activity. For example, after it was revealed in 2019 that Robinhood stored customer login credentials in cleartext, the company refused to reveal how many customers' credentials were involved, how long their credentials had been maintained in that format, and who had access to the unencrypted data. Furthermore, the widespread security breach of 2020 was only disclosed by Robinhood after reports were leaked by anonymous sources to news outlets. On October 16, 2020, after the breaches had been widely reported,

Robinhood sent push notifications to customers encouraging them to enable two-factor authentication, which is a security setting requiring the use of a password combined with a temporary passcode sent to a second device to log on. Notably, many of those who were affected by the breach already had two-factor identification enabled when the unauthorized access occurred. Even this communication failed to clearly notify the affected customers about the breach, claiming the reason for the notification was simply "part of National Cybersecurity Awareness Month." Robinhood has never publicly disclosed the total number of customers whose accounts were breached or what information has been released to unauthorized users. In its public statements, Robinhood has refused to accept fault for its security failures. After the October 2020 breach, a Robinhood spokesperson insisted that any customer losses were caused by identity theft originating outside the Robinhood system, maintaining, "[t]his was not stemming from a breach of Robinhood's systems."

21.    When customers realized their accounts had been breached, many immediately attempted to contact Robinhood to determine the source of the breach or request recovery of their funds. They found Robinhood was not designed to receive their communications. There was no phone number to contact a Robinhood representative listed in any materials Robinhood provided or made available to its customers. Instead, customers were directed to email Robinhood with the caveat that a response could take up to three business days. In many cases, customers waited weeks for a response. When Robinhood finally responded to customer emails, they received boilerplate responses claiming:

> We always respond to customers reporting fraudulent or suspicious activity and work as quickly as possible to complete investigations. The security of Robinhood customer accounts is a top priority and something we take very seriously.

While customers waited for Robinhood to respond, the unauthorized users to whom Robinhood allowed access continued to loot their accounts.

22.    Contrary to Robinhood's "commitment" to cover losses caused by unauthorized use, Robinhood has failed to compensate millions of dollars of losses claimed by those affected by the breach. Without explanation, Robinhood emailed customers who lost thousands of dollars in the breach informing them they would not be compensated for their losses.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

23.     In addition to the futile attempts to remedy the issue with Robinhood directly, customers have spent substantial amounts of their time attempting to remedy the losses and securing other assets and information from further losses consequent to the breach of their accounts.

### III.  <u>JURISDICTION AND VENUE</u>

24.     This action is brought as a class action for common law negligence and breach of contract and under the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150), Customer Records Act ("CRA") (Cal. Civ. Code § 1798.82), Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*), the California Constitution's right to privacy (Cal. Const., art. I, § 1), the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq.*) for monetary and equitable relief due to Robinhood's negligent, unlawful, and unfair conduct.

25.     This Court has personal jurisdiction over Robinhood because Robinhood does business in the state of California and the claims asserted herein arise from conduct occurring in California. This court also has original jurisdiction pursuant to 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005 ("CAFA").

26.     Venue is proper in this Court because, *inter alia*, Robinhood engages and performs business activities in and throughout Santa Clara County. By its own terms of services, Robinhood identifies Santa Clara County as the venue for all legal actions against it. Many of the acts committed by Robinhood complained of herein occurred in this judicial district.

### IV.  <u>THE PARTIES</u>

27.     Plaintiff Siddharth Mehta is, and at all relevant times was, a resident of the state of California. In 2020, Mehta held an investment account with Robinhood and was a purchaser of its services, engaging in securities investment through the Robinhood platform. Mehta relied on and expected Robinhood to take reasonable care with the information he provided Robinhood so that he could use the platform and, based on this reliance and expectation, allowed Robinhood direct access to funds in his bank account and sensitive personal and financial information. Specifically, he provided Robinhood with information including, but not limited to, his name, social security number, date of birth, mailing address, telephone number, savings account

number, details of his income, bank account balances, credit history, tax information, and credit score. In addition, Mehta permitted Robinhood access to his location data, IP addresses, Wi-Fi data, and other information from his devices used to determine Mehta's location. Mehta deposited funds directly into an investment account of which Robinhood was custodian. As early as July 22, 2020, and possibly sooner, Robinhood negligently and illegally allowed a third-party access to Mehta's personal and financial information, access to the funds Mehta had deposited into a Robinhood account, and control of securities positions Mehta purchased through Robinhood. As a consequence of this negligent and illegal conduct, Mehta lost tens of thousands of dollars. Robinhood neglected to inform Mehta of this breach and only acknowledged the breach occurred after Mehta confronted Robinhood about the loss of funds 85 days after the initial breach occurred. Mehta has since spent hours of his own time attempting to research and remedy the loss and securing his other assets and information from further breach.

