1  TIFFANY CHEUNG (BAR NO. 211497)
   TCheung@mofo.com
2  MARK DAVID MCPHERSON (BAR NO. 307951)
   MMcPherson@mofo.com
3  THOMAS B. DAVIDSON (BAR NO. 327776)
   TDavidson@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, CA 94105-2482
   Telephone:  415.268.7000
6  Facsimile:   415.268.7522

7  MARGARET N. BUCKLES (BAR NO. 298696)
   MBuckles@mofo.com
8  MORRISON & FOERSTER LLP
   707 Wilshire Blvd., Suite 6000
9  Los Angeles, CA 90017-3543
   Telephone: 213.892.5200
10 Facsimile:  213.892.5454

11 Attorneys for Defendants
   ROBINHOOD FINANCIAL LLC AND
12 ROBINHOOD SECURITIES, LLC

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16

17 SIDDHARTH MEHTA, KEVIN QIAN, and        Case No.      5:21-cv-01013-SVK
   MICHAEL FURTADO, individually and on
18 behalf of all other similarly situated individuals,   **DEFENDANTS ROBINHOOD**
                                                         **FINANCIAL LLC AND**
19                   Plaintiff,                          **ROBINHOOD SECURITIES,**
                                                         **LLC'S NOTICE OF MOTION AND**
20         vs.                                           **MOTION TO DISMISS**
                                                         **PLAINTIFFS' FIRST AMENDED**
21 ROBINHOOD FINANCIAL LLC;                              **CLASS ACTION COMPLAINT;**
   ROBINHOOD SECURITIES, LLC; and DOES 1                 **MEMORANDUM OF POINTS AND**
22 to 10,                                                **AUTHORITIES**

23                   Defendants.                         Date:     April 20, 2021
                                                         Time:    10:00 a.m.
24                                                       Courtroom: 6, 4th Floor
                                                         Judge:     Hon. Susan van Keulen
25

26

27

28
                                        i

**<u>NOTICE OF MOTION AND MOTION</u>**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 20, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Susan van Keulen, United States Magistrate Judge, in Courtroom 6, 4th Floor of the San Jose Federal Courthouse, located at 280 South 1st Street, San Jose, CA 95113, Defendants Robinhood Financial LLC and Robinhood Securities, LLC (collectively, "Robinhood") will and do hereby move to dismiss Plaintiffs Siddharth Mehta, Kevin Qian, and Michael Furtado's First Amended Class Action Complaint (the "Complaint"), which asserts claims for: (1) negligence; (2) breach of contract; (3) violation of the California Consumer Privacy Act ("CCPA"); (4) violation of the Customer Records Act ("CRA"); (5) violation of California's Consumer Legal Remedies Act ("CLRA"); (6) violation of the California Constitution's Right to Privacy; (7) violation of the Unfair Competition Law ("UCL"); and (8) violation of the False Advertising Law ("FAL").

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the Complaint fails to state a claim upon which relief may be granted, and Federal Rule of Civil Procedure 9(b), on the grounds that Plaintiffs fail to plead their claims under the CLRA, UCL, and FAL with the particularity required by Rule 9(b).

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Karthik Rangarajan in Support of Defendants Robinhood Financial LLC and Robinhood Securities, LLC's Motion to Dismiss Plaintiffs' Complaint, all other pleadings and papers on file, and such other arguments and other materials as may be presented before the Motion is taken under submission.

1    Dated: March 12, 2021              TIFFANY CHEUNG
                                        MARK DAVID MCPHERSON
2                                       MARGARET N. BUCKLES
                                        THOMAS B. DAVIDSON
3                                       MORRISON & FOERSTER LLP

4

5                                       By:   /s Mark David McPherson
                                              MARK DAVID MCPHERSON
6
                                        Attorneys for Defendants
7                                       ROBINHOOD FINANCIAL LLC
                                        AND ROBINHOOD SECURITIES,
8                                       LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ............................................................. ix

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 3

III.    ARGUMENT ..................................................................................................... 6

    A.  All Of Plaintiffs' Claims Fail As Matter Of Law, Because Plaintiffs Fail To
        Adequately Plead That Robinhood Maintained Inadequate Security Measures. ..... 7

    B.  Plaintiffs' Failure To Point To Any Enforceable Promise Precludes Their Contract,
        CLRA, UCL, And FAL Claims As A Matter Of Law. ........................................... 9

        1.  Plaintiffs Fail To Allege That Robinhood Promised To Reimburse
                Customers For Losses From Unauthorized Account Activity Before
                December 2020, Or That Robinhood Failed To Honor That Promise As To
                Them. ................................................................................................... 10

        2.  Robinhood's Statement That It "Take[s] Privacy And Security
                Seriously"—While True—Is Too Indefinite To Subject Robinhood To Any
                Liability. ............................................................................................... 11

    C.  Plaintiffs' Allegations Of Injury Fail To Support Their Claims For Relief. .......... 13

        1.  Any Allegation That Plaintiffs Weren't Reimbursed For Alleged Account
                Losses Would Be An Economic Loss For Which Plaintiffs Cannot Recover
                In Tort .................................................................................................. 14

        2.  Plaintiffs' Other Allegations Of Injuries Are Not Recoverable Under Any
                Of Their Claims ..................................................................................... 15

    D.  All Of Plaintiffs' Claims Fail As A Matter Of Law For Additional Reasons Unique
        To Each Claim ..................................................................................................... 18

        1.  The CCPA Does Not Apply Where, As Here, Robinhood's Computer
                Network Was Not Compromised. ........................................................... 18

        2.  The CRA Does Not Apply Where, As Here, Robinhood's Computer
                Network Was Not Compromised. ........................................................... 20

        3.  Plaintiffs Fail To Plead Any Conduct By Robinhood That Violated Their
                Constitutional Right Of Privacy. ........................................................... 21

        4.  Plaintiffs Fail To State A Claim Under The UCL Or FAL. ..................... 22

        5.  Plaintiffs Fail To State A Claim For Negligence. .................................... 24

IV.     CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aas v. Superior Court*,
   24 Cal. 4th 627 (Cal. 2000)................................................................................................15

*Aguilar v. Hartford Accident & Indemnity Co.*,
   No. CV 18-8123-R, 2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ............................16, 17, 25

*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,
   No. 19-CV-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) ....................1, 8, 9, 25

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 ........................................................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. *passim*

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009)................................................12

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................6, 7, 25

*Briosos v. Wells Fargo Bank*,
   737 F. Supp. 2d 1018 (N.D. Cal. 2010) ................................................................................6

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011).............................................................................................7

*Castillo v. Seagate Tech., LLC*,
   No. 16-CV-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .............................23, 24

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..........................................................................................................24

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
   No. 16-CV-02941-LHK, 2016 WL 4729302 (N.D. Cal. Sept. 12, 2016)................................11

*Corona v. Sony Pictures Entm't, Inc.*,
   No. 14-CV-09600 RGK (Ex), 2015 WL 3916744 (C.D. Cal. June 15, 2015).............15, 16, 17

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal. 2016)......................................18

v

*Elias v. Hewlett-Packard Co.*,
     903 F. Supp. 2d 843 (N.D. Cal. 2012) ......................................................................13

*Feitelberg v. Credit Suisse First Boston, LLC*,
     134 Cal. App. 4th 997 (2005).............................................................................23, 24

*Frances T. v. Vill. Green Owners Ass'n.*,
     42 Cal. 3d 490 (1986) ..............................................................................................13

*Gross v. Symantec Corp.*,
     No. C 12-00154 CRB, 2012 WL 3116158 (N.D. Cal. July 31, 2012)......................10

*In re iPhone Application Litig.*,
     844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................22

*In re iPhone Application Litig.*,
     No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)................15

*Jackson v. Loews Hotels, Inc.*,
     No. ED VC 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ...............18

*Jara v. Aurora Loan Servs.*,
     852 F. Supp. 2d 1204 (N.D. Cal. 2012) .....................................................................6

*Kearns v. Ford Motor Co.*,
     567 F.3d 1120 (9th Cir. 2009)....................................................................................7

*Kelomar, Inc. v. Kulow*,
     No. 09-cv-0353 BTM(PCL), 2009 WL 3818817 (S.D. Cal. Nov. 12, 2009) ...........15

*Korea Supply Co. v. Lockheed Martin Corp.*,
     29 Cal. 4th 1134 ................................................................................................23, 24

