UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDDHARTH MEHTA,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, et al.,<br><br>Defendants. | Case No. 21-cv-01013-SVK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 35, 36, 39 |

On May 6, 2021, the Court granted in part and denied in part Defendants Robinhood Financial LLC and Robinhood Securities, LLC's ("Defendants" or "Robinhood") motion to dismiss with leave to amend (Dkt. 15) ("Previous Order"). Dkt. 33. Plaintiffs Siddharth Mehta ("Mehta"), Kevin Qian ("Qian"), and Michael Furtado ("Furtado") (collectively, "Plaintiffs") subsequently filed a Second Amended Complaint ("SAC"). Dkt. 34. Defendants now move to dismiss Plaintiffs' SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted and Rule 9(b) for failure to comply with the heightened pleading standard required for claims alleging fraud. Dkt. 35.

Pursuant to Civil Local Rule 7-1(b), the Court deems the motion to dismiss suitable for determination without oral argument. After considering the Parties' submissions, the case file, and relevant law, and for the reasons discussed below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

**I.  PREVIOUS ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

In the Previous Order, the Court found that "Plaintiffs' factual allegations are sufficient to support their claims [regarding unauthorized access] at the pleading stage." Dkt. 33 at 8.

Specifically, the Court noted that "at this stage of the proceedings, Plaintiffs' allegations that unauthorized third parties were able to access approximately 2,000 Robinhood customers' accounts and deplete their funds due to Robinhood's security measures are sufficient." *Id.* at 9. The Court denied Defendants' motion to dismiss Plaintiffs claims for negligence and violations of the California Consumer Privacy Act ("CCPA)," the constitutional right to privacy, and the unlawful and unfair prongs of the Unfair Competition Law ("UCL"). The Court granted with leave to amend Plaintiffs' claims against Defendants for breach of contract and violations of the Customer Records Act ("CRA"), Consumers Legal Remedies Act ("CLRA"), fraudulent prong of the UCL, and the False Advertising Law ("FAL").

## II.   MOTION TO DISMISS PLAINTIFFS' SAC

Defendants now move to dismiss the SAC in its entirety with prejudice, which asserts claims for: (1) negligence; (2) breach of contract; (3) violation of the CCPA; (4) violation of the CRA; (5) violation of the CLRA; (6) violation of the constitutional right to privacy; (7) violation of the UCL; and (8) violation of the FAL. Dkt. 35.

Defendants assert overarching arguments that Plaintiffs fail to point to any enforceable promise to reimburse customers and do not adequately allege that Robinhood failed to honor any promises regarding security measures. Dkt. 35 at 14-22. Defendants also assert arguments as to why the claims individually should be dismissed.

### A.   **Enforceable Promises**
#### 1.   **Reimbursement to Customers**

Defendants argue that Plaintiffs do not adequately allege that Robinhood failed to honor any promise to reimburse customers for losses from unauthorized account activity. Dkt. 35 at 15. Defendants contend that while Plaintiffs now allege that Robinhood promised to reimburse customers for account losses due to unauthorized activity in three different places, the "6 Commitments" (Dkt. 34-3), a statement to Bloomberg (Dkt. 34-6), and the Robinhood Customer Agreement (Dkt. 34-5), "[n]o Plaintiff adequately alleges that Robinhood failed to honor these statements." Dkt. 35 at 15. Specifically, Defendants argue that Plaintiff Siddharth Mehta's ("Mehta") alleged account takeover took place prior to the publication of the 6 Commitments on

2

the website and the statement to Bloomberg. *Id.* at 15. In addition to its argument that Mehta's alleged account takeover took place before the other statements, Defendants argue that that the April 2020 Customer Agreement, which pre-dates Mehta's alleged account takeover, "contains no promise to reimburse him for account losses due to unauthorized activity." *Id.* Defendants also argue that Plaintiffs Qian and Furtado do not allege how Robinhood failed to fully reimburse them. *Id.*

