Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDDHARTH MEHTA, KEVIN QIAN, and MICHAEL FURTADO, individually and on behalf of other similarly situated individuals,<br><br>        Plaintiffs,<br><br>vs.<br><br>ROBINHOOD FINANCIAL LLC; ROBINHOOD SECURITIES, LLC; and DOES 1-10<br><br>        Defendants. | Case No.: 21-CV-01013-SVK<br><br><br>PLAINTIFFS' MOTION FOR PRELIMINARLY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:        August 23, 2022<br>Time:        10:00 a.m.<br>Courtroom:  6, 4th Floor<br>Judge:       Hon. Susan van Keulen |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 23, 2022 at 10:00 a.m., or as soon thereafter at the matter may be heard, before the Honorable Susan van Keulen, United States Magistrate Judge, in Courtroom 6, 4th Floor of the San Jose Federal Courthouse, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs Kevin Qian and Michael Furtado ("Plaintiffs") will and do hereby move this Court for an order preliminarily approving the proposed settlement entered into by Plaintiffs and Defendants Robinhood Financial LLC and Robinhood Securities, LLC ("Robinhood"), (collectively, the "Parties").

This Motion is made pursuant to Federal Rule of Civil Procedure 23(e) on the grounds that the proposed Settlement is fair, reasonable, and adequate when viewed against the continued risks of litigation; the proposed Settlement Class meets all criteria for certification for settlement purposes; and the proposed Notice and notice plan are designed to ensure the best practicable notice and compliance with due process.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Settlement Agreement and all exhibits thereto, the Declaration of Elizabeth A. Kramer in Support of Plaintiffs' Motion for Preliminary Approval of Settlement and all exhibits thereto, the Declaration of Steven Weisbrot, all other pleadings and papers on file, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated: July 1, 2022

Julie Erickson
Elizabeth Kramer
Kevin Osborne
Erickson Kramer Osborne, LLP


/s/ *Elizabeth Kramer*
Elizabeth Kramer

Attorneys for Plaintiffs Siddharth Mehta,
Kevin Qian, and Michael Furtado

# **TABLE OF CONTENTS**

Statement of Issues to Be Decided .................................................................................... vii

I.  Introduction ....................................................................................................................1

II. Summary of the Litigation ............................................................................................1

   A.  Factual Allegations ...................................................................................................1

   B.  Litigation History .....................................................................................................2

      1.  Discovery ..........................................................................................................3

      2.  Negotiations & Mediation .................................................................................4

III. The Terms of the Settlement Agreement .......................................................................5

   C.  The Settlement Class ...............................................................................................5

   D.  The Settlement Benefits ..........................................................................................5

      1.  Monetary Remedies ...........................................................................................5

      2.  Credit Monitoring and Identity Theft Protection Services ................................6

      3.  Non-Monetary Benefits .....................................................................................6

      4.  Option for Renewed Review of Claim of Unauthorized Account Access ..........6

   E.  Notice, Notice Plan, and Claims Administration .....................................................7

   F.  The Settlement Administrator ..................................................................................8

   G.  Attorneys' Fees, Costs, and Service Awards............................................................9

   H.  Released Claims .....................................................................................................10

IV. Legal Argument ...........................................................................................................10

   A.  The Settlement Is Likely to Merit Final Approval ................................................11

      1.  Plaintiffs and Counsel Have Adequately Represented the Class ....................11

      2.  The Settlement Resulted from Informed, Arms' Length Negotiations .............12

      3.  The Relief Provided for the Class Is Adequate ...............................................12

      4.  The Settlement Structure Is Fair, Effective, and Reasonable .........................15

      5.  The Settlement Falls Within the Range of Possible Approval .......................18

      6.  Experienced Counsel Recommend Approval....................................................20

      7.  The District's Procedural Guidelines for Preliminary Approval Are Satisfied............20

   B.  The Proposed Settlement Class Should Be Certified .............................................20

      1.  The Class Meets the Requirements of Rule 23(a) ...........................................20

      2.  The Class Meets the Requirements of Rule 23(b)(3) ......................................22

      3.  The Settlement Class Definition Comports with the Class Definition in the Complaint 23

   C.  The Proposed Notice and Notice Program Meet All Applicable Requirements .............23

      4.  The Notice Plan Uses the Best Practicable Means to Reach Class Members ...............23

      5.  The Proposed Notice Adequately Informs Class Members of Their Rights and Options 24

      6.  The Proposed Settlement Administrator Is Qualified and Experienced........................24

   D.  Settlement Class Counsel Should Be Appointed....................................................24

   E.  Schedule .................................................................................................................25

V.  Conclusion....................................................................................................................25

# **TABLE OF AUTHORITIES**

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................22

*Campbell v. Facebook Inc.*,
  2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ..........................................20

*Carlotti v. ASUS Computer Internat'l*,
  2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ...........................................12

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) ........................................................16, 23

*Ebarle v. Lifelock, Inc.*,
  WL 5076203 (N.D. Cal. Sept. 20, 2016) ....................................................19

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ............................................13

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ...............................................15, 16, 22

*In re Bluetooth Headset Products Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................16

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
  2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ..............................................15

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ...........................13, 15, 16, 23

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  21 F.4th 1102 (9th Cir. 2021) .....................................................................19

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ...........................................19

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573, 581 (N.D. Cal. 2015) .......................................................19

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*,
  895 F.3d 597 (9th Cir. 2018) ......................................................................18

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) ....................................passim

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ....................................................................23

*Kent v. Hewlett-Packard Co.*,
  2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) ...................................................21

*Lemus v. H&R Block Enterprises, LLC*,
  2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) ...................................................18

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...........................................................................12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .............................................................................18

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .............................................................................21

*Perkins v. Linkedin Corp.*,
  2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ......................................................19

*Phillips Co. v. Shutts*,
  472 U.S. 797 (1985) ...........................................................................................23

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................................16, 21

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .......................................................................................22

*Vaquero v. Ashley Furniture Indus., Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ...........................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
  U.S. 338 (2011) ..................................................................................................21

**Statutes**

28 U.S.C. § 1332 ..........................................................................................................2

28 U.S.C. § 1441 ..........................................................................................................2

28 U.S.C. § 1446 ..........................................................................................................2

28 U.S.C. § 1453 ..........................................................................................................2

Cal. Bus. & Prof. Code § 17200 ..................................................................................2

Cal. Bus. & Prof. Code § 17500 ..................................................................................2

Cal. Civ. Code § 1750 ..................................................................................................2

Cal. Civ. Code § 1798.150 ......................................................................................2, 14

Cal. Civ. Code § 1798.82 ..................................................................2

Fed. R. Civ. P. 23 ..................................................................passim

**Treatises**

*Newberg on Class Actions* (5th ed.) ..........................................11

**Constitutional Provisions**

Cal. Const., art. I, § 1 ..................................................................2

# STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issues:

1. Whether the proposed Settlement is fair, adequate, and reasonable;

2. Whether the proposed Settlement Class should be certified for settlement purposes;

3. Whether the proposed Notice and notice program are adequately tailored to achieve effective notification to Class Members as to the terms of the Settlement and their rights thereunder;

4. Whether Erickson Kramer Osborne LLP should be appointed as Class Counsel and Plaintiffs Qian and Furtado as Class Representatives; and

5. Whether to enter the Proposed Order Preliminarily Approving the Settlement, directing the issuance of notice, setting forth remaining deadlines, and setting a hearing for final approval of the proposed Settlement.

