Julie Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDDHARTH MEHTA, KEVIN QIAN, and MICHAEL FURTADO, individually and on behalf of other similarly situated individuals,<br><br>      Plaintiffs,<br><br>vs.<br><br>ROBINHOOD FINANCIAL LLC; ROBINHOOD SECURITIES, LLC; and DOES 1-10<br><br>      Defendants. | Case No.: 21-CV-01013-SVK<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:          May 16, 2023<br>Time:          10:00 a.m.<br>Courtroom:  6, 4th Floor<br>Judge:         Hon. Susan van Keulen |

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Susan van Keulen, United States Magistrate Judge, in Courtroom 6, 4th Floor of the San Jose Federal Courthouse, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs Kevin Qian and Michael Furtado ("Plaintiffs") will and do hereby move this Court for an order of final approval of the proposed Settlement entered into by Plaintiffs and Defendants Robinhood Financial LLC and Robinhood Securities, LLC ("Robinhood"), (collectively, the "Parties").

This Motion is made pursuant to Federal Rule of Civil Procedure 23(e) on the grounds that the proposed Settlement is fair, reasonable, and adequate when viewed against the continued risks of litigation; the proposed Settlement Class meets all criteria for certification for settlement purposes; and the Notice and Notice Program ensured the best practicable notice and compliance with due process.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Settlement Agreement and all exhibits thereto, the Declaration of Julie Erickson, the Declaration of Amy Crooks of Angeion Group LLC, and all other pleadings and papers on file, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated: March 17th, 2023        Erickson Kramer Osborne, LLP

                                  /s/ *Julie Erickson*
                                  Julie Erickson
                                  Attorneys for Plaintiffs Siddharth Mehta,
                                  Kevin Qian, and Michael Furtado

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...................................................................vi

I.    INTRODUCTION ......................................................................................................1

II.    SUMMARY OF THE LITIGATION .........................................................................1

    A.   Factual Allegations ...........................................................................................1

    B.   Litigation, Investigation, and Discovery ..........................................................2

    C.   Mediation and Resolution .................................................................................3

III.   THE SETTLEMENT AGREEMENT .........................................................................3

    A.   The Settlement Class .........................................................................................4

    B.   Settlement Benefits ...........................................................................................4

    C.   Attorneys' Fees, Costs, and Service Awards ....................................................5

    D.   The Notice Program ..........................................................................................6

    E.   Class Member Response ....................................................................................7

    F.   Post-Distribution Accounting ...........................................................................8

IV.   LEGAL ARGUMENT ...............................................................................................8

    A.   The Settlement Is Fair, Reasonable, and Adequate ..........................................8

        1.   Rule 23(e)(2)(A): Plaintiffs and Counsel Have Adequately Represented the Class .......9

        2.   Rule 23(e)(2)(B): The Settlement Resulted from Informed, Arms-length Negotiations 10

        3.   Rule 23(e)(2)(C): The Settlement Provides Substantial Relief to the Class .................12

        4.   Rule 23(e)(2)(D): The Settlement Treat Class Members Equitably.............................15

        5.   Reaction of Class Members .........................................................................16

        6.   Notice Program Satisfies Due Process .......................................................16

    B.   The Proposed Settlement Class Should Be Certified ......................................17

        1.   The Class Meets the Requirements of Rule 23(a) ......................................18

        2.   The Class Meets the Requirements of Rule 23(b)(3) .................................19

V.    CONCLUSION ........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ..............................................................................................20

*Carlotti v. ASUS Computer Internat'l*,
    2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .....................................10, 11, 12, 19

*Churchill Village, L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ...........................................................................9, 16

*Custom LED, LLC v. eBay, Inc.*,
    2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ......................................................5

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) .....................................................13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................................19

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .....................................................11

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ...............................................................................5

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ...............................................................5, 16, 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................................11

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,
    2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .......................................................15

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ..............................................13, 16, 20

*In re Fleet/Norstar Sec. Litig.*,
    935 F. Supp. 99 (D.R.I. 1996) ...........................................................................16

*In re Solara Med. Supplies Data Breach Litig.*,
    2022 WL 1174102 (S.D. Cal. Apr. 20, 2022) ................................................16, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ........................................................6

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020) ............................................16, 19, 20

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .................................................................20

*Kent v. Hewlett-Packard Co.*,
    2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) ...............................18

*Lemus v. H&R Block Enterprises, LLC*,
    2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) ...............................12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ...................................................................9

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir. 1996) .....................................................................15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................8, 16

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...................................................................18

*Phillips Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................20

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ..............................................................................19

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) .................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................18

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................2

Cal. Bus. & Prof. Code § 17500 ...................................................................2

Cal. Civ. Code § 1750 .......................................................................................2

Cal. Civ. Code § 1798.150 ...............................................................................2

Cal. Civ. Code § 1798.82 .................................................................................2

Fed. R. Civ. P. 23 ...............................................................................passim

# STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs respectfully ask the Court to rule on the following issues:

1. Whether the terms of the Settlement Agreement are fair, reasonable, and adequate;

2. Whether the Settlement Class should be certified for settlement purposes only;

3. Whether the Notice and Notice Program ensured the best practicable notice and compliance with due process; and

4. Whether to enter a final judgment on the Settlement.

# I. **INTRODUCTION**

Plaintiffs were Robinhood customers who allege their accounts were taken over by unauthorized users. On January 8, 2021, they filed a class action complaint against Robinhood Financial LLC and Robinhood Securities, LLC to recoup losses they attributed to the takeovers.

