UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIDDHARTH MEHTA,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, et al.,<br><br>Defendants. | Case No. 21-cv-01013-SVK<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEES**<br><br>Re: Dkt. Nos. 68, 71, 77 |

Following the Court's preliminary approval, notice to prospective class members, and a fairness hearing, the Court now considers Plaintiffs' unopposed Motion for Final Approval of the Class Action Settlement. Dkts. 67, 68, 71. The proposed class settlement totals $500,000 (the "Aggregate Claim Amount" or "ACA") and includes up to $100 per class member for out-of-pocket expenses resulting from unauthorized access to their accounts, up to $100 per class member for reimbursement of money paid for credit monitoring or identity theft protection products or services, and up to $60 per class member for lost time resulting from unauthorized access. Dkt. 60 ("Settlement Agreement") ¶¶ 2.1-2.3.[1] In addition, Defendants Robinhood Financial LLC and Robinhood Securities, LLC (together, "Robinhood") will pay for two years of three-bureau credit monitoring for each class member who requests it. *Id.* ¶ 2.4. No objections to the settlement have been filed.

Also before the Court is Plaintiffs' unopposed motion for attorneys' fees totaling $484,540, for reimbursement of litigation expenses totaling $15,460, and for service awards of $5,000 each to class representatives Kevin Qian and Michael Furtado. Dkt. 71 at 1. Robinhood will pay these sums separately and not out of the Aggregate Claim Amount. Dkt. 67

---

[1] Unless otherwise specified, all capitalized terms used in this Order have the meaning as defined in the Settlement Agreement.

("Preliminary Approval Order") ¶¶ 7(d), 20; Settlement Agreement ¶¶ 6.1-6.2.

The Court has considered the Parties' submissions, the relevant legal authorities, the record in this case, and the arguments presented at the final fairness hearing. Due and adequate notice having been given of the settlement, as required by the Preliminary Approval Order (¶¶ 8-17), the Court having considered all papers filed and proceedings conducted herein, and good cause appearing therefor, the Court **GRANTS** the motion for final approval of the Settlement Agreement. The Court also **GRANTS** the motion for attorneys' fees and awards the requested amounts in full.

## I. BACKGROUND

### A. Factual Background

Robinhood is a securities trading platform and broker-dealer of investment instruments. Dkt. 34 ("Second Amended Complaint" or "SAC") ¶ 7. In that capacity, it is the custodian of its customers' sensitive personal and financial information, money, and investments, including social security numbers, bank account numbers, credit histories, and tax information. *Id.* ¶¶ 11-13. Unauthorized users gained access to thousands of Robinhood customers' accounts beginning in the summer of 2020. *Id.* ¶¶ 4, 19-20. Although there was no direct evidence of a breach of Robinhood's computer networks, and Robinhood denied that any such breach had occurred, Robinhood notified its customers that they should consider setting up additional security measures to protect their accounts. SAC ¶¶ 20-21; Dkt. 62 ("Kramer Decl.") ¶ 14. Nevertheless, millions were stolen from Robinhood customers' accounts. SAC ¶¶ 4, 18. Plaintiffs claim that Robinhood has not fully reimbursed all customers who suffered losses. *Id.* ¶¶ 28-30.

### B. Relevant Procedural History

Because the procedural history in this case spans two years, the Court only summarizes those rulings relevant to the disposition of the pending motions. Plaintiff Siddharth Mehta filed this putative class action in Santa Clara County Superior Court on January 8, 2021, alleging negligence, breach of contract, and violation of the following statutes: (1) California Consumer Privacy Act ("CCPA") (Cal. Civ. Code § 1798.150); (2) Customer Records Act ("CRA") (Cal. Civ. Code § 1750, *et seq.*); (3) California Constitution's privacy clause (Cal. Const., art. I, § 1); (4)

California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq.*); and (5) False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500, *et seq.*). Dkt. 1, Ex. A. Plaintiff filed a first amended complaint on February 26, 2021 to state compliance with the notice requirements of several California statutes, add named plaintiffs Kevin Qian and Michael Furtado, and add a subclass of California residents. Dkt. 10 ("First Amended Complaint" or "FAC").