28. Plaintiff Kevin Qian is, and at all relevant times was, a resident of the state of Illinois. In 2020, Qian held an investment account with Robinhood and was a purchaser of its services, engaging in securities investment through the Robinhood platform. Qian relied on and expected Robinhood to take reasonable care with the information he provided Robinhood so that he could use the platform and, based on this reliance and expectation, allowed Robinhood direct access to funds in his bank account and sensitive personal and financial information. Specifically, he provided Robinhood with information including, but not limited to, his name, social security number, date of birth, mailing address, telephone number, savings account number, details of his income, bank account balances, credit history, tax information, and credit score. In addition, Qian permitted Robinhood access to his location data, IP addresses, Wi-Fi data, and other information from his devices used to determine Qian's location. Qian deposited funds directly into an investment account of which Robinhood was custodian. As early as October 10, 2020, and possibly sooner, Robinhood negligently and illegally allowed a third-party access to Qian's personal and financial information, access to the funds Qian had deposited into a Robinhood account, and control of securities positions Qian purchased through Robinhood. As a consequence of this negligent and illegal conduct, Qian lost tens of thousands of dollars.

Robinhood neglected to inform Qian of this breach and only acknowledged the breach occurred after Qian confronted Robinhood about the loss days after the initial breach occurred. Qian has since spent hours of his own time attempting to research and remedy the loss and securing his other assets and information from further breach.

29.     Plaintiff Michael Furtado is, and at all relevant times was, a resident of the state of California. In 2021, Furtado held an investment account with Robinhood and was a purchaser of its services, engaging in securities investment through the Robinhood platform. Furtado relied on and expected Robinhood to take reasonable care with the information he provided Robinhood so that he could use the platform and, based on this reliance and expectation, allowed Robinhood direct access to funds in his bank account and sensitive personal and financial information. Specifically, he provided Robinhood with information including, but not limited to, his name, social security number, date of birth, mailing address, telephone number, savings account number, details of his income, bank account balances, credit history, tax information, and credit score. In addition, Furtado permitted Robinhood access to his location data, IP addresses, Wi-Fi data, and other information from his devices used to determine Furtado's location. Furtado deposited funds directly into an investment account of which Robinhood was custodian. As early as February 12, 2021, and possibly sooner, Robinhood negligently and illegally allowed a third-party access to Furtado's personal and financial information, access to the funds Furtado had deposited into a Robinhood account, and control of securities positions Furtado purchased through Robinhood. As a consequence of this negligent and illegal conduct, Furtado lost over ten thousand dollars. After the breach, Furtado repeatedly attempted to contact Robinhood by email, as Robinhood does not provide a customer service phone number. He did not receive a response for regarding the breach for thirteen days. Furtado has since purchased identity theft protection services and has spent hours of his own time attempting to research and remedy the loss and securing his other assets and information from further breach.

30.     Defendant Robinhood Financial is a corporation engaged in financial services for retail customers, organized and existing under the laws of the State of Delaware, with its principal place of business located at 85 Willow Road in Menlo Park, California. It is a wholly owned

subsidiary of Robinhood Markets, Inc. and an affiliate of Defendant Robinhood Securities. It is an "introducing" broker-dealer, offering brokerage services to retail investors and allowing customers to open online accounts and electronically deposit funds.

31. Defendant Robinhood Securities is a corporation engaged in providing financial services, organized and existing under the laws of the State of Delaware, with its principal place of business located at 85 Willow Road in Menlo Park, California. It is a wholly owned subsidiary of Robinhood Markets, Inc. and an affiliate of Defendant Robinhood Financial. Once a customer creates an account with Robinhood Financial, Robinhood Securities is the custodian of customers' funds and the securities customers purchase. It services customer accounts; executes, clears, and settles customer trades; prepares and distributes customer account statements and trade confirmations; and extends credit to customer margin accounts.