*Low v. LinkedIn Corp.*,
     900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..............................................................17, 22

*Lucas v. Int'l Bus. Machines Corp.*,
     No. 20-cv-00141-JCS, 2020 WL 2494562 (N.D. Cal. May 14, 2020) ....................12

*Murphy v. Twitter, Inc.*,
     274 Cal. Rptr. 3d 360 (Cal. Ct. App. 2021) ............................................................12

*Neu v. Terminix Int'l, Inc.*,
     No. C 07-6472 CW, 2008 WL 962096 (N.D. Cal. Apr. 8, 2008)............................15

*Pirozzi v. Apple Inc.*,
     913 F. Supp. 2d 840 (N.D. Cal. 2012) .....................................................................15

*Razuki v. Caliber Home Loans, Inc.*,
     No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ............1, 2, 8, 20

*Rejects Skate Magazine, Inc. v. Acutrack, Inc.*,
    No. C 06-2590 CW, 2006 WL 2458759 (N.D. Cal. Aug. 22, 2006) ........................................15

*Rich Prods. Corp. v. Kemutec, Inc.*,
    66 F. Supp. 2d 937 (E.D. Wis. 1999) ..................................................................................14

*Robinson Helicopter Co. v. Dana Corp.*,
    102 P.3d 268 (Cal. 2004) ....................................................................................................14

*Rosen v. State Farm Gen. Ins. Co.*,
    30 Cal. 4th 1070 (Cal. 2003) ..............................................................................................14

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...........................................................................21, 22

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
    No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7, 2020) ........................14, 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .........................................................................11, 18, 23

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014), *order corrected*, No. 11MD2258 AJB
    (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014) .........................................................25

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .................................................................................................6

*Troyk v. Farmers Group, Inc.*,
    171 Cal. App. 4th 1305 (2009) .........................................................................................17, 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2017 WL 327318 (N.D. Cal. Aug. 30, 2017) ...............................13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ...............................................................................21

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015) ...................................................................................24

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..............................................................................13

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................................................................7

**Statutes**

Cal. Civ. Code §§ 1798.80 *et seq.* ..........................................................................................25

Cal. Civ. Code § 1798.81.5 ..............................................................................18, 20

Cal. Civ. Code § 3390(e) ..........................................................................................12

California Consumer Privacy Act,
    Cal. Civ. Code § 1798.150 ................................................................................18, 19

Customer Records Act,
    Cal. Civ. Code § 1798.82 ...................................................................................20, 21

Fed. R. Civ. P. 12(b)(6) .............................................................................................6

1

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

2

3   Do Plaintiffs state a claim for relief against Robinhood, where:

4      1.   Plaintiffs' claims are based only on the conclusory allegation that Robinhood is

5          responsible for the compromise of their accounts by third parties, without any facts

6          pleaded to support that conclusion?

7      2.   Plaintiffs' claims for breach of contract, and under the CLRA, UCL, or FAL, are based on

8          alleged promises that are either indefinite or that were made after Plaintiffs alleged their

9          accounts were taken over by third parties?

10     3.   Plaintiffs' alleged injuries are either economic losses that are not recoverable in tort, or are

11         not recoverable at all?

12     4.   Plaintiffs cannot allege that Robinhood's computer network itself was compromised, as a

13         claim under the CCPA or the CRA would require?

14     5.   Plaintiffs cannot allege that Robinhood compromised any of their information to the

15         extent necessary to support a claim under the California Constitution's right to privacy?

16     6.   Plaintiffs seek not restitution under the UCL and FAL, but non-restitutionary

17         disgorgement, which is not available under those laws?

18     7.   Plaintiffs cannot identify any legal duty Robinhood breached, whether under a statute or

19         otherwise?

20

21

22

23

24

25

26

27

28

1

## I.   INTRODUCTION

2       Try as Plaintiffs might to frame this as a data breach case, Robinhood's computer network

3  did not suffer a data breach—and Plaintiffs cannot allege as much. Instead, as three Robinhood

4  customers, Plaintiffs seek to hold Robinhood responsible for the alleged compromise of their own

5  individual Robinhood brokerage accounts by "cybercriminals." They also seek to represent a

6  class of approximately 2,000 other Robinhood account holders whose accounts, Plaintiffs allege,

7  were also individually compromised by cybercriminals.

8       Yet, Plaintiffs' Complaint says nothing about how or why Robinhood should be

9  responsible for the alleged compromise of approximately 2,000 individual accounts. Unlike a

10  typical data breach action, Plaintiffs can point to no public statement by Robinhood that it was the

11  victim of a cybersecurity incident in which third parties gained access to its network. It was not.

12  Nor can Plaintiffs point to any notice that Robinhood sent them indicating that Robinhood was

13  aware of unauthorized access to their accounts. Again, it was not. All Plaintiffs allege is that their

14  individual accounts were compromised by cybercriminals. And Plaintiffs cannot point to any fact

15  demonstrating that Robinhood could have done something more to protect Plaintiffs from the

16  illegal acts of cybercriminals who sought to access each Plaintiff's individual account.

17       There can be no claims against Robinhood on these alleged facts. While Plaintiffs assert

18  eight claims for relief against Robinhood—a hodgepodge of common law and statutory claims—

19  not one of them is viable as a matter of law.

20       First, Plaintiffs' failure to adequately plead that Robinhood maintained inadequate

21  security measures precludes **all** of their claims. All of Plaintiffs' claims revolve around the

22  allegation that Robinhood was somehow responsible for the compromise of each Plaintiff's

23  individual account. But there is no plausible allegation that Robinhood was responsible for the

24  alleged unauthorized access to any individual user account. Without any such allegation, the

25  Complaint must be dismissed. *See Anderson v. Kimpton Hotel & Rest. Grp., LLC*, No. 19-CV-

26  01860-MMC, 2019 WL 3753308, at *3–4 (N.D. Cal. Aug. 8, 2019) (granting motion to dismiss

27  where complaint is "devoid of facts" to support a conclusory assertion that "inadequate securities

28  measures" caused plaintiff's alleged injury); *see also Razuki v. Caliber Home Loans, Inc.*,

1

No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *1–2 (S.D. Cal. Nov. 15, 2018) (plaintiff's "claims 'Defendant knew of higher-quality security protocols available to them' but failed to implement these measures . . . fail[] because it is precisely the type of 'threadbare' claim *Iqbal* warns of").

Second, Plaintiffs fail to identify any enforceable promise Robinhood made to its customers about Robinhood "tak[ing] privacy and security seriously" and promising "to fully reimburse direct losses that happen due to unauthorized activity that is not your fault." (¶ 14.)[1] The former alleged promise is simply too indefinite to be enforceable, either under a contract or a statutory claim. And the latter alleged promise was never made before the alleged third-party takeovers of Plaintiffs Mehta's and Qian's accounts, as alleged in the Complaint. As the Complaint acknowledges, that statement may appear in written materials "currently available" to Robinhood customers (¶ 50), but it was not published until December 2020—well after Plaintiffs Mehta and Qian allege third-party takeovers of their individual accounts. (The other named Plaintiff, Furtado, does not and cannot allege that Robinhood failed to reimburse him for any account losses contrary to any promise in the "6 Commitments.") Plaintiffs' failure to identify an enforceable promise undermines not only their **contract** claim, but also their claims under the **CLRA, the UCL,** and **the FAL**.

Third, Plaintiffs cannot overcome a dilemma confronting their supposed injuries, which allegedly consist of not being reimbursed for account losses, as well as loss of control over information concerning their identity, lost time, future expenses for recovery of account losses, and unspecified "privacy losses": either these losses are economic losses, for which there can be no recovery in tort, or these are not actual losses that can be recovered at all. Plaintiffs' inability to allege any recoverable injuries dooms all of their claims.

Beyond those deficiencies, Plaintiffs' claims also fail for reasons unique to each claim:

- The **CCPA** and **CRA** claims fail without any allegation of any unauthorized

---

[1] Unless otherwise noted, all citations to paragraph numbers refer to Plaintiffs' First Amended Complaint. (ECF No. 10.)

access to Robinhood's computer network—the necessary predicate to a claim for failure to notify under the CRA—much less any unauthorized access that occurred as a result of Robinhood's violation of its "duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information" (¶ 58 (quoting CCPA))—the necessary predicate to any CCPA claim.