### a. Statements Discussing Reimbursement for Account Losses

First, Defendants argue that Section 10 of Appendix A applies to "Electronic Fund Transfer Services," and Mehta does not allege that his losses resulted from an unauthorized electronic funds transfer. *Id.* at 16-17. Second, Defendants contend that even if Mehta were able to allege that funds were transferred out of his Robinhood account without his authorization, Section 10 "merely provides that Robinhood will 'determine whether an error occurred,' 'investigate your complaint or question,' and 'if Robinhood decides that there was no error, Robinhood will send you a written explanation.'" *Id.* at 17 (citing Dkt. 34-5 at 34). Defendants contend that they complied with Section 10 and Mehta does not allege otherwise. *Id.* Lastly, Defendants contend that Section 17 of the Customer Agreement undermines any allegation that Robinhood promised to reimburse account losses because it states that Robinhood customers "agree that Indemnified Parties [defined as Robinhood affiliates] will have no liability, to Me or to third parties, or responsibility whatsoever for: (i) any Losses resulting from a cause over which Indemnified Parties do not have direct control, including . . . unauthorized access." *Id.* (citing Dkt. 34-5 at 13) (emphasis omitted). Defendants contend that Plaintiffs ignore Robinhood's acknowledgment that "it may choose not to enforce this indemnity provision" in some circumstances, as evidenced by Robinhood's reimbursement of Plaintiffs Qian and Furtado, and that this "does not take the provision out of the Agreement." Dkt. 39 at 7-8.

First, the Court finds that Plaintiffs' factual allegations regarding promises to reimburse customers for losses from unauthorized account activity are sufficient to support Plaintiffs' claims at the pleading stage. Plaintiffs allege that Robinhood is "a self-directed online securities trading platform" and when customers open investment accounts with Robinhood, "they authorize

1  Robinhood access to one or more bank accounts and deposit funds directly into a Robinhood
2  investment account." Dkt. 34 ¶¶ 7, 11; Dkt. 36 at 13. Plaintiff Mehta alleges that he held an
3  investment account with Robinhood and "allowed Robinhood direct access to funds in his bank
4  account." Dkt. 34 ¶ 28. Mehta further alleges that as a consequence of Robinhood's conduct,
5  "Mehta was frozen out of his account and lost tens of thousands of dollars . . . . [and] was never
6  reimbursed by Robinhood for his loss." *Id.* The Court is not persuaded by Defendants' argument
7  that "[this] is not an allegation of an unauthorized transfer to which Section 10 might apply." Dkt.
8  35 at 17; *see Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("On a motion to
9  dismiss for failure to state a claim, the court must presume all factual allegations of the complaint
10 to be true and draw all reasonable inferences in favor of the nonmoving party.") (citation omitted).

   Second, Appendix A discusses electronic fund transfers and what customers should do in
the event of an unauthorized transfer. Dkt. 34-5 at 30-34. Section 10 of Appendix A states that if
Robinhood determines that an error occurred, it would "correct any error promptly." *Id.* at 34.
Additionally, Section 10 also states that "[i]f Robinhood decides that there was no error,
Robinhood will send [the customer] a written explanation." *Id.* Plaintiffs allege that "Robinhood
does not keep its promise to fully reimburse customer losses due to unauthorized access." Dkt. 34
¶ 18. Plaintiffs further allege that Robinhood has "either cover[ed] only portions of what
customers lost or refus[ed], with no explanation, to cover any loss whatsoever." *Id.* At this stage
of the proceedings, the Court is not prepared to find that Defendants fully followed the procedure
outlined in Section 10 of Appendix A of the Customer Agreement. *Usher*, 828 F.2d at 561 ("The
trial court may not grant a motion to dismiss for failure to state a claim unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to
relief.") (citation and internal quotation marks omitted).