# I.  <u>INTRODUCTION</u>

Approximately 40,000 Robinhood customers alleged unauthorized users accessed their accounts since 2020. A majority of these events involved no lost funds or unauthorized transactions, and Robinhood compensated those who did lose funds. Still, the victims incurred various expenses and lost time responding to the hacks.

Plaintiffs filed this case in January 2021 alleging negligence, breach of contract, violations of various state consumer privacy laws and related claims. After two rounds of motions on the pleadings, discovery involving scores of records, and an extensive settlement negotiation process lasting months, the Parties have reached a proposed claims-made Settlement that provides make-whole recovery through payment of up to $260 cash from a pool of $500,000 enough to satisfy all valid claims. Moreover, it provides 2 years of credit monitoring and identity theft protection activated immediately upon receipt of notice without the need to file a claim form, providing a maximum value of over $19.5 million should all affected settlement class members accept it. The settlement further requires Robinhood to maintain improved data security and customer service practices. Taken together, these monetary and non-monetary benefits represent a strong recovery when viewed in comparison to what could be achieved through trial, before taking into the account the significant risk, cost, and delay of continued litigation.

# II.  <u>SUMMARY OF THE LITIGATION</u>

## A.  Factual Allegations

Robinhood (composed of Defendants Robinhood Financial LLC and Robinhood Securities, LLC, described collectively as "Robinhood") is a securities trading platform and broker-dealer of investment instruments. Dkt. 34, Second Am. Compl. ("the Complaint"), ¶ 7. It is also the custodian of its customers' sensitive personal and financial information, money, and investments. *Id.* ¶¶ 11-13. Tens of millions of investors allow Robinhood access to one or more of their bank accounts as well as their names, social security numbers, dates of birth, mailing addresses, telephone numbers, bank account numbers, details of their income, bank account balances, financial transaction histories, credit histories, tax information, and credit scores. *Id.*

Plaintiffs allege that Robinhood used substandard security practices and lacked security measures used by other broker-dealer online systems. *Id.* ¶¶ 17, 21. Beginning in the summer of 2020, thousands of Robinhood customer accounts were accessed by unauthorized users. *Id.* ¶¶ 4, 19-20. There was no direct evidence of a breach of Robinhood's computer networks and Robinhood denied any such breach ever occurred. Kramer Decl. ¶ 14. Robinhood sent notifications to its customers encouraging them to set up additional security measures to protect their accounts, but the threat of unauthorized access continued. Dkt. 34, ¶¶ 20-21. Millions of dollars were siphoned form customers' accounts. *Id.* ¶¶ 4, 18. Plaintiffs acknowledged that Robinhood reimbursed the stolen funds but claimed not all losses were returned. *Id.*, ¶¶ 28-30.

## B. Litigation History

On January 8, 2021, Plaintiff Mehta filed a complaint in Santa Clara County Superior Court alleging Robinhood negligently and in violation of California law allowed unauthorized users to access his personal information and loot his account. The complaint further alleged Robinhood committed fraud and breached contractual duties by refusing to return to Mehta the funds he lost to unauthorized activity. The complaint pleaded common law negligence, breach of contract, and violation of the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150), Customer Records Act ("CRA") (Cal. Civ. Code § 1798.82), Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*), the California Constitution's privacy clause (Cal. Const., art. I, § 1), the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq.*). The case was filed as a class action on behalf of Mehta and a class of other Robinhood customers whose accounts were accessed by unauthorized users and a subclass of those who were not reimbursed for loss caused by unauthorized activity. In February 2021, Robinhood removed the case pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453. Dkt. 1. On February 26, 2021, Plaintiff Mehta amended his complaint to state compliance with the notice requirements of various California statutes, add named plaintiffs Kevin Qian and Michael Furtado, and add a subclass of California residents. Dkt. 10.

Robinhood steadfastly denied Plaintiffs' allegations. According to Robinhood, there was no breach of its computer networks. Kramer Decl. ¶ 14. Robinhood claimed that any unauthorized access was the result of customers' failure to safeguard their own login credentials or hackers using information gained from other unrelated sources to access user accounts. *Id.*

From March to September 2021, the Parties engaged in motion practice on the pleadings. Robinhood filed two motions to dismiss (Dkts. 15, 35), both of which were granted in part and denied in part (Dkts. 33, 41). A major question of law presented in these motions was whether Plaintiffs' CCPA claim could survive despite Robinhood's contention that no data breach of its computer systems had occurred. The Court ultimately found the CCPA claim was adequately pleaded. The other surviving claims included negligence and negligence per se; violations of the CRA and constitutional privacy claim; claims under the unlawful and unfair prongs of the UCL; and breach of contract based on the alleged refusal to reimburse funds lost to unauthorized access. Robinhood filed an answer to the complaint on October 15, 2021. Dkt. 47. Plaintiffs' deadline to file a motion for class certification was September 16, 2022.

*1. Discovery*

In addition to the exchange of initial disclosures, Plaintiffs requested and received significant discovery from Robinhood both before and during settlement negotiations. Class Counsel served 36 document requests and 80 requests for admissions. Kramer Decl. ¶ 7. Plaintiffs also noticed the depositions of Defendants pursuant to Fed. R. Civ. Pro. 30(b)(6) on nine topics covering the allegations in the Complaint as well as the depositions of several other Robinhood employees. Discovery issues were highly contested and resulted in numerous telephonic and written meet and confers over the course of the litigation. *Id.*

In response discovery requests, Robinhood produced over 11,000 pages of records and data files. These documents, which consisted of hundreds of technical guides, operating policy and procedure manuals, anonymized customer data files and service correspondence logs, and over 250,000 data points, shed light on, *inter alia*, the nature and function of Robinhood's security practices and business practices during the class period and the size and scope of the potential class. *Id*. at ¶ 8. Class Counsel were ultimately able to negotiate a fully-informed

settlement that allows Class Members to claim a make-whole financial recovery and requires Robinhood to maintain improved security protocols and policies. The Parties were in the process of scheduling depositions when they agreed to go to mediation. Kramer Decl. ¶ 10.