After two motions to dismiss the complaint, significant discovery review and analysis, and an extensive settlement negotiation process, the Parties reached a proposed Settlement on May 4, 2022.[1] The core components of the Settlement—payments of up to $260 cash and two years of credit monitoring and identity theft protection—were a success. The parties sent notice to approximately 40,000 Class Members identified through Robinhood's records. Three Class Members opted out, none objected, and 2,807 made valid claims, representing a 7 percent claims rate. In addition to these benefits, Robinhood is required under the Settlement to maintain improved data security and customer service practices that benefit all its customers.

The Court preliminarily approved the proposed Settlement on August 29, 2022. Now, with the benefit of Class Members' responses and support, Plaintiffs respectfully request the Court grant final approval of the Settlement, certify the Settlement class for settlement purposes, and appoint Class Counsel and Plaintiffs Qian and Furtado to represent the Settlement Class.

# II. **SUMMARY OF THE LITIGATION**

## A. **Factual Allegations**

On January 8, 2021, Plaintiff Mehta filed a class action complaint in Santa Clara County Superior Court against Defendants Robinhood Financial LLC and Robinhood Securities, LLC (collectively "Robinhood") alleging they negligently and in violation of California law allowed unauthorized users to access his personal information and loot his account. The complaint, brought on behalf of a class of similarly situated Robinhood users, alleges that Robinhood's

---

[1] A more extensive description of the factual and procedural history is included in Plaintiffs' Motion for Preliminary Approval [Dkt. 61 at pp. 1-4] and the Declaration of Elizabeth A. Kramer in support thereof [Dkt. 62 at ¶¶ 3-22]. Additional detail regarding Class Counsel's work is included in Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards and supporting declaration of Julie C. Erickson, filed concurrently herewith.

substandard security practices and failure to timely and properly inform customers of the unauthorized access caused Plaintiff and a class of similarly situated customers harm to their privacy, anxiety and emotional distress, and lost time responding to the hacks. The Complaint also alleges millions of dollars were siphoned from customers' accounts. Following Robinhood's removal of the action to this Court in February 2021 [Dkt.1], Plaintiff Mehta amended the original complaint to add named plaintiffs Kevin Qian and Michael Furtado, a subclass of California residents, and a claim for damages under the California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*). Dkt. 10. Robinhood steadfastly denied Plaintiffs' allegations. According to Robinhood, there was no breach of its computer networks and any unauthorized access was the result of its customers' failure to safeguard their own login credentials or hackers using information gained from other unrelated sources to access user accounts. Erickson Decl. at ¶ 14.

**B. Litigation, Investigation, and Discovery**

Over the period of five months, Plaintiffs sought and received significant discovery from Robinhood, including thousands of pages of records and data including customer data files, service correspondence logs, and over 250,000 data points. Erickson Decl. at ¶ 7-9. Plaintiffs also received informal discovery from Robinhood during the mediation process, responded to Robinhood's discovery requests, and consulted with subject matter experts. *Id*. From March to September 2021, the Parties engaged in motion practice on the pleadings. Robinhood filed two motions to dismiss (Dkts. 15, 35), which were both granted in part and denied in part (Dkts. 33, 41). Importantly, the Court sustained Plaintiffs' primary claims for negligence and negligence per se; violations of the California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150), the California Constitution's privacy clause (Art. I, § 1), and the Customer Records Act ("CRA") (Cal. Civ. Code § 1798.82); claims under the unlawful and unfair prongs of the Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) and for breach of contract. The Court dismissed Plaintiffs' claims under the CLRA, the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and the fraud prong of the UCL. Robinhood

filed an answer to the complaint on October 15, 2021. Dkt. 47. Plaintiffs' deadline to file a motion for class certification was September 16, 2022.

### C. Mediation and Resolution

Between March and June 2022, the Parties engaged in lengthy and contentious arms-length settlement negotiations. Erickson Decl. at ¶ 19. On March 29, 2022, Bruce Friedman of JAMS oversaw the Parties in a full-day mediation where they offered detailed mediation briefs outlining their positions on the strengths and weaknesses of the case and damages analyses. *Id.*, at ¶ 19. The Parties negotiated vigorously throughout day and made significant progress but could not reach an agreement. *Id.*, at ¶ 21. The Parties continued their negotiations over the next several weeks through communications led by Mr. Friedman, eventually reaching a settlement in principle on May 4, 2022. *Id.* Following further serious negotiations about the injunctive relief terms and other details, the Parties executed the final agreement on July 1, 2022. Dkt. 60; Erickson Decl. at ¶ 21.

On July 1, 2022, Plaintiffs moved this Court for preliminary approval of the Settlement. Dkt. 61. On August 29, 2022, the Court preliminarily approved the Settlement, finding it was likely to certify the Settlement class, appointed Plaintiffs Qian and Furtado as class representatives and Erickson Kramer Osborne LLP as Class Counsel, appointed Angeion Group OOC ("Angeion") as notice and settlement administrator, approved the form and manner of notice to the Class, and scheduled all remaining dates and deadlines pertaining to approval of the Settlement, including a final approval hearing. Dkt. 67.

### III. THE SETTLEMENT AGREEMENT

The Settlement Agreement provides monetary and service-oriented remedies for a class of "all individuals residing in the United States whose Robinhood accounts were accessed by unauthorized users from January 1, 2020, through April 27, 2022, or who notified Robinhood that their Robinhood accounts were accessed by unauthorized users from January 1, 2020, through April 27, 2022." Dkt. 60, Settlement Agreement [hereinafter "S.A."], § 1.22.