Robinhood moved to dismiss the FAC, which the Court granted in part and denied in part. Dkts. 15, 33. Plaintiffs filed the operative SAC on May 20, 2021. Dkt. 34. Robinhood also moved to dismiss the SAC, which the Court again granted in part and denied in part. Dkts. 35, 41. Specifically, the Court dismissed Plaintiffs CLRA, FAL and the fraudulent prong of the UCL with leave to amend. Dkt. 41 at 13. Plaintiffs did not file a third amended complaint curing the defects the Court had identified by the identified deadline, and those claims, accordingly, were dismissed with prejudice. *Id.* Robinhood filed its answer on October 15, 2021. Dkt. 47.

While the motion practice was ongoing, the Parties engaged in discovery and attended one mediation session with Bruce Friedman of JAMS on March 29, 2022. Dkt. 70 ("Erickson Decl.") ¶¶ 7-8, 10, 19. The Parties did not reach a settlement at that time but continued to negotiate an agreement. *Id.* ¶ 21. On May 4, 2022, the Parties notified the Court that they had reached a settlement [Dkt. 56], which they executed on July 1, 2022 [Dkt. 60]. That same day, Plaintiffs filed an unopposed motion for preliminary approval of the Settlement Agreement. Dkts. 61-64. The motion outlined the key components of the settlement as follows: an Aggregate Claim Amount of $500,000, from which each class member submitting a claim could recover up to $260, credit monitoring and identity theft protection services for each class member who elects to receive it, Class Counsel's fees and expenses of up to $500,000 to be paid separately from the ACA, and $5,000 for the two class representatives, Plaintiffs Xian and Furtado. Dkts. 60-61. On August 29, 2022, the Court issued the Preliminary Approval Order without modification, as the notice provisions ensured that the class would receive proper notice and have adequate time to file objections. Dkt. 67. Accordingly, the Court issued an order (1) preliminarily approving the Settlement Agreement; (2) preliminarily certifying the proposed settlement class; (3) appointing Plaintiffs Xian and Furtado as class representatives; (4) designating Erickson Kramer Osborne

1  LLP as Class Counsel; (5) appointing Angeion Group ("Angeion"), a well-known, independent
2  claims administrator, to administer the settlement; (6) approving the form of the notice of
3  settlement and claim form and delivery of such; and (7) scheduling a fairness hearing for May 16,
4  2023. *Id.*

In accordance with the Court's Preliminary Approval Order, Angeion, the class action settlement administrator, provided notice to the 40,656 class members via email and first class mail (where email could not be delivered) on September 19, 2022. Dkt. 76 ("Crooks Decl.") ¶¶ 7, 10. On December 2, 2022, Angeion also emailed reminder notices to those 35,807 class members whose initial notice had been delivered but who had not submitted a claim form. *Id.* ¶ 8. Angeion similarly sent a Credit Monitoring Activation Reminder Email Notice on January 19, 2023, to the 2,936 class members who had submitted a claim form. *Id.* ¶ 9. Angeion received a total of 3,075 valid claims, which are approved to receive $475,362 in settlement awards. *Id.* ¶ 18. Additionally, at least 442 class members have elected to receive the two-year credit monitoring and identity-theft protection services offered under the Settlement Agreement. *Id.* ¶ 20.

Under the Court's Preliminary Approval Order, written objections to the settlement were due by November 3, 2022. *See* Dkt. 67 at 7; Crooks Decl. ¶ 22. No written objections were lodged either before or after the November 3, 2022 deadline. Dkt. 68 at 7; Crooks Decl. ¶ 22. Also pursuant to the Court's Preliminary Approval Order, the Parties filed the instant Motion for Final Approval of Class Action Settlement [Dkt. 68] and Motion for Attorneys' Fees [Dkt. 71].