32. The true names and capacities of Defendants sued in the Complaint under the fictitious names of Does 1 through 10, inclusive, are unknown to Plaintiffs who therefore sues such Defendants by such fictitious names.

33. All the Defendants described above shall collectively be referred to as "Defendants." Whenever reference is made in this complaint to any act of Defendants, such allegation shall mean that each Defendant acted individually and jointly with the other Defendants named in that cause of action. Whenever reference is made in this complaint to any act of any corporate or other business Defendant, such allegation shall mean that such corporation or other business did the acts alleged in the complaint through its officers, directors, employees, agents, and representatives while they were acting within the actual or ostensible scope of their authority. At all relevant times, each of the Defendants has acted as an agent, representative, or employee of each of the other Defendants and has acted within the course and scope of said agency, representation, or employment with respect to the causes of action in this complaint. At all relevant times, each Defendant has committed the acts, caused others to commit the acts, or permitted others to commit the acts referred to in this complaint.

# V. CLASS ALLEGATIONS

34.    Plaintiffs bring this action to seek monetary and equitable relief as a class action pursuant to Federal Rules of Civil Procedure, Rule 23, on behalf of themselves and the following Class:

> All Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to the present.

35.    Plaintiffs further bring this action on behalf of themselves and the following Subclass (the "Reimbursement Subclass"):

> All Class members who suffered direct losses due to unauthorized activity and were not compensated in full by Robinhood for said losses.

36.    Plaintiffs Mehta and Furtado further bring this action on behalf of themselves and the following Subclass (the "California Subclass"):

> All Class members who were California residents.

37.    Plaintiffs reserve the right to amend the Class or Subclass definitions if discovery or further investigation demonstrate that they should be expanded or otherwise modified.

38.    The members of the Class are so numerous that joinder of all members would be impracticable. On information and belief, approximately 2,000 Robinhood customers were subject to unauthorized use of their accounts.

39.    There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

    a.    Whether Robinhood's sub-standard security protocols resulted in a breach of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of its customers' sensitive personal and financial information so as to protect that information;

    b.    Whether Robinhood's sub-standard security protocols resulted in a violation of a contractual obligation to its customers to safeguard their sensitive personal and financial information;

    c.    Whether Robinhood represented to its customers that it maintained the highest level of security and guaranteed 100 percent coverage of losses caused by unauthorized activity when it did not;

d. Whether Robinhood's conduct violated California's consumer protection and privacy laws; and

e. Whether, as a result of Robinhood's misconduct, Plaintiffs and the Class are entitled to compensatory damages, restitution, penalties, and equitable relief, and, if so, the amount and nature of such relief.

40. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs have no interests antagonistic to those of the Class and are not subject to any unique defenses.

41. Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class action and complex litigation.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

a. It is economically impractical for members of the Class to prosecute individual actions;

b. The Class is readily ascertainable and definable;

c. Prosecution as a class action will eliminate the possibility of repetitious litigation; and

d. A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

43. Plaintiffs do not anticipate any difficulty in the management of this litigation.

## VI. CAUSES OF ACTION

### First Cause of Action

### (On Behalf of all Plaintiffs and the Class)

### Negligence

44. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

45. That at said time and place, as aforesaid, the Defendants owed a duty of reasonable care toward Plaintiffs and the Class based upon Defendants' relationship to them. Said duty is based upon Defendants' contractual obligations, custom and practice, right to control information and funds in its possession, exercise of control over the information and funds in its possession,

authority to control the information and funds in its possession, and the commission of affirmative acts that resulted in said harms and losses. Additionally, said duty is based on the requirements of California Civil Code section 1714 requiring all "persons," including Defendants, to act in a reasonable manner toward others. Additionally, said duty is based on the specific statutory duties imposed on Defendants under California Civil Code sections 1798.80, *et seq.*, as financial institutions and businesses operating in the State of California that own or license computerized data and maintain their customers' personal information. Said duty is further based on the specific statutory duties imposed on Defendants under California Civil Code sections 1798.100, *et seq.*, as businesses operating in the State of California that either have annual operating revenue above $25 million, collect the personal information of 50,000 or more California residents annually, or derive at least 50 percent of their annual revenue from the sale of personal information of California residents.