- The **constitutional right of privacy** claim fails because even an unauthorized disclosure of Plaintiffs' information—for which Plaintiffs cannot adequately allege Robinhood is responsible—would not pass the "high bar" set for such a claim.

- Plaintiffs' **UCL** and **FAL** claims fail because Plaintiffs do not allege that they paid Robinhood for trading services. As such, they cannot obtain restitution from Robinhood. They likewise fail to plead any basis for injunctive relief under those statutes, because there is no plausible allegation that Robinhood is likely to harm them in the future in any way.

- Plaintiffs' **negligence** claim fails for lack of any plausible allegation of a breach of any duty, whether statutory or otherwise.

For all of these reasons, Plaintiffs' Complaint simply fails to allege any viable legal claim against Robinhood. It should be dismissed.

## II.      BACKGROUND

Robinhood is "a securities trading platform" with more than 13 million customers. (¶ 3.) As the documents attached to Plaintiffs' Complaint demonstrate, Robinhood offers "commission-free trading to enable access to everyone." (ECF No. 10-4 at 3.) Robinhood is able to do so, according to the same materials, by earning money not from commissions, but from "rebates from market makers, Robinhood Gold, stock loan, income from cash, and our Cash Management brokerage feature." (*Id.* at 5.)

Plaintiffs allege that they each "held an investment account with Robinhood" in 2020. (¶¶ 27–29.) Plaintiffs describe themselves as "purchaser[s]" of Robinhood's services (*id.*), based on the allegation that they traded securities using Robinhood's platform (*id.*), and that Robinhood earned money from third parties as a result of their trades (*e.g.*, ¶ 77). Again, in the documents

1    Plaintiffs attach to the Complaint, Robinhood discloses how it earns money from third parties,

2    thus enabling customers to trade commission-free. (ECF No. 10-4 at 3–5.)

3          Plaintiffs' references to other customer issues either that Robinhood has already resolved

4    or for which it is not responsible (¶¶ 8-10) are not relevant here. Plaintiffs' Complaint seeks

5    redress only for the alleged takeovers of each of their individual Robinhood accounts by

6    "cybercriminals." (¶ 4.)

7          Plaintiff Mehta alleges that his individual account was compromised on "July 22, 2020,

8    and possibly sooner[.]" (¶ 27.) Plaintiff Qian alleges that his individual account was compromised

9    on "October 10, 2020, and possibly sooner[.]"[2] (¶ 28.) Plaintiff Furtado alleges that his individual

10   account was compromised "February 12, 2021, and possibly sooner[.]" (¶ 29.) Though they do

11   not explain what they believe happened to their accounts, Plaintiffs' general allegations allude to

12   the growing threat of "cybercriminals." (¶ 1.) Plaintiffs allege that "[i]n the summer and fall of

13   2020 . . . unauthorized users"—their use of the plural there is intentional and important—

14   "accessed approximately 2,000 Robinhood customers' accounts. Upon accessing the accounts,

15   these "unauthorized users"—again, numerous cybercriminals—"obtained Robinhood's

16   customers' sensitive personal and financial information and looted funds." (¶ 4.) Plaintiffs allege

17   that the approximately 2,000 account takeovers "cost Robinhood's customers millions of dollars."

18   (¶ 18.) (Elsewhere, Plaintiffs allege that the number of account compromises may be as high as

19   10,000, though they offer no basis for that estimate. (¶ 19.))

20         Though Plaintiffs allege that Robinhood "negligently and illegally allowed unauthorized

21   third-party access to approximately 2,000 customers'" accounts (¶ 18)—including theirs

22   (¶¶ 27-29)—they do not allege why that is so. Again, Plaintiffs do not allege that Robinhood itself

23   suffered a cybersecurity incident resulting in unauthorized access to their individual accounts.

24   Nor do they allege how cybercriminals were able to access individual customers' accounts, and

25

26          [2] In fact, Qian did not contact Robinhood about unauthorized account access until
     February 2021. Robinhood reimbursed him for alleged account losses, and Qian does not allege
27   otherwise. (¶ 28.) Any factual discrepancy need not be resolved on this motion, however, because
     either on the facts alleged or on the actual facts, Qian has no claim against Robinhood.
28

what Robinhood could have done to prevent such access.

Likewise, while Plaintiffs allege that Robinhood did not timely inform them of unauthorized account activity (¶¶ 20, 27-29), they do not allege that Robinhood learned of unauthorized access before Plaintiffs. In fact, Plaintiffs allege they knew of the alleged unauthorized account activity before Robinhood did: Plaintiffs allege that third parties gained access not to Robinhood's computer network, but to each Plaintiff's individual account, and that each Plaintiff then separately reported the alleged unauthorized access to Robinhood. (*E.g.*, ¶¶ 4, 29.) Indeed, the very documents Plaintiffs attach to their Complaint remind customers that it is their duty to "[r]eport any unauthorized activity as soon as possible after the information is posted to your account, and actively cooperate with Robinhood during its review." (ECF No. 10-4, at 4.)

Plaintiffs' allegation that Robinhood later communicated with customers "about the breach" (¶ 20) is misleading. It is true that, as Plaintiffs allege, Robinhood "sent push notifications to customers encouraging them to enable two-factor authentication, which is a security setting requiring the use of a password combined with a temporary passcode sent to a second device to log on." (¶ 20.) But as those communications demonstrate, they were sent as part of "cybersecurity awareness month" (October), and they said nothing about any security incident affecting Robinhood, much less about "the breach." (*See* Declaration of Karthik Rangarajan in Support of Motion to Dismiss ("Rangarajan Decl."), Exs. 3–6.)

Plaintiffs' allegations about how they may have been injured are unclear and implausible. While they allege that they "lost tens of thousands of dollars" from the alleged third-party account takeovers (¶¶ 27-29), they do not allege that Robinhood did not reimburse their alleged losses. Plaintiffs allege instead that they spent "hours" of their time attempting to "research and remedy the loss" and secure their assets from "further breach." (¶¶ 27-29.)

Based on these allegations, Plaintiffs seek to represent a class defined as "[a]ll Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020 to the present." (¶ 34.) They also seek to represent a subclass of "[a]ll Class members who suffered direct losses due to unauthorized activity and were not compensated in full by Robinhood for said losses." (¶ 35.) Plaintiffs Mehta and Furtado also seek to represent a subclass of "[a]ll Class

1    members who were California residents." (¶ 36.)

2           The Complaint asserts eight causes of action: (1) negligence; (2) breach of contract;

3    (3) violation of the California Consumer Privacy Act (CCPA), Civ. Code § 1798.150; (4)

4    violation of the Customer Records Act (CRA), Civ. Code § 1798.82; (5) violation of the

5    Consumers Legal Remedies Act (CLRA), Civ. Code §§ 1750, *et seq.*; (6) violation of the right to

6    privacy set forth in California's Constitution, Cal. Const., art. I, § 1; (7) violation of the Unfair

7    Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*; and (8) violation of the False Advertising

8    Law, Bus. & Prof. Code, §§ 17500, *et seq*.

9           **III.    ARGUMENT**

10          Under Rule 12(b)(6), a complaint must be dismissed when it fails "to state a claim upon

11   which relief can be granted." A Rule 12(b)(6) motion thus "'tests the legal sufficiency of a

12   claim.'" *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1022 (N.D. Cal. 2010) (quoting

13   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In ruling on such a motion, the Court may

14   consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters

15   properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

16          Although a Rule 12(b)(6) motion requires the Court to "accept as true all of the allegations

17   contained in a complaint," that standard "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*,

18   556 U.S. 662, 678 (2009) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A]

19   plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

20   and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Jara*

21   *v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1207 (N.D. Cal. 2012) (quoting *Twombly*, 550 U.S.

22   at 555 (cleaned up)). "To survive a motion to dismiss, a complaint must contain sufficient factual

23   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at

24   678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

25   factual content that allows the court to draw the reasonable inference that the defendant is liable

26   for the misconduct alleged." *Jara*, 852 F. Supp. 2d at 1207 (quoting *Iqbal*, 556 U.S. at 678). In

27   other words, "plausibility" demands "more than a sheer possibility that a defendant has acted

28   unlawfully," *Iqbal*, 556 U.S. at 678, and the "[f]actual allegations must be enough to raise a right

1    to relief above the speculative level," *Twombly*, 550 U.S. at 555.