   Finally, the Court is not persuaded by Defendants' argument that Section 17 of the
Robinhood Customer Agreement undermines any allegation that Robinhood promised to
reimburse account losses.[1] While Section 17 of the Customer Agreement does include language

---

[1] Plaintiffs argue that Defendants have waived the argument regarding the indemnity clause in Section 17 of the Robinhood Customer Agreement. Dkt. 36 at 11. However, the indemnity

4

regarding indemnification in situations where there was "unauthorized access," Appendix A provides contact information in the event of an unauthorized transfer and discusses the steps Robinhood customers should take if the customer "believe[s] that an electronic fund transfer has been made without [the customer's] permission." Dkt. 34-5 at 12-13, 30-34. At the motion to dismiss stage, the Court is not prepared to find that Robinhood cannot be held responsible for any losses customers suffered due to unauthorized access, given (1) the language in Appendix A; and (2) Robinhood's acknowledgment that it may choose not to enforce the indemnity provision against customers who have established losses due to unauthorized activity by third parties.[2] Dkt. 35 at 17 n.2; Dkt. 39 at 7-8.

### b. Plaintiffs Qian and Furtado

Defendants argue that Plaintiffs' allegations that Plaintiffs Qian and Furtado "[were] partially, but not fully, reimbursed by Robinhood for [their] loss[es]" "does not satisfy Rule 8's pleading requirements because it fails to put Robinhood on notice of the specific conduct that forms the basis for Plaintiffs' claims" and does not properly allege that Robinhood breached its reimbursement commitment. Dkt. 35 at 18. Specifically, Defendants contend that they have fully reimbursed Qian and Furtado for their alleged losses due to unauthorized access to their accounts, and Plaintiffs "do not allege what additional amounts they claim Robinhood should have paid them, when and how they requested these additional amounts, if they requested them at all, or why the amounts they admit Robinhood did pay them do not constitute full reimbursement." *Id.* at 18; Dkt. 39 at 8. Additionally, Defendants argue that Plaintiffs cannot state a claim under the CLRA, FAL, and UCL (fraudulent prong) based on this conclusory allegation and "must allege facts demonstrating that Robinhood's challenged representations were false." Dkt. 35 at 19.

Here, Plaintiffs allege that "Robinhood guarantees full reimbursement for losses caused by unauthorized account activity." Dkt. 34 ¶¶ 15, 52-53. In support of this statement, Plaintiffs point

---

argument appeared in Defendants' reply in the previous motion to dismiss (Dkt. 22 at 12; Dkt. 39 at 19) and was addressed, albeit briefly, during the motion to dismiss hearing (Dkt. 31 (Transcript of Motion to Dismiss Hearing) 38:23-40:5) Accordingly, the argument is not waived.
[2] Notwithstanding that in its papers Robinhood's acknowledgment is in the specific context of Plaintiffs Qian and Furtado, the Court's reasoning still applies that Plaintiffs' allegations are sufficient at the motion to dismiss stage.

to the "6 Commitments" (Dkt. 34-3), the Robinhood Customer Agreement (Dkt. 34-4; Dkt. 34-5), and a statement to Bloomberg (Dkt. 34-6). Dkt. 34 ¶ 15. Further, Plaintiffs allege that "Robinhood does not keep its promise to fully reimburse customer losses due to unauthorized access [and] has refused customer requests for reimbursement of funds lost to unauthorized use, either covering only portions of what customers lost or refusing, with no explanation, to cover any loss whatsoever." *Id.* ¶¶ 18, 54. Plaintiffs allege that both Qian and Furtado were "partially, but not fully, reimbursed by Robinhood for [their] loss[es]." *Id.* ¶¶ 29, 30. The Court finds that Plaintiffs' allegations are sufficient to give Defendants notice of the particular misconduct so that they can defend against the charge and not simply deny that they have done anything wrong. Accordingly, Defendants' motion to dismiss Plaintiffs' claims for breach of contract, CLRA, FAL, and the fraudulent prong of the UCL against Defendants is **DENIED** based on these allegations. However, Plaintiffs' claims for UCL under the fraudulent prong, CLRA, and FAL fail as discussed in Section II.B. below.