### 2. Negotiations & Mediation

Between March and June 2022, the Parties engaged in lengthy and contentious negotiations to resolve the claims in the action. Kramer Decl. ¶ 19. On March 29, 2022 the Parties participated in a full-day mediation overseen by Bruce Friedman of JAMS. *Id.* Prior to the mediation, the Parties prepared detailed mediation briefs outlining their positions on the strengths and weaknesses of the case as well as damages analyses. *Id.* Class Counsel received and analyzed extensive data from Robinhood relating to the impact of the alleged incidents of unauthorized access to Robinhood customer accounts, including tens of thousands of specific incident information and data concerning the categories of individuals whose accounts were accessed by or claimed to have been accessed by unauthorized users, the amounts looted from these accounts, and the amounts reimbursed by Robinhood. *Id.* Analyzing the spreadsheets produced by Robinhood involved running tens of thousands of calculations using hundreds of thousands of data points to assess potential damages in the case. *Id.*

The Parties negotiated vigorously throughout the full-day mediation, and, while significant progress was made, they were unable to reach an agreement. Kramer Decl. ¶ 21. Following the mediation, the Parties continued to negotiate over the next several weeks through shuttle communications led by Mr. Friedman. *Id.* After the exchange of numerous drafts of a term sheet, the Parties finally reached a settlement in principle on May 4, 2022. *Id.* Over the next eight weeks, the Parties negotiated a complete settlement agreement, along with exhibits of the notice, claim form, and proposed orders. *Id.* These efforts resulted in the Settlement Agreement executed on July 1, 2022. Dkt. 60.[1]

---

[1] All citations to numbered exhibits refer to those filed with the Settlement Agreement. Exhibit 1 is the Notice, Exhibit 2 is the Claim Form, Exhibit 3 is the [Proposed] Preliminary Approval Order, and Exhibit 4 is the [Proposed] Final Order and Judgment.

### III. THE TERMS OF THE SETTLEMENT AGREEMENT

The proposed Settlement provides three main components of benefits to the Settlement Class. First, Robinhood agrees to provide cash payments of up to $260 each to Settlement Class Members who submit a claim, up to a total amount of $500,000. S.A. §§ 2.1-2.3, 2.7. Second, Robinhood agrees to provide two years of credit monitoring and identity theft protection services to those who elect to receive it. *Id.* at § 2.4. Third, Robinhood agrees to maintain improvements to its security protocols and policies to decrease the risk of unauthorized access to its customers' accounts and to respond effectively to instances of potential unauthorized access. *Id.* at § 2.5.

### C. The Settlement Class

The Settlement Agreement provides for a settlement class of "all individuals residing in the United States whose Robinhood accounts were accessed by unauthorized users from January 1, 2020, through April 27, 2022, or who notified Robinhood that their Robinhood accounts were accessed by unauthorized users from January 1, 2020 through April 27, 2022." S.A. § 1.7.

### D. The Settlement Benefits

#### 1. Monetary Remedies

For every Settlement Class Member who submits a claim, the Settlement provides up to $100 for out-of-pocket expenses resulting from the unauthorized access, up to $100 in reimbursement for credit monitoring or identity theft protection services that were purchased based on the unauthorized access, and up to $60 as a payment for time spent responding to the unauthorized access. To apply for an award, Settlement Class Members will be asked to fill out and sign a simple claim form about their losses.

With respect to out-of-pocket losses and lost time, claimants will simply check a box attesting that they suffered at least $100 in qualifying expense (or, if less than $100, the amount actually incurred) and that they lost at least three hours of time due to the unauthorized access (or, if less than three hours, the actual amount of time spent). No documentation is required for either of these options. S.A. §§ 2.1, 2.3; Ex. 2. Claimants seeking reimbursement of up to $100 for credit monitoring or identity theft protection services or products previously purchased will check a box and will also be required to provide documentation. S.A. § 2.2; Ex. 2. Settlement

Class Members may submit a claim for all these options for maximum cash payment of $260 and can elect electronic payment via Venmo, Zelle, or PayPal or request a check sent via U.S. Mail. Ex. 2. Valid claims will be paid in full up to a maximum of $500,000. Should the total amount claimed exceed $500,000, the payments will be decreased on a pro rata basis. S.A. § 2.7.

### 2. Credit Monitoring and Identity Theft Protection Services

In addition to the monetary payments, Robinhood agrees to provide two years of three-bureau credit monitoring service to all class members. S.A. § 2.4. Class Members will receive an activation code with the Notice and have up to 160 days to initiate the service. This process will allow all Settlement Class Members to reap the benefit immediately, without having to file a Claim Form or wait for the Settlement's Effective Date. Those with existing coverage can wait up to 160 days before commencing the two-year period. The service will provide up to $1,000,000 of identity theft insurance coverage, daily monitoring of 50 leading indicators of identity theft, alerts, customer support, fraud resolution, and educational resources. S.A. § 2.4; Kramer Decl. Ex A. Class Counsel estimates the retail value of this service to be $19.99 per month (a total of $480 for the entire two-year term) for each subscriber. Kramer Decl. ¶ 27. Assuming a 5% of the Class elects this benefit, the monetary value conferred on the Settlement Class by virtue of the credit monitoring service would be approximately $975,744. *Id.*

### 3. Non-Monetary Benefits

The Settlement also requires Robinhood to maintain improved policies and procedures to prevent unauthorized access to customer accounts, including: supplemental two-factor authentication; screening for, and prompting users to update, potentially compromised passwords; proactive monitoring of account takeovers; customer awareness campaigns that provide information and tools for better cybersecurity hygiene; and real-time voice support. Robinhood will maintain these new procedures for a minimum of 18 months and Class Counsel will have standing to seek relief from the Court if Robinhood fails to comply. S.A. § 2.5.

### 4. Option for Renewed Review of Claim of Unauthorized Account Access

Finally, the Settlement provides a process by which those Settlement Class Members whose claims of unauthorized account access were denied by Robinhood or who did not respond

to Robinhood's requests for information concerning their claim can re-submit their claim of unauthorized access to Robinhood and request reimbursement. S.A. § 2.6. If, upon additional review, Robinhood determines there was unauthorized account activity, Robinhood will provide the customer the same remedy as if the claim had been accepted in the first instance. *Id.* If Robinhood again determines that no unauthorized account activity occurred, that determination is final. Settlement Class Members will still be eligible for all other benefits of the Settlement regardless of whether they elect the renewed review and regardless of the outcome. *Id.*

### E. Notice, Notice Plan, and Claims Administration

Exhibit 1 to the Settlement Agreement, the proposed Notice, informs Class Members in plain language of the pendency and nature of the case, the Settlement terms, and how to make a claim, opt out, object, comment on the Settlement, and appear at the Final Approval Hearing. Ex. 1. The Notice includes Class Counsel's contact information, the address of the Settlement Website, and the date, time, and place of the Final Approval Hearing. It alerts Class Members that the hearing date may change, and that Class Members should monitor the Settlement website for updates. The Notice also sets forth the claims that Settlement Class Members will release if the Settlement becomes final, as well as all other information required by this District's Procedural Guidelines for Preliminary Approval of Class Action Settlements, 3-5. *Id.*

Under the notice plan, the Settlement Administrator will provide the Summary Notice via email. If any emails are returned undeliverable, the Administrator will attempt delivery to a secondary email (if available) or physical mailing address (if available). S.A. § 3.1; Weisbrot Decl. ¶¶ 15-21. Given that all Class members had an active Robinhood account within the last 2.5 years, the Administrator believes contact information obtained from Robinhood will be accurate. Weisbrot Decl. ¶ 22. For recipients who have not submitted Claim Forms, the Administrator will transmit reminder emails prior to the Claims Deadline, or reminder post cards if no valid email is available. S.A. § 3.1; Weisbrot Decl. ¶ 23.