### A. The Settlement Class

The Court has determined that it will likely certify the following Settlement Class: "all individuals residing in the United States whose Robinhood accounts were accessed by unauthorized users from January 1, 2020, through April 27, 2022, or who notified Robinhood that their Robinhood accounts were accessed by unauthorized users from January 1, 2020, through April 27, 2022." Dkt. 67 at p. 3 (citing S.A. § 1.7).

### B. Settlement Benefits

As more fully set forth in Plaintiffs' Motion for Preliminary Approval [Dkt. 61 at pp. 5-7], the Settlement provides substantial and meaningful monetary and non-monetary relief to the class. Specifically, Robinhood will pay up to $500,000 in cash payments to Class Members. Each class member who submits a valid claim will receive a cash payment ranging from $60 to $260, depending on what categories of damages they claim. S.A., §§ 2.1-2.3, 2.7. The categories of damages Class Members could elect included: (1) up to $60 in lost time (compensated at $20/hour for up to 3 hours); (2) up to $100 in unreimbursed expenses; and (3) up to $100 in reimbursement for previously purchased credit monitoring services. *Id.* In Plaintiffs' Motion for Preliminary Approval, Class Counsel anticipated that 5% of the class would file a claim and that the $500,000 fund would be sufficient to cover all claims in full. Dkt. 61 at p. 17. Thanks to the highly successful notice program, the claims rate exceeded expectations, with approximately 7% of the class submitting valid claims. Declaration of Amy Crooks, ¶ 18. Based on the valid claims received to date, the $500,000 fund is sufficient to pay all valid claims in full. *Id.* (at least $434,080 of the $500,000 will be directly distributed to Class Members).

In addition to the $500,000 fund, Robinhood will provide two years of three-bureau credit monitoring services to all Class Members who request it. S.A. § 2.4. The service will provide up to $1,000,000 of identity theft insurance coverage, daily monitoring of 50 leading indicators of identity theft, alerts, customer support, fraud resolution, and educational resources. S.A. § 2.4; Dkt. 62, Kramer Decl., Ex A. Class Counsel estimates the retail value of this service to be $19.99 per month (a total of $480 for the entire two-year term) for each subscriber. Dkt. 62; Kramer Decl. at ¶ 27.

Robinhood will also implement and maintain, for no less than a period of eighteen months, improved policies and procedures to prevent future unauthorized access to customer accounts. S.A. § 2.5. These include two-factor authentication; screening for and prompting users to update potentially compromised passwords; proactive monitoring of account takeovers; customer awareness campaigns that provide information and tools for better cybersecurity hygiene; and real-time voice support. *Id.* Class Counsel will retain standing to seek relief from the Court if Robinhood fails to comply.

Finally, the Settlement provides a process for Class Members whose previous claims of unauthorized account access were initially denied by Robinhood or those who did not respond to Robinhood's requests for information regarding their claim to re-submit their claim of unauthorized access to Robinhood and request reimbursement. S.A. § 2.6.

In exchange for the benefits described above, Class Members will release Robinhood from all claims that were or could have been alleged relating to matters alleged in the litigation based upon the facts alleged in Plaintiffs' Second Amended Complaint. S.A. § 5.1. The Settlement will not release claims arising out of the data security incident that Robinhood publicly announced on November 8, 2021 (which is the subject of separate litigation). *Id.* The scope of the release corresponds to the claims alleged by Plaintiffs in the complaint and is consistent with governing standards in this Circuit.[2]

### C. Attorneys' Fees, Costs, and Service Awards

In accordance with the terms of the Settlement and in a separate motion filed concurrently herewith, Class Counsel seek an award of attorneys' fees of $484,540 plus the

---

[2] *See e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (approving class settlement release of claims against the relevant entities "related to or arising from any of the facts alleged in any of the Actions"); *Custom LED, LLC v. eBay, Inc.*, 2013 WL 6114379, at *4 (N.D. Cal. Nov. 20, 2013) (approving release of claims against the relevant entities "arising out of or relating in any way to any of the legal, factual, or other allegations made in the Action, or any legal theories that could have been raised based on the allegations of the Action."). *See also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (claims appropriately included in scope of release can include any claim against the relevant entities "based on the identical factual predicate as that underlying the claims in the settled class action").

reimbursement of actual, out-of-pocket litigation expenses of $15,460, both to be paid separately by Robinhood. S.A. § 6.1. The motion for attorneys' fees is based on Counsel's lodestar, reflecting reasonable time spent on the case by capable lawyers at reasonable rates approved by district courts within the Ninth Circuit. Erickson Decl. at ¶ 40. Class Counsel has expended approximately $652,630 in lodestar, meaning the requested fee reflects a negative multiplier (0.74). *Id.* Class Counsel also seeks service awards to Plaintiffs Kevin Qian and Michael Furtado in the amount of $5,000 each for the benefits they conferred onto the class, paid separately by Robinhood. S.A. § 6.2. Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and service awards includes the factual and legal support for the amounts requested.

**D. The Notice Program**

Pursuant to the Court's preliminary approval order and as described below, Angeion has implemented a robust notice program, providing notice to Class Members through multiple direct means (the "Notice Program"). The substance of the notice approved by the Court "provide[s] a summary of the Settlement and clearly explain[s] how Class Members may object to or opt out of the Settlement, as well as how Class Members may address the Court at the final approval hearing." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 672727, at *20 (N.D. Cal. Feb. 16, 2017) ("Notice is satisfactory if it generally describes the terms of the Settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.").