The Court held a fairness hearing on May 16, 2023, pursuant to Federal Rule of Civil Procedure 23(e)(2), at which all Parties appeared. Dkt. 82 ("Fairness Hearing"). The Parties confirmed that Angeion had received no written objections by November 3, 2022. *Id.* Based on the moving papers, which are unopposed, and the representations of counsel at the hearing, as stated on the record, the Court found the final proposed settlement fair and reasonable. The Court likewise approved the requested attorneys' fees as appropriate in light of the lengthy procedural history of this case.

## II.  LEGAL STANDARD

Settlement agreements that will bind absent class members require judicial approval. Fed.

4

R. Civ. Proc. 23(e)(2).  In determining whether to approve such a settlement agreement, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable."  *Officers for Justice v. Civil Serv. Comm'n of City of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Courts in the Ninth Circuit consider the following factors announced in *Churchill Village, LLC v. General Electric* when making this evaluation:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Whether a proposed settlement is fair ultimately falls within the sound discretion of the district court.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### III.   DISCUSSION

As a threshold matter, this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d).  The Parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636.  Dkts. 9, 14.  The Court first addresses Plaintiffs' motion for final approval of the class action settlement and then discusses Plaintiffs' motion for attorneys' fees and other expenses.

**A.   The Court Approves the Final Class Action Settlement Agreement.**

The Settlement Agreement contemplates a Settlement Class, which the Court preliminarily certified under Federal Rule of Civil Procedure 23(e)(1)(B)(ii).  Preliminary Approval Order ¶ 6.  The Court now confirms its findings and finally certifies the following class:

> all individuals currently residing in the United States whose Robinhood accounts were accessed by unauthorized users from January 1, 2020, through April 27, 2022, or who notified Robinhood that their Robinhood accounts were accessed by unauthorized users from January 1, 2020, through April 27, 2022.

*Id.*; Settlement Agreement ¶ 1.22.

As stated at the hearing, the Court finds that the *Churchill* factors strongly weigh in favor

of approving the final Settlement Agreement. After more than two years of vigorous litigation and one mediation session, Class Counsel negotiated a settlement that balances the strength of Plaintiffs' claims against the risk, expense, complexity and likely duration of further litigation, including the possibility of protracted appeals. Even after this Court ruled on two motions to dismiss, there are still a wide range of issues left to be decided regarding liability. The Parties have avoided the risk by agreeing to an Aggregate Claims Amount of $500,000, which the Court finds to be in the best interest of the settlement class. Each class member who submits a valid claim may recover up to $260, and all class members may claim two years of credit monitoring and identity theft protection services. Settlement Agreement ¶¶ 2.1-2.3, 2.7. Robinhood additionally has agreed to injunctive relief for a minimum period of eighteen months. *Id.* at ¶ 2.5. Specifically, Robinhood will (1) maintain its mandatory two-factor authentication program; (2) continue to offer customers supplemental two-factor authentication; (3) continue working with threat intelligence services to check customer passwords against compromised passwords and alert customer when Robinhood receives notice that a customer's password may have been compromised; (4) maintain a proactive monitoring program of customer account activity to identify potential account takeovers; (5) continue to increase customer awareness of cybersecurity threats; and (6) provide real-time phone support for customers to inquire with a representative about potential fraud and unauthorized account access. *Id.* Further, the extent of discovery over years of litigation favors settlement here; the Parties reviewed voluminous records and data files and engaged in meet and confer efforts to resolve a variety of disputes, Class Counsel interviewed over 80 putative class members, and the Parties were in the process of scheduling depositions when they agreed to mediate. Erickson Decl. ¶¶ 7-10. The extent of such discovery gave the Parties a sufficient understanding of the issues involved in the case. This conclusion is supported by the fact that no class members filed objections in response to the settlement notices. Fairness Hearing; Crooks Decl. ¶ 22.

In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval. *See Officers for Justice*, 688 F.2d at 625. The Court, therefore, approves the Settlement Agreement.