46.     Defendants breached said duty by negligently, carelessly, and recklessly collecting, maintaining, and controlling their customers' sensitive personal and financial information and engineering, designing, maintaining, and controlling systems that exposed their customers' sensitive personal and financial information and access to the funds and securities of which Defendants had control and possession to the risk of exposure to unauthorized persons.

47.     Defendants further committed *per se* breaches of said duty by negligently violating the dictates of California Civil Code sections 1798.82, *et seq.*, and 1798.100, *et seq.*, and the provisions of the California Constitution enshrining the right to privacy, by failing to inform Plaintiffs and the Class of the access to their sensitive personal and financial information by unauthorized persons expeditiously and without delay and failing to adequately safeguard this information from unauthorized access. The provisions of the California Civil Code and the California Constitution that Defendants violated were enacted to protect the class of Plaintiffs here involved from the type of injury here incurred, namely their right to privacy and the protection of their personal data. At said time and place, Plaintiffs and the Class were within the class of persons and consumers who were intended to be protected by California Civil Code sections 1798.82, *et seq.*, and 1798.100, *et seq.*

48.    As a direct consequence of the actions as identified above, and the breaches of duties indicated thereby, unauthorized users gained access to, exfiltrated, stole, and gained disclosure of the sensitive personal and financial information of Plaintiffs and the Class, access to the funds customers had deposited into their accounts, and control over securities positions customers purchased, causing them harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

**Second Cause of Action**

**(On Behalf of all Plaintiffs and the Class)**

**Breach of Contract**

49.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

50.    At all relevant times a contract existed and was in force between Defendants on one hand and Plaintiffs and the Class on the other. This contract was written and was supplemented by implied and written terms that existed and were maintained online. Any implied contracts or supplemental terms or conditions of the contract were written by Defendants and published electronically to Plaintiffs and the Class online in such a manner and through such conduct so as to create promises on the part of Defendants. These written documents include but are not limited to the "Robinhood Terms & Conditions" (attached hereto as Exhibit 1), the "Robinhood Financial LLC and Robinhood Securities, LLC Customer Agreement" (attached hereto as Exhibit 2), the "Robinhood United States Privacy Policy" (attached hereto as Exhibit 3), and "Our 6 Commitments to You" (attached as Exhibit 4) (all attachments are presented as their most current version and in the form currently available).

51.    The contract included written promises and commitments made by Defendants, including but not limited to:

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

"I agree and understand that all disclosures of My non-public personal information shall be made in accordance with the terms of the [sic.] this Agreement or the Robinhood Privacy Policy (available on the Website at https://about.robinhood.com/legal/, as applicable. I agree that My consent to sharing non-public personal information will remain in effect until I revoke such consent by updating My settings and visibility, which I may do at any time through the App." (Exhibit 1, p. 21.)

"[T]hese are the commitments you can always expect from [Robinhood]. […] Dedicated to maintaining the highest security standards. We will cover 100% of direct losses due to unauthorized activity in your accounts. We're committed to keeping your account safe, so we offer robust security tools and a promise to fully reimburse direct losses that happen due to unauthorized activity that is not your fault." (Exhibit 4, p. 3.)

52. Defendants breached these duties and violated these promises by failing to properly safeguard the sensitive personal and financial information of Plaintiffs and the Class; by negligently, carelessly, and recklessly collecting, maintaining, and controlling, this information; by engineering, designing, maintaining, and controlling systems that exposed their customers' sensitive personal and financial information and access to the funds and securities of which Defendants had control and possession to the risk of exposure to unauthorized persons; and by failing to perform on their promise to cover losses due to unauthorized use of and activity in customers' accounts.

53. At all relevant times and in all relevant ways, Plaintiffs and the Class performed their obligations under the contract in question or were excused from performance of such obligations through the unknown and unforeseen conduct of others.