2        Apart from Rule 12(b)(6), the heightened pleading requirements of Rule 9(b) also apply to

3    Plaintiffs' CLRA, UCL, and FAL claims. Those claims are based on allegations that Robinhood

4    violated the CLRA by misrepresenting that its platform "conferred the rights of the highest level

5    of data security" and that it would reimburse funds lost due to unauthorized use when Robinhood

6    knew it would not confer such rights. (¶¶ 72-73; *see also* ¶¶ 89, 99.) Accordingly, Plaintiffs'

7    CLRA, UCL, and FAL claims sound in fraud, and are therefore subject to the heightened

8    pleading requirements of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*,

9    567 F.3d 1120, 1125 (9th Cir. 2009) (CLRA and UCL claims sounding in fraud are subject to

10    Rule 9(b) pleading requirements); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122

11    (C.D. Cal. 2010) ("District courts in California have consistently held in addition that claims

12    under California's FAL are grounded in fraud."). To satisfy Rule 9(b), Plaintiffs' Complaint must

13    identify "the who, what, when, where, and how of the misconduct charged" and "what is false or

14    misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel.*

15    *v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).

16        As detailed below, the Complaint fails to satisfy these applicable pleading standards as to

17    each of the claims asserted, on the bare facts alleged.

18           **A.**    **All Of Plaintiffs' Claims Fail As Matter Of Law, Because Plaintiffs**
19                    **Fail To Adequately Plead That Robinhood Maintained Inadequate**
                    **Security Measures.**

20        Plaintiffs' claims all rest on the common allegation that Robinhood was in some way

21    responsible for the compromise of their individual accounts. Indeed, Plaintiffs repeatedly refer to

22    "the breach" (*e.g.*, ¶¶ 4-5, 20-23, 27-29, 79), as if there were a compromise of Robinhood's

23    computer network. Plaintiffs seek to recover losses alleged to have resulted from "the breach"

24    (¶ 4) and the manner in which Robinhood responded to "the breach" (¶¶ 5-6).

25        Yet no such breach of Robinhood's network is alleged to have occurred—because there

26    was no such breach. Instead, Plaintiffs allege approximately 2,000 *individual* compromises of

27    *individual* customer accounts by third parties. There is no allegation that Robinhood played any

28    role in those compromises. To the contrary, third parties were able to access customer accounts

1  "by identity theft originating outside the Robinhood system[.]" (¶ 20.) Plaintiffs' Complaint

2  includes not one allegation challenging Robinhood's understanding that the individual account

3  takeovers occurred from individual acts of identity theft unrelated to Robinhood.

4        On these factual allegations, Plaintiffs have no plausible legal claim against Robinhood.

5  "[P]lausibility pleading standards are especially important in cases like this one, where the

6  Defendant faces the potentially enormous expense of discovery if the Court denies this motion to

7  dismiss." *Razuki*, 2018 WL 6018361, at *2 (citation omitted) (dismissing data breach claims

8  under *Twombly* standard). Plaintiffs plead no facts tying any account takeovers to Robinhood's

9  security measures. Because Plaintiffs offer no such facts, the Complaint is too conclusory and

10  must be dismissed. *See Anderson*, 2019 WL 3753308, at *5 (granting motion to dismiss where

11  "plaintiffs fail to allege any facts in support of their conclusory assertion that [defendant] . . .

12  'fail[ed] to implement and maintain reasonable security procedures and practices.'")*; see also*

13  *Razuki,* 2018 WL 6018361, at *1–2 (plaintiff's "claims 'Defendant knew of higher-quality

14  security protocols available to them' but failed to implement these measures . . . fail[] because it

15  is precisely the type of 'threadbare' claim *Iqbal* warns of.").

16        Plaintiffs' allegations are precisely the type that the courts in *Razuki* and *Anderson*

17  dismissed. First, Plaintiffs only speculate that Robinhood's security "needlessly exposes

18  customers to the risk of data and identity theft[.]" (¶ 17.) They do not allege any facts supporting

19  a *plausible* inference that Plaintiffs experienced unauthorized access to their accounts due to some

20  aspect of Robinhood's security practices. Similarly, the allegation that "Robinhood negligently

21  and illegally allowed unauthorized third-party access to approximately 2,000 customers'"

22  accounts (¶ 18) is, as in *Razuki*, "the type of 'threadbare' claim *Iqbal* warns of." 2018 WL

23  6018361, at *2. This Court is not "'bound to accept as true a legal conclusion couched as a factual

24  allegation.'" *Anderson*, 2019 WL 2753308, at *5 (quoting *Iqbal,* 556 U.S. at 678).

25        Plaintiffs' allegations regarding Robinhood's use of cleartext are unrelated to the alleged

26  account takeovers. Plaintiffs' allegation that "Robinhood admitted to customers that it had been

27  storing their credentials in what is known as 'cleartext'" (¶ 16) mischaracterizes Robinhood's

28  communication: it was not an "admission" of any data breach, but merely an informative e-mail

sent by Robinhood to a select group of users in July of 2019, over a year before any Plaintiff's alleged account takeover. (*See* Robinhood's Request for Judicial Notice ¶ 2.) In fact, as the communication made clear, "after a thorough review, [Robinhood] found no evidence that this information was accessed by anyone outside of our response team," but nevertheless recommended to customers, "[o]ut of an abundance of caution," that they "change [their] Robinhood password and passwords for any bank accounts linked to [their] Robinhood account." (*Id*. Ex. 2.) And regardless of Plaintiffs' allegations of what constitutes industry standard, Plaintiffs still fail to allege, as they must to state a viable claim, that the storage of credentials in cleartext played any role in the alleged account takeovers.

Plaintiffs' allegation that Robinhood does not use security measures "such as verifying changes in bank account links" (¶ 15) fares no better. In fact, Robinhood's policy is to ask for client verification of changes to sensitive information, including the addition of bank accounts. But even accepting Plaintiffs' allegation as true, it does not help them allege that Robinhood failed to prevent their account takeovers. Plaintiffs do not allege that money was transferred to bank accounts they did not intend to link to their Robinhood accounts. Without any such allegation, the allegation that Robinhood should have verified bank account links does nothing to support the claim that Robinhood is responsible for Plaintiffs' alleged account takeovers.

Plaintiffs thus have not even stated a *threadbare* claim, let alone a claim with properly pleaded facts creating a causal connection between the supposedly inadequate securities measures and Plaintiffs' alleged account takeovers. *See Anderson*, 2019 WL 3753308, at *5. Without any such factual allegations, all of their claims fail as conclusory, and should be dismissed.

**B.     Plaintiffs' Failure To Point To Any Enforceable Promise Precludes Their Contract, CLRA, UCL, And FAL Claims As A Matter Of Law.**

A number of Plaintiffs' claims—breach of contract, CLRA, UCL, and FAL—are premised on the allegation that Robinhood failed to live up to two promises: to reimburse customers for account losses due to unauthorized activity, and to "take privacy and security seriously." (*See* ¶¶ 14-15, 51-52.) All of these claims fail because neither statement is enforceable in this case. The first statement was made only *after* Plaintiffs opened their Robinhood accounts,

so Plaintiffs could not have relied on that statement in opening their accounts. Independently, as to one Plaintiff, the first statement was made *after* he alleges unauthorized access to his account, and the other two Plaintiffs cannot allege that Robinhood failed to live up to its promise. And while Robinhood stands behind the second statement, it is not the kind of sufficiently definite promise that can support any legal claim.

**1.    Plaintiffs Fail To Allege That Robinhood Promised To Reimburse Customers For Losses From Unauthorized Account Activity Before December 2020, Or That Robinhood Failed To Honor That Promise As To Them.**

Robinhood never promised Plaintiffs—or any putative class member—that it would reimburse account losses due to unauthorized activity until December 2020, after the alleged takeovers of Plaintiffs Mehta and Qian's accounts.[3] The only promise to that effect comes in what Plaintiffs refer to as Robinhood's "6 Commitments." (¶ 14.) As Plaintiffs concede, the 6 Commitments attached to the Complaint are those commitments as they exist currently. (*Id.*) Plaintiffs cannot allege that the 6 Commitments were posted before they opened their accounts or before Plaintiffs Mehta's and Qian's accounts were allegedly taken over. (Rangarajan Decl., Ex. 1.) Robinhood's "6 Commitments" were not published to customers until December 2020. (*Id.*)

This fact undermines Plaintiffs' breach of contract, CLRA, UCL, and FAL claims. Plaintiffs cannot adequately plead that Robinhood breached a contract between Robinhood and Plaintiffs Mehta and Qian based on a promise contained in the 6 Commitments (to reimburse for unauthorized account activity), if that promise had not been made before Plaintiffs opened their accounts or before their accounts were allegedly taken over. A "breach [of contract] cannot occur before contract formation." *Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 WL 3116158, at *12 (N.D. Cal. July 31, 2012) (dismissing plaintiff's contract claim for failure to allege terms operable at the time of the alleged breach).