### 2. Security Measures

Defendants cite to the Court's Previous Order, which stated that certain statements that Robinhood "take[s] privacy and security seriously" and is "[d]edicated to maintaining the highest security standards" fail to state a claim. Dkt. 35 at 19-20 (citing Dkt. 33 at 17). The Court previously stated that the only statement that "may contain actionable, non-puffery statements" is Robinhood's Financial Privacy Notice, which Plaintiffs did not reference in the previous Complaint. *Id.* at 20 (citing Dkt. 33 at 17). Defendants argue that even though the SAC now attaches the Financial Privacy Notice, Plaintiffs do not adequately allege that Robinhood breached the statement related to security and Plaintiffs' allegations are too conclusory to state a claim. *Id.* Specifically, Defendants argue that Plaintiffs do not allege what Section 248.30 requires of Robinhood, how Robinhood's security measures fail to comply with those requirements, and do not plead a breach of a commitment or a misrepresentation by Robinhood. *Id.*

Here, Plaintiffs allege that "Robinhood holds itself out as highly diligent in safeguarding its customers' accounts." Dkt. 34 ¶ 14. In support of this allegation, Plaintiffs reference Robinhood's United States Privacy Policy, which states that "we take privacy and security

6

seriously." *Id.* (citing Dkt. 34-1).  Plaintiffs also reference Robinhood's Financial Privacy Notice, which states: "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings." *Id.* ¶ 14 (citing Dkt. 34-2 at 2).  As Defendants point out, Plaintiffs now appropriately reference the Financial Privacy Notice in their SAC, which the Court finds does contain "specific, non-subjective guarantee[s]." *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *26 (N.D. Cal. Aug. 30, 2017).  In *In re Yahoo!*, the Honorable Lucy H. Koh found that "[a] reasonable consumer could rely on this statement as representing that Defendants did, in fact, use safeguards that complied with federal regulations . . . . [and] a reasonable consumer could rely on this statement as representing that Defendants' safeguards, which were represented to comply with federal regulations, were sufficient to protect users' information from ordinary data security threats." *Id.*  Similar to Judge Koh's conclusion in *In re Yahoo!*, the Court finds that a reasonable consumer could rely on this statement as representing that Defendants' safeguards, which were represented to comply with federal law, were sufficient to protect users' information from ordinary data security threats.  Further, Plaintiffs allege that "[c]ontrary to its representations, Robinhood does not keep its promise to use security measures that comply with federal laws," describing how Robinhood's systems "lack[] simple and almost universal security measures used by other broker-dealer online systems" and "Robinhood fails to verify changes in bank account links and failed to store user credentials in an encrypted format." Dkt. 34 ¶¶ 16-17.  However, while the Court finds that Plaintiffs adequately allege enforceable promises regarding Defendants' security measures, Plaintiffs' claims for UCL under the fraudulent prong, CLRA, and FAL fail as discussed in Section II.B. below.

### B.     Reliance

Defendants contend that Plaintiffs do not adequately allege that they relied on Robinhood's statements regarding reimbursement to customers for account losses due to unauthorized activities and that Robinhood uses security measures that comply with federal law.  Dkt. 35 at 22.  Defendants contend that "Plaintiffs must allege that they actually read or saw the challenged

7

statements to assert claims under the UCL, CLRA, and FAL." *Id.*

Plaintiffs argue that they have adequately alleged that they relied on Robinhood's specific representations to their detriment. Dkt. 36 at 21. Specifically, Plaintiffs contend that they have alleged that "[b]ut for Defendants' misrepresentations and omissions, Plaintiffs would not have used Defendants' products or engaged Defendants' services." *Id.* (citing Dkt. 34 ¶ 101) (emphasis omitted). Further, Plaintiffs argue that their factual allegations "also give rise to the plausible inference that Plaintiffs read or viewed these promises" and that "the Court should draw the plausible inference that, as part of the process of researching Robinhood, exploring its website, and signing up for an account, Plaintiffs read the Customer Agreement, Financial Privacy Notice, and 6 Commitments." *Id.* at 21-22. Plaintiffs further argue that "it would be unrealistic or otherwise unfair to expect a plaintiff to pinpoint the exact representation she relied on amid a sea of representations." *Id.* at 23.