The Administrator also will create and maintain a Settlement Website containing all relevant information and documents regarding the Settlement (including the Long Form Notice, the Claim Form, the Settlement Agreement, Preliminary Approval documents, and the

Complaint), through which Class Members can submit electronic Claims Forms. S.A. § 3.1; Weisbrot Decl. ¶ 24. The Settlement Website will also contain a toll-free telephone number for the Administrator. Weisbrot Decl. ¶ 25. The Administrator will effect notice in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715. S.A. § 3.1; Weisbrot Decl. ¶ 26.

Class Members must submit their claims online or by mail within 120 days after notice is given. Exs. 1, 2. The Settlement Administrator will decide whether a claim form is valid and complete. Prior to rejecting a claim in whole or in part, the Administrator will communicate with the claimant to give them a reasonable opportunity to remedy any curable deficiencies in the claim submitted. S.A. § 3.5. The Administrator will have discretion to allow late claims so long as doing so does not delay the payment of timely claims. S.A. § 3.4. Settlement payments will be distributed within 30 days after the Settlement becomes effective. S.A. § 3.7.

Class Counsel, in consultation with the Administrator, anticipate a claims rate of 5%, which is in line with or slightly higher than the average rate commonly achieved in recent cases involving cybersecurity or data privacy. Kramer Decl. ¶ 35; Weisbrot Decl. ¶¶ 27-30. Here, the Class will get direct notice linking to an online claim form submission that can be completed in minutes. In addition to the credit monitoring and identity theft protection services, the Settlement offers cash benefits. The process is simple and streamlined, and $160 of the maximum $260 payment can be claimed by attestation, without the requirement to submit supporting documentation. Ex. 2. In short, filing a claim is worth Settlement Class Members' time.

**F. The Settlement Administrator**

The Parties propose Angeion Group ("Angeion") to serve as Settlement Administrator, subject to the Court's approval. Class Counsel solicited competing bids from four settlement administration companies and discussed with them the notice and distribution plans anticipated by the Parties. Kramer Decl. ¶ 31. Following consultation with defense counsel, Class Counsel ultimately selected Angeion, which estimates that the total notice and administration costs for this matter will be approximately $55,000 to $65,000. Weisbrot Decl. ¶ 33. This estimate is reasonable in the context of the proposed Settlement, and includes all costs associated with Class Member data management, providing direct notice via email or U.S. Mail, reminder emails and

post cards, CAFA notification, creation and management of the Settlement Website, claims collection and processing, and payment distribution. *See generally id*. Class Counsel have worked with several nationally recognized administrators and believe that Angeion is well suited for this matter and will provide effective and high-quality services. Kramer Decl. ¶ 31. The costs of notice and administration will be paid separately by Robinhood and without reduction to the $500,000 available to pay Settlement Class Members. S.A. §§ 2.7, 7.2.

### G. Attorneys' Fees, Costs, and Service Awards

In connection with the Settlement, Class Counsel will file a motion for an award of attorneys' fees and reimbursement of litigation expenses not to exceed $500,000. S.A. § 6.1. Robinhood will pay attorneys' fees and litigation expenses separately and without reduction to the $500,000 available to pay Settlement Class Members. *Id.* at §§ 2.7, 6.1. There is no "clear sailing" provision in the Settlement, and the amount sought for payment of attorneys' fees will be consistent with the Ninth Circuit's precedent on fee awards. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Specifically, the motion for attorneys' fees will be based on Class Counsel's lodestar, which will reflect reasonable time spent on the case by capable counsel at reasonable rates approved by district courts within the Ninth Circuit. Kramer Decl. ¶ 41. To date, Class Counsel have expended approximately $538,000 in lodestar and incurred $15,459 in expenses. *Id*. The fee request will also be reasonable in comparison to the total value of the Settlement, which provides monetary payments that will make valid claimants whole, commands meaningful business practice changes, and provides credit monitoring worth $480 per claimant. *Id.*; *see also* Sec. III.B.2, *supra* (discussing value of credit monitoring).

Class Counsel will also request that the Court approve service awards to named Plaintiffs Kevin Qian and Michael Furtado in the amount of $5,000 each, paid separately by Robinhood, to acknowledge the benefits they conferred on the Class. S.A. § 6.2. Mr. Qian and Mr. Furtado assisted counsel with their investigation of the case and preparation of the complaints, participated in discovery, including responding to Rule 34 document requests and Rule 33 interrogatories, and, in connection with the mediation, provided detailed information regarding the alleged unauthorized access to their Robinhood accounts and the associated damages they

PLAINTIFFS' MOTION FOR PRELIMINARILY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

incurred.[2] Kramer Decl. ¶ 42. Mr. Qian and Mr. Furtado also maintained regular contact with Class Counsel to monitor the progress of the litigation and provide feedback on the proposed Settlement. *Id*. Plaintiffs' motion for attorneys' fees and litigation expenses will include the request for service payments, and the factual and legal support for the amount requested.

The Notice informs Class Members of the above anticipated requests and advises that the motion and supporting papers will be posted to the Settlement Website along with instructions for Settlement Class Members to object or comment. Ex. 1. Under the timeline set forth in the proposed preliminary approval order, Settlement Class Members will have at least 35 days to object or comment. Ex. 3. The Settlement is not conditioned on the Court granting an award of attorney's fees or costs, or service awards. S.A. § 6.3.

**H. Released Claims**

In exchange for the benefits described above, Settlement Class Members will release Robinhood from all claims that were or could have been alleged relating to matters alleged in the Litigation based upon the facts alleged in Plaintiffs' Second Amended Complaint. S.A. § 5.1. The Settlement will not release claims arising out of the data security incident that Robinhood publicly announced on November 8, 2021 (which is the subject of separate litigation) and will not release claims relating to the enforcement of the Settlement. *Id.* The claims that will be released if the Settlement becomes effective therefore correspond to the claims alleged by Plaintiffs in the Complaint.