**Direct Email Notice**: On September 19, 2022, Angeion sent direct notice to all 40,656 Class Members by email. Crooks Decl. at ¶ 7. Of these, 36,421 were delivered, accounting for approximately 90% of the Class. *Id.* Angeion is aware of 4,235 email notices that could not be delivered. *Id.*

**Direct Mail Notice**: Beginning on September 19, 2022, Angeion sent mailed notice to all 4,207 Class Members whose notice could not be delivered via email and for whom Angeion received corresponding mailing addresses. *Id.*, at ¶ 10. The mailed notices were sent via the United States Postal Service ("USPS") first class mail, postage prepaid. *Id.* For the 392 mailed notices returned as undeliverable, Angeion performed address verification searches ("skip

trace"), which yielded updated addresses for 223 Class Members. *Id*., at ¶ 13. Angeion re-mailed the notice to the 223 updated addresses. *Id.* Of the re-mailed notices, 16 have been returned by the USPS as undeliverable for a second time. *Id*.

**Reminder Notices**: On December 2, 2022, Angeion caused a reminder notice to be sent via email to the 35,807 Class Members whose initial notice was delivered via email and had not already submitted a Claim Form. Crooks Decl. at ¶ 8. On January 19, 2023, Angeion caused a Credit Monitoring Activation Reminder Email Notice to be sent to the 2,936 known Class Members who had submitted a Claim Form at that time. *Id*., at ¶ 9.

**Settlement Website**: Concurrent with the direct email notice, Angeion established a settlement website (www.RobinhoodAccountTakeoverSettlement.com). Crooks Decl. at ¶ 14. The website contains general information about the Settlement, including answers to frequently asked questions, important dates and deadlines, and copies of important documents. *Id.* The website also contains an online portal where Class Members can complete and submit their claim form. *Id*. As of February 23, 2023, the website has had 696,981 unique visitors and a total of 1,061,290 page views. *Id*., at ¶ 15.

**Toll-Free Hotline**: Separately, Angeion established a toll-free hotline dedicated to the Settlement: 1-844-511-1424. Crooks Decl. at ¶ 16. The hotline—accessible 24 hours a day, 7 days a week—utilizes an interactive voice response system to provide Class Members with responses to frequently asked questions and to provide essential information regarding the Settlement. *Id.* Class Members could also leave a message for the Settlement Administrator to provide updated contact information or ask additional questions. *Id.* As of February 23, 2023, the toll-free number has received 174 calls totaling 695 minutes. *Id.*, at ¶ 17.

In addition to complying with the Court-approved Notice Plan, Angeion provided notice of the Settlement to appropriate federal and state officials under the Class Action Fairness Act ("CAFA"). *See* Crooks Decl. at ¶ 5.

**E. Class Member Response**

The Class had an overwhelmingly favorable response to the Settlement. Importantly, there were <u>no objections</u> and only <u>three opt outs</u>. Crooks Decl. at ¶¶ 21-22. This indicates that

nearly all Class Members reacted positively to the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Additionally, as of March 13, 2023, Angeion received a total of 2,807 valid claims from Class Members, resulting in an approximate 7 percent claims rate. Crooks Decl. at ¶ 18. This percentage exceeds the 5 percent claims rate that Class Counsel and Angeion anticipated. Dkt. 61, Mot. for Preliminary Approval, at p. 15. This highlights the success of the Notice Program and Class Member support for the Settlement. The valid claims are currently approved to receive $434,080 in direct class member payments. Crooks Decl. at ¶ 18. For deficient claims, Angeion caused to be sent a deficiency notice which provides instructions and an opportunity to cure deficient claims by March 30, 2023. *Id.*, at ¶ 19.

Finally, as of March 10, 2023, 442 Class Members elected to receive the two-year credit monitoring and identity-theft protection services offered under the Settlement. Crooks Decl. at ¶ 20.

### F. Post-Distribution Accounting

Plaintiffs will file with the Court (and Angeion will post to the Settlement Website) a post-distribution accounting as provided for under this judicial District's Procedural Guidance for Class Action Settlements and the Court's Preliminary Approval Order. Erickson Decl. at ¶ 56.

## IV. <u>LEGAL ARGUMENT</u>

### A. The Settlement Is Fair, Reasonable, and Adequate

Rule 23(e)(2) directs the parties to present proposed class settlements "in terms of a shorter list of core concerns," resulting in four core concerns–two concerning procedural fairness, and two concerning substantive fairness. Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Notes. The two procedural concerns are whether plaintiffs and their counsel have adequately represented the class and whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A)-(B). The two substantive concerns are whether the relief provided for the

class is adequate and whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)-(D).[3] Plaintiffs submit that review of these four core concerns favors the granting final approval of the proposed Settlement.