**B.     The Court Approves the Award of Attorneys' Fees.**

**1.     Attorneys' Fees**

In conjunction with seeking final approval of the class action settlement, as set forth in the Settlement Agreement, Plaintiffs filed an unopposed motion for attorneys' fees of $484,540 and reimbursement of litigation costs totaling $15,460, for a total combined request of $500,000, which is the maximum amount of recovery permitted under the Settlement Agreement.  Dkt. 71; Settlement Agreement ¶ 6.1.  The Court finds these figures reasonable and awards the amount in full.

Federal Rule of Civil Procedure 23(h) authorizes the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Because Plaintiffs' claims arise under California law, California law governs the award of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); Cal. Civ. Proc. Code § 1021.5.

The Court must analyze an attorneys' fee request "based on either (1) the 'lodestar' method or (2) a percentage of the total benefit made available to the class, including costs, fees, and injunctive relief."  *Taylor v. Shutterfly*, No. 18-cv-266, 2021 WL 5810294, at *8 (N.D. Cal. Dec. 7, 2021).  The Court need not base an award of attorneys' fees solely on the amount paid to class members who submitted claims.  *See Williams v. MGM-Pathe Comm'cns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.").  The lodestar approach is appropriate for this case, particularly given that injunctive relief accounts for a substantial portion of the total relief to the class.  *Taylor*, 2021 WL 5810294, at *8; *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 688 (N.D. Cal. 2016).

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate."  *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours

reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [ ] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Lealao*, 82 Cal. App. 4th at 26. While the Court should consider the value of the injunctive relief when assessing fees under the lodestar approach, the Court need not determine a specific monetary value associated with that relief. *Hohenberg v. Drey (In re Ferrero Litig.)*, 583 F. App'x 665, 668 (9th Cir. 2014) ("Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation . . . the injunctive relief in this case is meaningful and consistent with the relief requested in plaintiffs' complaint. . . . The district court did not abuse its discretion in approving a settlement that compensated counsel under the lodestar method for procuring such relief.").

Here, Class Counsel has provided detailed declarations showing that the attorneys handling this case incurred a lodestar of $652,630, representing 824 hours expended at a blended hourly rate of $792. Dkt. 73 ("Erickson Decl. II") ¶ 11, Ex. 2. The Court finds that the hours claimed were reasonably worked and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience who appear in this Court. The Court also finds that Plaintiffs' counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes at, and risks of proceeding to, trial.

Class Counsel requests a fee award of $484,540, which equals approximately 74% of its lodestar. *See* Erickson II Decl. ¶ 11; Dkt. 71 at 1. Thus, "far from any 'upward' multiplier, Class Counsel's requested fee actually results in a 'negative' (more accurately, a 'fractional') multiplier" of 0.74. *Taylor*, 2021 WL 5810294, at *9. While the fee award is constrained by the $500,000 cap in the Settlement Agreement, Class Counsel, nevertheless, is seeking substantially less in fees than the firm reasonably incurred, which further demonstrates the reasonableness of the fee award.

8

*See, e.g., id.*; *Schuchardt*, 314 F.R.D. at 690-91 (holding fractional lodestar multiplier to be indication of reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, No. 14-cv-1570, 2015 WL 8943150, at *6 (N.D. Cal. Nov. 16, 2015) (finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. 12-cv-03783, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California."); *Covillo v. Specialtys Café*, No. 11-cv-00594, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar, which means that the requested fee award results in a so-called negative multiplier, suggesting that the percentage of the fund is reasonable and fair."); *Walsh v. Kindred Healthcare*, No. 11-cv-00050, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) ("The Court concludes that, on the facts of this case, the lodestar is reasonable, especially in light of the fact that Class Counsel have applied a negative multiplier, and seek an award that is less than their base lodestar."); *Wehlage v. Evergreen at Arvin LLC*, No. 10-cv-05839, 2012 WL 4755371, at *1 (N.D. Cal. Oct. 4, 2012) ("Class Counsel do not seek a multiplier on their lodestar, and in fact the requested fee is a negative multiplier (-.79).  The Court finds that this award is appropriate here."); *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("Even if the court accepted the unadjusted lodestar from plaintiffs' counsel ($922,884.75), the correlating multiplier of 0.74 would still reflect a negative multiplier, further suggesting that the requested percentage based fee is fair and reasonable.").