54. As a direct consequence of the breaches of contract and violations of promises described above, unauthorized users gained access to, exfiltrated, stole, and gained disclosure of the sensitive personal and financial information of Plaintiffs and the Class, access to the funds customers had deposited into their accounts, and control over securities positions customers purchased, causing them harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further

loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

**Third Cause of Action**

**(On Behalf of Plaintiffs Mehta and Furtado and the California Subclass)**

**Violation of the California Consumer Privacy Act**

**(Cal. Civ. Code § 1798.150 ("CCPA"))**

55.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

56.     At all relevant times, Defendants were "businesses" under the terms of the CCPA as sole proprietorships, partnerships, limited liability companies, corporations, associations, or other legal entities operating in the State of California that collect consumers' personal information, and that either have annual operating revenue above $25 million, collect the personal information of 50,000 or more California residents annually, or derive at least 50 percent of their annual revenue from the sale of personal information of California residents.

57.     At all relevant times, Plaintiffs Mehta and Furtado and the California Subclass were "consumers" under the terms of the CCPA as natural persons as defined in Section 17014 of Title 18 of the California Code of Regulations.

58.     By the acts described above, Defendants violated the CCPA by negligently, carelessly, and recklessly collecting, maintaining, and controlling their customers' sensitive personal and financial information and by engineering, designing, maintaining, and controlling systems that exposed their customers' sensitive personal and financial information of which Defendants had control and possession to the risk of exposure to unauthorized persons, thereby violating their duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information. Defendants allowed unauthorized users to view, use, manipulate, exfiltrate, and steal the nonencrypted and nonredacted personal information of Plaintiffs and other customers, including their personal and financial information.

59.     Plaintiffs have complied with the requirements of California Civil Code section 1798.150(b) and attach herewith as Exhibit 5 a true and correct copy of the letter of January 8,

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

2021, providing Defendants with written notice of the specific provisions of the CCPA Plaintiffs allege have been violated via certified mail.[1]

60.     As a result of Defendants' violations, Plaintiffs Mehta and Furtado and the California Subclass are entitled to all actual and compensatory damages according to proof or statutory damages allowable under the CCPA, whichever are higher, and to such other and further relief as this Court may deem just and proper.

**Fourth Cause of Action**

**(On Behalf of Plaintiffs Mehta and Furtado and the California Subclass)**

**Violation of the Customer Records Act**

**(Cal. Civ. Code § 1798.82 ("CRA"))**

61.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

62.     At all relevant times, Defendants were "businesses" under the terms of the CRA as sole proprietorships, partnerships, corporations, associations, financial institutions, or other groups, operating in the State of California that owned or licensed computerized data that included the personal information of Plaintiffs and the California Subclass.

63.     At all relevant times, Plaintiffs Mehta and Furtado and the California Subclass were "customers" under the terms of the CRA as natural persons who provided personal information to Defendants for the purpose of purchasing or leasing a product or obtaining a service from Defendants.

64.     By the acts described above, Defendants violated the CRA by allowing unauthorized access to customers' personal and financial information and then failing to inform them when the unauthorized use occurred for weeks or months, and in the case of Plaintiff Mehta, for 85 days,

---

[1] Pursuant to California Civil Code section 1798.150(b), Plaintiffs bring this claim on behalf of themselves and the California Subclass. Plaintiffs have provided notice to Defendants, described herein, and as of the date of the filing of this Amended Complaint, Defendants have declined or failed to cure the noticed violations.

thereby failing in their duty to inform their customers of unauthorized access expeditiously and without delay.

65.     As a direct consequence of the actions as identified above, Plaintiffs and the Class incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed, that they would not have otherwise lost had Defendants immediately informed them of the unauthorized use.

66.     As a result of Defendants' violations, Plaintiffs and the Class are entitled to all actual and compensatory damages according to proof, to non-economic injunctive relief allowable under the CRA, and to such other and further relief as this Court may deem just and proper.

**Fifth Cause of Action**

**(On Behalf of all Plaintiffs and the Class)**

**Violation of the Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"))**

67.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

68.     At all relevant times, Plaintiffs and the Class were "consumers" as under the terms of the CLRA as individuals seeking or acquiring, by purchase or lease, goods or services for personal, family, or household purposes.

69.     At all relevant times, Defendants' actions and conduct constituted transactions for the sale or lease of goods or services to consumers under the terms of the CLRA. The securities involved in the unauthorized transactions are "goods" and Defendants' financial and online platform services are "services" under the CLRA.

70.    By the acts described above, Defendants violated California Civil Code section 1770(a)(5), by the use of untrue or misleading statements and omissions and representing that goods and services had characteristics or benefits they do not have.