Likewise, Plaintiffs cannot point to a failure to honor a promise in the 6 Commitments to

---

[3] See *supra,* note 2, concerning Qian's allegations. Because Qian does not allege that Robinhood did not reimburse him for alleged account losses, his claims against Robinhood fail regardless of whether he alleges an account takeover in October 2020 or February 2021.

1     support their claims under the CLRA, UCL, and FAL, all of which require reliance on the alleged

2     promise. "For fraud-based claims under all three consumer statutes"—"the UCL, FAL and

3     CLRA"—"the named Class members must allege actual reliance to have standing." *In re Sony*

4     *Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal.

5     2012); *see also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-CV-02941-LHK, 2016

6     WL 4729302, at *10 (N.D. Cal. Sept. 12, 2016) ("To have statutory standing under the CLRA, a

7     plaintiff must allege that she relied on the defendant's alleged misrepresentation."). Here,

8     Plaintiffs Mehta and Qian cannot allege that they relied on a representation that did not exist

9     before their alleged account takeovers.

10          The fact that the 6 Commitments were not published until December 2020 is no less fatal

11     to Plaintiff Furtado's claims. Although he alleges that his account was compromised in February

12     2021, he does not allege that Robinhood failed to reimburse him for any account losses—merely

13     that he has "purchased identity theft protection services and has spent hours of his own time

14     attempting to research and remedy the loss and securing his other assets and information from

15     further breach." (¶ 29.). Because Furtado cannot allege that Robinhood failed to reimburse him,

16     Furtado fails to state a claim that Robinhood breached any promise to him.

17
18          **2.**     **Robinhood's Statement That It "Take[s] Privacy And Security Seriously"—While True—Is Too Indefinite To Subject Robinhood To Any Liability.**

19          Plaintiffs also try to pin their contract claim on Robinhood's general promises to maintain

20     security standards, but those promises—while true—are too indefinite to ground any legal claim

21     against Robinhood. Plaintiffs point to two particular phrases—that Robinhood is "[d]edicated to

22     maintaining the highest security standards" and that "we take privacy and security seriously[.]"

23     (¶¶ 14, 51) Robinhood stands by these statements, but they cannot form the basis of any claims in

24     this case. That is true for every claim Plaintiffs try to assert based on these statements.

25          First, a contract claim cannot be premised on Robinhood's statements that it is

26     "[d]edicated to maintaining the highest security standards" and "we take privacy and security

27     seriously." Under California law, "[t]o establish formation of a contract, a plaintiff must plead

28     that: (1) the contract terms are clear enough that the parties could understand what each was

1   required to do; (2) the parties agreed to give each other something of value; and (3) the parties

2   agreed to the terms of the contract." *Lucas v. Int'l Bus. Machines Corp.*, No. 20-cv-00141-JCS,

3   2020 WL 2494562, at *4 (N.D. Cal. May 14, 2020) (citation omitted). Under the California Civil

4   Code, § 3390(e), contracts are not enforceable if "the terms of [the agreement] are not sufficiently

5   certain to make the precise act which is to be done clearly ascertainable."

6         The statements that Robinhood is "[d]edicated to maintaining the highest security

7   standards" and "we take privacy and security seriously" are too indefinite to make clear to each

8   party what Robinhood was required to do, which is required for a binding contractual promise.

9   For that reason, such general statements regarding the nature of a company's security practices

10  cannot subject a company to contractual liability. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096,

11  1108 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ("[A] general monitoring policy, or even an

12  attempt to help a particular person, on the part of an interactive computer service such as Yahoo

13  does not suffice for contract liability."); *see also Murphy v. Twitter, Inc.*, 274 Cal. Rptr. 3d 360,

14  374-75 (Cal. Ct. App. 2021) ("But Murphy does not identify any specific representation of fact or

15  promise by Twitter to Murphy that it would not remove her tweets or suspend her account beyond

16  general statements in its monitoring policy, the type of allegation the *Barnes* court noted would

17  be insufficient to state a claim.").

18        Plaintiffs' effort to cite other contractual documents fails to identify any sufficiently

19  definite contractual duty on Robinhood. For example, Plaintiffs also cite Robinhood's Terms and

20  Conditions, which provide: "disclosures of [] non-public personal information shall be made in

21  accordance with the terms of [] this Agreement or the Robinhood Privacy Policy[.]" (¶ 51.) Yet

22  Plaintiffs do not point to any act by Robinhood that breached this supposed term. Again,

23  Robinhood itself is not alleged to have disclosed any information about Plaintiffs. Instead,

24  Plaintiffs allege that Robinhood failed to take additional steps to protect Plaintiffs from third

25  parties, who gained access to Plaintiffs' accounts independent of anything Robinhood is alleged

26  to have done. That is simply not a breach of any promise not to disclose Plaintiffs' information.

27        Nor do Plaintiffs identify any other specific terms of Robinhood's Customer Agreement

28  or Privacy Policy that Robinhood allegedly breached. They merely state in a conclusory fashion

1    that Robinhood "breached these duties and violated these promises by failing to properly

2    safeguard the sensitive personal and financial information of Plaintiffs and the Class . . . ." (¶ 52.)

3    Such conclusory allegations are insufficient to state a contract claim. *See Young v. Facebook,*

4    *Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing contract claim for failure to allege

5    provision defendant supposedly breached); *see also Frances T. v. Vill. Green Owners Ass'n.*, 42

6    Cal. 3d 490, 512-13 (1986) (dismissing contract claim where plaintiff "does not allege that any

7    provision in any of the writings imposed such an obligation on defendant.").

8        For similar reasons, none of Plaintiffs' statutory claims could be premised on Robinhood's

9    security commitments. Plaintiffs' CLRA, UCL, and FAL claims are all based on the allegation

10   that Robinhood misrepresented its commitment to security in some way. Just as the statements are

11   too indefinite to support a contract claim, the statements are "non-actionable puffery," because

12   they "say nothing about the specific characteristics" of Robinhood's security systems or practices.

13   *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 327318,

14   *26 (N.D. Cal. Aug. 30, 2017) (holding Yahoo's statement in its privacy policy that "protecting

15   our systems and our users' information is paramount to ensuring Yahoo users enjoy a secure user

16   experience and maintaining our users' trust" constituted "non-actionable puffery"; the statement

17   "say[s] nothing about the specific characteristics" of the products and services offered by the

18   Defendants"); *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012)

19   ("Generalized advertisements that . . . say nothing about the specific characteristics" of the

20   product or service are not actionable misrepresentations under the CLRA, UCL, or FAL).

21       **C.    Plaintiffs' Allegations Of Injury Fail To Support Their Claims For
22               Relief.**

23       Plaintiffs' allegations concerning their own injuries—putting aside, as the Court must,

24   those concerning the putative class—are bare and unclear. The only paragraphs in the Complaint

25   describing Plaintiffs' alleged injuries do not allege that their own alleged losses went

26   unreimbursed. They allege that they suffered account losses (¶¶ 27-29), but do not say whether

27   Robinhood reimbursed them. While the Complaint alleges that other customers received emails

28

saying they would not be reimbursed (¶ 22), Plaintiffs do not allege that they received such an email. Instead of alleging any unreimbursed account losses of their own, Plaintiffs allege only that they "[have] . . . spent hours of [their] own time attempting to research and remedy the loss and securing [their] other assets and information from further breach." (¶¶ 27-29.)

Plaintiffs' allegations of injury are insufficient, however one reads them. If the Complaint can be read to allege that Plaintiffs weren't reimbursed for their alleged account losses, that is a classic economic loss for which they cannot recover in tort. Such an allegation would be one that Robinhood failed to live up to a promise to reimburse for account losses—something for which Plaintiffs could only recover under a contract claim, if at all, not under a negligence claim. If, on the other hand, Plaintiffs' allegations of injury are read as limited to lost time and similar losses, those are simply not recoverable under any of the asserted claims.