The Court finds that this determination is a close call. The different approaches cited in the Parties' briefs are also reflected in decisions across this District. *Compare In re Yahoo!*, 2017 WL 3727318, at *27 (citing *Perkins v. LinkedIn Corporation*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014)) ("This Court has consistently held that plaintiffs in misrepresentation cases must allege that they actually read the challenged representations in order to state a claim.") (internal quotation marks omitted), *with Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1045 (N.D. Cal. 2014) ("While Plaintiff has not expressly alleged the precise statements or advertisements upon which he has relied, he has alleged sufficient information about the information on which he relied, as well as examples of similar specific statements from the same sources, to give [Defendant] notice of the nature of the alleged misrepresentations at issue.") (emphasis omitted). As a further example, in *In re Oreck*, the Court found that "it would be unfair to require plaintiffs to recall and specify precisely which of the many advertisements they have been saw [sic] were the particular advertisements they relied upon." *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, No. ML 12–2317 CAS (JEMx), 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012) (finding that allegations "that the plaintiffs were exposed to a national advertising campaign that utilized several slightly different advertisements all articulating a

8

common allegedly fraudulent message" were sufficient and plaintiffs "adequately notified defendants of the who, what, when, where and how of the misconduct charged") (internal quotation marks omitted). In that case, the complaint "explain[ed] which type of advertising (infomercial, online, etc.) each plaintiff [] viewed," "identifying a clear common message in the advertising campaign and identifying numerous examples that repeat this message." *Id.*

As demonstrated in each of these cases, allegations of misrepresentation and reliance are necessarily fact specific. However, here Plaintiffs' allegations do not rise to the level seen in *Rasmussen* or *In re Oreck*. Rather, Plaintiffs merely allege that Robinhood has made certain statements "[a]ccording to claims on the company's website" and that Robinhood has a "[l]ibrary" of contract documents. Dkt. 34 ¶ 15; Dkt. 36 at 12. Plaintiffs also allege that "[b]ased on Robinhood's representations, [they] relied on and expected Robinhood to take reasonable care with the information [they] provided Robinhood so that [they] could use the platform and, based on this reliance and expectation, allowed Robinhood direct access to funds in [their] bank account[s] and sensitive personal and financial information." Dkt. 34 ¶¶ 28-30. Plaintiffs do not allege which documents or statements Plaintiffs may have seen while setting up their accounts or what they may have come across while browsing Robinhood's website. While the Court agrees with the reasoning amplified in *In re Oreck* that plaintiffs do not need to "recall and specify precisely" which statements they saw or relied upon, the Court finds that Plaintiffs' allegations are not sufficient. In the opposition, Plaintiffs state that "should the Court be inclined to grant the Motion on this basis, Plaintiffs request leave to amend in order to further elaborate on Plaintiffs' use of Robinhood's website." Dkt. 36 at 25. Accordingly, the Court **GRANTS** Plaintiffs leave to amend the claims for UCL under the fraudulent prong, CLRA, and FAL, because amended allegations may satisfy the balancing requirements of providing sufficient notice to Defendants and the pleading requirements at the motion to dismiss stage.