## IV.  **LEGAL ARGUMENT**

Judicial approval of class action settlements typically proceeds through three stages: (i) preliminary approval, where the court conducts an initial fairness review and decides whether to notify the class; (ii) a notice period, where class members are given an opportunity to review the settlement and object or comment; and (iii) a fairness hearing, where the court considers the overall class reaction and makes its final determination. *See* Fed. R. Civ. P. 23; *Newberg on*

---

[2] Plaintiff Siddharth Mehta supports the proposed Settlement but has elected to pursue individual arbitration. Kramer Decl. ¶ 43.

*Class Actions* § 13:1 (5th ed.). This case is now at preliminary approval, where the Court will decide whether the parties should notify class members about the settlement.

That decision requires the Court to make several preliminary determinations: first, whether the proposed settlement is likely to be approved if notice is disseminated to the class; second, whether the proposed settlement class is likely to be certified for purposes of judgment; third, whether the parties' proposed notice plan provides for the best notice practicable under the circumstances and the Settlement Administrator may disseminate notice; and fourth, the Court sets a schedule for notifying the class and considering its reaction to the proposed settlement. Fed. R. Civ. P. 23(c), (e). In the sections that follow, Plaintiffs offer their analysis of each facet of the preliminary approval process, including the Northern District of California's procedural guidelines for the preliminary approval of class action settlements.

## A. The Settlement Is Likely to Merit Final Approval

The 2018 amendments to Rule 23 directed the parties to present proposed class settlements "in terms of a shorter list of core concerns." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a class settlement, include two concerns bearing on procedural fairness and two bearing on substantive fairness. *Id.* The two procedural concerns are whether plaintiffs and their counsel have adequately represented the class and whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A)-(B). The two substantive concerns are whether the relief provided for the class is adequate and whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)-(D).

Plaintiffs submit that review of these four core concerns favors the proposed Settlement and should give the Court confidence that it will be able to grant final approval after Class Members are given an opportunity to express their views.

### 1. Plaintiffs and Counsel Have Adequately Represented the Class

The first procedural concern asks whether the proposed settlement was the result of adequate representation. Fed. R. Civ. P. 23(e)(2)(A). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims. *See id.*,

Adv. Comm. Note. Formal discovery is not required, but counsel should have sufficient information to make informed decisions at the bargaining table. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, Class Counsel were well prepared to negotiate a beneficial settlement for class members. In addition to comprehensive pre-filing investigation, they obtained early discovery that went to the heart of the case and reviewed over 11,000 pages of responsive documents from Robinhood, interviewed more than 85 putative class members, and consulted with a subject matter expert. Kramer Decl. ¶ 9. Class Counsel also subjected the case to vigorous adversarial testing by litigating multiple motions to dismiss. *Id.*

### 2. The Settlement Resulted from Informed, Arms' Length Negotiations

"Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *Carlotti v. ASUS Computer Internat'l*, 2019 WL 6134910, *6 (N.D. Cal. Nov. 19, 2019). Here, the Parties' settlement was reached after contentious negotiations consisting of a full day mediation before Bruce Friedman, several more weeks of post-mediation negotiations with Mr. Friedman, and another eight weeks of negotiations to finalize the terms of the Settlement. Kramer Decl. ¶ 21. Mr. Friedman is a well-respected and experienced neutral. *Id.* at 19. The parties did not discuss attorneys' fees until after reaching agreement on the class settlement. *Id.* Taking into consideration the stage of discovery, dispositive motion practice, the Parties' preparation for the mediation, the length of negotiations, and the involvement of a highly qualified private mediator, the proposed Settlement should be presumed procedurally fair. Fed. R. Civ. P. 23(e)(2)(B), 2018 Adv. Comm. Note.

### 3. The Relief Provided for the Class Is Adequate

The proposed Settlement provides meaningful monetary recovery in addition to important non-monetary relief. The benefits conferred are fair and adequate compared to other similar cases. Robinhood's improved security protocols and policies are meaningful and will help minimize the risk of incidents of unauthorized access to Robinhood customers' accounts and improve Robinhood's response to customers in the event of suspected unauthorized access. The collective relief is even more favorable considering the factors under Rule 23(e)(2)(C).

While Plaintiffs believe their case is strong, ongoing litigation will require Plaintiffs and the Class to take on significant risks of expenses, delays, and negative outcomes. Data breach cases are particularly complex and expensive by nature. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) [hereinafter "*In re Equifax*"] (recognizing the complexity and novelty of issues in data breach class actions). Courts explicitly recognize data breach cases as among the most risky and uncertain of all types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

This case is no exception. It involves tens of thousands of class members, complicated and technical facts, well-funded and motivated defendants, and contested central issues relating to class certification, liability, and damages. Robinhood has made clear that it would oppose class certification on the grounds that the way Class Members' accounts were accessed varied widely, forming a roadblock to class-wide liability. Dkt. 51, Rule 26(f) Report and Joint Case Management Statement, p. 9. According to Robinhood:

> [S]ome putative class members may have suffered unauthorized access to their accounts by using weak passwords that hackers could easily guess or crack. Others may have reused credentials from other websites and companies that suffered breaches, which could have allowed hackers to use those credentials to access their email or Robinhood accounts. Others may have been subject to a phishing or similar related incident. Still others may have had malware installed on their devices by third parties.

*Id*. Robinhood would also argue that, even if a class were certified, it is not liable for the harm at issue because there was no breach of its computer network. Establishing such a breach (or an alternative theory of liability) at trial would require countless hours of costly investigation, discovery, reporting, and testimony from data security and financial industry expert witnesses.

Plaintiffs' statutory claims under California law also face significant risk of dismissal on summary judgment or appeal. Both the CCPA and the CRA statutes are relatively new and remain largely untested in motion to dismiss, summary judgment, and class certification proceedings. The CCPA only became effective January 1, 2020, and there is little by way of appellate review of the statute's limits. Specifically, Robinhood would likely challenge (again)

PLAINTIFFS' MOTION FOR PRELIMINARILY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES

whether the CCPA applies where a defendant's own computer network was not subject to a security breach. Moreover, Robinhood would challenge whether access to a customer's account can be interpreted as an automatic violation of the law when the law requires "unauthorized access *and* exfiltration, theft, or disclosure." Cal. Civ. Code § 1798.150(a)(1) (emphasis added). While Plaintiffs would claim they could prove such conduct, doing so would again require extensive and expensive forensic expert work. Plaintiffs are not aware of any case that has resulted in an award of statutory damages under the CCPA. Kramer Decl. ¶ 50. Plaintiffs' allegation that Robinhood violated the CRA would also present unique and, potentially, costly risks. The breach provision of the CRA, like the CCPA, is relatively untested, as it was only enacted in 2003 and has never been examined by the Ninth Circuit. Unlike the CCPA, the CRA is explicit that it applies only where there is a breach of a defendant's security system resulting in access to customers' personal information.