### 1. Rule 23(e)(2)(A): Plaintiffs and Counsel Have Adequately Represented the Class

The first procedural concern asks whether the proposed settlement resulted from adequate representation. Fed. R. Civ. P. 23(e)(2)(A). Courts have determined adequate representation through whether a thorough investigation and assessment of the class members' claims occurred. *See id.*, Adv. Comm. Note. This inquiry focuses on the "actual performance of counsel acting on behalf of the class." *See id.*, Adv. Comm. Note. Counsel should have sufficient information to make informed decisions at the bargaining table. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Formal discovery is not required to satisfy having sufficient information. *Id.*

Here, as detailed in Section II.B. above and in Plaintiffs' Motion for Preliminary Approval, the Settlement is a culmination of over one and a half years of hard-fought litigation. A substantial amount of work was dedicated to pre-filing investigation. Class Counsel spent over three months investigating Robinhood's practices and engaged an expert to analyze various aspects of Robinhood's security practices before filing a detailed and comprehensive complaint. *See* Erickson Decl. at ¶ 9. Class Counsel also successfully defended against Robinhood's two rounds of motions to dismiss, securing orders sustaining Plaintiffs' primary claims. *Id.*, at ¶ 5.

---

[3] These considerations reflect factors developed and considered by the federal courts over several decades. *See* Fed. R. Civ. P. 23(e)(2) 2018 Advisory Committee Notes ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal"). In the Ninth Circuit, courts consider the fairness factors set forth in *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), in determining whether to approve a class action settlement. The "*Churchill* factors" include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575. Because the *Churchill* factors substantially overlap with Rule 23(e)(2), they will be addressed, where applicable, below.

In addition to their comprehensive pre-filing investigation, Class Counsel obtained early discovery. They served over 100 requests for production of documents and admissions on Defendants and reviewed over 11,000 pages of responsive documents from Robinhood. Erickson Decl. at ¶¶ 8-9. At the same time, Class Counsel responded to Robinhood's discovery requests to Plaintiffs. *Id*. A number of discovery-related disputes arose over the course of the litigation. Each was highly contested and necessitated numerous written and telephonic meet and confer communications to narrow and reach agreement. *Id*. Class Counsel also interviewed more than 80 putative Class Members and consulted with a subject matter expert. *Id*., at ¶ 9. This information was more than sufficient to enable Class Counsel to negotiate a beneficial resolution for Class Members.

At bottom, Plaintiffs and Class Counsel have more than adequately represented the Class, as their interests are aligned with, and are not antagonistic to, the interests of Class Members. Each Class Representative has cooperated fully with Class Counsel in representing the Class, assisting in drafting the Complaint, staying informed about the case, searching for and providing documents to Class Counsel, and providing relevant information needed to respond to formal discovery. *See* Erickson Decl. at ¶ 41. Class Counsel has vigorously represented the Class throughout the litigation and ultimately obtained significant monetary and injunctive relief. *See id.*, at ¶¶ 5-10. Accordingly, this factor supports final approval.

    *2. Rule 23(e)(2)(B): The Settlement Resulted from Informed, Arms-length Negotiations*

"Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *Carlotti v. ASUS Computer Internat'l*, 2019 WL 6134910, *6 (N.D. Cal. Nov. 19, 2019). Here, the Settlement was reached after contentious, hard-fought negotiations, including a full day mediation before Bruce Friedman, a well-respected and experienced neutral. Erickson Decl. at ¶ 19. Leading up to the mediation, the parties exchanged formal and informal discovery (discussed in more detail above), as well as detailed mediation briefs, including a comprehensive damages analysis prepared by Plaintiffs. *Id*., at ¶ 20. On March 29, 2022, the parties, led by Mr. Friedman, engaged in fierce negotiations during a full day formal mediation. *Id*., at ¶ 21. The mediation was followed by several more weeks of shuttle

negotiations conducted by Mr. Friedman until the parties were finally able to reach an agreement in principle. *Id.* Counsel spent another eight weeks negotiating the terms of the long form settlement agreement, notice, and other relevant details. *Id.*

In light of the above, the proposed Settlement is presumptively fair. *Carlotti*, 2019 WL 6134910, at *6; *see also Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (involvement of a mediator suggested settlement "was not the result of collusion or bad faith by the parties or counsel").

Moreover, the Settlement bears no indicia of collusion. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-48 (9th Cir. 2011) (indicia of collusion include (1) disproportionate attorney fees, (2) clear sailing arrangements, and (3) a reversion of fees not awarded Plaintiffs). Each Class Member who submits a valid claim will receive a direct monetary payment of up to $260 from the Settlement Fund, all Class Members can claim two years of credit monitoring and identity theft protection services, and all Class Members will benefit from the valuable injunctive relief moving forward. The Parties did not discuss attorneys' fees until after reaching a settlement agreement, and the amount of attorneys' fees sought is less than Class Counsel's lodestar. Erickson Decl. at ¶ 40. Thus, the fees requested are proportionate to the monetary relief afforded the Class. Additionally, there is no clear sailing provision in the Settlement Agreement. Finally, while there is reversion here, it is minimal and justified. At the preliminary approval stage, Plaintiffs anticipated a potential reversion of $16,000 to $174,752. Dkt. 61 at pp. 17-18. The Court preliminarily approved the Settlement, finding the agreement, including this range of potential reversion, did not exhibit any signs of collusion or unfairness. Dkt. 67, Preliminary Approval Order, at 2. Based on the claims information to date, the current amount of unclaimed funds that stands to revert to Robinhood is $65,920, which is on the low end of the range anticipated by Plaintiffs. *See* Crooks Decl. at ¶ 18.[4] As discussed more fully in Plaintiffs' Motion for Preliminary Approval, Robinhood's retention of these unclaimed funds does not indicate collusion or unfairness to the Class because (1) the Settlement makes monetary

---

[4] This amount may continue to decrease, as the cure period for deficient claims runs until March 30, 2023. Crooks Decl. at ¶ 19.

payments available to every Settlement Class Member, and (2) Class Members will largely be made whole by their claim payments. Dkt. 61 at pp. 17-18; *see also, e.g.*, *Lemus v. H&R Block Enterprises, LLC*, 2012 WL 3638550, *5 (N.D. Cal. Aug. 22, 2012) (granting final approval of a claims-made settlement with reversion to defendant where settlement represented a fair compromise considering litigation risks). Moreover, any attorneys' fees paid will not affect the $500,000 available to pay Settlement Class Member claims. Therefore, Class Counsel is in no way benefitted by keeping the claims rate low or by the fact that unclaimed amounts are retained by Robinhood. Erickson Decl. at ¶ 40. In fact, the higher-than-expected claims rate (7%) is a testament to the fairness of this Settlement and success of the notice program.