The Court is not required to perform a percentage-based cross-check and finds it inappropriate to do so here, as the injunctive relief is difficult to value monetarily. *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) (holding that if "classwide benefits are not easily monetized, a cross-check is entirely discretionary," and the district court may make its award based entirely on the lodestar).  The Court notes that the settlement creates a $500,000 fund and provides two years of credit monitory and identity theft protection services to all class members, the latter of which Class Counsel estimates has a value of $19,500,000.  Settlement Agreement ¶ 2.7; Dkt. 61 at 1, 13 (estimating retail value of services to be a total of $480 per class

9

United States District Court
Northern District of California

member with a class of approximately 40,000); Kramer Decl. ¶ 27.  A fee award of $484,540 represents approximately 2.4% of the total monetary value of the settlement prior to any adjustment to account for the value of the injunctive relief.  This limited cross-check further confirms that the requested fees are reasonable.

### 2. Litigation Expenses

Class Counsel also is entitled to reimbursement of reasonable out-of-pocket expenses under Federal Rule 23(h).  Fed. R. Civ. Proc. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters).  Costs that may be recouped under Rule 23(h) include "nontaxable costs that are authorized by law or by the Parties' agreement."  Fed. R. Civ. Proc. 23(h).

Here, Class Counsel seeks reimbursement of $15,460 in litigation expenses and provide a declaration documenting their claim.  Dkt. 79 ("Erickson Decl. III") ¶¶ 4-8; *see also* Erickson Decl. II ¶ 23, Ex. 2.  Robinhood will pay the costs separately from amounts paid to class members who have made valid claims and will not cause a reduction in what is paid to them.  Settlement Agreement ¶ 6.1; Preliminary Approval Order ¶ 20.  No objection has been filed to any cost item or amount, and the submitted costs are reasonable.  *See* Dkt. 77 ("Pursuant to Civil Local Rule 7-3, Defendants state that they do not oppose Plaintiffs' . . . Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards (ECF No. 71).").  Accordingly, the Court finds that Plaintiffs' submissions support an award of $15,460 in costs.

### 3. Class Representative Incentive Award

Finally, the Court must evaluate named Plaintiffs' awards individually, using relevant factors, including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).  The Ninth Circuit has underscored that district courts must "scrutinize[e] all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols.*, 715 F.3d

1157, 1163 (9th Cir. 2013).

Here, named Plaintiffs and designated class representatives Kevin Qian and Michael Furtado each seek a service award of $5,000. Dkt. 71 at 17-18; Erickson Decl. II ¶ 24. The Court finds that this enhancement is warranted for their service and participation in this litigation, including responding to discovery requests and assisting Class Counsel with preparation for mediation. Dkt. 71 at 1, 17-18; Kramer Decl. ¶ 42; Dkt. 74 ("Furtado Decl.") ¶¶ 2-5; Dkt. 75 ("Qian Decl.") ¶¶ 2-4; Erickson Decl. II ¶ 24.

## IV.   CONCLUSION

For the reasons stated above, the Court **CERTIFIES** the proposed settlement class, **GRANTS** Plaintiffs' unopposed motion for final approval of the class action settlement on the terms set forth in the Settlement Agreement, and **GRANTS** Plaintiffs' unopposed motion for attorneys' fees and other expenses, as well as class representative service awards, to be paid separately by Robinhood. Preliminary Approval Order ¶ 20; Erickson Decl. II ¶ 24. The Court will retain jurisdiction of the matter through distribution to enforce the settlement and this Order.

The Parties are ordered to submit a status report on **November 16, 2023** setting forth: (1) the amount of money dispersed from, and the amount of money left in, the settlement fund; (2) the number of class members who received a payment and the number that did not; and (3) any other updates that might assist the Court in overseeing the fair and just administration of the settlement. The Clerk of Court is directed to administratively close the case.

**SO ORDERED.**

Dated: May 16, 2023

_____
SUSAN VAN KEULEN
United States Magistrate Judge