71.    By the acts described above, Defendants violated California Civil Code section 1770(a)(9), by the advertisement of goods and services with the intent not to sell them as advertised.

72.    By the acts described above, Defendants violated California Civil Code section 1770(a)(14), by representing that engaging on the Robinhood platform conferred the rights of the highest level of data security and a promise of full reimbursement of funds lost due to unauthorized use when Defendants knew such rights were not conferred.

73.    By the acts described above, Defendants violated California Civil Code section 1770(a)(16), by representing that the subject of a transaction had been supplied in accordance with previous representations that engaging on the Robinhood platform conferred the rights of the highest level of data security and a promise of full reimbursement of funds lost due to unauthorized use, when Defendants knew they were not.

74.    Defendants knew, or should have known, that their representations and advertisements about the nature of their data security and promise to fully reimburse funds lost due to unauthorized use were false or misleading and were likely to deceive a reasonable consumer. No reasonable consumer would use Defendants' products or engage Defendants' services if they knew Defendants were not taking reasonable measures to safeguard their personal and financial information or if they knew Defendants would not make good on their promise to fully reimburse funds lost due to unauthorized use.

75.    Plaintiffs have complied with the requirements of California Civil Code section 1782 and attaches herewith as Exhibit 6 a true and correct copy of his letter of January 8, 2021, providing

Defendants with written notice of the specific provisions of the CLRA Plaintiffs allege have been violated via certified mail.[2]

76. Pursuant to California Civil Code section 1780(d), attached hereto as Exhibit 7 is a declaration on behalf of Plaintiff Mehta showing that this action has been commenced in the proper forum.

77. Defendants generated revenue by way of third-party market makers paying Defendants directly when Defendants' customers executed trades or purchased positions on the Robinhood platform. Plaintiffs and the Class paid above-market rates for these third-party market makers' transactions and Defendants were the direct beneficiaries of these payments. Defendants' services were of lesser quality and value than Defendants advertised in that Defendant did not take reasonable measures to safeguard customers' personal and financial information and Defendants would not make good on their promise to fully reimburse funds lost due to unauthorized use. In reliance on Defendants' misrepresentations about its products and services, Plaintiffs and the Class made these above-market rate payments that they would not have made, or would have paid less, but for Defendants' representations.

78. As a direct and proximate consequence of the actions as identified above, Plaintiffs and the Class suffered injury in fact, harms, and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

79. Defendants' conduct described herein was malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to Plaintiffs and the

---

[2] Pursuant to California Civil Code section 1782(d), Plaintiffs seek injunctive relief and for actual, punitive, and statutory damages, as appropriate under the CLRA. Plaintiffs have provided Defendants with the notice of violations herein described and Defendants have declined or failed to correct, repair, replace, or otherwise rectify the goods or services at issue.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

Class and refused to remedy the breach of their system long after learning of the inadequacy of their data protection measures and the unauthorized use of customers' accounts.

80.     As a result of Defendants' violations, Plaintiffs and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement. Plaintiffs also seek public injunctive relief as provided for under California Civil Code section 1750, in addition to reasonable attorneys' fees and costs pursuant to California Civil Code section 1780(e), and such other and further relief as this Court may deem just and proper.

**Sixth Cause of Action**

**(On Behalf of Plaintiffs Mehta and Furtado and the California Subclass)**

**Violation of the California Constitution's Right to Privacy**

**(Cal. Const., art I, § 1)**

81.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

82.     The California Constitution provides:

> "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.)

83.     Plaintiffs Mehta and Furtado and the California Subclass had a legally recognized and protected privacy interest in the personal and financial information provided to and obtained by Defendants, including but not limited to an interest in precluding the dissemination or misuse of this sensitive and confidential information and the misuse of this information for malicious purposes such as the theft of funds and property.

84.     Plaintiffs Mehta and Furtado and the California Subclass reasonably expected Defendants would prevent the unauthorized viewing, use, manipulation, exfiltration, theft, and disclosure of their personal and financial information and the unauthorized use of their accounts.