### 1.   Any Allegation That Plaintiffs Weren't Reimbursed For Alleged Account Losses Would Be An Economic Loss For Which Plaintiffs Cannot Recover In Tort.

"Generally, purely economic losses are not recoverable in tort." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020). This "economic loss rule prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273 (Cal. 2004) (quoting *Rich Prods. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999)). "The rule serves to limit liability in commercial activities that negligently or inadvertently go awry." *In re Solara*, 2020 WL 2214152, at *4 (cleaned up).

This economic loss rule bars Plaintiffs from recovering for any alleged account losses in tort. Any recovery Plaintiffs may obtain from Robinhood's alleged failure to reimburse account losses must be from a breach of contract claim, not a tort claim. *See, e.g., Aas v. Superior Court*, 24 Cal. 4th 627, 635-36 (Cal. 2000) ), *superseded by statute as stated in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1079-80 (Cal. 2003) (rejecting plaintiff's argument that plaintiffs in contractual privity with the defendant are entitled to recover for negligent performance of a service contract); *Neu v. Terminix Int'l, Inc.*, No. C 07-6472 CW, 2008 WL 962096, at *4 (N.D. Cal. Apr. 8, 2008) (noting this Court has repeatedly held the economic loss rule applied to service

14

contracts); *Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, No. C 06-2590 CW, 2006 WL 2458759, at *5 (N.D. Cal. Aug. 22, 2006) (applying "the economic loss rule here regardless of whether the parties' contract is defined a one for a product (i.e., duplicated DVDs) or services (duplication of DVDs)").

The only exception to the economic loss rule—where a "special relationship exists between the parties," *Corona v. Sony Pictures Entm't, Inc*., No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015)—does not apply here. The "special relationship" exception does not apply where, as here, any "alleged duty . . . arose sole[l]y from the contractual relationship between [the parties]." *See Kelomar, Inc. v. Kulow*, No. 09-cv-0353 BTM(PCL), 2009 WL 3818817, at *2-3 (S.D. Cal. Nov. 12, 2009) (dismissing plaintiff's claim for negligence because obligation arose only from contract). Courts have held that a special relationship does not form between a company and its customers simply because the customers have provided private information to the company, which owes no duty to protect the customer from the acts of third parties. *See, e.g.*, *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *9 (N.D. Cal. Sept. 20, 2011) ("Plaintiffs have not yet adequately pled or identified a legal duty on the part of Apple to protect users' personal information from third-party app developers. Tort law may not be used to supplant private contractual agreements, and the failure to perform a contractual duty is not a tort, unless that failure involves an independent legal duty."); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 852 (N.D. Cal. 2012) (citing *In re iPhone Application Litig.*, 2011 WL 4403963, at *9).

### 2.   Plaintiffs' Other Allegations Of Injuries Are Not Recoverable Under Any Of Their Claims.

Plaintiffs' other damages allegations are not recoverable under any legal theory. Courts have held unrecoverable all of the kinds of "damages" Plaintiffs allege: "the loss of control over the use of [customers'] identity, harm to their constitutional right to privacy, lost time dedicated to the investigation of and attempt to recover the loss of funds and cure harm to their privacy, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal and financial information

1  disclosed." (¶ 48.)

2      • **Alleged future loss**. "California courts have indicated that speculative harm or the

3  mere threat of future harm is insufficient to constitute actual loss." *Corona*, 2015

4  WL 3916744, at \*3. "To the extent Plaintiffs allege future harm or an increased

5  risk in harm that has not yet occurred, those allegations do not support a claim for

6  negligence, as they fail to allege a cognizable injury." *Id*. at \*4.

7      • **Alleged lost time**. "[G]eneral allegations of lost time are too speculative to

8  constitute cognizable injury." *Id*. Yet that is all Plaintiffs have alleged here. For

9  example, while Plaintiffs allege they have "spent hours . . . attempting to research

10  and remedy the loss and securing [their] other assets and information from further

11  breach," (¶¶ 27-29) these allegations are insufficient. With only such general

12  allegations, "lost time" alone is too speculative to be recoverable. *Corona*, 2015

13  WL 3916744, at \*4.

14      • **Alleged loss of sensitive personal information**. "[A]n alleged loss of property in

15  the form of personal information is insufficient to support a claim for negligence."

16  *Aguilar v. Hartford Accident & Indemnity Co.*, No. CV 18-8123-R, 2019 WL

17  2912861, at \*2 (C.D. Cal. Mar. 13, 2019). "To the extent Plaintiffs' alleged injury

18  relies on a theory that their PII constitutes property, those allegations also fail, as

19  Plaintiffs have not provided any authority that an individual's personal identifying

20  information has any compensable value in the economy at large." *Corona*, 2015

21  WL 3916744, at \*4.

22      • **Alleged loss of control of Plaintiffs' identity**. This, too, is insufficient to state a

23  cause of action. *Aguilar*, 2019 WL 2912861, at \*2 ("Plaintiff's alleged loss of

24  control of his medical information and personal financial information is also

25  insufficient to establish damages for a negligence claim." (citing *Corona*, 2015

26  WL 3916744, at \*7-8)).

27      Plaintiffs' failure to identify any recoverable damages holds true regardless of the legal

28  theory Plaintiffs invoke as to their alleged damages. While the cases cited above dismiss

1   negligence claims based on such alleged damages, Plaintiffs' unspecified "privacy injuries

2   associated with having their sensitive personal and financial information disclosed" (¶ 54), are not

3   recoverable under a **contract** claim, either. The "unauthorized collection of personal information

4   does not create an economic loss," *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal.

5   2012). "A plaintiff must plead 'appreciable and actual damage' in relation to their breach of

6   contract claim. 'Nominal damages, speculative harm, or threat of future harm do not suffice to

7   show legally cognizable injury.'" *In re Solara*, 2020 WL 2214152, at *5 (quoting *Low*, 900 F.

8   Supp. 2d at 1028).

9           Likewise, Plaintiffs' alleged injuries do not support any of the statutory claims they assert.

10   For example, even if Plaintiffs could identify a violation of the **CRA**, Plaintiffs did not suffer any

11   incremental harm as the result of any delayed notification, separate from the harm resulting from

12   any alleged unauthorized account access itself. That is required to state a claim under the CRA.

13   "To allege a 'cognizable injury' arising from Defendant's alleged failure to timely notify

14   Plaintiffs of the Data Breach, Plaintiffs must allege 'incremental harm suffered as a result of the

15   alleged delay in notification,' as opposed to harm from the Data Breach itself." *In re Solara*, 2020

16   WL 2214152, at *8. Here, Plaintiffs generically cite "additional losses" and "further harm," (¶ 65)

17   but do not explain how the purported delay actually harmed them above and beyond the alleged

18   unauthorized access to their accounts.

19           Plaintiffs' failure to allege any economic losses (apart from any unreimbursed losses,

20   addressed above) also undermines their statutory standing to pursue a **UCL, CLRA,** or **FAL**

21   claim. *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009) ("UCL's

22   standing requirements appear to be more stringent than the federal standing requirements" with an

23   additional requirement "that a UCL plaintiff's 'injury in fact' specifically involve 'lost money or

24   property'"); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-

25   BLM, 2016 WL 6523428, at *11 (S.D. Cal. 2016) (dismissing UCL cause of action for lack of

26   statutory standing); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039-40 (N.D. Cal.

27   2019) (finding insufficient UCL statutory standing because allegations around lost value of

28   information were not specific enough); *Jackson v. Loews Hotels, Inc.*, No. ED VC 18-827-DMG

17

1   (JCx), 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019) (dismissing claims for failure to

2   establish UCL-standing and noting that "[c]ourts in this circuit have held that 'theft' or

3   'unauthorized release of personal information' does not qualify as lost money or property for

4   purposes of determining standing under the UCL"); *In re Sony Gaming Networks & Customer*

5   *Data Sec. Breach Litig*., 903 F. Supp. 2d at 966 ("Plaintiffs' allegations that the heightened risk of

6   identity theft, time and money spent on mitigation of that risk, and property value in one's

7   information, do not suffice as injury under the UCL, FAL, and/or the CLRA.").