### C. CRA Claim

In the Previous Order, the Court, granting Defendants' motion to dismiss Plaintiffs' CRA claim, found that "Plaintiffs have not sufficiently alleged when Robinhood actually discovered that the unauthorized access took place." Dkt. 33 at 16. In the instant motion, Defendants argue

9

that Plaintiffs' allegations concerning Robinhood's knowledge of the unauthorized access is both conclusory and inconsistent. Dkt. 35 at 23. Defendants point to paragraph 21 of the SAC, where Plaintiffs allege that Robinhood knew of "the widespread security breach of 2020 . . . in August" and paragraph 66, where Plaintiffs allege that Robinhood knew of the "widespread unauthorized account use as of at least July 2020." *Id.* at 23. Defendants contend that "[t]his inconsistency matters because it obscures the crucial question of when Robinhood knew of each named Plaintiff's alleged account takeover—information necessary to determine whether Robinhood failed to timely notify those named Plaintiffs" and that this "reveal[s] that they have no basis for their conclusory allegations." *Id.* at 23-25. Further, Defendants argue that because Plaintiffs Qian and Furtado allege that their account takeovers occurred in February 2021 and do not allege that their alleged account takeovers resulted from something Robinhood knew about months earlier, Robinhood could not have known about their unauthorized access in July or August 2020. *Id.* at 24.

Plaintiffs state that they plead facts to support a facially plausible claim under the CRA, arguing that the facts alleged in the SAC lead to a reasonable inference that Robinhood's system was breached in summer 2020. Dkt. 36 at 26-27. Further, Plaintiffs argue that there is no inconsistency in Plaintiffs' allegations. *Id.* The Court agrees. In the SAC, Plaintiffs allege that unauthorized users accessed Robinhood customers' accounts in the summer and fall of 2020. Dkt. 34 ¶¶ 4, 19. Plaintiffs also allege that while Robinhood customers saw their accounts being depleted as early as July 2020, Robinhood said and did nothing, only acknowledging "any type of widespread incident" in October 2020. *Id.* ¶¶ 4-5, 21. At the motion to dismiss stage, the Court finds that these allegations are sufficient to suggest when Defendants learned of the breach. Accordingly, Defendants' motion to dismiss Plaintiffs' CRA claim is **DENIED**.

### D. Injuries

Defendants contend that the Court has left two issues unresolved. Dkt. 35 at 26-29. First, Defendants argue that the economic loss rule bars Plaintiffs from recovering for any alleged account losses in tort and that Plaintiffs' alleged account losses are economic losses that they can only recover in contract, if at all. *Id.* at 26. Second, Defendants contend that Plaintiffs' other

alleged damages, which include alleged future loss, alleged lost time, alleged loss of sensitive personal information, and alleged loss of control of Plaintiffs' identity "are not recoverable under any legal theory." *Id.* at 27-28.  Defendants specifically reference Plaintiffs' claims for breach of contract and CRA, arguing that speculative, generic losses are not sufficient.  *Id.* at 28-29.

As the Court reasoned in the Previous Order, "[u]nder the economic loss rule, purely economic losses are not recoverable in tort."  Dkt. 33 at 9 (citing *Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *4 (N.D. Cal. Nov. 11, 2016)).  The Court found that because Plaintiffs do not allege solely economic loss, Plaintiffs are not barred from recovering in tort and that it does not warrant dismissing the negligence claim at this stage.  *Id.*  The Court's reasoning in the Previous Order still applies, and the Court now clarifies that Plaintiffs' alleged economic losses for Robinhood's alleged failure to reimburse Plaintiffs for account losses would only be recoverable in contract.

With regards to the second issue, California courts have indicated that "[s]peculative harm or the mere threat of future harm is insufficient to constitute actual loss."  *Castillo v. Seagate Technology, LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016) (citing *Corona v. Sony Pictures Entertainment, Inc.*, No. 14–CV–09600 RGK (Ex), 2015 WL 3916744, at *3 (C.D. Cal. June 15, 2015)).  Here, Plaintiffs allege that as a result of the breach they have spent hours "attempting to research and remedy the loss and securing [their] other assets and information from further breach."  Dkt. 34 ¶¶ 28-30.  Additionally, Plaintiff Furtado has purchased identity theft protection services.  *Id.* ¶ 30.  "Courts have found that injury by way of costs relating to credit monitoring, identity theft protection, and penalties can sufficiently support a negligence claim."  *Huynh v. Quora, Inc.*, 508 F.Supp.3d 633, 650 (N.D. Cal. 2020) (citing cases where courts have found that allegations of lost time and money constitute cognizable harm) (internal quotation marks omitted).  Plaintiffs also allege that "these unauthorized users obtained Robinhood's customer's sensitive personal and financial information and looted funds."  *See In re Facebook Privacy Litigation*, 572 F. App'x 494 (9th Cir. 2014) (stating that allegations of harm due to the dissemination of personal information "are sufficient to show the element of damages for their breach of contract and fraud claims").   Plaintiffs allege that their harms and losses