Finally, even if a class were certified and Plaintiffs established liability, establishing causation and damages both present significant challenges. The theft of the Robinhood customers' funds and personal information was, without dispute, the act of third-party hackers. According to Robinhood, these hackers gained access to the subject accounts through various means, including guessed passwords, reused credentials from other compromised websites, phishing scams, or malware—but not a breach of Robinhood's own network. Indeed, publicly available information shows login credentials for the named Plaintiffs were involved in several notable data breaches. Moreover, Robinhood demonstrated that where it confirmed an incident of unauthorized access, it reimbursed any stolen funds. Kramer Decl. ¶ 18. Any remaining damages would be for lost time and expenses spent recovering from the breach. Establishing such damages across the Class and at trial would again present significant and costly expert witness work. Finally, while Plaintiffs hold the CCPA is sound law, Plaintiffs anticipate that even if they were successful in this claim at trial, such success would be subject to review at the highest level and the very law's validity would come under serious scrutiny. Kramer Decl. ¶ 50.

### b. Attorneys' Fees Will Be Awarded and Paid Separately

Class Counsel will seek attorneys' fees through a separate motion based on their lodestar that will be supported by documentation of their hours, rates, and expenses. Class Counsel's lodestar as of the time of this filing is approximately $538,000. Kramer Decl. ¶ 41. The amount awarded will be paid by Robinhood, without reduction to the amount available to pay Settlement Class Member claims. As such, the fee award will not reduce the benefits to Class Members. The amount and timing of the fee proposal favor approval under Rule 23(e)(2)(C)(iii).

### c. There Are No Undisclosed Side Agreements

No agreements were made in connection with the Settlement aside from the Settlement itself. *See* Fed. R. Civ. P. 23(e)(3).

### 4. The Settlement Structure Is Fair, Effective, and Reasonable

### a. Class Members Are Treated Fairly and Equitably

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016). Because Class Members suffered varying types and degrees of damages, the Settlement provides for a claims-made process by which Settlement Class Members will set forth the categories of damages they incurred (i.e., lost time and/or unreimbursed expenses) and in what amount. In this respect, the Settlement achieves customized recovery to each class member and treats them fairly and equitably. This type of claims process has been approved in numerous other cases involving data breaches and privacy infringements. *See, e.g., In re Equifax*, 2020 WL 256132 at **2, 8; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 4212811, *12 (N.D. Cal. July 22, 2020), *aff'd*, *Schwartz v. Yahoo! Inc.*, No. 20-16633 (9th Cir. June 27, 2022) [hereinafter "*In re Yahoo!*"]; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325, 328, 332 (N.D. Cal. 2018).

### b. The Proposed Distribution of the Settlement Proceeds Is Designed to Be Effective

The claims process is designed to be simple and fast, yet comprehensive enough to ensure fair and equitable treatment based on individual damages. All Settlement Class Members may submit a claim that allows them to elect four benefits, depending on their individual facts.

They can elect all four options with a simple box check. Supporting documentation is required only if the Settlement Class Member seeks the $100 reimbursement for previously purchased credit monitoring and, considering that proof of payment will generally be available in an email or online banking account, the burden remains low. The Claim Form can be completed and submitted online in minutes. *See* Ex. 2; Kramer Decl. ¶ 26. Settlement payments will be distributed within 30 days after the Settlement is effective via convenient electronic payment options (e.g., PayPal, Zelle) or by hard-copy check as requested. S.A. § 3.7; Ex. 2. Courts have approved similar processes in data breach cases (*see, e.g., Cottle v. Plaid Inc.*, 340 F.R.D. 356, 365, 378 (N.D. Cal. 2021); *In re Yahoo!*, *supra*, 2020 WL 4212811 at *12), and the proposed plan here is favorable by comparison to numerous other settlements requiring documentation for analogous cash payments (*see, e.g., In re Anthem*, 327 F.R.D. at 325, 328, 332 (approving claim process requiring supporting documentation for claims of lost time and out-of-pocket expenses); *In re Equifax*, 2020 WL 256132 at **2, 8 (claims process required class members to substantiate with documentation that they suffered fraud, identity theft, or misuse of personal info traceable to data breach in order to receive payment). *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). Claims will be paid in full by Robinhood up to $500,000. S.A. § 2.7. If the total amount payable exceeds $500,000, the claims will be reduced on a pro rata basis. *Id.* Such a scenario is unlikely, however, as Class Counsel negotiated an amount sufficient to pay all anticipated claims. Kramer Decl. ¶ 36.

c. The Possibility of Reversion Is Justified

If the total claims payable is less than $500,000, Robinhood will retain the residual. While reversionary settlements are disfavored as they raise concerns of collusion and unfairness to the class, *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), the inclusion of a reverter is not a death-knell to settlement approval. Rather, it is a prompt for the court to look more closely for evidence of "overt misconduct by the negotiators" or improper incentives of some class members at the expense of others. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). Here, the possibility of reversion is justifiable because Settlement Class

Members who submit a claim will be made whole by their initial settlement payment and because ample evidence supports that the Settlement was the result of arms'-length negotiations.

As a threshold matter, Class Counsel does not expect a high amount of residual. While Class Counsel anticipates a claims rate of 5%, it may be 6-7%, considering the ascertainability of the Class and minimal burden involved with submitting a claim. Kramer Decl. ¶ 38. And while the average payment will likely be $160 (the amount that may be claimed simply by checking boxes on the Claim Form and without supporting documentation), some claims will be paid at the maximum $260. As such, the amount payable will likely come relatively close to reaching the $500,000 and Robinhood will retain a modest amount. Based on the range of anticipated claims rates and claim amounts, Class Counsel estimates that the residual to be retained by Robinhood could range from approximately $16,000 to $174,752. Kramer Decl. ¶ 38.

The possibility of reversion is justifiable because the claims-made structure of the Settlement stands to make whole all Settlement Class Members who submit a valid claim. *Id*. at ¶ 39. Class action settlement payments often represent a fraction of the class members' damages, and, therefore, redistribution of unclaimed funds brings class members closer to a full recovery. Here, however, Settlement Class Members will already be made whole by their initial payment. As explained, Robinhood has reimbursed Class Members' looted funds; thus, the only categories of damages that might realistically be recovered through continued litigation are lost time and unreimbursed expenses. The Class faces serious obstacles in recovering these damages while the Settlement stands to fully rectify them, compensating Settlement Class Members for up to three hours of lost time and up to $100 in unreimbursed expenses (or $260 for those who purchased credit monitoring/identity theft protection services).