In light of the above, there is no indication of collusion or fraud in the Settlement, or negotiations leading thereto, and none exists. To the contrary, the Settlement is the "product of serious, informed, non-collusive negotiations." *Carlotti*, 2019 WL 6134910, at *9 (quotation omitted).

Finally, Class Counsel include attorneys who have substantial experience in complex class action litigation, including data privacy cases. Erickson Decl. at ¶ 51-55. Class Counsel fully endorse the Settlement as fair, reasonable, and adequate to the Settlement Class. *Id.*, at ¶ 46.

### 3. Rule 23(e)(2)(C): The Settlement Provides Substantial Relief to the Class

The Settlement will provide $500,000 to a group of approximately 40,000 Class Members through direct cash payments of $60 to $260 and two years of credit monitoring and identity theft protection. Additionally, the Settlement requires Robinhood to improve security protocols and policies. The monetary and non-monetary relief is significant as it helps to remedy past loss and will help minimize the risk of future harm. The benefits conferred are fair and adequate when compared to other similar cases. Taken together, these monetary and non-monetary benefits represent a strong recovery when viewed in comparison to what could be achieved through trial, even before taking into the account the significant risk, cost, and delay of continued litigation. The collective relief is even more favorable considering the factors under Rule 23(e)(2)(C).

Ongoing litigation will require Plaintiffs and the Class to take on significant risks of expenses, delays, and negative outcomes. Data breach cases are particularly complex and expensive. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) [hereinafter "*In re Equifax*"] (recognizing the complexity and novelty of issues in data breach class actions). Courts explicitly recognize data breach cases as among the riskiest and most uncertain types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Even successful litigation would take years and incur large financial costs. Cases such as this one require numerous expert reports and costly depositions. While Plaintiffs believe their case is strong, this case involves tens of thousands of Class Members, complicated and technical facts, well-funded and motivated defendants, and contested central issues relating to class certification, liability, and damages.

In addition to the technical nature of the case, Plaintiffs' statutory claims under California law also face a high risk of dismissal on summary judgment or appeal due to the CCPA and the CRA statutes being relatively new and largely untested in motion to dismiss, summary judgment, and class certification proceedings. With the CCPA only becoming effective in the beginning of 2020, Plaintiffs are unaware of any case resulting in an award of statutory damages under the CCPA. Erickson Decl. at ¶ 48. Plaintiffs' allegation that Robinhood violated the CRA would also present unique and potentially costly risks. The breach provision of the CRA was only enacted in 2003 and has yet to be examined by the Ninth Circuit. Finally, while the Plaintiffs hold the CCPA is sound law, Plaintiffs anticipate that even if they were successful in this claim at trial, such success would be subject to review at the highest level, and the very law's validity could come under significant scrutiny. *Id.*

Conversely, the Settlement Agreement offers a real and substantial remedy for the Class Members. All Class Members had the opportunity to claim nearly all the relief they could have achieved at trial. *See* Dkt. 61 at p. 26 (explaining how the Settlement provides recovery of 90-100 percent of the total potential recovery). This relief is provided through a streamlined

procedure while avoiding the risk and delay of trial. All Class Members are also eligible to receive credit monitoring, providing them a remedy that fairly, reasonably, and adequately protects against future damages due to the alleged unauthorized access. Finally, the changes to Robinhood's security practices guards against the risk of future incidents of unauthorized access. Analogized to other settlements of privacy cases in this district that have received approval, this Settlement compares favorably. *See id.* (collecting cases).

The Settlement is a prudent course in view of these high risks. Given that all Class Members are eligible to elect a cash payment <u>and</u> credit monitoring, the Settlement provides benefits that address all potential harms of unauthorized access without the significant risk of continued litigation.

      b.  <u>The Proposed Distribution of the Settlement Proceeds Is Designed to Be Effective</u>

Rule 23(e)(2)(C)(ii) instructs courts take into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, Advisory Comm. Note to 2018 amendment.

Here, the claims process is designed to be simple, fast, and comprehensive so as to ensure fair and equitable treatment based on individual damages. All Class Members may submit a claim online or in hard copy in a matter of minutes. Erickson Decl. at ¶ 33. They can elect up to three categories of damages by simply checking the corresponding box. Supporting documentation is only required if the Settlement Class Member seeks the $100 reimbursement for previously purchased credit monitoring. All claim forms are being processed by Angeion, an experienced and nationally recognized class action administration firm. Erickson Decl. at ¶ 31. Deficient claims have been identified and have been given the opportunity to cure the defects. Crooks Decl. at ¶ 19. Settlement payments will be distributed within 30 days after the Settlement is effective via convenient electronic payment options (e.g., PayPal, Zelle) or by hard copy check

as requested. S.A. § 3.7; Dkt. 62, Ex. 2. Additionally, all Class Members were provided a unique code in the Notice, which allows them to activate their credit monitoring service. The coverage of the service begins upon activation so as to provide immediate protection without delay. *See* Crooks Decl., Ex. 2 at 1.