85.     Defendants' conduct described herein resulted in a serious invasion of the privacy of Plaintiffs Mehta and Furtado and the California Subclass, as the release of personal and financial

information, including but not limited to names, social security numbers, dates of birth, mailing addresses, telephone numbers, bank account numbers, details of income, bank account balances, financial transaction histories, credit histories, tax information, credit scores, cell phone and mobile computing device location data, IP addresses, and Wi-Fi network location data, could highly offend a reasonable individual.

86.     As a direct consequence of the actions as identified above, Plaintiffs Mehta and Furtado and the California Subclass suffered harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

**Seventh Cause of Action**

**(On Behalf of all Plaintiffs and the Class)**

**Violation of the Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"))**

87.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

88.     By engaging in the above-described unfair business acts and practices, Defendants committed and continue to commit one or more acts of unlawful, unfair, and fraudulent conduct within the meaning of the UCL.  These acts and practices constitute a continuing and ongoing unlawful business activity defined by the UCL, and justify the issuance of an injunction, restitution, and other equitable relief pursuant to the UCL.

89.     Defendants' acts and practices constitute a continuing and ongoing unlawful business activity defined by the UCL. Defendants failed and continue to fail to implement and maintain reasonable security procedures and practices appropriate to protect the personal information; failed and continue to fail to inform their customers of unauthorized access expeditiously and without delay; and made and continue to make misrepresentations to customers regarding the

nature and quality of their data protection and their promise to fully reimburse losses due to unauthorized activity, all in violation of, *inter alia*, the following California laws:

    a.  California Civil Code section 1798.150(a);

    b.  California Civil Code section 1798.82(a);

    c.  California Civil Code section 1770(a)(5);

    d.  California Civil Code section 1770(a)(9);

    e.  California Civil Code section 1770(a)(14);

    f.  California Civil Code section 1770(a)(16); and

    g.  California Constitution, article I, section 1.

90.    Defendants' acts and practices constitute a continuing and ongoing unfair business activity defined by the UCL. Defendants' conduct is contrary to the public welfare as it transgresses civil statutes of the State of California designed to protect individuals' constitutional and statutory right to privacy, violates established public policy, and has been pursued to attain an unjustified monetary advantage for Defendants by creating personal disadvantage and hardship to their customers.  As such, Defendants' business practices and acts have been immoral, unethical, oppressive and unscrupulous and has caused injury to customers far greater than any alleged countervailing benefit.

91.    Defendants' acts and practices constitute a continuing and ongoing fraudulent business activity defined by the UCL. Defendants made and continue to make the representations set forth above, including but not limited to specific representations regarding the nature and quality of their data security and their promise to fully reimburse losses due to unauthorized use. These representations, which were and continue to be made on an ongoing basis from at least January 2020 to the present time, were, in fact, false. These false representations were, and continue to be, likely to deceive the public and reasonable consumers. Defendants, at all times when they made these representations, knew them to be false and intended to, and did, induce reliance upon these false representations by Plaintiffs and the Class, who reasonably relied upon the aforementioned statements and representations and, as a consequence, suffered economic harms and losses.

92.     Defendants generated revenue by way of third-party market makers paying Defendants directly when Defendants' customers executed trades or purchased positions on the Robinhood platform. Plaintiffs and the Class paid above-market rates for these third-party market makers' transactions and Defendants were the direct beneficiaries of these payments. Defendants' services were of lesser quality and value than Defendants advertised in that Defendant did not take reasonable measures to safeguard customers' personal and financial information and Defendants would not make good on their promise to fully reimburse funds lost due to unauthorized use. In reliance on Defendants' misrepresentations about its products and services, Plaintiffs and the Class made these above-market rate payments that they would not have made, or would have paid less, but for Defendants' representations.

93.     As a direct and proximate consequence of the actions as identified above, Plaintiffs and the Class suffered and continue to suffer harms and losses including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

94.     Plaintiffs seek an order of this Court awarding restitution and injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure section 1021.5, and to such other and further relief as this Court may deem just and proper.

**Eighth Cause of Action**

**(On Behalf of all Plaintiffs and the Class)**

**Violation of the False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL"))**

95.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

96.     The FAL bars advertising which is untrue or misleading.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

97.     Defendants, with the intent to directly or indirectly perform services, or to induce members of the public to enter into obligations relating thereto, made or disseminated or caused to be made or disseminated before the public, Plaintiffs, and the Class, statements concerning such services, or matters of fact connected with the performance thereof, which were untrue or misleading, and which Defendants knew or in the exercise of reasonable care should have known were untrue or misleading, in violation of California Business and Professions Code section 17500, *et seq*.