8           **D.       All Of Plaintiffs' Claims Fail As A Matter Of Law For Additional
                       Reasons Unique To Each Claim.**

9

10                  **1.      The CCPA Does Not Apply Where, As Here, Robinhood's
                             Computer Network Was Not Compromised.**

11          California's new CCPA, Cal. Civ. Code § 1798.150, simply doesn't apply here.

12  Section 1798.150 creates a narrow private right of action that applies only when (a) a statutorily

13  defined subset of a California resident's "nonencrypted and nonredacted" personal information

14  "is subject to an unauthorized access and exfiltration, theft, or disclosure" (b) "as a result of the

15  business's violation of the duty to implement and maintain reasonable and appropriate security

16  procedures and practices[.]" Cal. Civ. Code § 1798.150(a). The statutorily defined subset of

17  information (borrowed from § 1798.81.5) requires the data theft to include an individual's first

18  name or first initial *and* the individual's last name, in conjunction with, for example, a social

19  security number, a driver's license number, or a financial account number and required security

20  code, access code, or password that would permit access to the financial account, when either the

21  name or data elements are not encrypted or redacted. Thus, to adequately state a claim, Plaintiffs

22  must allege the exfiltration, theft, or disclosure of each required data element, and Plaintiffs must

23  tie that alleged disclosure to "the business's violation of the duty to implement and maintain

24  reasonable and appropriate security procedures and practices." Cal. Civ. Code § 1798.150(a).

25          Here, Plaintiffs fail on both elements: they cannot allege any qualifying unauthorized

26  disclosure and they cannot allege that any such disclosure was the result of a violation of the

27  "duty to implement and maintain reasonable and appropriate security procedures and practices."

28          While the Complaint includes scattered references to some of the data elements listed in

§ 1798.81.5, Plaintiffs do not actually allege that Robinhood permitted access to this specific information. Instead, they merely allege generally that Robinhood "allowed a third-party access to [Plaintiffs'] personal and financial information," without specifying to which information Robinhood allegedly allowed access, or whether it was subsequently stolen or disclosed. (*See e.g.*, ¶¶ 17-29; *see also* ¶ 58.) That is not enough because, as noted, a violation of § 1798.150 requires the unauthorized disclosure of a particular kind of combination of data elements—those data elements specified in § 1798.81.5, such as their names in combination with a social security number, a driver's license number, or a financial account number and required security code. Plaintiffs' failure to identify any unauthorized access and theft of the specific information covered in section 1798.81.5 thus precludes them from claiming a violation of § 1798.150(a).

Plaintiffs' allegation that their accounts were taken over by third parties is not enough to satisfy the elements of the CCPA's private right of action. Even reading the Complaint generously, Plaintiffs seem to be alleging that an account takeover means that a third party has access to Plaintiffs' names and account numbers. But that allegation confuses *a third party's* theft of Plaintiffs' account information with an unauthorized access of Plaintiffs' personal information *from Robinhood's* computer network. The CCPA's private right of action provision applies only to an unauthorized access of personal information *from* Robinhood's network, not from independent third party breaches of Plaintiffs' individual accounts. That is clear from the right of action provision itself, which speaks of unauthorized access "as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices[.]" Cal. Civ. Code § 1798.150(a). Obviously, if an unauthorized access occurs independent of Robinhood's network—as from an independent third party breach of each Plaintiff's account—it cannot be "as a result of" a violation of Robinhood's duty to secure its network. And that is clear from the statute that defines the kind of data elements whose unauthorized access qualifies for the private right of action provision. That provision, § 1798.81.5, applies to "businesses that own, license, or maintain personal information about Californians[.]" Cal. Civ. Code § 1798.81.5(a). Thus, only if Robinhood provided access to Plaintiffs' personal information could it possibly be subject to the private right of action provision (and then, only if Plaintiffs could plead and prove

1  that an unauthorized access was "as a result of" a violation of Robinhood's duty to secure its

2  network).

3      Even if the unauthorized access of Plaintiffs' account information through takeovers of

4  their own accounts were to fall within the CCPA's protections, their CCPA claim fails for another

5  fundamental reason: they cannot allege that any unauthorized access was "as a result of" a

6  violation of Robinhood's duty to secure its computer network. Like the rest of their Complaint,

7  Plaintiffs' CCPA claim is based on conclusory allegations. Plaintiffs allege that Robinhood

8  "allowed unauthorized users to view, use, manipulate, exfiltrate, and steal the nonencrypted and

9  nonredacted personal information of Plaintiffs and other customers, including their personal and

10  financial information." (¶ 58.) That is far too general to satisfy the pleading standard required

11  here. As other courts have required in similar contexts, plaintiffs alleging that a company is

12  responsible for a third party's access to information must adequately plead *how* any data was

13  exfiltrated and *how* the company "allowed" any such exfiltration to occur. *See Razuki*, 2018 WL

14  6018361, at *2. Plaintiffs' Complaint is devoid of either.

15      **2.    The CRA Does Not Apply Where, As Here, Robinhood's**
16              **Computer Network Was Not Compromised.**

17      California's Customer Records Act also does not apply here. Section 1798.82 of the

18  CRA—the purported basis for Plaintiffs' CRA claim—requires a business to timely "disclose a

19  breach of the security of the system following discovery or notification of the breach in the

20  security of the data" when, following such a breach, an unauthorized person acquires unencrypted

21  data or encrypted data and its encryption key.

22      This claim fails for the simple reason that even according to Plaintiffs' own allegations,

23  there was no "breach of the security of the system" required by the statute. Cal Civ. Code

24  § 1798.82. Plaintiffs allege that a cybercriminal accessed their own accounts, not Robinhood's

25  system. (*See, e.g.*, ¶ 4.) Though Plaintiffs try to obfuscate the issue by referring to "the breach" in

26  scattered allegations in the Complaint, nowhere does the Complaint actually allege that

27  Robinhood itself suffered a breach of its own computer network. Nor could it: Robinhood has not.

28  Based on the plain text of § 1798.82, there can be no failure to timely notify of a "breach of the

1  system" where there is no "breach of the system" in the first place.

2  　　　Even assuming the Complaint could be read to allege a "breach of the system," Plaintiffs

3  fail to allege *when* Robinhood first learned of any incident for which it should have notified them

4  sooner. To successfully assert a CRA claim, a plaintiff must allege facts regarding when a

5  defendant learns of such an incident. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F.

6  Supp. 3d 1113, 1146 (N.D. Cal. 2018) ("In the First MTD Order, the Court noted that Plaintiffs

7  failed to allege anything 'suggesting when Defendants learned of the 2013 breach.' Those

8  allegations were necessary to allow the Court to determine whether Defendants unreasonably

9  delayed in notifying Plaintiffs of the 2013 Breach[.]" (citation omitted)). Here, the alleged

10  compromise of Plaintiffs' account were incidents about which Plaintiffs allegedly informed

11  Robinhood; Plaintiffs do not allege that Robinhood knew about the alleged unauthorized access to

12  their individual accounts before Plaintiffs notified Robinhood. (*See* ¶¶ 27-29 (Plaintiffs Mehta

13  and Qian allege Robinhood "acknowledged the breach" after they "confronted Robinhood about

14  the loss of funds"; Plaintiff Furtado only alleges he contacted Robinhood "after the breach.").)

15  ### 3.　　Plaintiffs Fail To Plead Any Conduct By Robinhood That Violated Their Constitutional Right Of Privacy.

16

17  　　　California's constitutional right to privacy (Article I, Section 1) also does not apply here.

18  Unauthorized access to Plaintiffs' personal financial information is not "conduct by defendant

19  constituting a serious invasion of privacy" for purposes of California's constitutional right to

20  privacy. *See Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127-28 (N.D. Cal. 2008) (listing elements

21  of a claim for a right to privacy violation). "The California Constitution and the common law set

22  a high bar for an invasion of privacy claim. Even disclosure of personal information, including

23  social security numbers, does not constitute an 'egregious breach of the social norms' to establish

24  an invasion of privacy claim." *Low*, 900 F. Supp. 2d at 1025; *see also In re iPhone Application*

25  *Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (holding that the disclosure to third parties of

26  unique device identifier number, personal data, and geolocation information did not constitute an

27  egregious breach of privacy). Thus, even if Plaintiffs could allege that Robinhood were somehow

28  responsible for the alleged unauthorized access of their information—and again, there is no basis

1    for any such allegation—that alone would not rise to the level of a violation of California's

2    constitutional right to privacy.