include "the need for future expenses and time dedicated to the recovery and protection of further loss." Dkt. 34 ¶¶ 49, 56, 67, 80, 88, 95, 103. Given the allegations and the lost time and expenses Plaintiffs allege that they have already incurred due to the data breach, the Court finds that future expenses and time is not too speculative to constitute cognizable injuries at the pleading stage. Accordingly, Plaintiffs' allegations regarding future expenses and time, lost time, loss of sensitive personal information, and loss of control over Plaintiffs' identity are sufficient to allege cognizable harm. Defendants' motion to dismiss Plaintiffs' claims for relief for alleged non-economic losses is **DENIED**.

### E. Unauthorized Access

Defendants argue that "the new conclusory allegations in Plaintiffs' SAC further reveal that Plaintiffs have no factual basis to allege a breach even occurred." Dkt. 35 at 29. Specifically, Defendants contend that Plaintiffs are "just assuming, without any basis, that there was such a breach in the first place" and that "[i]t is the number of alleged account takeovers that occurred through October that forms the basis for Plaintiffs' speculation that Robinhood suffered a 'widespread security breach.'" *Id.* Defendants argue that Plaintiffs' allegations that Robinhood's unauthorized takeovers were part of an incident that did not become "widespread" until October is implausible given Plaintiffs' speculation that Robinhood knew about the breach in either August or July. *Id.* at 29-30. Defendants conclude that without an adequate allegation of a "widespread security breach," Plaintiffs cannot state a claim for negligence and violations of the CCPA, the constitutional right to privacy, and the unlawful and unfairness prongs of the UCL. *Id.* at 30.

The Court disagrees with Defendants' argument that Plaintiffs' allegations are inconsistent or implausible. In the SAC, Plaintiffs allege that "[f]rom on or before July 22, 2020, until on or about October 5, 2020, Robinhood negligently and illegally allowed unauthorized third-party access to approximately 2,000 customers' personal and financial information, access to the funds customers had deposited into their Robinhood accounts, and control over securities positions customers purchased through Robinhood." Dkt. 34 ¶ 19. As stated in the Previous Order, "at this stage of the proceedings, Plaintiffs' allegations that unauthorized third parties were able to access approximately 2,000 Robinhood customers' accounts and deplete their funds due to Robinhood's

security measures are sufficient." Dkt. 33 at 9 (citing *Usher*, 828 F.2d at 561). Accordingly, the Court finds that Plaintiffs have adequately alleged that a breach occurred and the Court **DENIES** Defendants' motion to dismiss Plaintiffs' claims for negligence and violations of the CCPA, the constitutional right to privacy, and the unlawful and unfairness prongs of the UCL.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss. Specifically, Defendants' motion to dismiss Plaintiffs' claims for breach of contract, negligence, and violations of the CRA, CCPA, the constitutional right to privacy, and unlawful and unfairness prongs of the UCL is **DENIED.** Defendants' motion to dismiss Plaintiffs' claims against Defendants for violations of CLRA, FAL, and the fraudulent prong of the UCL is **GRANTED WITH LEAVE TO AMEND.** Additionally, Defendants' motion to dismiss Plaintiffs' claims for relief for alleged non-economic losses is **DENIED**.

Plaintiffs may file an amended complaint by **September 22, 2021**. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15. Failure to cure the defects identified by this Order will be subject to dismissal with prejudice.

**SO ORDERED.**

Dated: September 8, 2021

SUSAN VAN KEULEN
United States Magistrate Judge