Based on their investigation and discussions with many putative Class Members, Class Counsel believe that Class Members rarely spent more than three hours addressing unauthorized access or incurred more than $200 in the type of expenses covered by the Settlement. *Id.* at ¶ 25. In the unlikely event that a Class Member incurred more than the covered amounts, they have the option of opting out of the Settlement and pursuing a relatively consumer-friendly arbitration through FINRA. *Id.* As Settlement Class Members will largely be made whole by the initial

claim payment, Robinhood's retention of any unclaimed funds does not indicate unfairness to the class. *See, e.g., Lemus v. H&R Block Enterprises, LLC*, 2012 WL 3638550, *5 (N.D. Cal. Aug. 22, 2012) (granting final approval of a claims-made settlement with reversion to defendant where settlement represented a fair compromise considering litigation risks).

There is also no concern of collusion or self-dealing here, as the evidence shows the Settlement was the result of arms'-length negotiations following multiple rounds of hard-fought motions to dismiss. Moreover, any award of attorneys' fees will be paid separately and without reduction to the $500,000 available to pay Settlement Class Member claims. Thus, Class Counsel is in no way benefitted by keeping the claims rate low or by the fact that unclaimed amounts are retained by Robinhood. Kramer Decl. ¶ 40. As the Ninth Circuit explained, "[f]or all the factors, considerations, 'subtle signs,' and red flags…the underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). As shown, the settlement is fair and there is no evidence indicating collusion.

### 5. The Settlement Falls Within the Range of Possible Approval

When considering whether the amount of a settlement is fair and adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). "[A] proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Plaintiffs have analyzed the potential class recovery and offer the following explanation of the factors bearing on the amount of the compromise.

Approximately 40,000 Robinhood customers reported some type of unauthorized account access during the Class period. Of those, approximately 63% experienced no unauthorized transactions and lost no funds. Of those who did, all losses were compensated by Robinhood. Kramer Decl. ¶ 18. Thus, the Class suffered no cognizable special damages other than the loss of time spent sorting out the ordeal and possible expenses relating to the re-securing of their private

information. If Plaintiffs were successful in proving the merits of their claims at trial, Plaintiffs estimate that the total maximum value of the claim for lost time would be $60 per Class member, or approximately $2.4 million in the aggregate. This estimate assumes that Plaintiffs would be able to show Class Members spent three hours of their time addressing the alleged hacks at a rate of $20 per hour, which is reasonable based on Class Counsel's investigation. *Id*. at ¶ 46. If Plaintiffs were to also prove they were entitled to recover expenses in the form of credit monitoring and identity theft protection, Plaintiffs estimate that they could recover an additional $480 per Class member, assuming a value of $19.99 per month for a duration of two years.

The proposed Settlement provides the Class with as much as $260 per claimant to compensate for lost time and expenses, and an average minimum of about $12.30 (dividing the $500,000 equally among the 40,656 Class Members). Significantly, all 40,656 Class Members are also eligible to receive credit monitoring services to protect against future identity theft for two years, making a benefit available to the Class worth up to $19.5 million in aggregate (*see* Sec. III.B.2, *supra*) – or, in other words, full dollar-for-dollar recovery. Viewed under this lens, the Settlement provides recovery of special damages of nearly 90% of total potential recovery. Kramer Decl. ¶ 47. This compares favorably with other settlements that have been approved in privacy cases in this district. *See, e.g., In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 581, 588 (N.D. Cal. 2015) (granting final approval of $1.25 million settlement where the class size was estimated to be 800,000, with each claimant receiving $14.81); *Perkins v. Linkedin Corp.*, 2016 WL 613255, at *2, 9 (N.D. Cal. Feb. 16, 2016) (granting final approval of $13 million settlement where the class size was approximately 20.8 million; each claimant received approximately $20); *Ebarle v. Lifelock, Inc.*, 2016 WL 5076203, at *2, 5 (N.D. Cal. Sept. 20, 2016) (granting final approval of $68 million settlement where class members who made claims received approximately $20 plus the amount paid for service, and subclass members received either $19.48 or $39.48); *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11 (N.D. Cal. Mar. 18, 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021) (granting final approval of non-distributable $13 million settlement where the class size was 60 million); *Campbell v. Facebook Inc.*, 2017 WL 3581179,

at *4 (N.D. Cal. Aug. 18, 2017), *aff'd,* 951 F.3d 1106 (9th Cir. 2020) (granting final approval of settlement providing for injunctive relief only and no monetary relief).

Plaintiffs also sought relief under the CCPA. If successful, California Subclass members would be entitled to recover statutory damages of between $100-750 per person, but, in light of Robinhood's conduct in this case, it is reasonable to assume that any award would be at the lowest end of that range. Assuming 15% of the Class members are California residents, the likely possible recovery would be $600,000. However, the path to recovering anything under the CCPA would be highly challenging. *See* Sec. IV.A.3.a, *supra* (explaining litigation risks Plaintiffs face vis-à-vis CCPA claim). Thus, the CCPA claim is of relatively little value even if successful. In light of the above, the Settlement's distribution plan, which treats Settlement Class Members equally regardless of their state of residency, is fair and reasonable.

### 6. Experienced Counsel Recommend Approval

Class Counsel include attorneys who have substantial experience in complex class action litigation, including data privacy cases. Kramer Decl. ¶¶ 54-57. Class Counsel fully endorse the Settlement as fair, reasonable, and adequate. *Id.* at ¶ 51.

### 7. The District's Procedural Guidelines for Preliminary Approval Are Satisfied

In addition to the requirements for settlement approval established by Rule 23(e), the proposed Settlement also satisfies the District's Procedural Guidance for Class Action Settlements. The guidelines are addressed throughout this Motion and supporting papers. *See* Kramer Decl. ¶ 58 (table identifying where guidelines are addressed).

## B. The Proposed Settlement Class Should Be Certified

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. Here, the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court.

### 1. The Class Meets the Requirements of Rule 23(a)

**Numerosity.** The Settlement Class consists of approximately 40,000 individuals, making joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1).

**Commonality.** Plaintiffs' and Class Members' claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For example, Plaintiffs' negligence claims and claims under the CCPA, UCL, and California Constitution turn on the contention that Robinhood implemented sub-standard security protocols and procedures that allowed unauthorized users to gain access to class members' accounts. Dkt. 34, ¶¶ 47, 49, 60, 87, 90-93. Additionally, Plaintiffs' breach of contract claim turns on the common contentions that Robinhood promised yet failed to use certain specific security measures. *Id.*, ¶¶ 52, 54. Each of these contentions depend only on the nature of Robinhood's security protocols, which will be proven using generalized evidence applicable to the entire class. *See In re Yahoo!*, 2020 WL 4212811 at *3 (certifying data breach settlement class where common issues existed as to whether Yahoo! employed sufficient security measures to protect class members' personal information).