The methods for distributing the components of relief under the Settlement are reasonable. *See also* Dkt. 61 at p. 22 (collecting cases that have approved similar claims processes in data breach cases).

### c. The Proposed Attorney Fee Award Is Reasonable

The terms of any proposed attorneys' fees award, including the timing of payment, is a factor requiring analysis under Fed. R. Civ. P. 23(e)(2)(C). As set forth in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, filed concurrently, Class Counsel is seeking attorneys' fees and costs in the total amount of $500,000. Class Counsel's fee request is based on their lodestar that is supported by documentation of their reasonable hours and rates and is presumptively reasonable. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996) ("There is a strong presumption that the lodestar figure represents a reasonable fee.") The amount awarded will be paid by Robinhood without reduction to the amount available to pay Settlement Class Member claims. The amount and timing of the fee proposal favor approval under Rule 23(e)(2)(C)(iii).

### d. There Are No Undisclosed Side Agreements

No agreements were made in connection with the Settlement aside from the Settlement itself. *See* Fed. R. Civ. P. 23(e)(3).

### 4. Rule 23(e)(2)(D): The Settlement Treat Class Members Equitably

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016). Here, Class Members suffered varying types and degrees of damages, and the Settlement provides for a claims-made process by which Class Members will provide for the damages they incurred (i.e., lost time and/or unreimbursed expenses) and in what amount. This system allows for Class Members to choose their degree of

engagement within the settlement process based on the degree and type of damages they suffered. Numerous other cases involving data breaches and privacy infringements have obtained approval using similar settlement schemes. *See, e.g., In re Equifax*, 2020 WL 256132 at **2, 8; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 4212811, *12 (N.D. Cal. July 22, 2020), *aff'd, Schwartz v. Yahoo! Inc.*, No. 20-16633 (9th Cir. June 27, 2022) [hereinafter "*In re Yahoo!*"]; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325, 328, 332 (N.D. Cal. 2018); *In re Solara Med. Supplies Data Breach Litig.*, 2022 WL 1174102, at *5 (S.D. Cal. Apr. 20, 2022).

### 5. Reaction of Class Members

The Court should consider the reaction to the proposed settlement of class members when determining the Settlement's fairness. *Churchill Vill.*, 361 F.3d at 575. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

Here, the Notice program was highly effective, reaching 95.5 percent of the 40,656 Class Members. Crooks Decl. at ¶¶ 7, 10-13. An impressive 7 percent of the Class filed claims and 442 Class Members elected to receive the credit monitoring service. *Id.*, at ¶¶ 18, 20. As of February 23, 2023, only 3 requests for exclusion were received and no objections to the Settlement have been filed. *Id.*, at ¶¶ 21-22. This is a highly favorable response.

### 6. Notice Program Satisfies Due Process

Before a class settlement is finally approved, the federal rules require that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice plan meets these requirements. Following the Court's approval of the notice plan, on September 19, 2022, Angeion, sent the summary notice via email to 40,656

preidentified emails. Crooks Decl. at ¶ 7. Of the pre-identified emails, only 4,235 were directed to invalid email address. *Id.* Angeion then sent Notice to these Class Members via USPA First-Class mail after processing the addresses through the USPS Notice of Change of Address ("NCOA") database. *Id.*, at ¶ 10-11. After skip tracing, only 16 notices (less than 0.1 percent of the Class Members) were ultimately undeliverable. *Id.*, at ¶ 12, 13. Angeion also established a website dedicated to this Settlement containing the Long Form Notice, Claim Form, Settlement Agreement, Order Granting Preliminary Approval, a "Frequently Asked Questions" page and other documents pertaining to the Settlement. *Id.*, at ¶ 14. The Settlement website has had nearly 700,000 unique visitors and over 1 million page views. *Id.* Finally, Angeion created a toll-free hotline for the Settlement with an interactive voice response ("IVR") system and a function for Class Members to leave a message for the Settlement Administrator, available 24 hours a day, 7 days a week. *Id.*, at ¶ 16.

As of March 13, 2023, Angeion has received 2,807 valid claims. *Id.*, at ¶ 18. This means that claims have been submitted by approximately 7 percent of the Class, which exceeds the 5 percent claims rate Class Counsel anticipated and exceeds claims rates in other data breach settlements. *See* Dkt. 61 at p. 15. The claims rate is evidence that the Notice Plan was effective and successful.

The Notice Plan represents the best notice practicable. It was reviewed and analyzed to ensure it meets the requisite due process requirements. Erickson Decl. at ¶ 42. Copies of all the notice documents are attached as exhibits to the Crooks Declaration; they are clear and concise, and directly apprise Class Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23(c)(2)(B); *see* Crooks Decl., Exs. B-G. The Notice Plan is consistent with, and exceeds, other similar court-approved notice plans, the requirements of Fed. Civ. P. 23(c)(2)(B), and the Federal Judicial Center ("FJC") guidelines for adequate notice.

## B. The Proposed Settlement Class Should Be Certified

In preliminarily approving the Settlement, the Court found it will likely certify the Class pursuant to Rules 23(a) and 23(b)(3). Dkt. 67 at p. 3. Since that time, nothing has changed. Certification of the Class for purposes of settlement is now warranted.