98.     Defendants' advertising and marketing asserts facts about their products and services that are untrue and likely to deceive and mislead the public and reasonable consumers. A reasonable person would (a) believe that Defendants' promises concerning the nature and quality of their data security and their promise to reimburse losses due to unauthorized activity are true and accurate; and (b) not be able to uncover on their own that Defendants' assertions are false and misleading.

99.     Relying on Defendants' misrepresentations about its products and services, specifically about the quality of their data security protocols and promise to fully reimburse losses due to unauthorized activity, Plaintiffs used Defendants' products and engaged Defendants' services. But for Defendants' misrepresentations and omissions, Plaintiffs would not have used Defendants' products or engaged Defendants' services.

100.    Defendants generated revenue by way of third-party market makers paying Defendants directly when Defendants' customers executed trades or purchased positions on the Robinhood platform. Plaintiffs and the Class paid above-market rates for these third-party market makers' transactions and Defendants were the direct beneficiaries of these payments. Defendants' services were of lesser quality and value than Defendants advertised in that Defendant did not take reasonable measures to safeguard customers' personal and financial information and Defendants would not make good on their promise to fully reimburse funds lost due to unauthorized use. In reliance on Defendants' misrepresentations about its products and services, Plaintiffs and the Class made these above-market rate payments that they would not have made, or would have paid less, but for Defendants' representations.

101.     As a direct and proximate result of Defendants' false advertising, Plaintiffs suffered injury in fact, and lost money or property including but not limited to economic loss, the loss of control over the use of their identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information disclosed.

102.     Plaintiffs seek an order of this Court awarding restitution and injunctive relief and all other relief allowed under the UCL, including interest and attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure section 1021.5, and to such other and further relief as this Court may deem just and proper.

## VII.   **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and the Class, pray for relief and judgment against Defendants as follows:

1.       For an order certifying the proposed Class and Subclasses pursuant to Federal Rules of Civil Procedure, Rule 23;

2.       For an order appointing Plaintiffs Siddharth Mehta, Kevin Qian, and Michael Furtado and their counsel to represent the Class and Subclasses;

3.       For an order enjoining Robinhood, its affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, from continuing the unlawful practices as set forth herein, including but not limited to employing substandard data safety protocols to protect customer accounts, making ongoing false representations regarding the nature and quality of their data security, and from promising to fully compensate customer losses due to unauthorized use;

4.       For actual and compensatory damages according to proof pursuant to the California Civil Code and all other applicable laws and regulations;

5.       For restitution to the extent permitted by applicable law;

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL

6.      For civil and statutory penalties available under applicable law;

7.      For pre-judgment and post-judgment interest;

8.      For an award of attorneys' fees, costs, and expenses as authorized by applicable law; and

9.      For such other and further relief as this Court may deem just and proper.

## VIII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, on behalf of themselves and the Class, demand a trial by jury on all issues so triable.

Dated this 26th day of February, 2021.             Erickson Kramer Osborne, LLP


_____

Kevin Osborne
Julie Erickson
Elizabeth Kramer
Attorneys for Siddharth Mehta, Kevin Qian,
and Michael Furtado

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDDHARTH MEHTA, KEVIN QIAN, and MICHAEL FURTADO, individually and on behalf of other similarly situated individuals,<br><br>    Plaintiffs,<br><br>vs.<br><br>ROBINHOOD FINANCIAL LLC; ROBINHOOD SECURITIES, LLC; and DOES 1-10<br><br>    Defendants. | Case No.: 21-CV-01013-SVK<br><br>CERTIFICATE OF SERVICE |

I hereby certify that on February 26, 2021, I served by electronic mail the following document(s) to Mark David McPherson (MMcPherson@mofo.com) counsel for Robinhood Financial LLC and Robinhood Securities, LLC.:

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL**

Dated this February 26, 2021.

/s/ Kevin Osborne

Kevin Osborne
**Erickson Kramer Osborne LLP**
182 Howard Street, San Francisco, CA 94105
Phone: 415-635-0631
Email: kevin@eko.law
***Counsel for Plaintiffs and the Proposed Classes***