3        Robinhood itself did not disclose any of Plaintiffs' information—another basis for

4    dismissing Plaintiffs' claim. In *Ruiz*, for example, a plaintiff brought a claim for violation of

5    California's constitutional right to privacy on the grounds that third parties stole "personal

6    information, including social security numbers, of approximately 800,000 Gap job applicants,"

7    which "was not encrypted and was therefore easily accessible." 540 F.Supp.2d at 1124-25. The

8    court dismissed this claim on the pleadings, explaining that even where an increased risk of

9    identity theft has occurred because a third party has stolen highly personal information, the

10   "increased risk *and the manner in which it was allegedly created* [] do not constitute an egregious

11   breach and therefore are not violations of the California Constitutional right to privacy." *Id.* at

12   1128 (emphasis added).

13       **4.    Plaintiffs Fail To State A Claim Under The UCL Or FAL.**

14       Plaintiffs' UCL and FAL claims fail for reasons already discussed. First, there is no

15   predicate for the claims, because Plaintiffs fail to identify any actionable misrepresentation by

16   Robinhood forming the basis for the claims, *see supra*, at III(B). Second, Plaintiffs' claim under

17   the "unlawful" and "unfairness" prongs of the UCL is indistinguishable: each is based on alleged

18   violations of California privacy laws. (¶ 90.) That claim fails because, as explained above,

19   Plaintiffs cannot adequately allege a violation of any such laws. (*See supra*, III(D)(1)&(2).) And

20   third, Plaintiffs have no statutory standing to assert either the UCL or FAL claims, because their

21   alleged losses are not recoverable. (*See supra*, III(C)(2).)

22       Plaintiffs' claims fail for an additional reason unique to the UCL and FAL: Plaintiffs

23   cannot obtain from Robinhood the only remedies the UCL and FAL offer private plaintiffs—

24   restitution and injunctive relief. Where a "plaintiff[] do[es] not allege that [Defendant] obtained

25   from them any money or other financial benefit," such a complaint "fail[s] sufficiently to plead

26   entitlement to restitution or injunctive relief, the only forms of relief available under the UCL."

27   *Castillo v. Seagate Tech., LLC,* No. 16-CV-01958-RS, 2016 WL 9280242, at *8 (N.D. Cal.

28   Sept. 14, 2016); *see also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985-86

("UCL[]'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest[.]"). So too with the FAL: "[B]ecause '[c]ase law is clear that the loss of use and loss of value . . . are not recoverable as restitution because they provide no corresponding gain to a defendant,' Plaintiffs cannot use such a basis to support a claim for restitution." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d at 970 (cleaned up).

Here, Plaintiffs seek to recover fees not that they allegedly paid Robinhood, but that third parties paid: "Defendants generated revenue [from] third-party market makers paying Defendants directly when Defendants' customers executed trades or purchased positions on the Robinhood platform. Plaintiffs and the Class paid above-market rates for these third-party market makers' transactions . . . ." (¶¶ 92, 100.) Thus, Plaintiffs' claim is for non-restitutionary disgorgement, where "the focus is on the defendant's gain from the unfair practice" of profit made from third parties. *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1013 (2005).

Non-restitutionary disgorgement is not recoverable under the UCL or FAL, because "in the UCL context, restitution means the return of money to those persons from whom it was taken or who had an ownership interest in it." *Id.*; *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 ("Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies *given to the defendant* or benefits [such as back wages] in which the plaintiff has an ownership interest." (emphasis added)).

*Feitelberg* is particularly instructive here. In *Feitelberg*, plaintiffs sued defendant for violation of the UCL for issuing "biased stock research reports to gain favor" with investment banking clients, for whose stock plaintiffs presumably overpaid. 134 Cal. App. 4th at 1005-06. Plaintiffs claimed that defendant "made substantial profits and/or received substantial compensation" from those investment banking clients and claimed entitlement to those profits under the UCL in the form of non-restitutionary disgorgement. In dismissing plaintiff's claim, the court held that to permit such a recovery would essentially be to permit a claim for damages, which would allow the UCL to "be used as an all-purpose substitute for a tort or contract action, something the Legislature never intended." *Id.* (quoting *Korea Supply*, 29 Cal. 4th at 1151).

1     Here, too, Plaintiffs allege that Robinhood made profits from the third parties, profits

2  Robinhood would not have made but for Plaintiffs' trades. Yet Plaintiffs have no ownership

3  interest in money market makers pay to Robinhood as part of any trades. Plaintiffs therefore

4  cannot state a claim for restitution.

5     Just as Plaintiffs fail to establish that they are entitled to restitution, they fail to establish

6  that they are entitled to injunctive relief. While Plaintiffs do not state what injunctive relief they

7  seek, they do not plead, as required, that a "real or immediate threat exists that they will be

8  harmed again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In alleging only a failure

9  to prevent or remedy past harm, they "fail sufficiently to allege a threat of impending future harm

10 that would entitle them to injunctive relief." *Castillo,* 2016 WL 9280242, at *8 (dismissing claim

11 for injunctive relief arising out of phishing scam). Nor is the possibility of increased risk of future

12 identity theft sufficient to claim injunctive relief; such nebulous risks are too speculative to show

13 a cognizable threat of future harm. *Id.* (citing *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 958–

14 59 (D. Nev. 2015) (increased risk of identity theft and fraud from unidentified third-party actor

15 too speculative for injunctive relief claim).

16     **5.     Plaintiffs Fail To State A Claim For Negligence.**

17     Though asserted as an independent cause of action, Plaintiffs' negligence claim merely

18 alleges a violation of the same statutes discussed above. All Plaintiffs' negligence claim adds is

19 the theory that Robinhood also breached "a duty of reasonable care" it owed Plaintiffs, and the

20 theory that Robinhood is negligent per se based on its violation of various statutes. Under any

21 theory Plaintiffs assert, their negligence claim fails as a matter of law.

22     Courts in the Ninth Circuit have found the negligence pleading standard to be

23 "particularly demanding" in the context of litigating asserting a data breach. *See, e.g.*, *In re Sony

24 Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 3d 942, 971-72 (S.D. Cal.

25 2014), *order corrected*, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10,

26 2014) (noting that "the Court will not allow expensive, potentially burdensome class action

27 discovery to ensue in the absence of a viable" negligence cause of action) (citing *Twombly*, 550

28 U.S. at 558). To prevail on a negligence claim under California law, Plaintiffs must establish:

"(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to the standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Aguilar*, 2019 WL 2912861, at *2 (data breach case dismissing negligence claims) (applying and quoting *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)). Here, in addition to failing to establish actual loss (as discussed above), Plaintiffs cannot adequately allege any breach of a duty of care.

First, the Complaint fails to adequately allege any breach of a general duty of care. The Complaint generally alleges that Robinhood behaved "negligently, carelessly, and recklessly" in "collecting, maintaining, and controlling" customer accounts. (¶ 46.) As discussed, however, that allegation is far too general to satisfy Plaintiffs' pleading standard. Because Plaintiffs cannot plead any facts tying any account takeovers to Robinhood's allegedly inadequate security measures, their allegations that Robinhood violated a duty of care are too conclusory and must be dismissed. (*See supra*, III(A).)

Second, Plaintiffs' citation to statutory standards—the Complaint refers to Cal. Civ. Code §§ 1798.80 *et seq.* (the CRA) and 1798.100 *et seq.* (the CCPA), and the right to privacy under the California Constitution—do not substitute for their inability to plead how Robinhood breached any duty of care. (¶ 47.) Even if Plaintiffs can rely on these statutory or constitutional provisions to define the standard of care, Plaintiffs fail to identify any way in which Robinhood failed to live up to those statutory or constitutional standards. (*See supra*, III(D)(1)-(3)); *see also Anderson*, 2019 WL 3753308, at, *5 (dismissing claim that company violated § 1798.81.5 because plaintiffs "fail[ed] to allege any facts in support of their conclusory assertion that" defendant "'fail[ed] to implement and maintain reasonable security procedures and practices.'").

## IV.   CONCLUSION

For all of these reasons, Plaintiffs' Complaint fails to state any claim against Robinhood as a matter of law. The Complaint should be dismissed with prejudice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: March 12, 2021

TIFFANY CHEUNG
MARK DAVID MCPHERSON
MARGARET N. BUCKLES
THOMAS B. DAVIDSON
MORRISON & FOERSTER LLP

By:   /s Mark David McPherson
        MARK DAVID MCPHERSON

Attorneys for Defendants
ROBINHOOD FINANCIAL LLC
AND ROBINHOOD SECURITIES,
LLC