**Typicality.** The typicality requirement is also satisfied, as "the unnamed class members have injuries similar to those of the named plaintiffs and the injuries result from the same, injurious course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Here, Plaintiffs' claims are typical of the Settlement Class as they are customers who experienced incidents of unauthorized access to their Robinhood accounts. While Plaintiffs and Class Members allege varying degrees of injuries, each claims harm based on the same conduct. The claims arise from the same nucleus of facts relating to Robinhood's security protocols, pertain to a common defendant, and are based on the same legal theories. Rule 23(a)(3) is satisfied.

**Adequacy.** Plaintiffs are adequate representatives of the Settlement Class, as they actively participated in the litigation and continue to do so. Kramer Decl. ¶ 42. They do not have conflicts with other Class Members as their claims are co-extensive with those of the class, *Kent v. Hewlett-Packard Co.*, 2011 WL 4403717, *1 (N.D. Cal. Sept. 20, 2011), and they have retained experienced counsel to represent the class's interests. *Staton*, 327 F.3d at 956. Class Counsel have decades of experience representing plaintiffs in complex class actions, including other cases involving data privacy and cybersecurity. Kramer Decl. ¶ 57. They also vigorously pursued Plaintiffs' claims, litigating two rounds of motions to dismiss and engaging in discovery.

### 2. The Class Meets the Requirements of Rule 23(b)(3)

**Predominance.** The predominance requirement is satisfied when class members' claims can be proven using common, class-wide evidence rather than evidence that varies from class member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Because Plaintiffs' claims are focused on the nature of Robinhood's security policies and protocols, they are well-suited for class treatment. Robinhood's liability can be established largely, if not entirely, through class-wide evidence. There would be little need for class members to present individualized evidence until the damages phase, and it is well established that the need for individualized findings as to the amount of damages is not enough, to defeat class certification. *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1155 (9th Cir. 2016); *In re Yahoo!, supra*, 2020 WL 4212811 at *7 (court found common questions regarding the nature of Yahoo's security measures predominated); *In re Anthem,* 327 F.R.D. at 312 (the focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile").

Additionally, as Settlement Class members entered into contracts with California choice-of-law provisions covering the asserted claims, there is no risk that variations in state law will predominate over the common questions. *In re Yahoo!*, *supra*, 2020 WL 4212811 at *7.

**Superiority.** Rule 23(b)(3) requires a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Where, as here, a court is deciding the certification question in the proposed class action settlement context, it need not consider manageability issues because "the proposal is that there be no trial;" as such, manageability considerations are no obstacle to certification for purposes of settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Robinhood. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions…permit the plaintiffs to pool claims which would be uneconomical to litigate individually…[In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Resolution of the predominant issues of fact and law via individual actions is impracticable because the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review is too costly. *See Just Film, Inc. v. Buono,* 847 F.3d 1108, 1123 (9th Cir. 2017).

The class device is the superior method of adjudicating consumer claims against Robinhood arising from unauthorized access to customer accounts because it promotes greater efficiency, and no realistic alternative exists. Courts have routinely recognized this in other data breach cases where class-wide settlements have been approved. *See, e.g.*, *In re Yahoo!*, *supra*, 2020 WL 4212811 at *8; *In re Equifax*, 2020 WL 256132 at *45.

### 3. The Settlement Class Definition Comports with the Class Definition in the Complaint

The Settlement Class definition is essentially identical to the class definition in the Complaint, which included "All Robinhood customers whose accounts were accessed by unauthorized users from January 1, 2020, to the present." Dkt. 34. While the Complaint also identified two subclasses (a reimbursement subclass of those who suffered direct losses due to the unauthorized activity; and a California subclass asserting the CCPA claim), those were reasonably eliminated in favor of a single nationwide class since Robinhood reimbursed all verified claims of direct losses and the CCPA claim holds little to no value. *See Cottle*, 340 F.R.D. at 379-80 (noting Ninth Circuit law supports eliminating subclasses in favor of a nationwide class).

### C. The Proposed Notice and Notice Program Meet All Applicable Requirements

### 4. The Notice Plan Uses the Best Practicable Means to Reach Class Members

The federal rules require that before final approval of a settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where certified under Rule 23(b)(3), the notice must also be the

"best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice plan meets these requirements. It provides for direct electronic or mailed notice to the roughly 40,000 Class Members, all of whom can be identified from records. S.A. § 3.1. Moreover, the Settlement Administrator will send reminder emails or postcards in advance of the Claim Form Deadline to noticed Class Members who have not filed a Claim Form. This notice is reasonably calculated to reach all Class Members and apprise them of the Settlement.

### 5. The Proposed Notice Adequately Informs Class Members of Their Rights and Options

In accordance with Rule 23(c)(2)(B) and this District's procedural guidelines, the Notice (Ex. 1) sets forth in clear, concise, and easily understood language all requisite information, including, *inter alia*, the nature of the action; the class definition; claims, issues, or defenses; the binding effect of a class judgment; and all available rights under the Settlement.

### 6. The Proposed Settlement Administrator Is Qualified and Experienced

The proposed settlement administrator, Angeion, has effectively served as the settlement administrator in thousands of complex class actions and mass tort cases, including numerous data breach cases across the country and in this District. Weisbrot Decl. ¶¶ 9-10. Class Counsel propose that Angeion be appointed Settlement Administrator and authorized to disseminate notice pursuant to the terms of the proposed notice plan.

## D. Settlement Class Counsel Should Be Appointed

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically data privacy cases. Kramer Decl. ¶ 57. As described in their

supporting declaration, Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint Erickson Kramer Osborne LLP as Class Counsel.

**E. Schedule**

The next steps in the settlement approval process are to schedule a final approval hearing, notify the Class of the Settlement and hearing, and allow Class Members an opportunity to opt out of the Settlement or object to its terms. The Parties propose the following schedule:

| Event | Date |
|-------|------|
| Settlement Administrator sends Notice to the Settlement Class (the "Notice Date") | Within 21 days after Entry of Preliminary Approval Order |
| Last day for Settlement Class Members to opt out or object to the proposed Settlement | 45 days after the Notice Date |
| Last day for Settlement Class Members to submit Claim Forms | 120 days after the Notice Date |
| Date by which Class Counsel is to file Motion for Final Approval of Settlement and Petition for Award of Attorneys' Fees, Expenses and Service Awards | No later than 45 days prior to the Final Approval Hearing |
| Last day for Class Members to comment on or object to Petition for Award of Attorneys' Fees, Expenses and Service Awards | 35 days after Petition for Award of Attorneys' Fees, Expenses and Service Awards is filed and posted to Settlement Website |
| Final Approval Hearing | TBD |

## V. <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request the Court grant preliminary approval.

Dated this 1st day of July, 2022.            Erickson Kramer Osborne, LLP


                                             */s/ Elizabeth Kramer*
                                             Julie Erickson
                                             Elizabeth Kramer
                                             Kevin Osborne
                                             Attorneys for Siddharth Mehta, Kevin Qian,
                                             and Michael Furtado