*1. The Class Meets the Requirements of Rule 23(a)*

As the Court previously determined, Rule 23(a) is readily satisfied. *Id.*, at 3.

**Numerosity.** The Settlement Class consists of 40,656 individuals, making joinder of all Class Members impracticable. Fed. R. Civ. P. 23(a)(1).

**Commonality.** Plaintiffs' and Class Members' claims depend upon common contentions of fact and law that the Court could resolve for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For example, Plaintiffs' negligence claims and claims under the CCPA, UCL, and California Constitution turn on the contention that Robinhood implemented sub-standard security protocols and procedures that allowed unauthorized users to access Class Members' accounts, and Plaintiffs' breach of contract claim turns on the common contentions that Robinhood promised yet failed to use those specific security measures. Dkt. 34 at ¶¶ 47, 49, 52, 54, 60, 87, 90-93. These contentions all solely depend on the nature of Robinhood's security protocols, which will be proven using generalized evidence applicable to the entire class. *See In re Yahoo!*, 2020 WL 4212811 at *3 (certifying data breach settlement class where common issues existed as to whether Yahoo! employed sufficient security measures to protect Class Members' personal information).

**Typicality.** The typicality requirement of is also satisfied, as "the unnamed class members have injuries similar to those of the named plaintiffs and the injuries result from the same, injurious course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Plaintiffs are customers who allege varying degrees of injuries due to unauthorized access to their Robinhood accounts, but each claim's exposure arises from the same nucleus of facts relating to Robinhood's security protocols, a common defendant, and basis in the same legal theories. Therefore, Plaintiffs' claims are typical, satisfying Rule 23(a)(3).

**Adequacy.** Plaintiffs are adequate representatives of the class, as they have no conflictions of interest with other Class Members as their claims are co-extensive with those of the class, *Kent v. Hewlett-Packard Co.*, 2011 WL 4403717, *1 (N.D. Cal. Sept. 20, 2011), and they have retained experienced counsel to represent the class's interests. *Staton v. Boeing Co.*, 327 F.3d 938, 956 (9th Cir. 2003). Class Counsel has decades of experience representing

plaintiffs in complex class actions, including cases involving data privacy and cybersecurity, and has vigorously pursued Plaintiffs' claims, litigating two rounds of motions to dismiss and engaging in extensive discovery. Erickson Decl. at ¶ 5. The Settlement before the Court is a direct product of Plaintiffs' willingness to advocate not only for themselves but for others who suffered similar harms.

### 2. The Class Meets the Requirements of Rule 23(b)(3)

The Settlement Class also satisfies Rule 23(b)(3) because (1) questions of law or fact common to class members predominate over questions affecting only individuals, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3). "Certification under Rule 23(b)(3) is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" *Carlotti*, 2019 WL 6134910, at *18 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

**Predominance.** The predominance requirement is satisfied when class members' claims can be proven using common, class-wide evidence rather than evidence that varies from class member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Here, Plaintiffs' case is premised on the nature of Robinhood's security policies and protocols. Robinhood's liability can mainly be established, if not entirely, through class-wide evidence. There is little need for Class Members to present individualized evidence until the damages phase, and it is well established that the need for individualized findings regarding the amount of damages is not enough to defeat class certification. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016); *In re Yahoo!*, *supra*, 2020 WL 4212811 at *7 (court found common questions regarding the nature of Yahoo's security measures predominated); *In re Anthem,* 327 F.R.D. at 312 (the focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile"). Therefore, the class is well-suited for class treatment.

Additionally, as Class Members entered contracts with California choice-of-law provisions covering the asserted claims, there is no risk that variations in state law will predominate over the common questions. *In re Yahoo!*, *supra*, 2020 WL 4212811 at *7.

**Superiority.** Rule 23(b)(3) requires a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Where a court is deciding the certification question in the proposed class action settlement context, it need not consider manageability issues because "the proposal is that there be no trial;" as such, manageability considerations are no obstacle to certification for purposes of settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Robinhood. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions…permit the plaintiffs to pool claims which would be uneconomical to litigate individually… [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Individual action in this case is impracticable because the amount in dispute for individual Class Members is too nominal, the technical issues involved are too complex, and the required expert testimony and document review is too costly. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). "The class action method has become a common method of adjudicating claims arising out of data breaches." *In re Solara Med. Supplies Data Breach Litig.*, 2022 WL 1174102, at *5 (S.D. Cal. Apr. 20, 2022). Courts have routinely recognized and approved this process in other data breach cases where class-wide settlements. *See, e.g.*, *In re Yahoo!*, *supra*, 2020 WL 4212811 at *8; *In re Equifax,* 2020 WL 256132 at *45. The absence of objections and active participation of Class Members in the claims process confirm the interest of the Class Members in seeing the claims process proceed to a conclusion.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request the Court enter an order: (1) granting final certification of the proposed Settlement Class; (2) granting final approval of the proposed Settlement; and (3) finding that notice has been conducted in accordance with the Court-approved notice plan and due process.

Dated this 17th day of March 2023          Erickson Kramer Osborne, LLP

                                          /s/ Julie Erickson
                                          Julie Erickson
                                          Attorneys for Siddharth Mehta, Kevin Qian,
                                          and Michael Furtado

**<u>ATTESTATION</u>**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

*/s/ Elizabeth A. Kramer*
Elizabeth A. Kramer